1  G. EDWARD RUDLOFF, JR. (State Bar 56058)
2  KEVIN A. NORRIS (State Bar 206022)
   **RUDLOFF WOOD & BARROWS LLP**
3  2000 Powell Street, Suite 900
   Emeryville, CA 94608
4  Telephone:   (510) 740-1500
5  Facsimile:   (510) 740-1501
   Email:        erudloff@rwblaw.com
6               knorris@rwblaw.com

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY
8
                                    E-filing
9

10           **UNITED STATES DISTRICT COURT**

11      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12
   CROWLEY MARITIME
13  CORPORATION,
                                        **CV 08      0830**
14          Plaintiff,
                                        Case No. _____
15      v.

16  FEDERAL INSURANCE COMPANY;          **NOTICE OF REMOVAL**
    TWIN CITY FIRE INSURANCE            **UNDER 28 U.S.C. §1446(a)**
17  COMPANY; RLI INSURANCE              **(DIVERSITY)**
    COMPANY; and DOES 1-20, inclusive,
18                                      **[JURY TRIAL DEMANDED]**
            Defendants.
19

20               **NOTICE OF REMOVAL**

21          Pursuant to 28 U.S.C. § 1446(a), Defendant Federal Insurance Company

22  ("Federal") files this Notice to remove the above captioned case to this Court and, in

23  support of removal, respectfully states as follows:

24          1.    Defendants Federal, Twin City Fire Insurance Company ("Twin City") and

25  RLI Insurance Company ("RLI") are the named defendants in a civil action brought on or

26

                                                     **NOTICE OF REMOVAL**

WDC - 057212/000716 - 2675785 v1

1    about January 7, 2008 in the Superior Court of California, City and County of San

2    Francisco, styled <u>Crowley Maritime Corp. v. Federal Insurance Co., et al.</u>, No. 08-470782.

3          2.    A copy of the complaint, which is the initial pleading setting forth the claim

4    for relief upon which this action is based, was served on Federal, Twin City and RLI on

5    January 10, 2008. This Notice of Removal is therefore filed within thirty (30) days of

6    service of the complaint on Federal, Twin City and RLI and is timely filed under 28

7    U.S.C. § 1446(b).

8          3.    A copy of the complaint and its exhibits, being all of the papers served upon

9    Federal, Twin City and RLI in this action, is attached hereto as Exhibit A.

10          4.    This is a civil action over which the District Courts of the United States

11    have original jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of

12    different states and the amount in controversy exceeds $75,000, exclusive of interest and

13    costs, in light of the amounts which plaintiff is seeking.

14          5.    Plaintiff Crowley Maritime Corporation ("CMC") is a corporation organized

15    and incorporated under the laws of the state of Delaware, and has its principal place of

16    business now and at the time this action was commenced in the state of Florida.

17          6.    Defendant Federal is an insurance company organized and incorporated

18    under the laws of the state of Indiana, and has its principal place of business now and at

19    the time this action was commenced in the state of New Jersey.

20          7.    Defendant Twin City is an insurance company organized and incorporated

21    under the laws of the state of Indiana, and has its principal place of business now and at

22    the time this action was commenced in the state of Connecticut.

23          8.    Defendant RLI is an insurance company organized and incorporated under

24    the laws of the state of Illinois, and has its principal place of business now and at the time

25    this action was commenced in the state of Illinois.

26

**NOTICE OF REMOVAL**

\\\DC - 057212/000716 - 2675785 v1

9.     Defendant DOES 1-20 are twenty fictitiously namely defendants.  28 U.S.C. § 1441(a) provides that for purposes of removal, the citizenship of defendants sued under fictitious names shall be disregarded.

10.     In this action, CMC seeks insurance coverage under: (a) Executive Protection Portfolio Policy No. 8120-0792 (the "Primary Policy"), issued by Federal to CMC; (b) Excess Financial Products Insurance Policy No. 00 DA 0100967-04 (the "First Excess Policy"), issued by Twin City to CMC; and (C) Excess Policy No. EPG0002704A (the "Second Excess Policy"), issued by RLI to CMC.  The Primary Policy has a policy limit of $10 million.  The First Excess Policy has a policy limit of $10 million, excess of the limits of the Primary Policy.  The Second Excess Policy has a policy limit of $5 million, excess of the limits of the Primary and First Excess Policies.

11.     CMC's complaint in this action alleges that it is entitled to coverage under the Primary Policy, First Excess Policy and Second Excess Policy for amounts exceeding $75,000, exclusive of interest and costs.  In particular, in Paragraph 16 of CMC's complaint, CMC alleges that its "total covered loss exceeds $22 million."

12.     Twin City and RLI have advised Federal, though counsel, that they consent to the removal of this action and will file separate notices joining in the removal of this action.

13.     For all the foregoing reasons, removal of this lawsuit is proper under 28 U.S.C. § 1441.

14.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant hereby demands a trial by jury.

WHEREFORE, pursuant to 28 U.S.C. § 1441 and in conformance with the requirements set forth in 28 U.S.C. § 1446(b) and the Rules of the United States District Court for the Northern District of California, Federal hereby removes this action from the

1   Superior Court of the City and County of San Francisco County, California, on this 6th

2   day of February, 2008.

3   Date:  February 6, 2008                        Respectfully submitted,

4                                          **RUDLOFF WOOD & BARROWS LLP**

5

6                                          By:

7                                              G. Edward Rudloff, Jr.
                                               Kevin A. Norris
8
                                               Attorneys for Defendant
9                                          FEDERAL INSURANCE COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL

\\\DC - 057212/000716 - 2675785 v1

**EXHIBIT A**

1  Philip L. Pillsbury, Jr. (SBN 72261)
2  Richard D. Shively (SBN 104895)
   Eric K. Larson (SBN 142791)
3  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
4  600 Montgomery Street, 31st Floor
   San Francisco, CA 94111
5  Telephone: (415) 433-8000
   Facsimile: (415) 433-4816
6  mailto:ppillsbury@pillsburylevinson.com
7  mailto:rshively@pillsburylevinson.com
   mailto:rlarson@pillsburylevinson.com
8
   Attorneys for Plaintiff
9  CROWLEY MARITIME CORPORATION

10

11

12                    SUPERIOR COURT OF CALIFORNIA

13              CITY AND COUNTY OF SAN FRANCISCO

14

15  CROWLEY MARITIME CORPORATION,     )  Case No. _____
                                      )
16              Plaintiff,            )  COMPLAINT FOR BREACH OF
                                      )  CONTRACT; AND BREACH OF THE
17      vs.                           )  IMPLIED COVENANT OF GOOD
                                      )  FAITH AND FAIR DEALING
18  FEDERAL INSURANCE COMPANY; TWIN   )
    CITY FIRE INSURANCE COMPANY; RLI  )  DEMAND FOR JURY TRIAL
19  INSURANCE COMPANY; and DOES 1-20, )
    inclusive,                        )
20                                    )
                Defendants.           )
21                                    )
                                      )
22                                    )
                                      )
23

24      Plaintiff Crowley Maritime Corporation ("Plaintiff" or "Crowley") alleges as follows:

25                    **GENERAL ALLEGATIONS**

26      1.      At all material times, Crowley was and is a corporation that is in the business of

27  providing diversified transportation services in domestic and international markets by means of

28  four operating lines of business, including liner services, logistics services, marine services and

---

COMPLAINT
Case No. _____                          -1-

petroleum services. The company supports all four of its segments by providing corporate services, supervising construction of new vessels and owning vessels which are chartered for use in its operating lines of business.

2.    Plaintiff is informed and believes that, at all material times, Defendants Federal Insurance Company ("Federal"), Twin City Fire Insurance Company ("Twin City") and RLI Insurance Company ("RLI") were and are corporations or other business entities authorized to transact, and transacting, insurance business in the State of California.

3.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1-20, inclusive, and therefore sues those defendants by said fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of said fictitiously named Defendants is responsible in some manner for the events and happenings herein referred to, and negligently or otherwise thereby proximately caused injuries and damages to Plaintiff as herein alleged.

4.    At all material times herein, each Defendant, including each DOE Defendant, acted as an agent and employee of the remaining Defendants, and in doing the things hereinafter alleged acted within the course and scope of said agency and with the permission and consent of its principals. The acts and conduct of each said Defendant alleged herein were known to, authorized by, and ratified by each of the other Defendants.

## THE FEDERAL INSURANCE POLICY

5.    Federal issued an Executive Protection Portfolio insurance policy (policy number 8120-0792) to Crowley which includes an Executive Liability and Entity Securities Liability Coverage Section (hereafter referred to as the "Federal Policy"). A true and correct copy of the Federal Policy is attached hereto as Exhibit A. The Federal Policy was in effect from November 1, 2004 to November 1, 2005 (the "policy period"), and provides -- among other coverages -- primary executive indemnification coverage with limits of $10,000,000.00 and a retention of $500,000.00. The executive indemnification coverage is applicable to loss for which Crowley grants indemnification to its directors and officers, on account of claims first made during the policy period, for wrongful acts committed or allegedly committed before

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-2-

COMPLAINT
Case No. ____

1    or during the policy period. The Federal Policy was issued to Crowley in California, and is

2    governed by California law.

3                    **THE TWIN CITY INSURANCE POLICY**

4        6.      Twin City issued an Excess Financial Products Insurance Policy -- policy

5    number 00 DA 0100967-04 -- to Crowley which provides excess executive indemnification

6    coverage (hereafter referred to as the "Twin City Policy"). A true and correct copy of the

7    Twin City Policy is attached hereto as Exhibit B. The Twin City Policy sits directly above the

8    Federal Policy, and it provides first layer excess coverage that "follows form" with the

9    underlying Federal Policy (that is, the Twin City Policy is "subject to the same warranties,

10   terms, conditions, definitions, exclusions and endorsements"). The Twin City Policy was in

11   effect during the same policy period (November 1, 2004 to November 1, 2005), and has limits

12   of $10,000,000.00 in excess of the limits of the underlying Federal Policy. The Twin City

13   Policy was issued to Crowley in California, and is governed by California law.

14                    **THE RLI INSURANCE POLICY**

15       7.      RLI issued an Excess Policy -- policy number EPG0002704A -- to Crowley

16   which provides excess executive indemnification coverage (hereafter referred to as the "RLI

17   Policy"). A true and correct copy of the RLI Policy is attached hereto as Exhibit C. The RLI

18   Policy sits directly above the Twin City Policy, and it provides second layer excess coverage

19   that also "follows form" with the underlying Federal Policy. The RLI Policy was in effect

20   during the same policy period (November 1, 2004 to November 1, 2005), and has limits of

21   $5,000,000.00 in excess of the limits of the underlying Federal and Twin City Policies. The

22   RLI Policy was issued to Crowley in California, and is governed by California law.

23                    **THE UNDERLYING LITIGATION AND SETTLEMENT**

24       8.      A lawsuit was filed against Crowley and certain members of its board of

25   directors on November 30, 2004 in the Court of Chancery in the State of Delaware, entitled

26   *Franklin Balance Sheet Investment Fund v. Crowley*, C.A. No. 888-VCP (hereafter referred to

27   as the "*Franklin Fund* Action"). The *Franklin Fund* Action was both a class action and a

28   shareholder derivative action that alleged breaches of fiduciary duties owed by the director

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-3-

COMPLAINT
Case No. ____

1   defendants to Crowley and its stockholders, and it sought both damages and other relief. The

2   *Franklin Fund* plaintiffs' claims fall directly within the coverage of the Federal, Twin City and

3   RLI Policies. Each of those insurers was given timely notice of the claims.

4        9.    In March 2007 Crowley notified Federal, Twin City and RLI (hereafter

5   collectively referred to as the "Insurers") that an opportunity had arisen to settle the *Franklin*

6   *Fund* Action on favorable terms, that there was a proposed settlement, and that a hearing in the

7   Delaware Chancery Court was set for April 27, 2007 -- at which time the court's approval of

8   the proposed settlement would be sought. Crowley's notification also sought the Insurers'

9   consent to the proposed settlement. On April 5, 2007 Federal's attorney Henry Nicholls

10  responded by telephone, advising Crowley's attorney that Federal "ha[d] no problem with

11  consenting" to the proposed settlement. Mr. Nicholls also requested additional information

12  relating to the settlement, which was promptly supplied by Crowley's attorneys. Crowley

13  received no further response from Federal, and it received no response whatsoever from either

14  Twin City or RLI. The Crowley board, upon the recommendation of a special committee of

15  independent directors, evaluated the terms of the proposed settlement and determined that it

16  was reasonable and in the best interests of the Company. The Company therefore proceeded to

17  complete the proposed settlement, which was approved by the Delaware Court. The court

18  specifically concluded that the settlement was "fair, reasonable and adequate and in the best

19  interests of the Company, its shareholders and the Class."

