1  Philip L. Pillsbury, Jr. (SBN 72261)
   Richard D. Shively (SBN 104895)
2  Eric K. Larson (SBN 142791)
   PILLSBURY & LEVINSON, LLP
3  The Transamerica Pyramid
   600 Montgomery Street, 31st Floor
4  San Francisco, CA 94111
   Telephone:  (415) 433-8000
5  Facsimile:  (415) 433-4816
   Email: ppillsbury@pillsburylevinson.com
6          rshively@pillsburylevinson.com
           rlarson@pillsburylevinson.com
7

8  Attorneys for Plaintiff
9  CROWLEY MARITIME CORPORATION

10

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

13

14 CROWLEY MARITIME CORPORATION,       )  Case No. CV-08-00830 SI
                                        )  [Hon. Susan Illston]
15                Plaintiff,            )
                                        )
16     vs.                              )  PLAINTIFF CROWLEY MARITIME
                                        )  CORPORATION'S OPPOSITION TO
17                                      )  MOTIONS TO DISMISS BY
   FEDERAL INSURANCE COMPANY; TWIN     )  DEFENDANTS TWIN CITY FIRE
18 CITY FIRE INSURANCE COMPANY; RLI    )  INSURANCE COMPANY AND RLI
   INSURANCE COMPANY; and DOES 1-20,   )  INSURANCE COMPANY
19 inclusive,                          )
                                        )
20                Defendants.          )  Date:   April 11, 2008
                                        )  Time:   9:00 a.m.
21                                      )  Place:  Courtroom 10, 19th Floor
                                        )
22                                      )
                                        )
23                                      )  Action Filed: January 7, 2008
                                        )  Removal Date: February 6, 2008
24 _____)  Trial Date:   None Set

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT.**

2          **A.      Allegations Of The Complaint.**

3          It is alleged in the Complaint that Crowley is in the business of providing diversified

4    marine transportation services.  Compl. ¶ 1.  It is further alleged that a lawsuit (the "underlying

5    action") was filed against Crowley and certain of its directors in November 2004 in the

6    Delaware Court of Chancery, which was known as the "Franklin Fund Action."  Compl. ¶ 8.

7    The Franklin Fund Action was both a securities class action and a shareholder derivative

8    action, seeking damages and other relief, which fell directly within the coverage of primary

9    and excess liability insurance policies issued by Defendants Federal Insurance Company

10   ("Federal"), Twin City Fire Insurance Company ("Twin City"), and RLI Insurance Company

11   ("RLI") (collectively, the "Insurers").  *Id.* ¶¶ 5-8, 16.  The Insurers' policies expressly covered

12   "Executive Liability and Entity Securities Liability" with limits totaling $25 million --

13   Federal's primary limits of $10 million, Twin City's first level excess limits of $10 million,

14   and RLI's second level excess limits of $5 million.  *Id.* ¶¶ 5-7.

15          None of the Insurers had any duty under their policies to defend the underlying action,

16   so Crowley was obliged to, and did, provide its own defense.  See Compl. ¶ 12 & Exs. A, B

17   and C.  In March 2007 Crowley notified the Insurers that an opportunity had arisen to settle the

18   Franklin Fund Action on favorable terms, and Crowley asked the Insurers to consent to the

19   proposed settlement.  *Id.* ¶ 9.  Shortly thereafter Crowley was told over the telephone, by an

20   attorney employed by Federal, that Federal "ha[d] no problem with consenting" to the

21   settlement.  *Id.*  Crowley received no further response from Federal to the request for consent,

22   and Twin City and RLI both failed to respond in any way to the request.  *Id.*  Crowley

23   therefore proceeded to consummate the proposed settlement, which was a reasonable, good

24   faith settlement.  *Id.*  In approving the settlement, the Delaware Court of Chancery specifically

25   determined it to be "fair, reasonable and adequate and in the best interests of the Company

26   [Crowley], its shareholders and the Class."  *Id.*

27          As part of the settlement, Crowley paid $17.625 million to the plaintiffs for a release of

28   their claims, which was a reasonable amount in light of the plaintiffs' probable recovery.  *Id.*

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-1-

¶ 10. The settlement also required Crowley to pay the plaintiffs' attorneys' fees, in an amount to be determined by the Delaware Court. *Id.* The attorney fee award ultimately issued was in the amount of $4,219,458.26, which the Delaware Court concluded "represents a reasonable attorney's fee under the circumstances of this case." *Id.* The total settlement payment, including the fee award, was $21,844,458.26. *Id.* ¶ 16. The fee award does not detract from the conclusion that the settlement amount was reasonable, because the plaintiffs likely would have obtained a higher fee award had there been no settlement. *Id.* ¶ 10.

When they were confronted with a proposed settlement that represented a reasonable, good faith resolution of the underlying action, the Insurers were obligated under California law to accept the settlement, rather than try to force Crowley to take the case to trial. *Id.* ¶ 11. Under California law, insurers are prohibited from considering coverage issues when determining whether proposed settlements should be accepted, and they are required to give the insured's interests at least as much consideration as they give their own. *Id.* Here, the Insurers failed to conduct any reasonable investigation sufficient to enable them to determine whether the proposed settlement was a reasonable one that ought to be consented to. *Id.* All three of the Insurers breached the implied covenant of good faith and fair dealing by failing to make a reasonable investigation of the merits of the proposed settlement, by failing to give it good faith consideration, and by failing to accept it. *Id.* ¶¶ 15-17. Essentially, the Insurers treated the proposed settlement as nothing more than an opportunity to avoid coverage. *Id.* ¶ 13.

Crowley -- which was freed, by the Insurers' breach, from any duty under the policies to obtain the Insurers' consent to the settlement -- was left to fund the settlement on its own without any insurance proceeds. *Id.* It also was forced to bring the present action to obtain indemnity from the Insurers, who disclaimed all obligations under their policies and refused to indemnify Crowley for the settlement. *Id.*

**B.    Summary Of Argument.**

The motions to dismiss by Twin City and RLI are both predicated upon the same faulty notion -- that neither excess insurer will ever owe any duty to Crowley until such time as

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Federal's underlying primary limits have been exhausted by the actual payment of benefits.

2    That notion founders upon California law that obligates an excess insurer, under the facts

3    alleged above, to reasonably investigate the merits of the proposed settlement, to give it good

4    faith consideration, and to accept it -- provided the proposed settlement is reasonable and was

5    made in good faith.  Those obligations exist despite the fact that the excess insurer has no duty

6    to defend, and even though the underlying limits have not yet been exhausted.  Because Twin

7    City and RLI both breached those obligations, Crowley now has fully matured claims against

8    them for breach of contract and breach of the implied covenant, and the motions to dismiss

9    should therefore be denied.

10        Both motions are primarily based on the Ninth Circuit opinion in *Iolab Corp. v.*

11   *Seaboard Surety Co.*, 15 F.3d 1500 (1994).  But *Iolab* is inapposite.  In that case it was held

12   that the insured could not obtain declaratory relief concerning the coverage obligations of its

13   excess insurers, because the insured did not have a current case or controversy with respect to

14   those insurers.  But the crucial difference is that in *Iolab* the amount of the insured's loss

15   ($14.5 million) was far less than its aggregate primary limits ($36 million), so there was no

16   reasonable possibility that the loss would ever trigger coverage under the excess policies.

17   Here, by contrast, Crowley's loss -- which exceeds $22 million (Compl. ¶ 16) -- has already

18   triggered coverage under all three Insurers' policies.  Neither *Iolab* nor any of the other cases

19   cited by the moving parties supports the relief they have requested under the facts alleged in

20   this case.

21        A separate and independent ground for denying both motions is that Twin City and RLI

22   are incorrect in asserting that exhaustion by the actual payment of the underlying limits is a

23   necessary prerequisite to trigger an excess policy's indemnity coverage under California law.