20       10.    As part of the settlement, $17.625 million was paid to the plaintiffs for a release

21  of their claims. That was a reasonable amount, given the probability that the plaintiffs would

22  have recovered a greater amount had the action gone to trial. As a result, the Insurers should

23  have consented to the settlement -- whether or not they also reserved their rights to contest

24  coverage. It also was agreed as part of the settlement that Crowley would pay, on behalf of the

25  director defendants, the plaintiffs' attorneys' fees and expenses in an amount to be determined

26  by the Delaware Court. The court ultimately issued an order awarding the plaintiffs their

27  attorneys' fees and expenses in the amount of $4,219,458.26, and Crowley paid those fees and

28  expenses as ordered by the court. The court specifically concluded that this amount

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COMPLAINT
Case No. ____

-4-

1   "represents a reasonable attorney's fee under the circumstances of this case." The fee award

2   amount does not detract from the conclusion that the settlement was reasonable, since the

3   plaintiffs likely would have obtained a higher fee award in addition to their recoverable

4   damages had there been no settlement.

5       11.    In determining whether the proposed settlement was reasonable and should be

6   consented to, the Insurers were obligated to consider the amount proposed to be paid for a

7   release of the plaintiffs' claims, the likely extent of the plaintiffs' recoverable damages should

8   they prevail, and the probability that the plaintiffs would prevail. Under applicable California

9   law, the Insurers were not permitted to consider coverage issues. However, the Insurers failed

10   to conduct any reasonable investigation sufficient to enable them to determine whether the

11   proposed settlement was a reasonable one that ought to be consented to. The Insurers'

12   obligation to give good faith consideration to the proposed settlement, and not to unreasonably

13   withhold their consent, derived not only from the express provisions of the Policies involved,

14   but also from the covenant of good faith and fair dealing that is implied by law into every

15   insurance contract.

16       12.    On June 14, 2007 -- after the settlement was finalized -- Federal took the

17   position that there was no coverage for the *Franklin Fund* settlement because Crowley had not

18   obtained Federal's consent in writing before consummating it. Federal's argument is incorrect

19   for three separate and independent reasons. First, under applicable California law, the Federal

20   Policy's consent provisions were rendered inoperative (or waived or forfeited) by the

21   circumstances that Federal (a) had no duty to defend and did not defend the *Franklin Fund*

22   Action, and (b) reserved its right to deny coverage. An insurer's right to control the defense

23   and settlement of an action against its insured is an adjunct to the insurer's duty to defend, and

24   only where the insurer provides a defense and no conflict of interest exists does the insurer

25   have the exclusive right to control defense and settlement. Such was not the case here, because

26   Federal did not defend and its reservation of rights created a conflict.

27       13.    Second, Federal's breach of the implied covenant freed Crowley from

28   compliance with the Federal Policy's consent provisions. That is because an insurer cannot

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COMPLAINT
Case No. ____

-5-

1   deprive the insured of the benefits of the contract while, at the same time, insisting on the

2   enforcement of its own rights under the agreement. Federal breached the implied covenant by

3   its failure to promptly respond substantively in writing to Crowley's notice of the proposed

4   settlement and request for consent; by its deceptive conduct in misleading Crowley into

5   believing that Federal "had no problem with consenting" to the proposed settlement; by failing

6   to warn Crowley that, if it proceeded to consummate the proposed settlement, Federal would

7   deny coverage; and by waiting until after the settlement had been finalized to first raise the

8   issue. Federal also breached the implied covenant by failing to conduct an adequate

9   investigation of the reasonableness of the proposed settlement, by failing to give it good faith

10  consideration, and -- ultimately -- by refusing to consent to the settlement and then denying

11  coverage on that basis. In engaging in the foregoing conduct, Federal failed to give as much

12  consideration to Crowley's interests as it gave to its own. Essentially, Federal treated the

13  proposed settlement as nothing more than an opportunity to avoid coverage.

14          14.     Third, Federal's foregoing conduct -- failing to adequately investigate, failing to

15  give good faith consideration to the proposed settlement, and advising Crowley over the

16  telephone that it "had no problem with consenting" to the settlement while failing to advise

17  Crowley that it planned to deny coverage as soon as the settlement was finalized (on the

18  ground that its consent in writing was not obtained) -- gives rise to a waiver or forfeiture or

19  estoppel which would prevent Federal from enforcing the Federal Policy's consent provisions

20  even if Federal had not breached the Policy.

21          15.     Under the applicable law, Crowley was not obligated to obtain the Insurers'

22  consent before settling the *Franklin Fund* Action. Its only obligations were to act in good faith

23  in reaching a reasonable settlement, to give the Insurers notice of the proposed settlement, and

24  to respond reasonably to any requests by the Insurers for further information. Crowley met all

25  those obligations.

26          16.     The attorney fees and expenses incurred by Crowley defending the *Franklin

27  Fund* Action constitute a covered "Loss" as defined by the Federal Policy. So, too, do the

28  amounts paid to settle that Action, since a covered "Loss" is defined as expressly including

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-6-

COMPLAINT
Case No. ____

1   "settlements." Those amounts also constitute covered losses under the Twin City and RLI

2   Policies, which follow form with the Federal Policy. Crowley incurred covered defense costs,

3   in an amount to be proven at trial, that exceed $600,000.00. The amount paid to settle the

4   *Franklin Fund* plaintiffs' claims includes the $17.625 million that was paid directly to the

5   plaintiffs as well as the $4,219,458.26 that was paid to their attorneys, for a total of

6   $21,844,458.26. Crowley was obligated to, and did, pay the defense costs and settlement

7   amounts on behalf of the director defendants. After deducting the $500,000.00 retention

8   provided by the Federal Policy, Crowley's total covered loss exceeds $22 million.

9       17.   Federal, Twin City and RLI are obligated under their Policies to reimburse

10   Crowley for the entire amount of its covered loss (less the $500,000.00 retention), but they

11   have failed to do so. That failure constitutes a breach of those Policies which entitles Crowley

12   to relief in this action.

## FIRST CAUSE OF ACTION

### Breach of Contract

**(Against Federal, Twin City, RLI and DOES 1-10)**

16       18.   Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 17

17   of this Complaint as though fully set forth herein.

18       19.   From November 1, 2004 to November 1, 2005 Federal, Twin City and RLI

19   insured Crowley under the previously described Policies.

20       20.   Pursuant to the terms of those Policies and the law, Crowley reasonably settled

21   the *Franklin Fund* Action and timely notified Federal, Twin City and RLI of the settlement and

22   made a claim for indemnification.

23       21.   The Federal, Twin City and RLI Policies provide indemnity coverage to

24   Crowley for the settlement reached in the *Franklin Fund* Action and for the defense costs

25   incurred by Crowley in that Action.

26       22.   Crowley timely demanded indemnity from the Insurers, and promptly provided

27   all proof of loss information requested by them.

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-7-

COMPLAINT
Case No. ____

23. The Insurers have failed to honor their obligation under the previously described Policies to indemnify Crowley for the amounts paid by it to defend and settle the *Franklin Fund* Action.

24. Crowley has duly complied with all the applicable material terms and conditions of the previously described Policies, or its performance has been excused.

25. Federal, Twin City and RLI have breached their contractual duties to Crowley, including the obligation to indemnify Crowley for its losses associated with the *Franklin Fund* Action.

26. As a proximate result of the Insurers' breach of contract, Crowley has been damaged as outlined below.

27. By reason of the Insurers' breach of contract, Crowley has been caused to suffer, and continues to suffer, ongoing loss in the amount of the unpaid insurance benefits that are due (including reimbursement of the defense costs and settlement paid by Crowley in connection with the *Franklin Fund* Action), together with interest thereon at the legal rate from the dates Crowley paid the defense costs and settlement until the date when those amounts are finally reimbursed by the Insurers.

WHEREFORE, Plaintiff prays for judgment against the Insurers as hereinafter set forth.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against Federal, Twin City, RLI and DOES 1-10)

28. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. Implied in each insurance policy is a covenant by the insurer that it will act in good faith and engage in fair dealing in connection with claims made by its insured; that it will do nothing to interfere with the rights of its insured to receive policy benefits; that it will give at least as much consideration to the interests of its insured as it gives to its own interests; that it will investigate all possible bases for coverage; and that it will not refuse to pay any claim

COMPLAINT
Case No. _____

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  without thoroughly investigating the foundation for any denial (hereinafter referred to as "the
2  implied covenant of good faith and fair dealing"). The implied covenant obligated the Insurers
3  to promptly investigate the reasonableness of the proposed settlement, to give good faith
4  consideration to it, and to exercise their own rights under the policies at issue in good faith.

5      30.    At all material times, the Insurers violated the implied covenant of good faith
6  and fair dealing by, *inter alia*, the following:

7          (a) Consciously and unreasonably refusing to pay to Crowley insurance benefits
8              to which it is entitled pursuant to the previously described Policies, and
9              depriving Crowley of insurance benefits rightfully due to it with the
10             knowledge that said conduct was and is wrongful and contrary to the Insurers'
11             obligations under the Policies and the law;

12         (b) Consciously and unreasonably failing to properly investigate Crowley's claim
13             fairly and in good faith, and refusing to give Crowley's interests at least as
14             much consideration as the Insurers gave their own interests;

15         (c) Consciously and unreasonably denying Crowley's indemnity claim without
16             thoroughly investigating the foundation for the denial;

17         (d) Consciously and unreasonably misinterpreting the facts, policy provisions and
18             law at issue in a way calculated to deprive Crowley of insurance policy
19             benefits to which it is entitled; and

20         (e) Engaging in the other conduct specifically alleged in this Complaint,
21             including without limitation the conduct alleged in Paragraphs 9 and 11-14
22             above.

23     31.    Crowley is informed and believes, and thereon alleges, that the aforementioned
24  conduct by the Insurers represents a common pattern and practice on their part.

25     32.    Crowley is informed and believes, and thereon alleges, that in engaging in the
26  conduct alleged herein the Insurers acted with malice, fraud and/or oppression, as defined in
27  California Civil Code § 3294.

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-9-

33.    As a proximate result of the Insurers' actions, Crowley has been damaged as alleged in Paragraph 27 above.

34.    As a further proximate result of the Insurers' breach of the implied covenant of good faith and fair dealing, Crowley has incurred, and will continue to incur, attorneys' fees and related costs in order to obtain the insurance policy benefits unreasonably withheld by the Insurers.