24   It is instead the insured's having incurred a loss exceeding the underlying limits which triggers

25   an excess policy's indemnity obligation.  Even where an underlying insurer's insolvency

26   establishes with certainty that exhaustion by actual payment will never occur, the excess

27   insurer still is liable for that portion of any covered loss which exceeds the excess policy's

28   threshold of coverage.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-3-

1      A second independent ground for denial of the motions is that, by breaching their duty

2  to accept a reasonable good faith settlement and by wrongly denying coverage, Twin City and

3  RLI waived their right to enforce conditions precedent, such as the loss payable clause which

4  is the subject of the present motions.  That is because of the "well-recognized rule . . . that the

5  insurer may not repudiate the policy, deny all liability, and at the same time be permitted to

6  stand on a provision inserted in the policy for its benefit."  *Grant v. Sun Indemnity Co. of New*

7  *York*, 11 Cal.2d 438, 440 (1938).

8      For all the foregoing reasons, the motions should both be denied.

9  **II.    ARGUMENT.**

10
11      **A.    Crowley Has Fully Matured Claims -- For Breach Of Contract And Breach
           Of The Implied Covenant Of Good Faith And Fair Dealing -- Against Both
           Twin City And RLI.**
12

13      Both motions to dismiss are founded on the same flawed premise -- that, absent the

14  exhaustion by payment of the underlying limits, the excess carriers had no contractual duties to

15  Crowley, and thus they could not have been guilty of any breaches of their contracts, or of the

16  implied covenant of good faith and fair dealing.  In fact, under applicable California law[1],

17  "[a]n excess insurer's implied covenant not to injure an insured's right to receive the benefits

18  of the insurance contract exists from the inception of the agreement with the insured . . . ."

19  *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal.App.4th 1329, 1335 (2001).

20      In *Schwartz*, the defendant excess insurer paid full benefits to other insureds under the

21  same policy who had already exhausted the limits of their primary insurance coverage, even

22  though it knew that the plaintiffs would have a competing claim to the same limited funds once

23  their primary insurance was exhausted.  The trial court granted summary judgment in favor of

24  the insurer, concluding that it had properly paid out policy limits as claims became payable and

25  had no other obligations to its insureds.  The Court of Appeal reversed based on its

26  determination that an insured's right to receive the benefits of the policy exists throughout the

27

28  _____

[1]  California law applies because the insurance contracts were issued and delivered to Crowley
in California.  See Complaint ¶¶5-7 & Exs. A, B & C.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1   contractual relationship -- it does not arise only when coverage attaches.  *Id.* at 1335-1336.  As

2   the court explained:

3
4           The trial court concluded that State Farm complied with
            all of its contractual obligations as they arose and had no
5           duty to the Schwartzes until they exhausted their primary
            insurance, including no obligation to ensure an equitable
6           distribution of funds to its insureds.  We disagree with this
            conclusion, because an excess insurer's duty not to impair
7           its insured's right to benefits under the contract exists
            throughout the contractual relationship.

8           (*Id.* at 1336.)

9           The court in *Schwartz* rejected the same argument advanced here by Twin City and RLI

10  -- that because there was not yet any express contractual duty to pay benefits, there could not

11  possibly be any bad faith "since no breach of the covenant can occur in the absence of a breach

12  of the contract."  *Id.* at 1339.  The court responded that "[t]hat argument is specious.  It is well

13  established that a breach of the implied covenant of good faith is a breach of the contract, and

14  that breach of a specific provision of the contract is not a necessary prerequisite to a claim for

15  breach of the implied covenant of good faith and fair dealing."  *Id.* (citations omitted).  The

16  *Schwartz* court relied on the California Supreme Court's decision, in *Comunale v. Traders &*

17  *General Ins. Co.,* 50 Cal.2d 654, 659 (1958), that the implied covenant "requires the insurer to

18  settle in an appropriate case although the express terms of the policy do not impose such a

19  duty." 88 Cal.App.4th at 1339.[2]

20

21  _____

    [2]     When the most reasonable manner of disposing of a claim is to accept a reasonable
22  settlement offer, an insurer's unwarranted failure or refusal to accept the offer constitutes a
    breach of the implied covenant, and "the absence of evidence, circumstantial or direct,
23  showing actual dishonesty, fraud, or concealment is not fatal to the cause of action."  *Crisci v.*
    *Security Ins. Co.*, 66 Cal.2d 425, 430 (1967).  "[I]n deciding whether or not to compromise the
24  claim, the insurer must conduct itself as though it alone were liable for the entire amount of the
    judgment."  *Johansen v. California State Auto. Ass'n*, 15 Cal.3d 9, 16 (1975).  The court in
25  *Johansen* described those considerations an insurer must -- and others it may not -- take into
    account when deciding whether to accept a proposed settlement:
26
            [T]he only permissible consideration in evaluating the
27          reasonableness of the settlement offer becomes whether, in
            light of the victim's injuries and the probable liability of the
28          insured, any ultimate judgment is likely to exceed the
            amount of the settlement offer.  Such factors as the limits

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS        Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1    The *Schwartz* court concluded that the duty of good faith "applies to an excess insurer,

2  just as it does to a primary insurer.  We reject the notion that, simply because a condition

3  precedent to a particular obligation -- the obligation to pay -- has not yet occurred, the insurer

4  is relieved from the implied covenants that inhere in *every* contract."  *Id.* at 1336-1337

5  (emphasis in original).  The court also rejected State Farm's argument -- also made here by

6  Twin City and RLI -- that there can be no bad faith "if no benefits are due under the policy."

7  *Id.* at 1339.  The court observed that the cases cited by State Farm (which are the same cases

8  cited here by Twin City and RLI) "show that the principle has been applied *only* when there is

9  no coverage, *and no potential coverage*, under the policy."  *Id.* (emphasis in original); see also

10  *id.* at fn. 8 ("those cases are premised on the fact that there was *no coverage* under the

11  insurance policy, not, as here, that coverage had not yet attached") (emphasis in original).

12    In short, "[t]he legal principle that a breach of the implied covenant cannot occur

13  'unless policy benefits are due' refers to whether the policy will eventually cover the claim,

14  and does not depend on when such coverage finally attaches."  *Id.* at 1335;  s*ee also Boden-*

15  *hamer v. Superior Court*, 192 Cal.App. 3d 1472, 1480 (1987) ("a duty to act reasonably and in

16  good faith can arise prior to settlement").  Thus, in this case, the fact that Federal has not yet

17  paid its primary limits raises no impediment to a conclusion that -- as alleged in the Complaint

18  (see ¶¶ 9-11, 29, 30) -- Twin City and RLI breached the implied covenant, and therefore

19  breached their contracts, by unreasonably failing to accept a reasonable, good faith settlement

20  offer that invaded their excess policy limits.

21    In *Diamond Heights Homeowners Assn. v. National American Ins. Co.,* 227

22  Cal.App.3d 563 (1991), the court held that an excess insurer "is subject to an implied duty of

23

24            imposed by the policy, a desire to reduce the amount of
            future settlements, or a belief that the policy does not
25            provide coverage, should not affect a decision as to whether
            the settlement offer in question is a reasonable one.
26            (15 Cal.3d at 16.)

27  *See also Blue Ridge Ins. Co. v. Jacobsen,* 25 Cal.4th 489, 502 (2001) ("the
    insurer may not consider the issue of coverage in determining whether the
28  settlement is reasonable").

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS        Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

good faith and fair dealing which requires it to consider the interests of the insured equally with its own and evaluate settlement proposals as though it alone carried the entire risk of loss. Such duty carries with it an obligation to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of any settlement demand." *Id*. at 578 (citations omitted). "Consistent with its good faith duty, the excess insurer does not have the absolute right to veto arbitrarily a reasonable settlement" and force the insured to proceed to trial. *Id*. at 580.