35.    As a result of the Insurers' conduct alleged herein, Crowley is entitled to recover compensatory damages, including insurance policy benefits, interest thereon, and attorneys' fees and expenses, and it also is entitled to recover punitive damages from the Insurers in an amount sufficient to punish and make an example of them, in order to deter similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    For compensatory damages according to proof;

2.    For exemplary damages according to proof;

3.    For attorneys' fees and expenses incurred in obtaining insurance policy benefits according to proof;

4.    For costs of suit incurred herein;

5.    For prejudgment interest according to proof; and

6.    For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  January 7, 2008

PILLSBURY & LEVINSON, LLP

By: _____

Richard D. Shively

Attorneys for Plaintiff
CROWLEY MARITIME CORPORATION

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COMPLAINT
Case No. ____

**EXHIBIT** A

# *INSURED'S COPY*

CROWLEY MARITIME CORPORATION
155 GRAND AVENUE, SUITE 700
OAKLAND, CA  94612

*PRODUCT:* EPPFOLIO

*POLICY NO:* 000081200792

*TRANSACTION:* ENDORSEMENT



**ENDORSEMEN**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

DELETE ENDORSEMENT(S)

In consideration of the premium charged, it is agreed that Endorsement Number(s) 5 is/are deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section."

(4)     Subsection 5. Definitions of this coverage section is amended in the following respects:

(a)     The definition of "**Application**" is amended to read in its entirety as follows

"**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement. **Application** shall also include, for each **Organization**, the financial statements last issued to shareholders before this policy's inception date, whether or not such financial statements were attached to or submitted with a signed application for this coverage section. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section."

(b)     The definition of "**Claim**" is amended to read in its entirety as follows:

"**Claim** means:

(1)     when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

(d)     a criminal proceeding commenced by the return of an indictment,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom, or

(e)     a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Insured Person**; or

(2)     when used in reference to the coverage provided by Insuring Clause 3:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**; or

(d)     a criminal proceeding commenced by the return of an indictment,



**CHUBB**

against an **Organization** for a **Wrongful Act**, including any appeal therefrom, or

    (e)    a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Organization**; or

    (3)    when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g), or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written request to toll or waive a statute of limitations or the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such request or demand is first received by an **Insured**)."

(c)    The following definition of "**Employee**" is added:

"**Employee** means any natural person whose labor or service is engaged by and directed by an **Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor."

(d)    The following definition of "**Executive**" is added:

"**Executive** means any natural person who was, now is or shall become:

    (a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America; or

    (b)    a holder of a position equivalent to any position described in (a) above in an **Organization** chartered in any jurisdiction other than the United States of America."

(e)    The definition of "**Insured Person**" is amended to read in its entirety as follows:

"**Insured Person** means any **Executive** or **Employee** of an **Organization**."

(f)    The definition of "**Securities Claim**" is amended to read in its entirety as follows:

"**Securities Claim** means that portion of a Claim which:

    (a)    is brought by a securityholder of an **Organization**

        (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)    derivatively, on behalf of such **Organization**, against an **Executive** of such **Organization**; or

    (b)    alleges that an **Organization** or any of its **Insured Persons**

        (i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

Securities Claim does not include:

(a)    any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b)    any **Claim** by or on behalf of a former, current, future or prospective **Employee** of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such **Employee** in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; or

(c)    any **Securityholder Derivative Demand**."

(g)    The definition of "**Securityholder Derivative Demand**" is amended to read in its entirety as follows:

"**Securityholder Derivative Demand** means:

(a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Executive** for a **Wrongful Act**; or

(b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Executive** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**."

(5)    Subsection 6 of this coverage section is amended in the following respects:

(a)    Paragraph (b) of Subsection 6 is amended by replacing the phrase "on or prior to the Pending or Prior Date" with the phrase "on or prior to the applicable Pending or Prior Date".

(b)    Paragraph (c) of Subsection 6 is amended to read in its entirety as follows:

"(c)    brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)    a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, solicitation by, any **Executive**;

(ii)    a **Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;



(iii)   a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)   a **Claim** brought by an **Insured Person** who has not held the position of director, officer, **Manager** or in-house general counsel or any equivalent position with any **Organization** for at least four (4) years prior to the date such **Claim** is first made, and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, an **Organization** or any other **Insured Person** who holds or has held any such position within such four (4) year period."

(c)   Paragraph (e) of Subsection 6 is amended to read in its entirety as follows:

"(e)   for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which an **Executive** seeks compensation in a wrongful termination **Claim**."

(d)   The following is added to Subsection 6 as Exclusion 6(i):

"(i)   based upon, arising from, or in consequence of any employment-related **Wrongful Act**; provided that this Exclusion 6(i) shall not apply to a **Claim** by an **Executive** for the wrongful termination of such **Executive**."

(e)   The following is added to Subsection 6 as Exclusion 6(j):

"(j)   based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder."

(6)   Subsection 7 of this coverage section is amended in the following respects:

(a)   Paragraph (b) of Subsection 7 of this coverage section is amended to read in its entirety as follows:

"(b)   based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final and non-appealable judgment or adjudication adverse to such **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or"

(b)   The following is added to Subsection 7 as Exclusion 7(c):

"(c)   based upon, arising from, or in consequence of such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

(7)   Subsection 8 of this coverage section is amended to read in its entirety as follows:

"The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** made against any **Organization**:

(a)   based upon, arising from, or in consequence of:

(i)     any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Organization**, if a final and non-appealable judgment or adjudication adverse to such **Organization** establishes such a deliberately fraudulent act or omission or willful violation; or

(ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled;

(b)     for any actual or alleged liability of an **Organization** under any contract or agreement; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement;

(c)     based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment;

(d)     based upon, arising from, or in consequence of actual or alleged libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(e)     based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this coverage section; provided that this Exclusion 8(e) shall not apply to any **Securities Claim or Securityholder Derivative Demand**;

(f)     based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark or service mark, trade name, or trade dress, or misappropriation of ideas or trade secrets; or

(g)     based upon, arising from, or in consequence of any actual or alleged:

(i)     price fixing, restraint of trade, monopolization or attempted monopolization, unfair trade practice, price discrimination or predatory pricing; or

(ii)    violation of the Interstate Commerce Act, the Sherman Antitrust Act, the Clayton Act, the Federal Trade Commission Act, the Robinson-Patman Act, or the Celler-Kefauver Act; any amendment to or rule or regulation promulgated under any of the foregoing; any other federal, state or local statute involving competition or the prevention of anticompetitive practices, or any rule or regulation promulgated under any such statute; any similar provision of any federal, state or local statute, rule or regulation anywhere in the world; or any similar provision of the common law anywhere in the world."

(8)    Paragraph (b) of Subsection 15. Reporting and Notice of this coverage section is amended to read in its entirety as follows:

"(b)    If during the **Policy Period** an **Insured**:



CHUBB

(i)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

(ii)   gives written notice to the Company of a **Securityholder Derivative Demand,**

then any **Claim** subsequently arising from the circumstances referred to in (i) above or from the **Securityholder Derivative Demand** referred to in (ii) above shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i) or (ii) above was first given to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made."

(9)    Paragraph (b) of Subsection 17. Allocation of this coverage section is amended to read in its entirety as follows:

"(b)   If in any **Claim** other than a **Securities Claim** the Insureds incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement.  The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss."

(10)   The second paragraph of Subsection 20 of this coverage section is amended to read in its entirety as follows:

"If the total assets of any such acquired organization or new **Subsidiary** exceed twenty-five percent (25%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require."

(11)   Subsection 23. Related Entity Public Offering of this coverage section is amended to read in its entirety as follows:

"*Certain Securities Offerings*

23.    If any **Organization** files, or causes to be filed, any registration statement in contemplation of the sale or offering of securities of any kind or nature whatsoever in a transaction that is not exempt from registration under the Securities Act of 1933, as amended, the Company will provide a quotation for coverage with respect to **Claims**

against **Insured Persons** arising from such sale or offering; provided, however, that the Company will have no obligation to provide any such quotation unless, as a condition precedent thereto, the **Insureds** shall have given to the Company, not less than thirty (30) days before the effective date of such registration statement, written notice concerning the contemplated sale or offering (including the full details thereof) and all other information requested by the Company. Coverage pursuant to any such quotation shall be subject to such terms, conditions and limitations, and payment of such additional premium, as the Company in its sole discretion may require. There shall be no such coverage unless and until the Company issues a separate written endorsement to this coverage section expressly stating that such coverage is being provided. The additional premium specified by the Company shall, if the Company's quotation is accepted, be payable to the Company in full not later than the date on which the registration statement becomes effective."

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

**Executive Protection Portfolio** SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

### DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1.    **Parent Organization:**
CROWLEY MARITIME CORPORATION
155 GRAND AVENUE, SUITE 700
OAKLAND, CA 94612

Item 2.    Limits of Liability:

(A) Each **Claim**: $10,000,000.00

(B) Each **Policy Period**: $10,000,000.00

(C) Sublimit for all **Securityholder Derivative Demands** under Insuring Clause 4: $250,000.00

Item 3.    Coinsurance Percentage:

(A) **Securities Claims**: 0.00%

(B) **Claims** other than **Securities Claims**: 0.00%

Item 4.    Retention:

(A) Insuring Clauses 1 and 4: None

(B) Insuring Clause 2 (**Claims** other than **Securities Claims**): $500,000.00

(C) Insuring Clauses 2 and 3 (**Securities Claims** only): $500,000.00

Item 5.    **Organization:**

CROWLEY MARITIME CORPORATION AND ITS SUBSIDIARIES;
CROWLEY FOUNDATION;
ICE CONSTRUCTION

14-02-7303DFED (Ed. 11/2002)          Page 1 of 19

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

Item 6.   Extended Reporting Period:

   (A) Additional Period:          one year
   (B)  Additional Premium:      150 % of Annualized Premium for the Expiring **Policy Period**

Item 7.  Pending or Prior Date:        August 22, 1985



**CHUBB**

***Executi** Protection Portfolio* SM
*Executive Liability and Entity Securities
Liability Coverage Section*

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

## Insuring Clauses

*Executive Liability Coverage Insuring Clause 1*

1.  The Company shall pay, on behalf of each of the **Insured Persons**, **Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Executive Indemnification Coverage Insuring Clause 2*

2.  The Company shall pay, on behalf of the **Organization**, **Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.  The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.  The Company shall pay, on behalf of the **Organization**, **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

## Definitions

*Execu.. e Protection Portfolio* SM

*Executive Liability and Entity Securities
Liability Coverage Section*

5.    When used in this coverage section:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy statement last filed with the Securities and Exchange Commission before this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

**Claim** means:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(3)    when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.



**CHUBB**

Execut :: Protection Portfolio <sup>SM</sup>
Executive Liability and Entity Securities
Liability Coverage Section

Except as may otherwise be provided in Subsection 12, Subsection 13(g), or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such demand is first received by an **Insured**).

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

    (a)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

    (b)    such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** means any natural person who was, now is or shall become:

    (a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America;

    (b)    a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America; or

    (c)    solely with respect to **Securities Claims**, any other employee of an **Organization**, provided that such other employees shall not, solely by reason of their status as employees, be **Insured Persons** for purposes of Exclusion 6(c).

**Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Organization** whether it is in the

best interest of the **Organization** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

**Loss** means:

(a) the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b) for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a) any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b) any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d) taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

(e) any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f) any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g) any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a



**Execu**(  )**e Protection Portfolio** SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securities Claim** means that portion of a **Claim** which:

    (a)    is brought by a securityholder of an **Organization**

        (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)    derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

    (b)    alleges that an **Organization** or any of its **Insured Persons**

        (i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

        (ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**,

provided that **Securities Claim** does not include any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; and provided, further, that **Securities Claim** does not include any **Securityholder Derivative Demand**.