"[T]he excess insurer may waive its rights under [a "no action" clause requiring the excess insurer's consent to any settlement] if it rejects a reasonable settlement and at the same time fails to offer to undertake the defense." *Id*. at 581; s*ee also Kelley v. British Commercial Ins. Co., Ltd*., 221 Cal.App.2d 554, 562 (1963) (excess insurer has obligation to exercise good faith in considering an offer of compromise that exceeds primary limits, and may not "sacrifice the interests of the insured"). In *Kelley*, the court rejected as "untenable" the excess insurer's argument that it owed no duty of good faith to its insured "because it occupied the position of a secondary or excess carrier and took no active part in the defense" of the action against the insured. *Id*. at 563. The excess carrier was held liable for bad faith for failing to settle the case against its insured, despite the fact that the primary limits had not been exhausted. *Id*. at 562-563.

In *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal.App.4th 958, 986 (2006), the court reaffirmed the holding of *Kelley*: "an excess insurer, although not contractually obligated to take an active part in the defense of the insured, still owes its insured a duty of good faith when faced with an offer of settlement that exhausts the underlying policy limits." The *Fuller-Austin* court also reaffirmed the holding in *Diamond Heights, supra*, that the excess insurer does not have any absolute right to veto arbitrarily a reasonable settlement, and thereby force the insured to go to trial. *Id*. at 987. The court echoed *Diamond Heights'* observation

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1   that such conduct by an excess insurer "imperils the public and judicial interests in [the] fair

2   and reasonable settlement of lawsuits." *Id.*[3]

3       Even though an excess insurance company has not denied coverage or refused to

4   defend, it still has a duty to accept a reasonable settlement, and its unreasonable refusal to

5   settle will give rise to the insured's action for reimbursement of the settlement, and a

6   presumption that the claims settled are harm within the coverage. *Armstrong World Industries,*

7   *Inc. v. Aetna Cas. & Sur. Co.,* 45 Cal.App.4[th] 1, 84-87; see also *Isaacson v. CIGA,* 44 Cal.3d

8   775, 790-793 (1988).[4]

9       In summary, the cases decided under California law have found that an excess insurer

10  has an obligation to accept a reasonable, good faith settlement offer that invades its limits of

11  liability -- even though the policy contains no such express obligation, and despite the fact that

12  the underlying insurance has not yet been exhausted.[5]  The cases also refute the moving

13  parties' contention that excess insurers have no obligations to their insureds until such time as

14

15  [3]   The *Fuller-Austin* court refused to enforce the excess policy's consent provisions,
    concluding that "[w]e do not believe that the policies can be read to permit an excess insurer to
16  hover in the background of critical settlement negotiations and thereafter resist all
    responsibility on the basis of lack of consent." *Id.* at 990; *see also* 14 Couch on Insurance (3d
17  ed. 1999) at §199:48 ("A cooperation clause prohibiting an insured's settlement without the
    insurer's consent forbids an insured from settling only claims for which the insurer
18  unconditionally assumes liability under the policy.  Since an insurer, by reserving its right to
    deny coverage, loses its right to control the litigation, an insured does not breach a policy's
19  'duty to cooperate with insurer' provision by entering into an unauthorized settlement" that is
    fairly and reasonably made, with notice to the insurer).

20
    [4]   In *Isaacson* the Court held that, if an insurer violates its contractual duties by erroneously
21  denying coverage, improperly refusing to defend, or wrongly refusing to settle, then "the
    insured is entitled to make a reasonable settlement of the claim in good faith and may then
22  maintain an action against the insurer to recover the amount of the settlement." 44 Cal.3d at
    791-792.

23
    [5]   See, *e.g., Schwartz v. Twin City Fire Ins. Co.*, 492 F.Supp.2d 308 (S.D.N.Y. 2007), where a
24  federal district court in New York, applying California law, determined that the failure of two
    Directors' & Officers' liability insurers to consent to the insured's proposed $20 million offer
25  to settle a securities class action was unreasonable, not in good faith, and amounted to a breach
    of their policies.  As a result, the court ruled that the insured's unauthorized settlement did not
26  relieve the insurers of their obligations under the policies -- even though those policies
    required the insured to obtain the insurers' consent before making any settlement offer or
27  agreeing to any settlement, and despite the fact that the insured had proceeded to consummate
    the settlement the very next day after the insurers' consent was first sought. *Id.* at 318-319.

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1   the underlying insurance has been exhausted by actual payment.  Since the Complaint (¶¶ 9-

2   11) alleges facts showing that both Twin City and RLI had, and breached, obligations (1) to

3   make a reasonable investigation sufficient to determine whether the proposed settlement was

4   reasonable, and (2) not to unreasonably withhold their consent to the proposed settlement,

5   Crowley has adequately alleged claims for breach of contract and breach of the implied

6   covenant.  As a result, Twin City's and RLI's motions to dismiss must be denied.

       **B.**       **The Ninth Circuit's Opinion In *Iolab Corporation v. Seaboard Surety***
7                     **Company Does Not Support Twin City's Or RLI's Motion To Dismiss.**

8

9         In *Iolab Corporation v. Seaboard Surety Co.*, 15 F.3d 1500 (9th Cir. 1994), the court

10  held that a plaintiff could not obtain declaratory relief concerning the coverage obligations of

11  excess insurers unless the policyholder had a current case or controversy with respect to those

12  excess insurers.  The insured in *Iolab* brought suit against four primary insurers and eleven

13  excess insurers to establish coverage for a $14.5 million loss ($13.5 million paid in settlement

14  of the underlying claim, together with defense costs estimated at $1 million).  *Id*. at 1503.

15  However, Iolab's aggregate primary limits were $36 million, so there was no reasonable

16  possibility that the loss would ever trigger coverage under the excess policies.  *Id*.  In addition,

17  the trial court granted summary judgment in favor of the primary insurers on the ground that

18  the loss was not covered under the primary policies (with which the excess policies followed

19  form), and that ruling was affirmed on appeal  -- which provided another reason why there was

20  no reasonable possibility of coverage under the excess policies.  *Id*. at 1502.

21        Twin City and RLI both argue that *Iolab* supports their contention that Crowley is not

22  entitled to pursue a declaratory relief claim against them because the primary limits have not

23  yet been exhausted by actual payment.  That argument fails for two reasons. First, because

24  Crowley -- already having fully matured breach of contract and insurance "bad faith" claims

25  against Twin City and RLI -- has no need to pursue any declaratory relief claim.  (There was

26  no contention in *Iolab* that the excess insurers had breached any duty to settle.)  Second,

27  because the holding of *Iolab* necessarily is limited to the facts of that case -- where the amount

28  of the loss at issue fell far short of exhausting the available primary limits.  Here, by contrast,

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS      Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1   Crowley's loss exceeds both Federal's primary limits and Twin City's first level excess limits,

2   and substantially invades RLI's second level excess limits. *See Iolab*, 15 F.3d at 1507 (Iolab

3   "did not establish that the Jensen loss would ever trigger excess coverage and thus the district

4   court properly dismissed Iolab's claim against the excess insurers").

5        The court in *Iolab* relied on its earlier opinion in *Hartford Acc. & Indemn. v.*

6   *Continental Nat. Am. Ins.*, 861 F.2d 1184 (9th Cir. 1988), in concluding that the California state

7   courts had adopted a policy to avoid the imposition of unnecessary litigation costs on excess

8   insurers that was equally applicable to breach of contract claims and declaratory relief claims.

9   15 F.3d at 1505. However, neither the *Hartford* opinion nor any of the California state court

10  opinions cited in *Iolab* support the proposition that Crowley does not already have a current

11  case or controversy with respect to Twin City and RLI.