**Securityholder Derivative Demand** means:

    (a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

    (b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means:

(a)   any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or

(b)   any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

---

## Exclusions

*Applicable To All Insuring Clauses*

6.   The Company shall not be liable for **Loss** on account of any **Claim**:

(a)   based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)   based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c)   brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)   a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**;

(ii)   an employment **Claim** brought or maintained by or on behalf of an **Insured Person**;

(iii)   a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)   a **Claim** brought by an **Insured Person** who has not served in an **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Insured**



**CHUBB**

*Execut  e Protection Portfolio* <sup>SM</sup>

**Executive Liability and Entity Securities**
**Liability Coverage Section**

**Person** who is serving or has served in an **Insured Capacity** within such four (4) year period;

(d)    based upon, arising from, or in consequence of:

    (i)    any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

    (ii)   any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d);

(e)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**;

(f)    for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(g)    for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**; or

(h)    made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**.

---

*Applicable To Insuring Clauses 1 and 2 Only*

7.    The **Company** shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim** made against any **Insured Person**:

(a)    for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world; or

(b)    based upon, arising from, or in consequence of:

    (i)    the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**; or

*Execut͟ ͟e Protection Portfolio* SM
*Executive Liability and Entity Securities
Liability Coverage Section*

(ii)    such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

*Applicable To Insuring Clause 3 Only*

8.    The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:

(a)    based upon, arising from, or in consequence of:

(i)    the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an **Organization** or by any past, present or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization**; or

(ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding; or

(b)    for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.

---

**Severability of Exclusions**

9.    (a)    No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying the exclusions in Subsection 7 of this coverage section.

(b)    Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization** shall be imputed to such **Organization** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

---

**Spouses, Estates and Legal Representatives**

10.    Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:



(a)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b)    the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 10 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

## Coordination With Employment Practices Liability Coverage Section

11.    Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under such Employment Practices Liability Coverage shall be covered as provided in, and shall be subject to the Limit of Liability, Retention and Coinsurance Percentage applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

## Extended Reporting Period

12.    If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

---

*Limit of Liability, Retention and Coinsurance*

13. (a)  The Company's maximum liability for all **Loss** on account of each **Claim**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

(b)  The Company's maximum aggregate liability under Insuring Clause 4 for all **Investigative Costs** on account of all **Securityholder Derivative Demands** shall be the Sublimit set forth in Item 2(C) of the Declarations for this coverage section. Such Sublimit is part of, and not in addition to, the Limits of Liability set forth in Items 2(A) and 2(B) of the Declarations.

(c)  **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(d)  The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 17 of this coverage section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section. Such Retention shall be depleted only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk. Except as otherwise provided in Subsection 14, no Retention shall apply to any **Loss** under Insuring Clause 1 or 4.

(e)  If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(f)  To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(a) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(A) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**. To the extent that **Loss** resulting from a **Claim** other than a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(b) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(B) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**.

(g)  All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 15(b) below, regardless of whether such date is before or during the **Policy Period**.



**CHUBB**

Execut... Protection Portfolio <sup>SM</sup>

*Executive Liability and Entity Securities
Liability Coverage Section*

(h)    The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

## *Presumptive Indemnification*

14.    If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

(i)    the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

(ii)    the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

## *Reporting and Notice*

15.    (a)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(i)    sixty (60) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

(ii)    if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)    the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim**, stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b)    If during the **Policy Period** an **Insured**:

(i)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

(ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

(iii)    gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 15(a) or (b) a description of the **Claim**, circumstances, or **Securityholder Derivative Demand**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or **Securityholder Derivative Demand**.

---

### Defense and Settlement

16.    (a)    It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds**.

(b)    The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent. Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c)    With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds**, and shall be consulted in advance by the **Insureds**, regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

(d)    The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e)    Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

---

### Allocation



CHUBB

*Execut* **: Protection Portfolio** SM
*Executive Liability and Entity Securities
Liability Coverage Section*

17.  (a)   If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss as follows:

(i)   The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 2 shall be allocated in its entirety to covered **Loss**, subject, however, to the applicable Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively; and

(ii)   The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered matters and from settlement of the non-covered matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively.

The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss. The allocation described in (i) above shall be final and binding on the Company and the **Insureds** under Insuring Clause 2, but shall not apply to any allocation under Insuring Clauses 1 and 3.

(b)   If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insured Persons** and others (including the **Organization**), the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

(c)   If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**. If the **Insureds** and the Company cannot agree on an allocation:

(i)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(ii)   the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

(iii)   the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

    (d)    Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

---

## Other Insurance

18.    If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

---

## Payment of Loss

19.    In the event payment of **Loss** is due under this coverage section but the amount of such **Loss** in the aggregate exceeds the remaining available Limit of Liability for this coverage section, the Company shall:

    (a)    first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

    (b)    to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

---

## Changes in Exposure

Acquisition /Creation of Another Organization

20.    If before or during the **Policy Period** any **Organization**:

    (a)    acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

    (b)    acquires another organization by merger into or consolidation with an **Organization** such that the **Organization** is the surviving entity,



**Executive Protection Portfolio** SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

such other organization and its **Insured Persons** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

21.    If:

(a)    the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

(b)    another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 21, the entire premium for this coverage section shall be deemed fully earned. The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

*Execut  e Protection Portfolio* SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

---

*Cessation of Subsidiary*

22.  In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**.

---

*Related Entity Public Offering*

23.  If any **Organization** files or causes to be filed, with the United States Securities and Exchange Commission or an equivalent agency or government department in any country other than the United States of America, any registration statement in contemplation of a public offering of equity securities by any entity other than the **Parent Organization** (irrespective of whether such public offering is an initial public offering or a secondary or other offering subsequent to an initial public offering), then the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of such registration statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such registration statement, unless (i) the Company receives written notice at least thirty (30) days prior to the effective date of such registration statement providing full details of the contemplated offering, and (ii) the Company, in its sole discretion, agrees by written endorsement to this coverage section to provide coverage for such **Claims** upon such terms and conditions, subject to such limitations and other provisions, and for such additional premium as the Company may require.  If the Company in its sole discretion agrees to provide coverage for such **Claims**, the additional premium specified by the Company shall be payable to the Company in full not later than the  date on which such registration statement becomes effective.

---

*Representations and Severability*

24.  In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**.  All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the  **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge.  For purposes of the preceding sentence:

(a)  the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;



*Execu  e Protection Portfolio* <sup>SM</sup>

**Executive Liability and Entity Securities**
**Liability Coverage Section**

(b)     the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)     except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.


**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

AMEND EXCLUSION 6(C) ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (c) of Subsection 6. Exclusions Applicable to All Insuring Clauses of this coverage section is amended by adding the following new subparagraph (v):

(v)      a **Claim** brought against **Insured Persons** of the **Organization** by a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator or similar official who has been appointed to take control of, supervise, manage or liquidate the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-0961 (12/2001)                     Page 1


**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

AMEND REPORTING AND NOTICE (a)(i) ENDORSEMENT

In consideration of the premium charged, it is agreed that clause (a)(i) of Subsection 15 Reporting and Notice of this coverage section is amended to read in its entirety as follows:

(i)  Nine (90) days after the date on which any **Parent Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**CHUBB**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

## AMEND POLLUTION EXCLUSION ENDORSEMENT

The Exclusions Applicable to all Insuring Clauses are amended by deleting paragraph 6(d) in its entirety and replacing it with the following:

(d)     based upon, arising from, or in consequence of:

    (i)    the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or

    (ii)   any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; except that this **Exclusion** will not apply to those portions of any **Claim** that:

    1.   allege that **Wrongful Acts** resulted in any actual or alleged violations of the Securities Act of 1933, the Securities exchange Act of 1934, any state "blue sky" law, or any other federal, state or local securities law or any rule or regulation promulgated under any of the foregoing, or

    2.   are a derivative action by or on behalf of or in the name or right of, the **Insured Organization** brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, the **Insured Organization** or any **Insured Person** or Exclusion (d)(ii) as set forth in paragraph above will not apply to those portions of any **Claim** involving **Wrongful Acts** in connection with **Insured** testing for, monitoring, cleaning-up, removal, containment, treatment, detoxification, or neutralization of **Pollutants**, if such actions are undertaken by an **Insured** for a fee in the ordinary course of their business at the written direction or request of a third party which is not an **Insured** and is not a governmental agency or other regulatory entity, and relate to an actual or alleged breach of a written contract or agreement; so long as the **Wrongful Act(s)** that form the basis of any such **Claim** made against any **Insured Person** does not in any way relate to any liability arising out of the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere.

14-02-0961 (12/2001)         Page 1

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative



Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

OUTSIDE NOT-FOR-PROFIT DIRECTORSHIP LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Solely for purposes of the coverage provided under Insuring Clause 1 and Insuring Clause 2 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions is amended to read in its entirety as follows:

"**Insured Capacity** means:

(a)     a position as a duly elected or appointed director, officer or **Manager**, or as the in-house general counsel, of any **Organization** chartered in the United States of America;

(b)     a position equivalent to one of the positions described in (a) above in an **Organization** that is chartered in a jurisdiction other than the United States of America;

(c)     an **Outside Non-Profit Directorship** held by a duly elected or appointed director, officer or **Manager** of an **Organization** or other employee of an **Organization**; or

(d)     solely with respect to **Securities Claims**, a position as an employee of an **Organization**.

Except as specifically provided in part (c) of this definition, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization."

For purposes of any coverage that may be provided under Insuring Clause 3 or Insuring Clause 4 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions shall remain unchanged.

(2)     "**Non-Profit Outside Entity**" means a non-profit corporation, community chest, fund or foundation that (i) is not an **Organization** and (ii) is exempt from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

14-02-7887 (3/2003)                Page I

(3)    "**Outside Non-Profit Directorship**" means a position held by an **Insured Person**, with the knowledge and consent of the **Organization** or at the request of the **Organization**, as a director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity**.

(4)    The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Non-Profit Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) a **Non-Profit Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity** in any capacity; this exclusion shall not, however, apply to:

(a)    a **Claim** brought or maintained derivatively on behalf of a **Non-Profit Outside Entity** by one or more securityholders of the **Non-Profit Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Non-Profit Outside Entity**, provided that such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Non-Profit Outside Entity**; or

(b)    an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity** who is not an **Insured Person**.

(5)    Exclusion 6(d) of this coverage section is amended to read in its entirety as follows:

"(d)    based upon, arising from, or in consequence of:

(i)    any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, any securityholder or creditor of the **Organization**, any **Non-Profit Outside Entity**, or any securityholder, creditor or member of a **Non-Profit Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d)."

(6)    Exclusion 6(g) of this coverage section is amended to read in its entirety as follows:

"(g)    for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**. This Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Non-Profit Directorship** but shall apply to any **Claim**, or portion thereof, that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in the **Outside Non-Profit Directorship** or after ceasing to serve in the **Outside Non-Profit Directorship**."

(7)    Exclusion 7(a) of this coverage section is amended to read in its entirety as follows:

"(a)    for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** or securities of a **Non-Profit Outside Entity**, within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments



**CHUBB**

thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world."