12       *Hartford* involved a primary insurer's contribution action against an excess liability

13  insurer; the insured was not a party, and the issue was how the defense costs incurred in

14  connection with the underlying case should be apportioned as between the primary and excess

15  insurers. *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,* 126 Cal.App.3d 593 (1981),

16  involved a contribution dispute among insurers; the insured was not a party, and the loss did

17  not exceed primary limits. *North River Ins. Co. v. American Home Assur. Co.*, 210 Cal.App.3d

18  108 (1989), involved a contribution dispute among insurers; the insured was not a party, and

19  the loss did not exceed primary limits. *Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal.3d 359

20  (1980), involved a primary insurer's contribution action against an excess liability insurer; the

21  insured was not a party, and the issue was whether the excess carrier -- which had paid part of

22  the settlement of the underlying case -- was obligated to also share in the defense costs.

23       *Denny's Inc. v. Chicago Ins. Co.*, 234 Cal.App.3d 1786 (1991), involved the insured's

24  contention that two excess carriers were obligated to "drop down" and cover amounts that had

25  been insured by a primary carrier that became insolvent, but Crowley does not contend that

26  Twin City or RLI has any obligation to "drop down" and cover amounts that were insured by

27  Federal. *Hellman v. Great American Ins. Co.,* 66 Cal.App.3d 298 (1977), involved an

28  insured's declaratory relief claim against an excess insurer. The trial court reached the merits

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-10-

of that claim and entered summary judgment for the insurer, which was affirmed on appeal. There was no contention that the declaratory relief claim was not ripe, or that there was no current controversy. Finally, *Continental Cas. Co. v. U.S. Fid. & Guar. Co.*, 516 F.Supp. 384 (N.D. Ca. 1981), involved an excess insurer's "bad faith" claim against a primary insurer; the insured was not a party.

Clearly, neither *Iolab* nor any of the cases cited in that decision supports the proposition that an insured does not have a current case or controversy with respect to its excess insurer after it has paid a loss that exceeds its primary limits. *See Croskey, et al., California Practice Guide:  Insurance Litigation* (Rutter Group 2007), §8:232 (citing *Iolab* as authority for the proposition that "Depending on the facts, the trial court has discretion to dismiss an excess insurer from a coverage dispute where it appears the primary coverage will not be exhausted").

Judge Armstrong of this Court recently granted leave to an insured to add an insurance "bad faith" claim against its excess insurer, overruling the objection that *Iolab* forbade such a result.  In *ABM Industries, Inc. v. Zurich American Ins. Co.*, 237 F.R.D. 225 (N.D. Ca. 2006), the excess insurer argued that the insured's "proposed amended claim is futile because Zurich [the primary insurer] has denied coverage, therefore the Zurich policy has not been exhausted, and the National Union umbrella policy has not been triggered." *Id.* at 228.  What Judge Armstrong said in *ABM Industries* is equally applicable here:

> However, *Iolab Corp.* is distinguishable, because plaintiff in that case had not established that the loss in the underlying action would ever trigger excess coverage. *See id.* at 1505.  Here, on the other hand, following the settlement and payment of funds to the plaintiffs in the Underlying Action, it is clear that National Union's liability for the excess will be an issue because the primary policy -- the Zurich policy -- is not sufficient to cover the $6.3 million loss.

(237 F.R.D. at 228.)

Given that the *Iolab* court based its ruling on a policy it perceived in those California state court decisions discussed above, it should be considered that there are several leading

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-11-

1   California decisions involving policyholders that prosecuted "global" coverage claims, against

2   both primary and excess insurers, in situations where the primary limits had not yet been

3   exhausted -- which refutes the notion that Crowley is somehow obligated under California law

4   to prosecute to conclusion three separate and successive coverage actions (first against the

5   primary carrier, Federal, then against Twin City, then finally against RLI).[6]

6        Furthermore, California cases decided after *Iolab* have now made it clear that insureds

7   are entitled to pursue declaratory relief claims against excess insurers even though underlying

8   primary limits have not yet been exhausted, and despite the fact that the insureds are not yet

9   able to establish with certainty that excess layers of coverage will eventually be reached.  That

10  was the holding in *Ludgate Ins. Co., Ltd. v. Lockheed Martin Corp.*, 82 Cal.App.4th 592, 607-

11  608 (2000), where the court determined that -- since the excess insurer admitted it was likely

12  that underlying primary limits eventually would be exceeded, and since the excess insurer

13  disputed that it would be liable even if those limits *were* exceeded -- an actual controversy

14  existed, and it would be "superfluous and serve no useful purpose"  to require the insured to

15

16  [6]   See, for example, *Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.*, 45

17  Cal.App.4th 1, 107-109 (1996) (insured brought declaratory relief claims against primary and
    excess insurers before the primary limits were paid and before the insurer's liability to third

18  parties in underlying actions had been established; the court held that -- while the
    determination of the *amount* of the insurers' indemnity obligations had to await the resolution

19  of the underlying actions -- there was "no error in the trial court's declaration that Armstrong is
    entitled to indemnification *if* Armstrong is held liable for the damages alleged in the

20  underlying complaints") (emphasis in original); *FMC Corp. v. Plaisted & Cos.*, 61 Cal.App.4th
    1132, 1143 (1998) (insured brought single coverage action against both primary and excess

21  carriers, seeking a declaration of rights as against all the insurers, and damages as against the
    primary carrier); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 770 (1993)

22  (insured pursued declaratory relief against primary carriers and nine levels of excess insurers
    in a single action, despite the fact that the primary coverages had not been exhausted);

23  *Northrop Corp. v. American Motorists Ins. Co.*, 220 Cal.App.3d 1553 (1990) (insured
    simultaneously prosecuted (a) declaratory relief, breach of contract and insurance "bad faith"

24  claims against the primary insurer, and (b) declaratory relief claims against four excess
    insurers, despite the fact that the primary insurer had denied coverage and paid no benefits).

25      Federal decisions from California are to the same effect.  See *PMI Mortgage Ins. Co. v.*

26  *American International Specialty Lines Ins. Co.*, 394 F.3d 761 (9th Cir. 2005) (insured pursued
    coverage in single action against both primary and excess insurers, despite the fact that the

27  primary insurer had denied coverage and its limits were not exhausted); see also *The Flintkote
    Co. v. General Accident Assur. Co. of Canada,* 410 F.Supp.2d 875 (N.D. Ca. 2006) (issue of

28  insured's coverage for third party asbestos claims was ripe for adjudication notwithstanding
    the fact that the insured's liability to third parties had not yet been established).

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-12-

1    allege additional facts.  See also *Lockheed Corp. v. Continental Ins. Co.*, 134 Cal.App.4th 187,

2    220 (2005) ("In *Ludgate* we held that Code of Civil Procedure Section 1060 (Section 1060)

3    does not require an insured to show a reasonable probability of exhaustion of its primary

4    coverage before it may state a cause of action for declaratory relief against an excess insurer").

5          In light of these decisions, it is now clear that the state court policy identified in *Iolab* --

6    to avoid "the imposition of unnecessary litigation costs on excess insurers" -- does not prohibit

7    an insured from pursuing a declaratory relief claim against an excess insurer, even though the

8    underlying primary insurance has not yet been exhausted.  There certainly is no policy which

9    precludes an insured like Crowley, that already has paid a loss far exceeding its primary limits,

10   from immediately pursuing declaratory relief against an excess insurer.[7]

11         **C.    None Of The Cases Cited By The Moving Parties Supports Their**
              **Entitlement To The Relief Sought.**
12

13         None of the cases cited by Twin City and/or RLI comes close to supporting their

14   entitlement to the relief sought here.  They cite, for example, a number of inapposite cases

15   involving contribution or allocation disputes among multiple insurers, where the insureds were

16   not even parties.  See *Employers Ins. of Wasau v. Granite State Ins. Co.*, 330 F.3d 1214 (9th

17   Cir. 2003); *Travelers Cas. & Sur. Co. v. American Int'l Surplus Lines Ins. Co.*, 465 F.Supp.2d

18   1005 (S.D. Ca 2006);  *Ins. Co. of the State of Pa. v. Acceptance Ins. Co.*, 2002 U.S. Dist.