(8)     Subsection 18. Other Insurance of this coverage section is amended to read in its entirety as follows:

"18.     **Other Insurance and Indemnity**

(a)     If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.  Without in any way limiting the foregoing, it is expressly understood and acknowledged that with respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, coverage for any such **Loss** under this coverage section shall be specifically excess of the applicable retention (or deductible) and limit of liability of any other insurance (whether maintained by the **Non-Profit Outside Entity** or otherwise) that is available to such **Insured Person** by reason of his or her service in such **Outside Non-Profit Directorship**.  Any payment by **Insureds** of a retention or deductible under any other insurance described in this paragraph shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

(b)     With respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, coverage for any such **Loss** under this coverage section shall also be specifically excess of any indemnification (other than indemnification by the **Organization**) that is available to such **Insured Person** by reason of his or her service in such **Outside Non-Profit Directorship**, including indemnification available from or provided by the **Non-Profit Outside Entity**.  The **Insureds** agree that they will use their best efforts promptly to enforce any right of an **Insured Person** to obtain indemnification from a **Non-Profit Outside Entity** or any other organization."

(9)     Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(10)    If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____

**Authorized Representative**


**CHUBB**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

PRIVATE COMPANY MODIFICATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 4.    Retention:

(A)    Insuring Clauses 1 and 4:                                    None

(B)    Insuring Clauses 2 and 3 (**Claims**
other than **Securities Claims**):                    $500,000.00

(C)    Insuring Clauses 2 and 3 (**Securities
Claims** only):                                        $None""

(2)    Item 7 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 7.    Pending or Prior Date:

(A)    Insuring Clauses 1, 2 and 4:                    August 22, 1985

(B)    Insuring Clause 3:                              November 1, 1998""

(3)    Insuring Clause 3. Entity Securities Coverage of this coverage section is amended to read in its
entirety as follows:

"*Entity Liability Coverage Insuring Clause 3*

3.    The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization**
becomes legally obligated to pay on account of any **Claim** first made against the
**Organization** during the **Policy Period** or, if exercised, during the Extended Reporting
Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted
by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but

only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section."

(4)     Subsection 5. Definitions of this coverage section is amended in the following respects:

(a)     The definition of "**Application**" is amended to read in its entirety as follows

"**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement. **Application** shall also include, for each **Organization**, the financial statements last issued to shareholders before this policy's inception date, whether or not such financial statements were attached to or submitted with a signed application for this coverage section. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section."

(b)     The definition of "**Claim**" is amended to read in its entirety as follows:

"**Claim** means:

(1)     when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

(d)     a criminal proceeding commenced by the return of an indictment,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom, or

(e)     a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Insured Person**; or

(2)     when used in reference to the coverage provided by Insuring Clause 3:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**; or

(d)     a criminal proceeding commenced by the return of an indictment,



**CHUBB**

against an **Organization** for a **Wrongful Act**, including any appeal therefrom, or

(e) a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Organization**; or

(3) when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g), or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written request to toll or waive a statute of limitations or the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such request or demand is first received by an **Insured**)."

(c) The following definition of "**Employee**" is added:

"**Employee** means any natural person whose labor or service is engaged by and directed by an **Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor."

(d) The following definition of "**Executive**" is added:

"**Executive** means any natural person who was, now is or shall become:

(a) a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America; or

(b) a holder of a position equivalent to any position described in (a) above in an **Organization** chartered in any jurisdiction other than the United States of America."

(e) The definition of "**Insured Person**" is amended to read in its entirety as follows:

"**Insured Person** means any **Executive** or **Employee** of an **Organization**."

(f) The definition of "**Securities Claim**" is amended to read in its entirety as follows:

"**Securities Claim** means that portion of a Claim which:

(a) is brought by a securityholder of an **Organization**

(i) in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

(ii) derivatively, on behalf of such **Organization**, against an **Executive** of such **Organization**; or

(b) alleges that an **Organization** or any of its **Insured Persons**

(i) violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

**Securities Claim** does not include:

(a)    any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b)    any **Claim** by or on behalf of a former, current, future or prospective **Employee** of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such **Employee** in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; or

(c)    any **Securityholder Derivative Demand**."

(g)    The definition of "**Securityholder Derivative Demand**" is amended to read in its entirety as follows:

"**Securityholder Derivative Demand** means:

(a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Executive** for a **Wrongful Act**; or

(b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Executive** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**."

(5)    Subsection 6 of this coverage section is amended in the following respects:

(a)    Paragraph (b) of Subsection 6 is amended by replacing the phrase "on or prior to the Pending or Prior Date" with the phrase "on or prior to the applicable Pending or Prior Date".

(b)    Paragraph (c) of Subsection 6 is amended to read in its entirety as follows:

"(c)    brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)    a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, solicitation by, any **Executive**;

(ii)    a **Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;



    (iii)    a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

    (iv)    a **Claim** brought by an **Insured Person** who has not held the position of director, officer, **Manager** or in-house general counsel or any equivalent position with any **Organization** for at least four (4) years prior to the date such **Claim** is first made, and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, an **Organization** or any other **Insured Person** who holds or has held any such position within such four (4) year period."

(c)    Paragraph (e) of Subsection 6 is amended to read in its entirety as follows:

    "(e)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which an **Executive** seeks compensation in a wrongful termination **Claim**."

(d)    The following is added to Subsection 6 as Exclusion 6(i):

    "(i)    based upon, arising from, or in consequence of any employment-related **Wrongful Act**; provided that this Exclusion 6(i) shall not apply to a **Claim** by an **Executive** for the wrongful termination of such **Executive**."

(e)    The following is added to Subsection 6 as Exclusion 6(j):

    "(j)    based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder."

(6)    Subsection 7 of this coverage section is amended in the following respects:

(a)    Paragraph (b) of Subsection 7 of this coverage section is amended to read in its entirety as follows:

    "(b)    based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final and non-appealable judgment or adjudication adverse to such **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or"

(b)    The following is added to Subsection 7 as Exclusion 7(c):

    "(c)    based upon, arising from, or in consequence of such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

(7)    Subsection 8 of this coverage section is amended to read in its entirety as follows:

"The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** made against any **Organization**:

    (a)    based upon, arising from, or in consequence of:

(i)    any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Organization**, if a final and non-appealable judgment or adjudication adverse to such **Organization** establishes such a deliberately fraudulent act or omission or willful violation; or

(ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled;

(b)    for any actual or alleged liability of an **Organization** under any contract or agreement; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement;

(c)    based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment;

(d)    based upon, arising from, or in consequence of actual or alleged libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(e)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this coverage section; provided that this Exclusion 8(e) shall not apply to any **Securities Claim** or **Securityholder Derivative Demand**;

(f)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark or service mark, trade name, or trade dress, or misappropriation of ideas or trade secrets; or

(g)    based upon, arising from, or in consequence of any actual or alleged:

(i)    price fixing, restraint of trade, monopolization or attempted monopolization, unfair trade practice, price discrimination or predatory pricing; or

(ii)    violation of the Interstate Commerce Act, the Sherman Antitrust Act, the Clayton Act, the Federal Trade Commission Act, the Robinson-Patman Act, or the Celler-Kefauver Act; any amendment to or rule or regulation promulgated under any of the foregoing; any other federal, state or local statute involving competition or the prevention of anticompetitive practices, or any rule or regulation promulgated under any such statute; any similar provision of any federal, state or local statute, rule or regulation anywhere in the world; or any similar provision of the common law anywhere in the world."

(8)    Paragraph (b) of Subsection 15. Reporting and Notice of this coverage section is amended to read in its entirety as follows:

"(b)    If during the **Policy Period** an **Insured**:



(i)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

(ii)    gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above or from the **Securityholder Derivative Demand** referred to in (ii) above shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i) or (ii) above was first given to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made."

(9)    Paragraph (b) of Subsection 17. Allocation of this coverage section is amended to read in its entirety as follows:

"(b)    If in any **Claim** other than a **Securities Claim** the Insureds incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss."

(10)    The second paragraph of Subsection 20 of this coverage section is amended to read in its entirety as follows:

"If the total assets of any such acquired organization or new **Subsidiary** exceed twenty-five percent (25%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require."

(11)    Subsection 23. Related Entity Public Offering of this coverage section is amended to read in its entirety as follows:

"**Certain Securities Offerings**

23.    If any **Organization** files, or causes to be filed, any registration statement in contemplation of the sale or offering of securities of any kind or nature whatsoever in a transaction that is not exempt from registration under the Securities Act of 1933, as amended, the Company will provide a quotation for coverage with respect to **Claims**

against **Insured Persons** arising from such sale or offering; provided, however, that the Company will have no obligation to provide any such quotation unless, as a condition precedent thereto, the **Insureds** shall have given to the Company, not less than thirty (30) days before the effective date of such registration statement, written notice concerning the contemplated sale or offering (including the full details thereof) and all other information requested by the Company. Coverage pursuant to any such quotation shall be subject to such terms, conditions and limitations, and payment of such additional premium, as the Company in its sole discretion may require. There shall be no such coverage unless and until the Company issues a separate written endorsement to this coverage section expressly stating that such coverage is being provided. The additional premium specified by the Company shall, if the Company's quotation is accepted, be payable to the Company in full not later than the date on which the registration statement becomes effective."

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

---

Authorized Representative


**CHUBB**

**ENDORSEMEN**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

## ADD ORGANIZATION WITH PRIOR ACTS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 5 of the Declarations for this coverage section is amended to include the following organization(s):

Clean Pacific Alliance L.L.C.
Marine Response Alliance L.L.C.;

provided that no coverage will be available under this coverage section for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any **Wrongful Act** committed, attempted, or allegedly committed or attempted by any organization specified above or any **Insured Person** thereof prior to November 01, 1996.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative


CHUBB

ENDORSEME

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Sectio
(Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

## AMEND SUBSECTION 18 OTHER INSURANCE ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 18 Other Insurance of this coverage section is amended to read in its entirety as follows:

18.    If any **Loss** under this coverage section is insured under any other valid and collectible insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**CHUBB**

ENDORSEME

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Sectio
(Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

## AMEND REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 24. Representations and Severability of this coverage section is deleted and replaced with the following:

For purposes of determining whether coverage is available under Insuring Clause 1 or 2 of this coverage section, the **Application** will be construed as a separate application for coverage by each of the **Insured Persons**, and no knowledge possessed by an **Insured Person** will be imputed to any other **Insured Person**.

For purposes of determining whether coverage is available under Insuring Clause 3 or 4 of this coverage section:

(a)  the statements and representations in the **Application** will be deemed to have been made by all **Organizations**;

(b)  the knowledge of the person(s) who signed the **Application** will be imputed to all **Organizations**; and

(c)  the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** will be imputed to such **Organization** and its **Subsidiaries**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-8871 (10/2003)

Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative


**CHUBB**

---

**ENDORSEMEN**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 9

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

AMEND EXCLUSION 6(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (b) of Subsection 6 Exclusions of this coverage section is amended to read in its entirety as follows:

(b)      based upon, arising from, or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-9062 (11/2003)                    Page 1



**CHUBB**

**ENDORSEME**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

**DOUBLE EXCESS FOR PROFIT OUTSIDE DIRECTORSHIP LIABILITY COVERAGE ENDORSEMENT**

In consideration of the premium charged, it is agreed that:

(1)     Solely for purposes of the coverage provided under Insuring Clause **1** and Insuring Clause **2** of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions is amended to read in its entirety as follows:

"**Insured Capacity** means:

(a)     a position as a duly elected or appointed director, officer or **Manager**, or as the in-house general counsel, of any **Organization** chartered in the United States of America;

(b)     a position equivalent to one of the positions described in (a) above in an **Organization** that is chartered in a jurisdiction other than the United States of America;

(c)     an **Outside Directorship** held by a duly elected or appointed director, officer or **Manager** of an **Organization** or other employee of an **Organization**; or

(d)     solely with respect to **Securities Claims**, a position as an employee of an **Organization**.

Except as specifically provided in part (c) of this definition, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization."

For purposes of any coverage that may be provided under Insuring Clause 3 or Insuring Clause 4 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions shall remain unchanged.