19   LEXIS 27832 (C.D. Ca. 2002); *Phoenix Ins. Co. v. U.S. Fire Ins. Co*., 189 Cal.App.3d 1511

20   (1987); *Cal. Ins. Guar. Ass'n v. WCAB*, 128 Cal.App.4th 307 (2005); *American Motorists Ins.*

21   *Co. v. American Re-Insurance Co.*, 2007 U.S. Dist. LEXIS 41257 (N.D. Ca. 2007).  See also

22   *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.,* 144 F.3d 1270 (9th Cir. 1998) (umbrella

23   insurer sought contribution, after paying more than its share of a settlement, from another

24   insurer and from the insured -- which had a substantial self-insured retention).

25

26   _____

27   [7]  Because it has viable claims for breach of contract and breach of the implied covenant,
     Crowley does not need to seek declaratory relief.  However, in the event those claims were
28   found to be insufficient for any reason, Crowley would seek leave to add a declaratory relief
     claim.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Some of the cases cited by the moving parties are irrelevant because they involve only

2    primary insurers -- excess coverage was not an issue.  See *Love v. Fire Ins. Exchange*, 221

3    Cal.App.3d 1136 (1990); *Pan v. State Farm Mut. Auto. Ins. Co.*, 2007 U.S. Dist. LEXIS 43766

4    (N.D. Ca. 2007); *Flores v. AMCO Ins. Co.*, 2007 U.S. Dist. LEXIS 86679 (E.D. Ca. 2007);

5    *Cal. Sate Auto Ass'n v. Superior Court*, 184 Cal.App.3d 1428 (1986) (insured's "bad faith"

6    counter-claim against primary insurer withstands demurrer, even though issues it raises must

7    await resolution of insurer's declaratory relief claim); *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1

8    (1995); *San Diego Housing Comm. v. Industrial Indemnity Co.*, 68 Cal.App.4th 526 (1998).

9    Other cases cited by Twin City and/or RLI are irrelevant for the same reason as *Iolab* --

10   because the insured's losses in those cases did not exceed the level of the underlying insurance,

11   and reach the threshold level of coverage of the targeted insurer.  See *Wells Fargo Bank, N.A.*

12   *v. Cal. Ins. Guar. Ass'n*, 38 Cal.App.4th 936 (1995); *Nabisco, Inc. v. Transport Indem. Co.*,

13   143 Cal.App.3d 831 (1983); *U.S. Fire Ins. Co. v. Lay,* 577 F.2d 421 (7th Cir. 1978).

14   Other cases cited by the moving parties involve excess insurance, but are not germane

15   to this case.  See *Times-Picayune Publishing Corp. v. Zurich American Ins. Co.*, 421 F.3d 328

16   (5th Cir. 2005) (insured successfully sues excess carrier, which is held liable for the subject

17   losses); *Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal.App.4th 1699 (1995) (excess

18   policy held, as matter of law, not to cover bodily injury directly resulting from investment

19   losses; excess insurer held to have no duty to defend because there was no potential for

20   coverage); *State Farm Fire & Cas. Co. v. Jioras*, 24 Cal.App.4th 1619 (1994) (coverage under

21   both primary and umbrella policies barred by "business pursuits" exclusion; claim for coverage

22   by estoppel rejected).

23   Two other cases are somewhat germane, but they are not persuasive and do not

24   represent binding authority.  See *Liberate Technologies, Inc. v. Certain Underwriters at*

25   *Lloyd's London*, San Mateo Superior Court No. CIV445162, unpublished trial court minute

26   order filed July 21, 2005, and unpublished order by Court of Appeal filed June 22, 2005

27   issuing alternative writ of mandate (without any discussion, Court of Appeal held that trial

28   court erred when it overruled excess insurer's demurrer; trial court responded by sustaining

1    demurrer with leave to amend; there is no indication whether amended claim was ever filed

2    against excess insurer; significantly, there was no contention that the excess insurer had failed

3    to accept a reasonable good faith settlement); *Gemstar-TV Guide Int'l Inc. v. National Union*,

4    Central District of California No. CV 06-5183 GAF (JTLx), unpublished trial court order filed

5    November 30, 2006 granting excess insurer's motion to dismiss (district court failed to

6    recognize that holding of *Iolab* is limited to cases where insured's loss does not exceed

7    underlying limits; in addition, *Gemstar* did not involve any claim that the excess insurer had

8    breached a duty to accept a reasonable good faith settlement).

9        Other cases cited by Twin City and/or RLI are so far afield they do not even involve

10   insurance at all.  See *Crosthwaite v. Glavin Constr. Mgmnt.*, 2007 U.S. Dist LEXIS 73757

11   (N.D. Ca. 2007) (action by ERISA trustee against employer for injunctive relief and to collect

12   unpaid contributions); *Cal-Agrex, Inc. v. Van Tassell*, 2007 U.S. Dist. LEXIS 73676 (N.D. Ca.

13   2007) (commercial dispute centered on contract to purchase 10,000 metric tons of nonfat dry

14   milk powder); *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371

15   (1990) (action against lender for breach of commitment to make a loan).

16       The only case that comes even remotely close to supporting the moving parties'

17   arguments is *Comerica, Inc. v. Zurich American Ins. Co.*, 498 F.Supp.2d 1019 (E.D. Mich.

18   2007) -- which was not cited at all by Twin City, and was only cited by RLI in a footnote

19   without any discussion.  *Comerica* swims against the stream by refusing to join the many

20   courts all across the country that have followed the seminal Second Circuit opinion in *Zeig v.*

21   *Mass. Bonding & Ins. Co.*, 23 F.2d 665 (1928), which held that excess policy language

22   requiring the exhaustion of underlying coverage by the actual payment of benefits should not

23   be enforced literally.[8]  However, *Comerica* ultimately does not support the present motions for

24   three separate reasons.  First, because it applies Michigan law rather than California law.

25   Second, because it is distinguishable -- in *Comerica*, because the insured had settled with its

26   primary insurer for less than policy limits, it was firmly established that the underlying

27

28   [8]   See the discussion of *Zeig* and cases which have followed it in Sections II.D.2 and II.D.3,
     *infra*.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-15-

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

coverage would never be fully exhausted by the actual payment of benefits. (Here, by contrast, the underlying Federal policy's limits will be exhausted by the actual payment of benefits after Crowley prevails in this coverage action.) Third, *Comerica* is distinguishable on the further ground that there was no contention in that case -- as there is here -- that the excess insurer had breached its contract and the implied covenant by failing to accept a reasonable good faith settlement.

### D. Liability Exceeding The Underlying Limits Is Sufficient To Trigger Indemnity Coverage Under The Twin City And RLI Excess Policies; Exhaustion By Actual Payment Of The Underlying Limits Is Not Required.

A separate and independent reason why Twin City's and RLI's motions to dismiss should be denied is that those Defendants are incorrect in asserting that they have no indemnity obligation under their policies unless and until the underlying limits have been exhausted by the actual payment of benefits. Under California law, it is instead the insured's having incurred a loss exceeding the underlying limits which triggers an excess policy's indemnity obligation.

### 1. California Decisions.

In *Montrose Chemical Corp. of California v. Admiral Ins. Co.*, 10 Cal.4th 645, 660 (1995), the California Supreme Court explained that "[t]he duty to defend arises when there is a *potential* for indemnity," whereas "[t]he obligation to indemnify, on the other hand, arises when the insured's underlying liability is established." (Emphasis in original.) *Armstrong, supra,* 45 Cal.App.4th at 107 (same).