(2)     With respect to any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**:

14-02-9105 (1/2004)                      Page 1

(a)     The final sentence of paragraph (d) of Subsection 13 Limit of Liability, Retention and Coinsurance of this coverage section is deleted; and

(b)     Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

Item 4.  Retention:

| | | |
|---|---|---|
| (A) | Insuring Clause 1: | None |
| (B) | Insuring Clause 2 (**Claims** other than **Securities Claims**): | $500,000.00 |
| (C) | Insuring Clause 2 (**Securities Claims** only): | $500,000.00 |

(3)     "**For Profit Outside Entity**" means any for-profit entity or organization that (i) is not an **Organization** and (ii) is not exempt from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

(4)     "**Outside Directorship**" means a position held by an **Insured Person**, with the knowledge and consent of the **Organization** or at the request of the **Organization**, as a director, officer, trustee, governor or equivalent executive of an **Outside Entity**.

(5)     "**Outside Entity**" means any **For Profit Outside Entity**.

(6)     The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) an **Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of an **Outside Entity** in any capacity; this exclusion shall not, however, apply to:

(a)     a **Claim** brought or maintained derivatively on behalf of an **Outside Entity** by one or more securityholders of the **Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Outside Entity**, provided that such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Outside Entity**; or

(b)     an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of an **Outside Entity** who is not an **Insured Person**.

(7)     Exclusion 6(d) of this coverage section is amended to read in its entirety as follows:

"(d)     based upon, arising from, or in consequence of:

(i)     any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii)     any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, any securityholder or creditor of the **Organization**, any Outside Entity, or any securityholder,



creditor or member of a **Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d)."

(8)   Exclusion 6(g) of this coverage section is amended to read in its entirety as follows:

"(g)   for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**. This Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Directorship** but shall apply to any **Claim**, or portion thereof, that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in an Outside **Directorship** or after ceasing to serve in an **Outside Directorship**."

(9)   Exclusion 7(a) of this coverage section is amended to read in its entirety as follows:

"(a)   for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** or securities of an **Outside Entity**, within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world."

(10)   Subsection 18. Other Insurance of this coverage section is amended to read in its entirety as follows:

"18.   *Other Insurance and Indemnity*

(a)   If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Without in any way limiting the foregoing, it is expressly understood and acknowledged that with respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, coverage for any such **Loss** under this coverage section shall be specifically excess of the applicable retention (or deductible) and limit of liability of any other insurance (whether maintained by the **Outside Entity** or otherwise) that is available to such **Insured Person** by reason of his or her service in such **Outside Directorship**. Any payment by **Insureds** of a retention or deductible under any other insurance described in this paragraph shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

(b)   With respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, coverage for any such **Loss** under this coverage section shall also be specifically excess of any indemnification (other than indemnification by the **Organization**) that is available to such **Insured Person** by reason of his or her service in such **Outside Directorship**, including indemnification available from or provided by the **Outside Entity**. The **Insureds** agree that they will use their best efforts promptly to enforce any right of an **Insured Person** to obtain indemnification from an **Outside Entity** or any other organization."

(11)     Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(12)     If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**CHUBB**

ENDORSEMEI

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section
(Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 11

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that sections (1) and (2) of the definition of **Claim** as set forth in Subsection 5 of this coverage section are amended to read in their entirety as follows:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

   (a)    a written demand for monetary damages or non-monetary relief;

   (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

   (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document;

   (d)    a criminal proceeding commenced by the return of an indictment; or

   (e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

   against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)    when used in reference to the coverage provided by Insuring Clause 3:

   (a)    a written demand for monetary damages or non-monetary relief;

   (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

   (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**;

   (d)    a criminal proceeding commenced by the return of an indictment; or

14-02-9138 (1/2004)          Page 1

(e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____

Authorized Representative



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

**CHUBB**

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

Policy Number: 8120-0792

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Parent Organization:**
**Principal Address:**

CROWLEY MARITIME CORPORATION
155 GRAND AVENUE, SUITE 700
OAKLAND, CA 94612

Item 2.   **Policy Period:**

From   12:01 A.M. on     November 1, 2004
To      12:01 A.M. on     November 1, 2005
Local time at the address shown in Item 1.

Item 3.   Coverage Summary
Description:
  GENERAL TERMS AND CONDITIONS
  EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY
  EMPLOYMENT PRACTICES LIABILITY
  FIDUCIARY LIABILITY
  CRIME

Item 4.   Termination of
Prior Bonds or Policies: 8120-0792  (November 1, 2003 - November 1, 2004)

14-02-7302DFED (Ed. 11/2002)          Page 1 of 6

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

*Henry A Awbil*
_____
Secretary

*Thomas F Motamed*
_____
President

11/01/04
_____
Date

*Robert Hamburger*
_____
Authorized Representative

14-02-7302DFED (Ed. 11/2002)        Page 2 of 6



**Executive Protection Portfolio** <sup>SM</sup>
*General Terms and Conditions Section*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

### Territory

1. Coverage shall extend anywhere in the world.

### Terms and Conditions

2. Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

### Definitions

3. When used in this policy:

**Claim** shall have the meaning set forth in the applicable coverage section.

**Insured** shall have the meaning set forth in the applicable coverage section.

**Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

**Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

### Limits of Liability and Retentions

4. Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

### Notice

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

5.  Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

> Attn: Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

All other notices to the Company shall be given in writing addressed to:

> Attn: Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

Any such notice shall be effective on the date of receipt by the Company at such address.

**Valuation and Foreign Currency**

6.  All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

**Subrogation**

7.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

**Action Against the Company**

14-02-7302 (Ed. 11/2002)


**CHUBB**

8.  No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## Parent Organization Rights and Obligations

9.  By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

## Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a)  sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

    (b)  twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

    (c)  upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

    (d)  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

    (e)  at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

14-02-7302 (Ed. 11/2002)

**EXHIBIT** $B$

THE HARTFORD

# EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

Policy Number __00 DA 0100967-04__

TWIN CITY FIRE INSURANCE COMPANY
Indianapolis, Indiana

Agency Code, Name & Address
80620
AON RISK SERVICES OF TEXAS INC
1330 POST OAK BOULEVARD
SUITE 900
HOUSTON, TX 77056

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE (ITEM D.) FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. THIS POLICY DOES NOT PROVIDE FOR THE UNDERWRITERS TO DEFEND THE INSURED, AND ANY DEFENSE COSTS AND OTHER CLAIM EXPENSE COVERED UNDER THE POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. **PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

## DECLARATIONS

**ITEM A.** Name of Insured: (hereinafter called the "Insured")

Address of Insured:
CROWLEY MARITIME CORPORATION
155 GRAND AVENUE
SUITE 700
OAKLAND, CA 94612

**ITEM B.** Policy Period: From 12:01 a.m. on  11/01/04  To 12:01 a.m. on  11/01/05
(Standard Time at the address stated in Item A)

**ITEM C. LIMIT OF LIABILITY:**    $10,000,000    Aggregate each Policy Period, including claim expense.

**ITEM D. SCHEDULE OF UNDERLYING INSURANCE:**

(1)    Primary Policy:    DIRECTORS AND OFFICERS LIABILITY

Company:    FEDERAL INSURANCE COMPANY

Policy Number:    8120-0792

Limit of Liability:    $10,000,000

(2)   Underlying Excess Policy(ies):    N/A

**ITEM E. ENDORSEMENTS EFFECTIVE AT INCEPTION:**    AS SCHEDULED

**ITEM F. TERMINATION OF PRIOR POLICY(IES):**    DA 0100967-03

**ITEM G. DISCOVERY CLAUSE:**

(1) Additional Premium:    150% OF THE ANNUAL PREMIUM

(2) Additional Period:    TWELVE (12) MONTHS

**ITEM H. POLICY PERIOD PREMIUM:**    $110,500.00

Authorized Representative

Date  1/4/05

DO 00 R034 02 1103

**EXCESS FINANCIAL PRODUCTS INSURANCE POLICY**
**SCHEDULED ENDORSEMENTS**

It is agreed that Item E. Endorsements Effective At Inception Is amended to read as follows:
The following endorsements are attached to and made part of this policy:

SCHEDULE

| | | | |
|---|---|---|---|
| | RN00N02600 | 5/93 | IN WITNESS PAGE |
| 1 | DO00H11001 | 12/03 | NUCLEAR LIABILITY EXCLUSION |
| 2 | DO00R01301 | 5/97 | EXCESS PENDING AND PRIOR LITIGATION EXCLUSION |
| 3 | DO00R01602 | 2/04 | EXCESS ABSOLUTE PRIOR NOTICE EXCLUSION |
| 4 | GU207 | 6/78 | EXCESS RECOGNIZE DEPLETION ENDORSEMENT |
| 5 | GU207 | 6/78 | NON FOLLOW FORM ENDORSEMENT |
| 6 | GU207 | 6/78 | RELIANCE ON PROPOSAL |
| 7 | DO04R29301 | 5/97 | CANCELLATION ENDORSEMENT - CALIFORNIA |
| 8 | DO00H09700 | 11/02 | AMENDMENT OF "POLICY YEAR" TO "POLICY PERIOD" |
| 9 | HG00H00900 | 3/02 | MAILING ADDRESS FOR NOTICE ENDORSEMENT |
| | HG00H00101 | 5/03 | IMPORTANT NOTICE TO POLICYHOLDERS - TERRORISM RISK INSURANCE ACT OF 2002 |
| | EL04R11100 | 4/93 | IMPORTANT INFORMATION TO POLICYHOLDERS |

DO 00 R212 00 0595

00 DA 0100967-04    11/01/04

# The Hartford

## EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

### I.   INSURING AGREEMENT

A.   The Insurer designated in the Declarations (a Stock Insurance Company herein called the "Underwriters"), in consideration of the payment of the premium and subject to all of the terms, conditions and exclusions of this policy, agrees with the Insured(s) as follows:

The Underwriters shall provide the Insured(s) with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collectible or not.

### II.   LIMIT OF LIABILITY

A.   It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") and the Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of Underwriters in each Policy Year.

B.   In the event of the reduction or exhaustion of the aggregate limits of liability under the Primary and Underlying Excess Policy(ies) by reason of losses paid thereunder for claims first made while this policy is in force, this policy, shall:

1.   In the event of such reduction, pay the excess of the reduced Primary and Underlying Excess Limits,

2.   In the event of exhaustion, continue in force as Primary Insurance, subject to the Underwriters' Limit of Liability and to other terms, conditions and exclusions of this policy,

provided always that in the latter event this policy shall only pay excess of the retention/deductible applicable to such Primary Insurance as set forth in the Primary Policy, which shall be applied to any subsequent loss in the same manner specified in such primary insurance. Written notice of exhaustion of Underlying Insurance shall be given to the Underwriters immediately upon such exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Underwriters to defend any Insured or to pay defense or any claim expenses in addition to the Limit of Liability set forth in Item C. of the Declarations.

C.   The inclusion of more than one Insured shall not operate to increase the Underwriters Limit of Liability as set forth in Item C of the Declarations.

## III.  PRIMARY AND UNDERLYING INSURANCE

A.   This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend and except as otherwise provided herein) as are contained in or as may be added to the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy(ies).

B.   In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(ies).

C.   It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall be maintained in full effect while this policy is in force except for any reduction of the aggregate limits contained therein (as provided for in Paragraph II(B) above).

D.   Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Underwriters shall be liable only to the extent that it would have been liable had the Insured complied therewith.

## IV.  COSTS, CHARGES AND EXPENSES

A.   No costs, charges or expenses for investigation or defense of claims shall be incurred, or settlements made, without the Underwriters' written consent, such consent not to be unreasonably withheld; however, in the event of such consent being given, the Underwriters will pay, subject to the provisions of Paragraph II, such costs, settlements, charges or expenses. Should any claim or suit be settled or disposed of for not more than the Underlying Insurance (Item D of the Declarations) then no costs shall be paid by the Underwriters.