The opinion in *Span, Inc. v. Associated International Ins. Co.*, 227 Cal.App.3d 463 (1991), demonstrates that Crowley's having incurred a loss which exceeds both Federal's primary limits and Twin City's first level excess limits is sufficient to trigger the indemnity obligations under Twin City's and RLI's policies. In *Span,* the insured incurred a loss in the amount of $1.276 million. *Id.* at 469. The insured had primary coverage of $500,000 and excess coverage of $4 million. *Id.* at 468-469. "Condition J" of the excess policy provided that "[l]iability under this policy . . . shall not attach unless and until . . . the insured's underlying insurer shall have *paid* the amount of the underlying limits . . . ." *Id.* at 476

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-16-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    (emphasis in original). The trial court impliedly found "Condition J" to be unenforceable,

2    because it ordered the excess insurer to pay that portion of the judgment against the insured

3    that exceeded the underling limits, even though the primary insurer was insolvent and had not

4    paid its limits. *Id.;* see also *id.* at 467-468.

5        On appeal, the excess insurer conceded that "Condition J" should not be enforced

6    literally. The Court of Appeal signaled its agreement, citing a decision by the Supreme

7    Judicial Court of Massachusetts -- *Gulezian v. Lincoln Ins. Co.*, 506 N.E.2d 123, 126 (Mass.

8    1987) -- which held that it would be unconscionable to literally enforce policy language stating

9    that an excess insurer was not obligated to pay that portion of a loss in excess of underlying

10   limits unless those limits were actually paid.[9] Thus, the Court of Appeal held that the excess

11   insurer in *Span* was not absolved from payment of the claim, but must instead pay that portion

12   of the loss which exceeded the insolvent primary insurer's limits -- this notwithstanding the

13   fact that the "excess policy is not ambiguous. It requires exhaustion of the underlying limit by

14   payment before the excess insurer must respond." 227 Cal.App.3d at 480; see also *id.* at 468,

15   485.[10]

16       ## 2.    Federal Decisions.

17       Federal courts throughout the country have agreed that it is the insured's liability for

18   sums exceeding underlying limits, rather than the exhaustion by actual payment of the

19   underlying limits, that triggers an excess policy's indemnity obligation. See *Federal Ins. Co.*

20   *v. Srivastava*, 2 F.3d 98, 102 (5th Cir. 1993) (excess policy's "coverage begins when a loss

---

[9]  See also *Phoenix Ins. Co. v. United States Fire Ins. Co.*, 189 Cal.App.3d 1511, 1529-30 (1987) (court in allocation dispute refused to literally enforce excess insurance policy provision requiring, as a condition precedent to indemnity obligation, that underlying insurance first be exhausted).

[10]  There have been other cases where public policy considerations led courts to refuse the enforcement of objectionable policy provisions. See, for example, *Home Indemnity Co. v. Mission Ins. Co.*, 251 Cal.App.2d 942, 961 (1967) (a "paramount and preponderating public policy" may "strike down" objectionable insurance policy provisions -- in *Home Indemnity,* the court refused to enforce provisions which purported to eliminate the coverage of leased vehicles that were otherwise insured, or which purported to limit the amount of insurance that was furnished to the permissive users of such vehicles).

---

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

exceeds the policy limits of all underlying policies . . . regardless of whether the underlying

insurers actually pay those policy limits"); *UNR Industries, Inc. v. Continental Cas. Co.*, 942

F.2d 1101, 1108 (7th Cir. 1991) (on remand, district court "can ignore issues such as whether

UNR's underlying insurer actually paid the full amount of its coverage . . . whether or not the

underlying insurer performed the obligations *within* its coverage, CNA remains liable for

claims *beyond* that underlying coverage"); *United States Fire Ins. Co. v. Charter Financial

Group, Inc.*, 851 F.2d 957, 961 (7th Cir. 1988) ("the excess coverage started at the level of

underlying insurance stated in Schedule A whether or not such primary insurance had been

paid, was recoverable, or was even in effect on the date of the insurable event"); *Koppers Co.,

Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3rd Cir. 1996) ("the policyholder may

recover on the excess policy for a proven loss to the extent it exceeds the primary policy's

limits"; "to require insured 'actually to collect the full amount of the [primary] policies . . . in

order to "exhaust" that insurance . . . seems unnecessarily stringent'"; "[c]ourts have adopted

this rule because it encourages settlement and allows the insured to obtain the benefit of its

bargain with the excess insurer"); *Pereira v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,

2006 WL 1982789, *7 (S.D.N.Y. 2006) (following *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d

665 (2d Cir. 1928), in refusing to "[i]nterpret[] the policy to excuse the excess insurers from

providing coverage within their respective layers on account of the unrelated insolvency of an

intermediary insurer" because to do so "would work a . . . hardship on the insureds, who have

already been deprived of a layer of coverage by the insolvency, and provide a windfall to the

excess insurers"); *Gould, Inc. v. Arkwright Mut. Ins. Co.*, 1995 WL 807071 (M.D. Pa. 1995)

(following *Zeig, supra*, in concluding that "an excess insurer has no rational interest in whether

the insured collected the full amount of the primary policies, so long as it was only called upon

to pay such portion of the loss as was in excess of the limits of those policies"; "actual

collection of the full limit of an  underlying insurance policy is not required to establish

exhaustion of the underlying policy"; "[f]or this Court to find that [there has been no

exhaustion] would simply promote additional delay and pave the way for further litigation").

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

### 3. *Rummel v. Lexington Ins. Co.*, 945 P.2d 970 (N.M. 1997).

In a case involving policy language virtually identical to that contained in Twin City's excess policy, the Supreme Court of New Mexico held, in *Rummel*, that an excess carrier was responsible for that portion of the insured's loss that exceeded the underlying policy's limits, despite the fact that the underlying policy limits were not actually paid due to the insurer's refusal to pay. The excess policy in *Rummel* -- like Twin City's policy[11] -- provided that the insured's failure to maintain the underlying insurance in full effect "shall not invalidate this policy, but in the event of such failure [the excess insurer] shall only be liable to the same extent as it would have been had the Named Insured so maintained such policy or policies." 945 P.2d at 978-979. The *Rummel* court concluded that:

> The most straightforward interpretation of this language is that even if the underlying insurance lapses and becomes useless, Lexington's policy will remain valid and unchanged. The phrase "liable to the same extent as it would have been had the Named Insured so maintained such policy" can only mean that Lexington is still liable for those damages that exceed $6,000,000, even if the underlying $6,000,000 is not fully paid. The lapse of an underlying policy is analogous to the nonpayment and partial payments of the underlying policies in this case.

(945 P.2d at 979.)

The Court concluded that, where -- as in both *Rummel* and the present case -- the underling insurer has refused to make any payment on its policy, "the excess insurer should not gain a windfall, and the insured should not bear the loss, when the underlying insurer refuses to honor is policy." 945 P.2d at 980. The court reasoned that "it would be unjust to grant reprieve to the excess insurer simply because the underlying insurer is denying payment through mistake or bad faith. This is especially true in this case, in which [the excess] policy guarantees payment whether the underlying insurance is 'recoverable or not.'" *Id.* at 981.

---

[11]   See Complaint Ex. B at §III ("Primary And Underlying Insurance").

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS                    Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1      Finally, the court expressed agreement with the Second Circuit's conclusion in *Zeig*,

2  *supra*, that "the excess insurer has no rational interest in whether the primary policies are

3  collected in full, as long as it is only required to pay the loss for which it would otherwise have

4  been liable under the terms of the contract." *Id.*, citing *Zeig*, 23 F.2d at 666. "Additionally,

5  '[t]o require an absolute collection of the primary insurance to its full limit would in many, if

6  not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which

7  is both convenient and commendable." *Id.*, quoting *Zeig*, 23 F.2d at 666.