B.   The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any claim against any Insured(s) for matters covered by this policy even if the Primary or Underlying Excess Policy(ies) has not been exhausted.

C.   All expenses resulting from the investigation and defense of claims to which this policy applies, including court costs, appeal bonds, pre-judgment interest, and post-judgment interest, shall be included in the Limit of Liability of this policy and not in addition thereto.

## V.   GENERAL CONDITIONS

A.   Definitions

1.   Primary Policy means the policy scheduled in Item D(1) of the Declarations.

2.   Underlying Excess Policy(ies) means the policy(ies) scheduled in Item D(2) of the Declarations.

3.   Underlying Insurance means all those policies scheduled in Item D of the Declarations.

4.   Policy Year means the period of one year following the effective date and hour of this policy or any anniversary thereof, or if the time between the effective date or any anniversary and the termination of the policy is less than one year, such lesser period.

B.   Discovery Clause

If the Underwriters shall cancel or refuse to renew this policy, the Insured shall have the right upon payment of an additional premium as set forth in Item G(1) of the Declarations, to an extension of the coverage granted by this policy in respect of any claim or claims which may be made against

the Insured during the period set forth in Item G(2) of the Declarations, after the date of such cancellation or non-renewal, but only in respect of any act committed before the date of cancellation or non-renewal of the policy. A written request for this extension, together with payment of the appropriate premium, must be made to the Underwriters within ten (10) days after the effective date of cancellation or non-renewal of this policy.

C.   Subrogation

All recoveries or payments recovered or received subsequent to a settlement under this policy shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the Insured and the Underwriters.

D.   Cancellation Clause

This policy may be cancelled by the Insured at any time by written notice or surrender of this policy. This policy may also be cancelled by, or on behalf of, the Underwriters by delivering to the Insured or by mailing to the Insured by registered, certified or other first class mail, at the Insured's address shown in this policy, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall become effective. The mailing of such notice as aforesaid shall be sufficient proof of notice, and this policy shall terminate at the date and hour specified in such notice.

If the policy shall be cancelled by the Insured, the Underwriters shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitations permitted by law.

E.   Termination of Any Underlying Insurance

This policy shall terminate immediately upon the termination of any Underlying Insurance, whether by the Insured or any Underlying Insurer. Notice of cancellation or non-renewal of all or part of the Underlying Insurance duly given by any such Insurer shall serve as notice of the cancellation or non-renewal of this policy by the Underwriters.

F.   Termination of Prior Policy(ies)

The taking effect of this policy shall terminate, if not already terminated, the policy(ies) specified in Item F of the Declarations.

G.   Notice

The Underwriters shall be given notice in writing as soon as is practicable (a) in the event of the cancellation of any Underlying Insurance and (b) of any additional or return premiums charged or paid in connection with any Underlying Insurance.

Any changes in coverage or in the Insured in the Underlying Insurance shall be promptly reported to the Underwriters and the Insured shall, upon request, furnish the Underwriters with copies of such changes.

In the event any claim is made against any Insured, written notice shall be given to the Underwriters at Hartford Plaza, Hartford, CT, 06115, ATTN: CLAIMS DIVISION, and otherwise pursuant to all

appropriate notice provisions contained in the Underlying Insurance. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time.

If legal proceedings are begun, the Insured shall forward to Underwriters each pleading or document, or a copy thereof, received by the Insured or the Insured's representatives, together with copies of reports or investigations made by the Insured with respect to such proceedings.

H.   Company Authorization Clause

Except as respects the giving of notice to exercise the Discovery Clause under Paragraph V(b), by acceptance of this policy, the Insured named in Item A of the Declarations agrees to act on behalf of all Insured(s) with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy.

I.   The Insured shall give the Underwriters such information and cooperation as they may reasonably require.

J.   Loss shall be paid in United States currency.

K.   Appeals

In the event the Insured or the Insured's Primary or Underlying Excess Insurer(s) elects not to appeal a judgment which exceeds the Underlying Insurance, the Underwriters may elect to do so at their own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto.

L.   Other Insurance

If other insurance is available to the Insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and not contribute with, such other insurance.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Brian S. Becker, Secretary

David Zwiener, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN
    00 DA 0100967-04     11/01/04

This endorsement, effective 12:01 am,    11/01/04
of policy number    00 DA 0100967-04

ENDORSEMENT NO:    1

forms part

issued to:    CROWLEY MARITIME CORPORATION

by:    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

The Underwriters shall not be liable to make any payment for loss based upon, arising from, or in any way related to any:

1.  actual, alleged or threatened discharge, dispersal, release or escape of ; or

2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize,

nuclear material, nuclear waste or radiation.

Without limiting the foregoing, this exclusion shall also apply to any Derivative Claim or Securities Claim alleging the above described loss.

"Derivative Claim" means a civil proceeding commenced in the name of an entity insured under this policy by any security holders of such entity in their capacity as such against a natural person insured under this policy for a wrongful act of such person in their capacity with the insured entity.

"Securities Claim" means any claim: (i) alleging a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or any similar law, including any rules or regulations promulgated thereunder; or (ii) arising from the purchase or sale of, or the offer to purchase or sell, any securities issued by an entity insured under this policy.

All other terms and conditions remain unchanged.

David Zwiener, President

DO 00 H110 01 1203

© 2003, The Hartford

Page 1 of 1

This endorsement, effective 12:01 am,     11/01/04     ENDORSEMENT NO:     2
of policy number          00 DA 0100967-04

                                                                              forms part
issued to:
                   CROWLEY MARITIME CORPORATION
by:
                   TWIN CITY FIRE INSURANCE CO.

## EXCESS PENDING AND PRIOR LITIGATION EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

It is agreed that in addition to any exclusions made part of the Underlying Insurance, the following exclusion shall apply to this policy:

Underwriters shall not be liable to make any payment for loss in connection with any claim made against any Insured:

1.  arising from any litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured occurring prior to, or pending as of, __8/22/85__, of which any Insured had received notice or otherwise had knowledge as of such date;

2.  arising from any subsequent litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured; or

3.  arising from any act of an Insured which gave rise to such prior or pending litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured.

All other terms and conditions remain unchanged.

DO 00 R013 01 0597

This endorsement, effective 12:01 am,    11/01/04
of policy number    00 DA 0100967-04

ENDORSEMENT NO:    3

forms part

issued to:    CROWLEY MARITIME CORPORATION

by:    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCESS ABSOLUTE PRIOR NOTICE EXCLUSION

This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

In addition to any exclusions made part of the Underlying Insurance, the following exclusion shall apply to this policy:

Underwriters shall not be liable to make any payment for loss in connection with any claim made against the Insured(s):

where all or part of such claim is, directly or indirectly, based on, attributable to, arising out of, resulting from, or in any manner related to wrongful acts or any facts, circumstances or situations of which notice of claim or occurrence which could give rise to a claim has been given prior to the effective date of this policy under any other policy or policies.

All other terms and conditions remain unchanged.

David Zwiener, President

DO 00 R016 02 0204

© 2004, The Hartford

Page 1 of 1

GU 20
(6-78

## ENDORSEMENT    4

This endorsement, effective on 11/01/04                                    at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04                        of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### EXCESS RECOGNIZE DEPLETION ENDORSEMENT

This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

Section II. LIMIT OF LIABILITY, is amended to include the following:

> If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under this policy shall not apply to any claim that is subject to such sub-limit of liability.  However, any such claim shall be recognized under this policy solely for purposes of exhausting, to any extent, the Underlying Insurance.

All other terms and conditions remain unchanged.

Rev. Ed. Date (04/02)
GU 207 (6-78)

GU 20
(6-78

## ENDORSEMENT   5

This endorsement, effective on 11/01/04

at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04

of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

## NON FOLLOW FORM ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.      For purposes of this policy, the Primary Policy shall be deemed to include only the terms and conditions (including limits of liability) of and endorsements to the following coverage sections of the Primary Policy :

| General Terms and Conditions (Ed. 11/2002) | Form 14-02-7303 |
| Executive Liability and Indemnification (Ed. 11/2002) | Form 14-02-7302 |
| Outside Directorship Liability (Ed. 11/2002) | orm 14-02-7887, 14-02-8844 |

The policy shall not follow or otherwise be subject to any of the terms and conditions of or endorsements to any other coverage section of the Primary Policy provided, however, that with respect to the payment of loss under such other coverage section of the Primary Policy, the Insurer will recognize such payment for the purpose of reducing or exhausting the limits of liability of the Primary and/or Underlying Excess Policies.

2.      Notwithstanding any provision in the Underlying Insurance or this policy to the contrary, the maximum aggregate liability of the Underwriters under this policy on account of all claims first made during the same Policy Year, whether covered under one or more of the coverage sections listed above, shall be the Limit of Liability set forth in Item C. of the Declarations of this policy.

All other terms and conditions remain unchanged.

Rev. Ed. Date (04/02)
GU 207 (6-78)

Page 1 of 1

GU 20
(6-78

## ENDORSEMENT     6

This endorsement, effective on 11/01/04

at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04

of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

### RELIANCE ON PROPOSAL

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that the Underwriters have issued this policy in reliance upon the Proposal

"Proposal" means:

(1)     the application for this policy, including any materials or information submitted therewith;

(2)     any application, including any materials or information submitted therewith, for any policy in an uninterrupted series of policies issued by the Underwriters, or any insurance company controlling, controlled by or under common control with the Underwriters, of which this Policy is a renewal or replacement;

(3)     any application for any Underlying Insurance, including any materials or information submitted therewith; and

(4)     any publicly available information filed by the Insured with the United States Securities and Exchange Commission prior to the inception date of this policy.

All other terms and conditions of this policy remain unchanged.

Rev. Ed. Date (04/02)
GU 207 (6-78)

Page 1 of 1

This endorsement, effective 12:01 am,   11/01/04
of policy number
          00 DA 0100967-04

issued to:

        CROWLEY MARITIME CORPORATION

by:

        TWIN CITY FIRE INSURANCE CO.

**ENDORSEMENT NO:**  7

forms part

# CANCELLATION ENDORSEMENT

## CALIFORNIA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following definitions apply solely for purposes of this endorsement:

1) "Insurer" means the insurance company which issued this policy;

2) "Named Insured" means the entity listed on the Declarations Page; and

3) "First Named Insured" means the entity listed on the Declarations Page.

It is agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

**A.  CANCELLATION**

1.  The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation, provided the First Named Insured does not cancel this policy after the effective date of the acquisition of the First Named Insured as described in this policy.

2.  If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on non-payment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

3.  Written notice of cancellation shall be delivered or mailed to the producer of record and the Named Insured at the mailing address shown on the policy at least ten (10) days prior to the effective date of cancellation. The notice shall state the effective date of and the reason for the cancellation. Proof of mailing of the notice shall be sufficient proof of notice.

**B.  NONRENEWAL**

If the Insurer decides not to renew the policy, the Insurer shall mail or deliver to the producer of record and the Named Insured notice of nonrenewal at the mailing address shown on the policy at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy. Proof of mailing of the notice shall be sufficient proof of notice.

We are not required to send notice of nonrenewal in the following situations:

DO 04 R293 01 0597

a.   If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

b.   If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements cited above.

c.   If you have obtained replacement coverage, or if the Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d.   If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e.   If the Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f.   If we have made a written offer to the First Named Insured, in accordance with the time frames shown in the nonrenewal notice requirements cited above, to renew the policy under changed terms or conditions or at an increased premium rate when the increase exceeds 25%.