8      The holding of *Rummel* is equally applicable here. Given that Twin City's policy states

9  that, in the event the underlying Federal policy is not maintained in full effect, the Twin City

10  coverage is "not invalidate[d]" and Twin City nevertheless will be liable to the same "extent

11  that it would have been liable" had the Federal policy been maintained, it is clear that the

12  exhaustion by payment of the Federal policy is not a necessary pre-condition to Crowley's

13  recovery under the Twin City policy. See Twin City policy (Complaint Ex. B) at §III.[12]

14

15  **E.    In Any Event, By Breaching Their Duty To Accept A Reasonable Good
            Faith Settlement And By Wrongly Denying Coverage, Twin City And RLI
            Have Waived Their Right To Enforce Conditions Precedent Such As The
16          Loss Payable Clause.**

17      "It is a well-recognized rule . . . that the insurer may not repudiate the policy, deny all

18  liability, and at the same time be permitted to stand on a provision inserted in the policy for its

19  benefit." *Grant v. Sun Indemnity Co. of New York*, 11 Cal.2d 438, 440 (1938). Here, Twin

20  City and RLI have not only breached their duty to accept a reasonable settlement, but they also

21  have denied all liability -- asking this Court to grant their motions to dismiss without leave to

22  amend. As a result, they have waived their right to enforce conditions precedent such as the

23  loss payable clause that is the subject of the present motions to dismiss. This represents an

24  additional separate and independent ground for denying the present motions.

25

26  [12]  The RLI policy contains a substantially similar provision (see Complaint Ex. C at §3 --
27  "Maintenance of Underlying Insurance"), which states that, in the event the underlying Federal
    and Twin City policies are not maintained in full effect, RLI "shall not be liable under this
28  Policy to a greater extent than it would have been had such Underlying Insurance been so
    maintained."

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1       In an analogous situation, the court in *Kennedy v. American Fidelity & Cas. Co., Inc.*,

2   97 Cal.App.2d 315, 316-317 (1950), concluded that an insurer which had denied coverage for

3   a claim thereby waived its right to assert a violation of its policy's notice provisions:  "Having

4   repudiated that agreement in its entirety, the appellant is in no position to rely upon one clause

5   thereof for the very purpose of continuing its denial of all liability under the policy."  See also

6   *Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 515-516 (1995) (insurer that denies

7   coverage cannot rely on its policy's cooperation condition); *United Serv. Auto. Ass'n v. Alaska*

8   *Ins. Co.*, 94 Cal.App.4th 638, 644 (2001) (excess insurer that denies coverage cannot rely on its

9   policy's consent to settlement condition).

10      Having already breached obligations under their policies when they failed to investigate

11  the proposed settlement and failed to accept a reasonable good faith settlement offer, Twin

12  City and RLI cannot now rely on those policies' loss payable clauses "for the very purpose of

13  continuing [their] denial of all liability under the polic[ies]."  See *Kennedy, supra,* 97

14  Cal.App.2d at 316-317.

15  **III.    CONCLUSION.**

16      The Complaint adequately alleges facts sufficient to state claims against Twin City and

17  RLI for breach of contract and breach of the implied covenant -- based on their failure to

18  investigate the merits of the proposed settlement, their failure to give good faith consideration

19  to the proposed settlement, their failure to accept that settlement, and their failure to indemnify

20  Crowley for its settlement payment.  *Iolab* is inapposite here, where Crowley's loss exceeds

21  the threshold of coverage of both Twin City's and RLI's policies, and none of the other cases

22  cited by the moving parties supports the relief they seek under the facts alleged here.  Finally,

23  by denying all liability for the settlement and effectively repudiating their policies, both

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1   Twin City and RLI have waived any right to enforce the loss payable provisions which are the

2   subject of their motions.  For all these reasons, both motions should be denied.

3

4   Dated:  March 7, 2008                              PILLSBURY & LEVINSON, LLP

5

6                                           By:   /s/ Richard D. Shively
                                                 Richard D. Shively
7
                                                 Attorneys for Plaintiff
8                                                CROWLEY MARITIME CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS          Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

# TABLE OF CONTENTS

2

**Page(s)**

3

4   I.   INTRODUCTION AND SUMMARY OF ARGUMENT. ................................................ 1

5        A.   Allegations Of The Complaint. .......................................................................... 1

6        B.   Summary Of Argument. ..................................................................................... 2

7   II.  ARGUMENT. ................................................................................................................. 4

8        A.   Crowley Has Fully Matured Claims -- For Breach Of Contract And
             Breach Of The Implied Covenant Of Good Faith And Fair Dealing
9            -- Against Both Twin City And RLI. ................................................................... 4

10
         B.   The Ninth Circuit's Opinion In *Iolab Corporation v. Seaboard Surety
11            Company* Does Not Support Twin City's Or RLI's Motion To Dismiss. ................... 9

12       C.   None Of The Cases Cited By The Moving Parties Supports Their
             Entitlement To The Relief Sought. ...................................................................... 13
13

14       D.   Liability Exceeding The Underlying Limits Is Sufficient To Trigger
             Indemnity Coverage Under The Twin City And RLI Excess Policies;
15            Exhaustion By Actual Payment Of The Underlying Limits Is Not Required. ............. 16

16            1.   California Decisions. ............................................................................... 16

17            2.   Federal Decisions. .................................................................................. 17

18            3.   *Rummel v. Lexington Ins. Co.*, 945 P.2d 970 (N.M. 1997). ............... 19

19       E.   In Any Event, By Breaching Their Duty To Accept A Reasonable
             Good Faith Settlement And By Wrongly Denying Coverage, Twin City
20            And RLI Have Waived Their Right To Enforce Conditions Precedent Such
21            As The Loss Payable Clause. ................................................................................ 20

22  III. CONCLUSION. ............................................................................................................. 21

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-i-

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS                    Case No. CGC-08-470782
TWIN CITY FIRE INSURANCE COMPANY AND RLI INSURANCE COMPANY

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

4

5
**Cases**

6
*ABM Industries, Inc. v. Zurich American Ins. Co.,*
   237 F.R.D. 225 (N.D. Ca. 2006)..................................................................................... 11

7

8
*American Motorists Ins. Co. v. American Re-Insurance Co.,*
   2007 U.S. Dist. LEXIS 41257 (N.D. Ca. 2007)............................................................. 13

9
*Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.,*
   45 Cal.App.4th 1 (1996) .......................................................................................8, 12, 16

10

11
*Blue Ridge Ins. Co. v. Jacobsen,*
   25 Cal.4th 489 (2001) ..................................................................................................... 6

12

13
*Bodenhamer v. Superior Court,*
   192 Cal.App. 3d 1472 (1987) ........................................................................................ 6

14
*Cal. Ins. Guar. Ass'n v. WCAB,*
   128 Cal.App.4th 307 (2005) .......................................................................................... 13

15

16
*Cal. Sate Auto Ass'n v. Superior Court,*
   184 Cal.App.3d 1428 (1986) ......................................................................................... 14

17

18
*Cal-Agrex, Inc. v. Van Tassell,*
   2007 U.S. Dist. LEXIS 73676 (N.D. Ca. 2007)............................................................. 15

19
*Careau & Co. v. Security Pacific Business Credit, Inc.,*
   222 Cal.App.3d 1371 (1990) ......................................................................................... 15

20

21
*Comerica, Inc. v. Zurich American Ins. Co.,*
   498 F.Supp.2d 1019 (E.D. Mich. 2007) .................................................................. 15, 16

22

23
*Comunale v. Traders & General Ins. Co.,*
   50 Cal.2d 654 (1958).................................................................................................... 5

24
*Continental Cas. Co. v. U.S. Fid. & Guar. Co.,*
   516 F.Supp. 384 (N.D. Ca. 1981) .................................................................................. 11

25

26
*Crisci v. Security Ins. Co.,*
   66 Cal.2d 425 (1967) .................................................................................................... 5

27

28
*Crosthwaite v. Glavin Constr. Mgmnt.,*
   2007 U.S. Dist LEXIS 73757 (N.D. Ca. 2007)............................................................. 15

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*Diamond Heights Homeowners Assn. v. National American Ins. Co.*,
   227 Cal.App.3d 563 (1991) ............................................................ 6, 7

*Denny's Inc. v. Chicago Ins. Co.*,
   234 Cal.App.3d 1786 (1991) ............................................................ 10