## C.   MIDTERM CHANGES IN COVERAGE

If a policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately, no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured which materially increase any of the risks or hazards insured against.

2.   Failure by the Named Insured to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

3.   A determination by the commissioner that loss of or changes in an Insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the Insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

4.   A change by the Named Insured in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the Named Insured and the producer of record at the mailing address shown on the policy at least thirty (30) days prior to the effective date of any increase, reduction or change. The notice shall state the effective date of, and the reasons for, the increase, reduction, or change.

All other terms and conditions of this Policy remain unchanged.

DO 04 R293 01 0597

This endorsement, effective 12:01 am,    11/01/04
of policy number    00 DA 0100967-04

issued to:    CROWLEY MARITIME CORPORATION

by:    TWIN CITY FIRE INSURANCE CO.

ENDORSEMENT NO:    8

forms part

# AMENDMENT OF "POLICY YEAR" TO "POLICY PERIOD"

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that:

1.  Section V. GENERAL CONDITIONS A. Definitions 4. is deleted and replaced by:

    Policy Period means the period set forth in Item B of the Declarations, subject to prior termination pursuant to Section V. D. and Section V. E.

2.  All references to "Policy Year" throughout this policy are deleted and replaced by "Policy Period".

All other terms and conditions of this Policy remain unchanged.

DO 00 H097 00 1102

© 2002, The Hartford

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.:**   9

**This endorsement effective on
at 12:01 A.M. standard time**   11/01/04

**Forms part of Policy Number:**   00 DA 0100967-04

**Issued to:**
CROWLEY MARITIME CORPORATION

**By:**
TWIN CITY FIRE INSURANCE CO.

## MAILING ADDRESS FOR NOTICE ENDORSEMENT

I.   **Notice of Claim or Wrongful Act**

   A.  It is hereby understood and agreed that a notice of any claim or wrongful act shall be given in writing to the following:

   *THE HARTFORD
   CLAIMS DEPARTMENT
   HARTFORD FINANCIAL PRODUCTS
   2 PARK AVENUE
   5TH FLOOR
   NEW YORK, NEW YORK 10016*

   *FACSIMILE:  (212) 277-0915*

   B.  It is hereby understood and agreed that where it is stated in the policy or declarations page that a notice of any claim or wrongful act shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted in its entirety and replaced with the following:

   Notice of any claim or wrongful act shall be given in writing to the following:

   *THE HARTFORD
   CLAIMS DEPARTMENT
   HARTFORD FINANCIAL PRODUCTS
   2 PARK AVENUE
   5TH FLOOR
   NEW YORK, NEW YORK 10016*

   *FACSIMILE:  (212) 277-0915*

HG 00 H009 00 0302

© 2002, The Hartford          Page 1 of 2

## II.     All Other Notices

A.  All notices for a claim or wrongful act must be mailed to the address as specified above in Item (I) of this endorsement.

B.  It is hereby understood and agreed that all notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*THE HARTFORD*
*COMPLIANCE DEPARTMENT*
*HARTFORD FINANCIAL PRODUCTS*
*2 PARK AVENUE*
*5TH FLOOR*
*NEW YORK, NEW YORK 10016*

C.  With the exception of notice of a claim or wrongful act, it is hereby understood and agreed that where it is stated in the policy or declarations page that a notice shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted in its entirety and replaced with the following:

All notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*THE HARTFORD*
*COMPLIANCE DEPARTMENT*
*HARTFORD FINANCIAL PRODUCTS*
*2 PARK AVENUE*
*5TH FLOOR*
*NEW YORK, NEW YORK 10016*

All other terms and conditions of the policy remain unchanged.

Named Insured:    CROWLEY MARITIME CORPORATION

Policy Number:    00 DA 0100967-04

Effective Date of this Notice:    11/01/04

Insurer:    TWIN CITY FIRE INSURANCE CO.

# IMPORTANT NOTICE TO POLICYHOLDERS – TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, we must make terrorism coverage as defined by the Act available in your policy.  However, the actual coverage provided by your policy for acts of terrorism, as is true for all coverages, is limited by the terms, conditions, exclusions, limits, other provisions of your policy, any endorsements to the policy and generally applicable rules of law.

Any terrorism coverage provided by this policy is partially reinsured by the United States of America under a formula established by Federal Law.  Under this formula, the United States will pay 90% of covered terrorism losses exceeding a statutorily established deductible paid by insurers until such time as insured losses under the program reach $100 billion. If that occurs, Congress will determine the procedures for, and the source of, any payments for losses in excess of $100 billion.

You will not be required to pay a premium for terrorism coverage at this time.  If, upon renewal of your policy, a premium is going to be charged for terrorism coverage, we will provide you with notification of what that premium will be.

HG 00 H001 01 0503

© 2003, The Hartford

Page 1 of 1

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

THE HARTFORD
COMPLIANCE DEPARTMENT
HARTFORD FINANCIAL PRODUCTS
2 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10016
1-212-277-0400

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

Consumer Affairs Division
California Department of Insurance
300 South Spring Street
Los Angeles, CA 90013
1-800-233-9045

Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance have your policy number available.

ILNP 85 14 03 89 CA
EL 04 R111 00 0493

00 DA 0100967-04    11/01/04

**EXHIBIT** $C$

RLI Insurance Company

## Declarations

# Excess Policy

Policy Number: EPG0002704A

Item 1.  **Entity** - Name and Address:
Crowley Maritime Corporation
155 Grand Avenue, Ste. 700
Oakland, CA 94612

Item 2.  **Policy Period:**
From:   November 1, 2004
To:     November 1, 2005
at 12:01 a.m. at the address stated in Item 1.

Item 3.  Limit of Liability:
Each **Policy Period**  $ 5,000,000

Item 4.  **Underlying Insurance:**

| | Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| (A) **Primary Policy:** | Federal Insurance Company | 8120-0792 | $10,000,000 | November 1, 2004 - November 1, 2005 |
| (B) Other Policies: | | | | |
| First Excess: | Twin City Fire Insurance Co. | 00DA 010096704 | $10,000,000 | November 1, 2004 - November 1, 2005 |

Item 5.  Endorsements Effective at Inception: 2

Item 6.  Termination of Prior Policies:  EPG0002704

Item 7.  Pending or Prior Date: November 1, 2003

Item 8.  Notice to the Insurer Shall Be Addressed to:     RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615-1431

The Insurer issuing this Policy has caused this Policy to be signed by it authorized officers, but it shall not be valid unless also signed by a duly Authorized Representative.

RLI Insurance Company

By:  _Robert E. Wh_____

Authorized Representative

XLP-100  (9/98)                              Producer Copy                              Page 1 of 1

**RLI Insurance Company**
**9025 North Lindbergh Drive, Peoria, IL 61615**

## SUPPLEMENTAL DECLARATIONS

EPG0002704A

Insured and Mailing Address:

Crowley Maritime Corporation
155 Grand Avenue, Ste. 700
Oakland, CA 94612

**Coverage for loss caused by certified acts of terrorism are partially reimbursed by the United States Government under a formula whereby the United States Government pays 90% of a covered terrorism loss that exceed a prescribed deductible paid by the insurance Company providing coverage.**

Please note: The portion of your annual premium that is attributable to coverage for acts of terrorism is $Waived

RIL 110A (01/03)                    Producer Copy                    Page 1 of 1

Policy No. EPG0002704A

RLI Insurance Company

# EXCESS POLICY

In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, RLI Insurance Company, herein called the "Insurer," and the Insureds agree as follows:

## Insuring Clause

1.  The Insurer shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** and, to the extent coverage is further limited or restricted thereby, the terms and conditions of any other **Underlying Insurance**, except as otherwise provided herein. In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Insurance**.

## Definitions

2.  When used in this Policy:

    (a)  **"Entity"** means the organization designated in Item 1 of the Declarations.

    (b)  **"Insureds"** means those persons or organizations insured under the **Primary Policy**.

    (c)  **"Primary Policy"** means the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

    (d)  **"Policy Period"** means the period of time specified in Item 2 of the Declarations, subject to prior termination in accordance with Section 13 below. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

    (e)  **"Sublimit"** means any **Underlying Insurance** limit of liability which:

        (i)  applies only to a portion of the coverage granted under such **Underlying Insurance**, and

        (ii)  reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** as set forth in Item 4 of the Declarations.

    (f)  **"Underlying Insurance"** means all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them.

    (g)  **"Underlying Limit"** means the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all **Underlying Insurance** plus the applicable uninsured retention, if any, under the **Primary Policy**.

## Maintenance of Underlying Insurance

3.  All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and each such policy shall afford the same coverage as such policy afforded at inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder. If the **Underlying Insurance** is not so maintained, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

## Depletion of Underlying Limit

4.  Only in the event of reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance**, or the **Insureds** in the event of financial impairment or insolvency of an insurer of the **Underlying Insurance**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this Policy shall:

(a) in the event of reduction of the **Underlying Limit**, attach excess of the reduced **Underlying Limit**, and

(b) in the event of exhaustion of the **Underlying Limit**, continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Insurer.

## Underlying Sublimits

5.   If any **Underlying Limit** is subject to a **Sublimit**:

(a) coverage hereunder shall not drop down excess of such **Sublimit**, however

(b) the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of covered loss subject to such **Sublimit**.

## Limit of Liability

6.   The Insurer's maximum liability for all loss covered under this Policy shall be the amount set forth in Item 3 of the Declarations.

## Claim Participation

7.   The Insurer may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this Policy even if the **Underlying Insurance** has not been exhausted.

## Pending or Prior Matters

8.   The Insurer shall not be liable under this Policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

## Subrogation - Recoveries

9.   In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the Insureds' rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insured**.

Any amounts recovered after payment hereunder, through subrogation or otherwise, shall be apportioned in the inverse order of payment of loss hereunder. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries.

## Notice

10.  The **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the Insurer written notice of any of the following events as soon as practicable, but in no event later than thirty (30) days after such event:

(a) the alteration or cancellation of any **Underlying Insurance**;

(b) any notice by the Insureds under any **Underlying Insurance**;

(c) any additional or return premiums charged or paid in connection with any **Underlying Insurance**; and

(d) the exhaustion of the limit of liability under any **Underlying Insurance**.

All notices to the Insurer under this Policy shall be given, in writing, to the address shown in Item 8 of the Declaration Such notice shall be effective on the date of receipt by the Insurer at such address.

## Insurer Authorization Clause

11. By acceptance of this Policy, the **Entity** agrees to act on behalf of all the **Insureds** with respect to the giving and receivin of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become du under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notic provided for under this Policy (except the giving of notice to apply for any extended reporting period), and the **Insured** agree that the **Entity** shall act on their behalf.

## Alteration

12. No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written en-dorsement to this Policy which is signed by an authorized employee of the Insurer.

## Termination

13. This Policy shall terminate at the earliest of the following times:

   (a) sixty days after the receipt by the **Entity** of a written notice of termination from the Insurer;

   (b) upon the receipt by the Insurer of written notice of termination from the **Entity**;

   (c) upon expiration of the **Policy Period**; or

   (d) at such other time as may be agreed upon by the Insurer and the **Entity**.

   Notice to the **Insureds** of cancellation or non-renewal of any **Underlying Insurance** duly given by any underlying insurer shall serve as notice to the **Insureds** of cancellation or non-renewal of this Policy by the Insurer.

   The Insurer shall refund the unearned premium computed at customary short rates if the Policy is terminated by the **Entity**. Under any other circumstances the refund shall be computed pro rata.

## Termination of Prior Policies

14. Any policies specified in Item 6 of the Declarations shall terminate, if not already terminated, as of the inception date of this Policy.