*Employers Ins. of Wasau v. Granite State Ins. Co.*,
   330 F.3d 1214 (9th Cir. 2003) ............................................................ 13

*Federal Ins. Co. v. Srivastava*,
   2 F.3d 98 (5th Cir. 1993) ............................................................ 17

*Flores v. AMCO Ins. Co.*,
   2007 U.S. Dist. LEXIS 86679 (E.D. Ca. 2007) ............................................................ 14

*FMC Corp. v. Plaisted & Cos.*,
   61 Cal.App.4th 1132 (1998) ............................................................ 12

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
   135 Cal.App.4th 958 (2006) ............................................................ 7, 8

*Gemstar-TV Guide Int'l Inc. v. National Union*
   No. CV 06-5183 GAF (JTLx) (C.D. Ca. 2006) ............................................................ 15

*Gould, Inc. v. Arkwright Mut. Ins. Co.*,
   1995 WL 807071 (M.D. Pa. 1995) ............................................................ 18

*Grant v. Sun Indemnity Co. of New York*,
   11 Cal.2d 438 (1938) ............................................................ 4, 20

*Gulezian v. Lincoln Ins. Co.*,
   506 N.E.2d 123 (Mass. 1987) ............................................................ 17

*Hartford Acc. & Indemn. v. Continental Nat. Am. Ins.*,
   861 F.2d 1184 (9th Cir. 1988) ............................................................ 10

*Hellman v. Great American Ins. Co.*,
   66 Cal.App.3d 298 (1977) ............................................................ 10

*Home Indemnity Co. v. Mission Ins. Co.*,
   251 Cal.App.2d 942 (1967) ............................................................ 17

*Ins. Co. of the State of Pa. v. Acceptance Ins. Co.*,
   2002 U.S. Dist. LEXIS 27832 (C.D. Ca. 2002) ............................................................ 13

*Iolab Corporation v. Seaboard Surety Co.*,
   15 F.3d 1500 (9th Cir. 1994) ............................................................ 3, 9, 10-15, 21

*Isaacson v. CIGA,*
  44 Cal.3d 775 (1988)....................................................................................................... 8

*Johansen v. California State Auto. Ass'n.,*
  15 Cal.3d 9 (1975)........................................................................................................... 5

*Kelley v. British Commercial Ins. Co., Ltd.,*
  221 Cal.App.2d 554 (1963) ............................................................................................. 7

*Kennedy v. American Fidelity & Cas. Co., Inc.,*
  97 Cal.App.2d 315 (1950) ............................................................................................. 21

*Koppers Co., Inc. v. Aetna Cas. & Sur. Co.,*
  98 F.3d 1440 (3rd Cir. 1996) ........................................................................................ 18

*Liberate Technologies, Inc. v. Certain Underwriters at Lloyd's London*
  San Mateo County Superior Court No. CIV445162 (2005)............................................. 14

*Lockheed Corp. v. Continental Ins. Co.,*
  134 Cal.App.4th 187 (2005) ........................................................................................... 13

*Love v. Fire Ins. Exchange,*
  221 Cal.App.3d 1136 (1990) ......................................................................................... 14

*Ludgate Ins. Co., Ltd. v. Lockheed Martin Corp.,*
  82 Cal.App.4th 592 (2000) ..................................................................................... 12, 13

*Montrose Chemical Corp. of California v. Admiral Ins. Co.,*
  10 Cal.4th 645 (1995)................................................................................................... 16

*Nabisco, Inc. v. Transport Indem. Co.,*
  143 Cal.App.3d 831 (1983) ........................................................................................... 14

*North River Ins. Co. v. American Home Assur. Co.,*
  210 Cal.App.3d 108 (1989) ........................................................................................... 10

*Northrop Corp. v. American Motorists Ins. Co.,*
  220 Cal.App.3d 1553 (1990) ......................................................................................... 12

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,*
  126 Cal.App.3d 593 (1981) ........................................................................................... 10

*Pacific Employers Ins. Co. v. Domino's Pizza, Inc.,*
  144 F.3d 1270 (9th Cir. 1998) ...................................................................................... 13

*Pan v. State Farm Mut. Auto. Ins. Co.,*
  2007 U.S. Dist. LEXIS 43766 (N.D. Ca. 2007).............................................................. 14

*Pereira v. National Union Fire Ins. Co. of Pittsburgh, Pa.,*
  2006 WL 1982789 (S.D.N.Y. 2006) .............................................................................. 18

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*Phoenix Ins. Co. v. U.S. Fire Ins. Co.,*
189 Cal.App.3d 1511 (1987) .................................................................... 13, 17

*PMI Mortgage Ins. Co. v. American International Specialty Lines Ins. Co.,*
394 F.3d 761 (9th Cir. 2005) ................................................................ 12

*Pruyn v. Agricultural Ins. Co.,*
36 Cal.App.4[th] 500 (1995) ................................................................... 21

*Rummel v. Lexington Ins. Co.,*
945 P.2d 970 (N.M. 1997) ................................................................. 19, 20

*San Diego Housing Comm. v. Industrial Indemnity Co.,*
68 Cal.App.4[th] 526 (1998) ................................................................... 14

*Schwartz v. State Farm Fire & Cas. Co.,*
88 Cal.App.4[th] 1329 (2001) ........................................................... 4, 5, 6

*Schwartz v. Twin City Fire Ins. Co.,*
492 F.Supp.2d 308 (S.D.N.Y. 2007) ....................................................... 8

*Shell Oil Co. v. Winterthur Swiss Ins. Co.,*
12 Cal.App.4[th] 715 (1993) ................................................................... 12

*Signal Cos., Inc. v. Harbor Ins. Co.,*
27 Cal.3d 359 (1980) ............................................................................ 10

*Span, Inc. v. Associated International Ins. Co.,*
227 Cal.App.3d 463 (1991) .............................................................. 16, 17

*State Farm Fire & Cas. Co. v. Jioras,*
24 Cal.App.4[th] 1619 (1994) ................................................................. 14

*The Flintkote Co. v. General Accident Assur. Co. of Canada,*
410 F.Supp.2d 875 (N.D. Ca. 2006) ..................................................... 12

*Ticor Title Ins. Co. v. Employers Ins. of Wausau,*
40 Cal.App.4[th] 1699 (1995) ................................................................. 14

*Times-Picayune Publishing Corp. v. Zurich American Ins. Co.,*
421 F.3d 328 (5th Cir. 2005) ................................................................ 14

*Travelers Cas. & Sur. Co. v. American Int'l Surplus Lines Ins. Co.,*
465 F.Supp.2d 1005 (S.D. Ca 2006) ..................................................... 13

*United Serv. Auto. Ass'n v. Alaska Ins. Co.,*
94 Cal.App.4[th] 638 (2001) ................................................................... 21

*United States Fire Ins. Co. v. Charter Financial Group, Inc.,*
851 F.2d 957, 961 (7th Cir. 1988) ....................................................... 18

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*UNR Industries, Inc. v. Continental Cas. Co.*,
    942 F.2d 1101 (7th Cir. 1991) ........................................ 18

*U.S. Fire Ins. Co. v. Lay*,
    577 F.2d 421 (7th Cir. 1978) ........................................ 14

*Waller v. Truck Ins. Exch.*,
    11 Cal.4[th] 1 (1995)........................................................ 14

*Wells Fargo Bank, N.A. v. Cal. Ins. Guar. Ass'n*,
    38 Cal.App.4th 936 (1995) ............................................ 14

*Zeig v. Mass. Bonding & Ins. Co.*,
    23 F.2d 665 (2d Cir. 1928) ..............................15, 18, 20

## Statutes

Calif. Code of Civil Procedure Section 1060 ........................ 13

## Other Authorities

14 Couch on Insurance (3d ed. 1999) at §199:48 .................. 8

*Croskey, et al., California Practice Guide:  Insurance Litigation*
    (Rutter Group 2007), §8:232 ........................................ 11