1  STROOCK & STROOCK & LAVAN LLP
   MICHAEL F. PERLIS (State Bar No. 95992)
2  mperlis@stroock.com
   RICHARD R. JOHNSON (State Bar No. 198117)
3  rjohnson@stroock.com
   RACHAEL SHOOK (State Bar No. 251628)
4  rshook@stroock.com
   2029 Century Park East, Suite 1800
5  Los Angeles, California  90067-3086
   Telephone: 310-556-5800
6  Facsimile: 310-556-5959
   lacalendar@stroock.com
7
   Attorneys for Defendants
8    TWIN CITY FIRE INSURANCE COMPANY

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12  CROWLEY MARITIME CORPORATION,          )   Case No. CV-08-00830 SI
13                    Plaintiff,           )
                                           )   [Hon. Susan Illston]
14       vs.                               )
                                           )   **DEFENDANT TWIN CITY FIRE**
15  FEDERAL INSURANCE COMPANY; TWIN        )   **INSURANCE COMPANY'S ANSWER TO**
    CITY FIRE INSURANCE COMPANY; RLI       )   **PLAINTIFF CROWLEY MARITIME**
16  INSURANCE COMPANY; and DOES 1-20,      )   **CORPORATION'S FIRST AMENDED**
    inclusive,                             )   **COMPLAINT AND COUNTERCLAIM**
17                                         )   **FOR BREACH OF CONTRACT**
18                    Defendants.          )
                                           )   **DEMAND FOR JURY TRIAL**
19                                         )
                                           )   **Action filed:**   **January 7, 2008**
20                                         )   **Removal date:**   **February 6, 2008**
                                           )   **Trial date:**     **None set**
21                                         )
                                           )
22  _____)

23

24

25

26

27

28  LA 51048136
   _____
   **DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY**
   **MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM  FOR BREACH**
   **OF CONTRACT - Case No. CV-08-00830 SI**

Defendant Twin City Fire Insurance Company ("Twin City") hereby answers the First Amended Complaint of Plaintiff Crowley Maritime Corporation ("Plaintiff") as follows:

## I.    <u>GENERAL ALLEGATIONS</u>

1.    Responding to the allegations in Paragraph 1, Twin City ADMITS all the allegations therein based on information and belief, except that, based on information and belief, Plaintiff has five operating lines of business including technical services.

2.    Responding to the allegations in Paragraph 2, Twin City ADMITS the allegations therein as to Twin City and, as to RLI and Federal, ADMITS the allegations therein based on information and belief.

3.    Responding to the allegations in Paragraph 3, Twin City DENIES all the allegations therein.

4.    Responding to the allegations in Paragraph 4, the Federal Policy is attached to the Plaintiff's Complaint as Exhibit A, and the Policy speaks for itself.

5.    Responding to the allegations in Paragraph 5, the Twin City Policy is attached to the Plaintiff's Complaint as Exhibit B, and the Policy speaks for itself.

6.    Responding to the allegations in Paragraph 6, the RLI Policy is attached to the Plaintiff's Complaint as Exhibit C, and the Policy speaks for itself.

7.    Responding to the allegations in Paragraph 7, Twin City ADMITS that a lawsuit was filed against Plaintiff and certain members of its board of directors on November 30, 2004 in the Court of Chancery in the State of Delaware, entitled *Franklin Balance Sheet Investment Fund v. Crowley*, C.A. No. 888-VCP (hereafter referred to as the "*Franklin Fund* Action"). The *Franklin Fund* complaint speaks for itself.  Twin City avers that it received notice of the claims on December 21, 2004.  Except as admitted, Twin City DENIES the allegations in Paragraph 7.

8.    Responding to the allegations in Paragraph 8, the letter sent by Plaintiff to Federal, Twin City and RLI (collectively, the "Insurers") in March 2007 (the "March 2007 Letter") is attached as Exhibit D to Twin City's Request for Judicial Notice in Support of Reply in Support of Motion to Dismiss Plaintiff's Complaint filed March 21, 2008. The March 2007 Letter speaks for

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

- 1 -

itself. Twin City DENIES the allegation that "plaintiff's notification sought the Insurers' consent to the proposed settlement." In fact, the March 2007 Letter, which stated that the proposed settlement "had not yet been consummated" was false and fraudulent in that the parties to the *Franklin Fund* Action, through their signatories, had already agreed on March 19, 2008 to a settlement which was not conditioned on the consent of the Insurers. The Stipulation and Agreement of Compromise, Settlement and Release, (the "Settlement Stipulation") is attached hereto as Exhibit A and speaks for itself. Twin City further avers that settlement negotiations were secretly ongoing approximately three months prior to the signing of the Settlement Stipulation. In the March 2007 Letter, Plaintiff falsely and fraudulently represented to the Insurers that notification as required by the Policies was not given earlier because Plaintiff "was constrained by significant confidentiality issues….relat[ing] not only to applicable SEC disclosure rules, but also to financing arrangements necessary to fund the proposed purchase of the plaintiff's shares." Plaintiff knew at the time these representations were made that they were false, and there were no such constraints, as by March 19, 2007, Plaintiff had already made public filings with the SEC announcing the terms of the settlement, including a Schedule 13(d). (Plaintiff's Schedule 13(d) filed with the SEC March 19, 2007, attached hereto as Exhibit B). Twin City ADMITS that Twin City did not and was not required to respond to the March 2007 Letter unless and until the primary carrier indicated its consent and willingness to fund the entire settlement. Furthermore, the March 2007 Letter implied that the amount of settlement would not enter Twin City's coverage layer. Twin City is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8 and on that basis DENIES them.

9.      Responding to the allegations in Paragraph 9, the Delaware Court of Chancery's Order speaks for itself. Twin City DENIES the remaining allegations, because, among other reasons, the settlement released claims for which relief was neither requested nor available in the *Franklin Fund* Action and provided the *Franklin Fund* plaintiffs with "approximately 4.35 times the benefit they would have received from a successful trial and recovery critically[.]" (Plaintiffs'

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

- 2 -

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT - Case No. CV-08-00830 SI**

1  Brief in Support of the Proposed Settlement, (the "Settlement Brief") attached hereto as Exhibit C).

2  Except as admitted, Twin City DENIES the remaining allegations in Paragraph 9.

3         10.    Responding to the allegations in Paragraph 10, the first two and last sentences are

4  conclusions of law and thus no response is required. As to the remaining allegations, Twin City

5  DENIES that it failed to conduct a reasonable investigation as Twin City had nothing to

6  investigate.

7         11.    Responding to the allegations in Paragraph 11, Twin City is without information or

8  knowledge sufficient to form a belief as to the truth of the allegations therein and on that basis

9  DENIES them. However, Twin City avers that the Policies did not obligate the Insurers to defend.

10        12.    Responding to the allegations in Paragraph 12, these are conclusions of law and as

11 such no response is required. To the extent the allegations are not conclusions of law, Twin City

12 DENIES the allegation that Plaintiff is excused from compliance with the Insurers' consent

13 provisions.  Twin City is without information or knowledge sufficient to form a belief as to the

14 truth of the remaining allegations in Paragraph 12 and on that basis DENIES them.

15        13.    Responding to the allegations in Paragraph 13, these are conclusions of law and as

16 such no response is required. To the extent the allegations are not conclusions of law, Twin City

17 DENIES the allegation that Plaintiff is excused from compliance with the Insurers' consent

18 provisions.  Twin City is without information or knowledge sufficient to form a belief as to the

19 truth of the remaining allegations in Paragraph 13 and on that basis DENIES them.

20        14.    Responding to the allegations in Paragraph 14, these are conclusions of law and as

21 such no response is required. To the extent the allegations are not conclusions of law, Twin City

22 DENIES the allegation that Plaintiff is excused from obtaining the Insurers' consent before settling

23 the *Franklin Fund* Action.

24        15.    Responding to the allegations in Paragraph 15, Twin City ADMITS that reasonable

25 defense costs incurred with the Insurers' consent may constitute covered Loss subject to the terms

26 and limitations of the Policies. However, Twin City DENIES the allegations that Plaintiff incurred

27 any other covered Loss under the Policies.  Twin City is without information or knowledge

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 3 -

1  sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 and on that

2  basis DENIES them.

3        16.    Responding to the allegations in Paragraph 16, Twin City DENIES the allegations

4  therein. Plaintiff's allegation that Twin City breached the Policies is a violation of this Court's

5  April 14, 2008 Order dismissing Plaintiff's breach of contract and bad faith claims against Twin

6  City.

7                        **FIRST CLAIM FOR RELIEF**

8                          **Breach of Contract**

9                          **(Against Federal)**

10       17.    Responding to the allegations in Paragraph 17, Twin City ADMITS or DENIES the

11  allegations incorporated by reference in Paragraph 17 as set forth above in its Answers to

12  Paragraphs 1 through 16.

13       18.    Responding to the allegations in Paragraph 18, the Federal Policy is attached to the

14  Plaintiff's Complaint as Exhibit A, and the Policy speaks for itself.

15       19.    Responding to the allegations in Paragraph 19, Twin City DENIES the allegations

16  therein based on information and belief.

17       20.    Responding to the allegations in Paragraph 20, Twin City DENIES the allegations

18  therein based on information and belief.

19       21.    Responding to the allegations in Paragraph 21, Twin City DENIES the allegations

20  therein based on information and belief.

21       22.    Responding to the allegations in Paragraph 22, Twin City DENIES the allegations

22  therein based on information and belief.

23       23.    Responding to the allegations in Paragraph 23, Twin City DENIES the allegations

24  therein based on information and belief.

25       24.    Responding to the allegations in Paragraph 24, Twin City DENIES the allegations

26  therein based on information and belief.

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 4 -

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT - Case No. CV-08-00830 SI**

1    25.    Responding to the allegations in Paragraph 25, Twin City DENIES the allegations

2    therein based on information and belief.

3    26.    Responding to the allegations in Paragraph 26, Twin City DENIES the allegations

4    therein based on information and belief.

5    ## SECOND CLAIM FOR RELIEF

6    ## Breach of the Implied Covenant of Good Faith and Fair Dealing

7    ### (Against Federal)

8    27.    Responding to the allegations in Paragraph 27, Twin City ADMITS or DENIES the

9    allegations incorporated by reference in Paragraph 27 as set forth above in its Answers to

10    Paragraphs 1 through 26.

11    28.    Responding to the allegations in Paragraph 28, these allegations are conclusions of

12    law for which no response is required, and on that basis Twin City DENIES them.

13    29.    Responding to the allegations in Paragraph 29, Twin City DENIES the allegations

14    therein based on information and belief.

15    30.    Responding to the allegations in Paragraph 30, Twin City DENIES the allegations

16    therein based on information and belief.

17    31.    Responding to the allegations in Paragraph 31, Twin City DENIES the allegations

18    therein based on information and belief.

19    32.    Responding to the allegations in Paragraph 32, Twin City DENIES the allegations

20    therein based on information and belief.

21    33.    Responding to the allegations in Paragraph 33, Twin City DENIES the allegations

22    therein based on information and belief.

23    34.    Responding to the allegations in Paragraph 34, Twin City DENIES the allegations

24    therein based on information and belief.

25    /

26    /

27    /

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 5 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

### THIRD CLAIM FOR RELIEF

#### Declaratory Relief

#### (Against Twin City and RLI)

35.     Responding to the allegations in Paragraph 35, Twin City ADMITS or DENIES the allegations incorporated by reference in Paragraph 35 as set forth above in its Answers to Paragraphs 1 through 35.  Plaintiff's incorporation of Paragraphs 1 through 34 is a violation of this Court's April 14, 2008 Order dismissing Plaintiff's breach of contract and bad faith claims against Twin City.

36.     Responding to the allegations in Paragraph 36, Twin City ADMITS that Plaintiff purports to claim an actual controversy has arisen between the parties regarding the respective rights and obligations of Twin City, RLI, and Plaintiff under the Twin City and RLI Policies in connection with the *Franklin Fund* settlement. Twin City DENIES that Plaintiff is entitled to any relief.

37.     Responding to the allegations in Paragraph 37, Twin City ADMITS that Plaintiff asserts a claim for declaratory judgment as described in Paragraph 37 but DENIES that Plaintiff is entitled to any relief.

38.     Responding to the allegations in Paragraph 38, Twin City ADMITS that Plaintiff desires a judicial determination and declaration of Plaintiff's and the Excess Insurers' respective rights and duties under the Excess Policies, specifically a declaration that the Excess Insurers are obligated – along with Federal, to indemnify Plaintiff for the Franklin Fund settlement. Plaintiff DENIES that the Franklin Fund settlement constitutes "Loss." Except as admitted, Twin City DENIES each and every remaining allegation in Paragraph 38.

/

/

/

/

/

/

/

LA 51048136

- 6 -

## II.    **AFFIRMATIVE DEFENSES**

As for its affirmative defenses, Twin City alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.      The First Amended Complaint fails to state any claim against Twin City upon which relief can be granted, either in law or in equity.

### SECOND AFFIRMATIVE DEFENSE

### (Policy Definition of Loss)

2.      Plaintiff's claim against Twin City is barred, in whole or in part, because the *Franklin Fund* settlement is not covered Loss.

### THIRD AFFIRMATIVE DEFENSE

### (Personal Profit Exclusion)

3.      Plaintiff's claim against Twin City is barred, in whole or in part, because the Federal Policy precludes coverage for "…Loss an account of any Claim made against any Insured Person based upon, arising from, or in consequence of such Insured Person having gained in fact any profit, remuneration or advantage to which such Insured Person was not legally entitled." (Complaint, Exhibit A, Federal Policy, Exclusion No. 7 (b)(ii)).

### FOURTH AFFIRMATIVE DEFENSE

### (Offset, Setoff, Recoupment)

4.      Plaintiff's claim against Twin City is barred, in whole or in part, by the doctrines of offset, setoff, and/or recoupment, to the extent that Plaintiff and/or any Insureds have realized any gain or profit in connection with the matters for which Plaintiff seeks coverage.

### FIFTH AFFIRMATIVE DEFENSE

### (Fraud)

5.      Plaintiff's claim against Twin City is barred, in whole or in part, because Plaintiff fraudulently induced Twin City to refrain from executing its rights under the Policies through concealment, misrepresentation and deceit.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

- 7 -

LA 51048136

## SIXTH AFFIRMATIVE DEFENSE

### (Breach of Contractual Obligations)

6.    Plaintiff's claim against Twin City is barred, in whole or in part, by Plaintiff's breach(es) of its own contractual obligations under the Twin City Policy, including, but not limited to, its obligation to acquire Twin City's written consent to settlement.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

7.    Plaintiff's claim against Twin City is barred, in whole or in part, by failure of conditions precedent to coverage, including without limitation, failure to obtain Twin City's written consent to settlement, which is a condition precedent to coverage.

## EIGHTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

8.    Plaintiff's claim against Twin City is barred, in whole or in part, by reason of Plaintiff's unclean hands.

## NINTH AFFIRMATIVE DEFENSE

### (Estoppel)

9.    Plaintiff's claim against Twin City is barred, in whole or in part, by the doctrine of estoppel.

## TENTH AFFIRMATIVE DEFENSE

### (Uninsurable Disgorgement/Restitution)

10.    Plaintiff's claim against Twin City is barred, in whole or in part, to the extent the claims in the *Franklin Fund* Action state claims which are uninsurable by law, inasmuch as they seek coverage for the disgorgement or restitution by Plaintiff or other Insureds of monies to which Plaintiff or other Insureds were never legally entitled.

/
/
/
/
/

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 8 -

## III.   TWIN CITY FIRE INSURANCE COMPANY'S COUNTERCLAIM

Defendant and Counterclaimant Twin City Insurance Company ("Twin City") hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the defendants served in this action, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs

2.      Venue is proper as the instant action was removed from Superior Court to a United States District Court within the same district. 28 U.S.C. § 1441(a); *Hollis v. Florida State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001).

### PARTIES

3.      Twin City is informed and believes, and on that basis alleges, that Plaintiff Crowley Maritime Corporation ("Plaintiff") is a corporation organized and incorporated under the laws of the state of Delaware, and has its principal place of business in Florida.

4.      Twin City is informed and believes, and on that basis alleges, that Defendant Federal is an insurance company organized and incorporated under the laws of the state of Indiana, and has its principal place of business in the state of New Jersey.

5.      Defendant Twin City is an insurance company organized and incorporated under the laws of the state of Indiana, and has its principal place of business in the state of Connecticut.

6.      Twin City is informed and believes, and on that basis alleges, that Defendant RLI is an insurance company organized and incorporated under the laws of the state of Illinois, and has its principal place of business in the state of Illinois.

### COMPLAINTS

7.      On or about January 7, 2008, Plaintiff filed a civil action against Federal, Twin City, and RLI (collectively, the "Insurers") in the Superior Court of California, City and County of San Francisco, entitled *Crowley Maritime Corp. v. Federal Insurance Co., et al*, No. 08-740782 and alleging claims of breach of contract and breach of the implied covenant of good faith and fair

- 9 -

LA 51048136

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1  dealing ("bad faith") against all Insurers. On February 6, 2008, the Insurers timely removed the

2  action to this Court on diversity grounds. On April 18, 2008, Plaintiff filed its First Amended

3  Complaint realleging claims for Breach of Contract and Bad Faith against Federal and seeking

4  Declaratory Relief against Twin City and RLI.

5  ## **BACKGROUND FACTS**

6      8.     Twin City issued an Excess Financial Products Insurance Policy to Plaintiff, *viz.*,

7  policy number 00 DA 0100967-04, with a limit of liability of $10,000,000 in excess of

8  $10,000,000, for the Policy Period of November 1, 2004 to November 1, 2005 (the "Twin City

9  Policy"). (Complaint, Exhibit B.) The Twin City Excess Policy generally follows form, subject to

10  its own terms and conditions, to the underlying Primary Policy, *viz.*, Executive Protection Portfolio,

11  policy number 8120-0792, issued by Federal with a limit of liability of $10,000,000, subject to a

12  $500,000 retention (the "Federal Policy"). (Complaint, Exhibit A).

13      9.     The Federal and Twin City Policies require that Plaintiff Insureds not settle any

14  claim without Federal and Twin City's written consent. (Complaint, Exhibit A, Federal Policy, ¶

15  16, "Defense and Settlement"; Complaint, Exhibit B, Twin City Policy, pt. IV (A)).

16      10.     On or about November 30, 2004, the *Franklin Fund* Action was filed against

17  Plaintiff and certain members of its board of directors in the Court of Chancery in the State of

18  Delaware.

19      11.     Beginning about December 2006, Plaintiff and the plaintiffs in the *Franklin Fund*

20  Action engaged in "extensive arms-length negotiations." These discussions included the detailed

21  terms and conditions of a proposed settlement (Stipulation and Agreement of Compromise,

22  Settlement and Release ("Settlement Stipulation"), p. 3) and were kept secret from the Insurers.

23      12.     On March 28, 2007, Plaintiff sent the Insurers a letter (the "March 2007 Letter")

24  asking for the Insurers' consent to the settlement. Plaintiff did not reveal that nine days prior,

25  Plaintiff had signed a settlement agreement not conditioned on the Insurers' consent.

26      13.     Plaintiff's misrepresentations in The March 2007 Letter included the statement that

27  "[Plaintiff] was constrained by significant confidentiality issues that prevented it, as a practical

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

- 10 -

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT - Case No. CV-08-00830 SI**

matter, from immediately inviting its D & O carriers to join in the negotiations." The alleged confidentiality issues related to purported SEC disclosure rules and purported financing arrangements necessary to fund the proposed purchase of plaintiffs' shares. Those representations were false and did not excuse compliance with the consent provisions of the Policies.

14.    Such actions constituted a breach of contract.

## COUNTERCLAIM FOR BREACH OF CONTRACT

### (against Plaintiff Crowley Maritime Corporation)

15.    Twin City incorporates herein, as if set forth in full, each of the allegations of Paragraphs 1 through 14 above.

16.    Twin City has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Twin City and Federal Policies.

17.    Plaintiff breached the Policies by failing to obtain Twin City's written consent before entering into a settlement agreement with the plaintiffs in the *Franklin Fund* Action.

18.    As a result of Plaintiff's breach, Twin City has been forced to defend against the instant action before this Court, incurring costs to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Twin City prays for judgment as follows:

1.    That Plaintiff take nothing by way of the First Amended Complaint, that the First Amended Complaint be dismissed and that judgment be rendered in favor of Twin City;

2.    That judgment be rendered that Plaintiff has breached its contract with Twin City;

3.    That Twin City be awarded damages according to proof;

4.    That Twin City be awarded its attorneys' fees incurred in connection with the defense of the Complaint(s) and prosecution of this Counterclaim;

5.    That Twin City be awarded its costs of suit incurred herein;

6.    That any damages awarded to Plaintiff be offset against any benefit Plaintiff might have received in settling the *Franklin Fund* Action;

7.    For such other and further relief as this Court may deem just and proper.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 11 -

1

## JURY TRIAL DEMANDED

2

Twin City Fire Insurance Company demands trial by jury under Fed. R. Civ. Proc. 38(a).

3

4    Dated:  May 2, 2008

STROOCK & STROOCK & LAVAN LLP
MICHAEL F. PERLIS
RICHARD R. JOHNSON
RACHAEL SHOOK

5

6

7

8

By:    /s/ Michael F. Perlis

9

Michael F. Perlis

10

Attorneys for Defendant
TWIN CITY FIRE INSURANCE
COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

- 12 -

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT - Case No. CV-08-00830 SI**

# Exhibit A

EFiled: Mar 19 2007 2:28PM EDT
Transaction ID 14171332
Case No. 888-VCP

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund LPD and Channell Partnership II, LP, and John H. Norberg, Jr., Individually, derivatively and on behalf of a Class of similarly situated stockholders, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 888-VCP |
| Thomas B. Crowley, Jr., Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, Cameron W. Wolfe, Jr., | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| Crowley Maritime Corporation, | ) ) ) | |
| Nominal Derivative Defendant. | ) ) | |

## STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT AND RELEASE

The parties to the above-captioned action (the "Action"), by and through their attorneys, have entered into the following Stipulation and Agreement of Compromise, Settlement and Release (the "Stipulation"), subject to the approval of the Court:

1

EXHIBIT A PAGE 13

WHEREAS:

A.    On November 30, 2004, Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund LPD and Channell Partnership II, LP ("Initial Plaintiffs"), filed a complaint in the Court of Chancery of the State of Delaware in and for New Castle County (the "Complaint"), which was styled to include both a derivative claim, putatively brought on behalf of the Crowley Maritime Corporation (the "Company") and class claims, putatively brought on behalf of the Initial Plaintiffs and all other holders of the Company's common stock (other than defendants and any of their affiliates).  Among other things, the Complaint alleged that the directors breached their fiduciary duties by putting in place a "policy" to ensure that the Crowley family maintained control of the Company, including by entering into split-dollar life insurance agreements (the "Split-Dollar Agreements").  The Complaint alleged that by entering into and authorizing the Company to make payments under the Split-Dollar Agreements, the directors breached their fiduciary duties and injured the stockholders of the Company.  The Initial Plaintiffs asked the Court to certify a class, grant declaratory relief, and order the disgorgement of profits and damages in an amount equal to the premiums, cost and expenses paid with respect to the Split-Dollar Agreements.

B.    On February 25, 2005, the defendants moved to dismiss the Complaint. The Court heard oral argument on the motion on August 3, 2005, and, pursuant to the Court's direction at the conclusion of the argument, on October 24, 2005, defendants filed a supplemental brief.

2

EXHIBIT _A_ PAGE 14

C.    In response, on December 27, 2005, Initial Plaintiffs, in lieu of filing a responsive supplemental brief, sought leave to amend their complaint and to add another plaintiff to address the issues raised by the motion to dismiss.

D.    On October 19, 2006, the Court granted Initial Plaintiffs leave to amend the Complaint and add another plaintiff. On October 24, 2006, the Initial Plaintiffs filed an amended complaint (the "Amended Complaint"), which added Norberg as a plaintiff, and made new allegations (together with all named Initial Plaintiffs, the "Plaintiffs").

E.    On November 7, 2006, the defendants moved to dismiss the Amended Complaint. On November 27, 2006, the parties entered into a briefing schedule on defendants' motion to dismiss the Amended Complaint, with argument to be heard on February 22, 2007.

F.    In December 2006, counsel for the defendants and counsel for the Plaintiffs engaged in extensive arm's-length negotiations concerning a possible settlement of the claims alleged in the Amended Complaint. The parties discussed settling those claims by providing Plaintiffs an opportunity to sell their shares for cash to liquidate their minority position in the Company. After numerous discussions, Plaintiffs agreed to consider a tender offer for their shares, but insisted that their valuation of the Company indicated that the price to be offered would have to substantially exceed the bid price for the shares (which at the time was approximately $1800.00 per share). Following extended negotiations between counsel for the parties, Plaintiffs indicated that they would favorably consider an offer of $2,990.00 per share for their stock in the context of a tender offer for all shares, conditioned on at least 95% of the shares being tendered and a majority of the unaffiliated shares being tendered.

G.    In evaluating the settlement proposed herein (the "Settlement"), Plaintiffs and their counsel considered, among other things: (i) the benefit to the Plaintiffs and the class

3

provided by the Settlement, particularly the opportunity to liquidate their minority position for cash at a substantial premium to the bid price of the shares; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of the litigation; (iii) the probability of recovery and nature of a judgment thereon; and (iv) the conclusion reached by the Plaintiffs and their counsel after investigation and consideration sufficient to inform themselves of the merits of the Settlement, that the terms of the Settlement are fair and reasonable and in the best interest of the Plaintiffs and the class.

H.    Defendants have vigorously denied, and continue to deny, any wrongdoing or liability with respect to all claims, events and transactions complained of in the Amended Complaint, deny that they engaged in any wrongdoing, deny that they committed any violation of law, deny that they breached any fiduciary duties, deny that they acted improperly in any way and deny liability of any kind to Plaintiffs or the potential class, but consider it desirable that the Action be settled and dismissed on the merits and with prejudice in order to: (i) avoid the substantial expense, inconvenience and distraction of continued litigation; (ii) dispose of potentially burdensome and protracted litigation; and (iii) finally put to rest and terminate the claims asserted in the Action.

NOW, THEREFORE, IT IS STIPULATED AND AGREED, subject to the approval of the Court, and pursuant to Delaware Court of Chancery Rules 23(e) and 23.1, that all claims, rights, demands, suits, matters, issues or causes of action, whether known or unknown, of the Plaintiffs and all class members (as herein defined) against all defendants and any of their present or former officers, directors, employees, stockholders, agents, attorneys, advisors, insurers, accountants, trustees, financial advisors, commercial bank lenders, persons who provided fairness opinions, investment bankers, associates, representatives, affiliates, parents,

4

EXHIBIT A PAGE 10

subsidiaries (including the directors and officers of such affiliates, parents, and subsidiaries), general partners, limited partners, partnerships, heirs, executors, personal representatives, estates, administrators, successors and assigns (collectively, "Defendants' Affiliates"), whether such claims arise or could have arisen under state or federal law, including the federal securities laws (except for claims for appraisal pursuant to Section 262 of the Delaware General Corporation Law of stockholders who properly demand appraisal and have not otherwise waived their appraisal rights), and whether directly, derivatively, representatively or arising in any other capacity, that arise out of or in connection with, any claim that was or could have been brought in the Amended Complaint, or that arises now or hereafter out of, or that relates in any way to, the acts, facts or the events alleged in the Amended Complaint including, without limitation, the Life Insurance Agreements and the Settlement Agreement (as those terms are defined in the Amended Complaint), any premiums, expenses, costs or other monies paid or forgiven by the Company relating thereto, and any agreements and disclosures relating thereto, and any acts, facts, matters, transactions, occurrences, conduct or representations relating to or arising out of the subject matter referred to in the Amended Complaint, and the fiduciary and disclosure obligations of any of the defendants (or other persons to be released) with respect to any of the foregoing (whether or not such claim could have been asserted in the Amended Complaint), shall be forever compromised, settled, released and dismissed with prejudice (the "Settled Claims"), upon and subject to the following terms and conditions:

1.     Crowley Newco Corporation, (the "Purchaser") a corporation formed by Thomas B. Crowley Jr., will make a cash tender offer to acquire all of the outstanding public shares of common stock of the Company, including all shares currently held by Plaintiffs and the members of the putative class (the "Public Shares"), for $2990.00 per share in cash (the "Offer").

EXHIBIT A PAGE 17

The Offer will include conditions requiring that there be validly delivered and not withdrawn prior to the expiration date of the Offer a number of shares of common stock of the Company that constitute: (a) a majority of the Public Shares (the "Majority of the Minority Condition"); and (b) together with the shares beneficially owned by the Purchaser, at least 95% of the total number of shares outstanding on the expiration date of the Offer (the "Minimum Condition"). The Offer will also include conditions that this Court shall have approved the settlement of this litigation and entered its final order (and the time for any appeal shall have expired) prior to the closing of the Offer, that there be no material adverse change in the business or assets of the Company prior to the closing of the Offer, that there be no pending governmental or legal action challenging or delaying the consummation of the Offer or the Merger (as defined below), and that the Crowley Board of Directors shall not have determined to oppose the Offer or Merger. Plaintiffs hereby agree to tender all of the shares they own or control and will not oppose the Offer or Merger, withdraw such shares, transfer or dispose or such shares or exercise appraisal rights in the Merger.  Under the terms of the Offer, the Purchaser may waive certain conditions.

2.     Immediately following expiration of the Offer and at the same time as it accepts for payment and purchases the tendered Public Shares, the Purchaser will complete the acquisition of all of the shares beneficially owned or held by Thomas B. Crowley, Jr., Christine S. Crowley and Molly M. Crowley (other than 278 shares held by the Crowley Foundation), as well as those shares held by the Company's Retirement Stock Plan, Stock Savings Plan and Employee Stock Ownership Plan, then will merge with and into the Company, with the Company continuing as the surviving Company following the merger (the "Merger").   The Purchaser will complete the Merger at the same price to be paid in the Offer ($2990.00 per share), following consummation of the Offer according to its terms.

EXHIBIT A PAGE 18

3.     As soon as practicable after the Stipulation has been executed, the parties hereto shall jointly apply to the Court for an Order (in the form attached hereto as Exhibit A), with respect to notice and the settlement hearing (the "Scheduling Order"):

(a.)    Provisionally certifying this Action as a class action pursuant to Delaware Court of Chancery Rules 23(a), 23(b)(1) and 23(b)(2) on behalf of the class to include all record and beneficial owners of shares of common stock of the Company on any day during the period from December 23, 2003 to and including the effective date of the consummation of the Merger (other than Defendants and their "affiliates" and "associates" (as those terms are defined in Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934)), including the legal representatives, heirs, successors-in-interest, transferees or assigns of all such foregoing holders, immediate and remote ("the Class");

(b.)    Providing that the Plaintiffs in the Action are designated as the class and derivative representatives (the "Representatives"), and designating their counsel as Class and Derivative Counsel;

(c.)    Directing that a hearing be held by the Court (the "Settlement Hearing") to determine, among other things (i) whether the Court should approve the Settlement and enter the Order and Final Judgment dismissing the Amended Complaint pursuant to Rules 23(e) and 23.1 of the Court of Chancery with prejudice and on the merits, each party to bear its own costs (except as expressly provided herein) and extinguishing and releasing any and all Settled Claims; (ii) whether, in the event that the Court approves the Settlement, to grant Plaintiffs' application for an award of attorneys' fees and for the reimbursement of expenses incurred that they may make in accordance with the Stipulation; and (iii) such other matters as the Court may deem necessary and appropriate;

7

(d.) Providing that a copy of the Notice of Pendency of Class Action, Proposed Settlement of Class and Derivative Action, Settlement Hearing; and Right to Appear (the "Notice"), substantially in the form attached hereto as Exhibit B, be mailed by or on behalf of the Company by first-class mail within ten (10) business days of the date of the Scheduling Order, in the name of the Register in Chancery or by the direction of the Court, to all record holders and beneficial owners of shares of common stock of the Crowley Maritime Corporation (other than the defendants and Defendants' Affiliates) who held common stock on any day during the period from December 23, 2003 to the present at their last known addresses appearing in the stockholders' records of the Company; and

(e.) Requesting that record holders in the Class who are not also the beneficial owners of the shares of the Company's common stock held by them of record forward the Notice to the Class to such beneficial owners of those shares. Additional copies of the Notice to the Class will be made available to the record holders for this purpose upon request.

4. If the Settlement (including any modification thereto made with the consent of the parties as provided for herein) and all transactions preparatory or incident thereto shall be approved by the Court following a hearing as fair, reasonable and adequate and in the best interest of the Class, the parties shall jointly request the Court to enter an Order and Final Judgment (substantially in the form attached hereto as Exhibit C) (the "Final Judgment"). The Final Judgment shall, among other things:

(a.) Certify this Action as a class action pursuant to Delaware Court of Chancery Rules 23(a) and 23(b)(1) on behalf of the Class;

(b.) Certify the Plaintiffs in the Action as the Class and Derivative Representatives;

EXHIBIT A PAGE 20

(c.)  Certify the Representative's counsel as Class and Derivative Counsel;

(d.)  Approve the Settlement, and all transactions preparatory or incident thereto, as fair, reasonable, adequate and in the best interest of the Class, pursuant to Chancery Court Rule 23(e) and the Corporation pursuant to Chancery Court Rule 23.1;

(e.)  Authorize performance of the Settlement in accordance with its terms and conditions;

(f.)  Dismiss the Action with prejudice including with prejudice against all Plaintiffs and members of the Class, without costs except as hereinafter provided and release defendants, Defendants' Affiliates, and each of them, from the Settled Claims upon consummation of the Offer and Merger in accordance with the terms and conditions of the Offer and this Stipulation.

5.  The Effective Date of the Settlement proposed by this Stipulation shall be five (5) days after the latter of: (i) consummation of the Merger and (ii) entry by the Court of a Final Order and Judgment approving the Settlement that is no longer subject to further appeal or reargument, either because the time for an appeal or reargument has expired with no appeal or reargument being taken, or an appeal has been taken but has been dismissed with no further right of appeal or reargument, or the Order and Final Judgment approving the Settlement has been finally affirmed with no further right of appeal or reargument, or the Final Order and Judgment approving the Settlement has otherwise become final.

6.  If the Settlement provided herein is approved by the Court, the Representative's counsel will apply to the Court for an award of attorneys' fees and expenses. The Company shall pay on behalf of all defendants only the fees and expenses as the Court

EXHIBIT A PAGE 21

directs. Neither Crowley, nor any individual defendant, nor any of the Defendants' Affiliates shall be liable for any other fees or expenses of the Class. Any fees or expenses that are awarded pursuant to the terms of this Stipulation shall be paid within ten (10) business days after the Effective Date (defined above); provided however, that no such fees or expenses shall be paid until all proceedings described in paragraph 11 hereof have been dismissed or withdrawn.

7.      The procedure for and the allowance or disallowance by the Court of any application by Class Counsel for attorneys' fees are not part of the Settlement set forth in this Stipulation and may be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the fee application, or any appeal from any order relating thereto or reversal or modification thereof, are not intended to operate to terminate or cancel this Stipulation, or affect or delay the finality of the Order and Final Judgment approving this Stipulation and the Settlement of the Action. Further, it is the intention of the parties that any order, proceedings or appeal relating to the application for fees not affect or delay the finality of the judgment approving this Stipulation or the Settlement.

8.      Except as provided in this Stipulation, defendants and Defendants' Affiliates shall bear no other expenses, costs, damages or fees incurred by the Representative, or any member of the Class, or by any attorney, expert, adviser, agent or representative of any of the foregoing persons.

9.      The Company shall assume the administrative responsibility of providing the Notice to the Class and its stockholders in accordance with the Scheduling Order, and shall bear the expense of mailing the Notice. Prior to or at the Settlement Hearing, counsel for the

EXHIBIT A PAGE 22

Company shall file with the Court an appropriate affidavit with respect to the initial mailing of the Notice.

10.    The release contemplated by this Stipulation extends to claims that the Representatives, on behalf of themselves, the Class, and the Company do not know or suspect to exist at the time of the release, which if known, might have affected the decision to enter into this release. Each of the named Representatives and each member of the Class shall be deemed to waive any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims including, without limitation, Section 1542 of the California Civil Code (any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542) which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR

The Representatives, on behalf themselves, the Class, and the Company further acknowledge that members of the Class may discover facts in addition to or different to those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, on behalf of the Class, to fully, finally and forever settle and release any and all claims released hereby known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.

11

11.    If any claims which are or would be subject to the release and discharge contemplated by the Settlement are asserted against any person in any court prior to the Effective Date of the Settlement, Plaintiffs shall join in any motion to dismiss or stay such proceedings and shall otherwise use their best efforts to effect a withdrawal or dismissal of the claims. If, following a motion to dismiss, such claims are not dismissed or the action or actions in which such claims are asserted are not stayed in contemplation of dismissal subject only to approval of this proposed Settlement, any of the defendants may, at their sole discretion, withdraw from the Settlement. Any party electing to withdraw from the Settlement must provide all counsel with a notice of such withdrawal within ten (10) business days of any decision or decisions denying the dismissal or stay of such claims.

12.    If, for any reason, this Stipulation (including any amendment made thereto) in whole or in part, is not approved by the Court, or the Court approves the Settlement but such approval is reversed or vacated on appeal and such order reversing or vacating the Settlement becomes final or any of the conditions to this Settlement are not fulfilled, or the Offer or Merger cannot be consummated for any reason, then the Settlement proposed herein shall be of no further force or effect and the Settlement and any amendment thereto and all orders relating to it shall be null and void and of no force and effect. In any such event, neither this Stipulation nor any of the orders contemplated by it shall prejudice in any way the respective positions of the parties with respect to the Action or their rights relating to it.

13.    No Provision contained in this Stipulation shall be deemed an admission by any party as to any claim alleged or asserted in the Action, and neither this Stipulation nor the negotiations or proceedings in connection with this Stipulation shall be offered or received into

EXHIBIT A PAGE 24

evidence at a trial or any other proceeding of any kind whatsoever, except in an action or proceeding to enforce the terms and conditions of this Stipulation.

14.    Each of the attorneys executing this Stipulation on behalf of one or more parties hereto warrants and represents that he or she has been duly authorized and empowered to execute this Stipulation on behalf of each such respective party.

15.    Counsel for the Representatives and defendants are expressly authorized to enter into changes, modifications, or amendments of the Stipulation and the attached Exhibits which they mutually deem appropriate without further notice as long as such changes are in writing and are approved by the Court and the Court does not requires such notice; provided however, Court approval is not necessary and shall not be sought for purely ministerial and non-substantive changes, modifications or amendments as counsel may determine are necessary and appropriate in connection with administration of the Settlement including, but not limited to reasonable extensions of time to carry out any of the provisions of this Stipulation.

16.    Any failure by any party to insist upon the strict performance by any other party of any of the provisions of the Settlement Agreement or this Stipulation shall not be deemed a waiver of any such provisions, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of the Settlement Agreement and this Stipulation to be performed by such other party.

17.    This Stipulation and all Exhibits hereto and any related settlement document shall be governed and interpreted in accordance with the laws of the State of Delaware, without regard to the conflict of law provisions thereof.

18.    In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of the Stipulation or an attached exhibit or in the event of a claimed

EXHIBIT A PAGE 25

breach of the Stipulation or an attached exhibit, the parties hereto agree that such dispute will be adjudicated only in the Delaware Court of Chancery.

19.    The Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, and upon any corporation or other entity with which any party hereto may merge or consolidate.

20.    The Exhibits to the Stipulation are incorporated in and constitute an integral part of the Stipulation.

21.    The Stipulation, together with any Exhibits, shall be deemed to have been mutually prepared by the settling parties and shall not be construed against any of them by reason of authorship.

22.    The parties and their attorneys agree to cooperate fully with one another in seeking Court approval of this Stipulation and the Settlement, and to use their best efforts to effect, as promptly as practicable, the consummation of this Stipulation and the Settlement provided for hereunder (including any amendments thereto) and the dismissal of the Action, including the Amended Complaint filed in the Action, with prejudice and without costs to any party (except as provided herein).

23.    This Stipulation may be executed by facsimile or electronic signature in two or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when such counterparts have been signed by each of the parties and delivered to the other parties.

WHEREFORE, the parties enter into this Stipulation as of the 19th day of March, 2007.

14

EXHIBIT A PAGE 26

TAYLOR & MCNEW, LLP

R. Bruce McNew (#967)
2710 Centerville Road, Suite 210
Greenville, DE  19808
(302) 655-9200
*Attorney for Plaintiffs*

MORRIS NICHOLS ARSHT & TUNNELL, LLP

Jon E. Abramczyk  (#2432)
John P. DiTomo (#4850)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendants*

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Erin L. Bansal
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
(415) 773-5900

549006

15



# Exhibit B

Table of Contents

| OMB APPROVAL |
| --- |
| OMB Number: 3235-0145 |
| Expires: February 28, 2009 |
| Estimated average burden |
| hours per response...14.5 |

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## SCHEDULE 13D

### Under the Securities Exchange Act of 1934
### (Amendment No. _____)*

# Crowley Maritime Corporation

(Name of Issuer)

**Common Stock**

(Title of Class of Securities)

**228090 10 6**

(CUSIP Number)

**Thomas B. Crowley, Jr.**
**c/o Crowley Newco Corporation**
**555 12th Street**
**Suite 2130**
**Oakland, California 94607**

(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

with a copy to:

Richard Vernon Smith, Esq.
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, California 94105-2669
Tel. (415) 773-5700

**March 16, 2007**

(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1 (e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☑

*Note:* Schedules filed in paper format shall include a signed original and five copies of the schedule, including all

EXHIBIT B PAGE 28

exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, *see* the *Notes*).

EXHIBIT B PAGE 29

Table of Contents

CUSIP No. 228090 10 6

Page 2 of 20

| | |
|---|---|
| **1** | NAMES OF REPORTING PERSONS:<br><br>Thomas B. Crowley, Jr.<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY): |
| **2** | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (SEE INSTRUCTIONS):<br><br>(a) ☑<br>(b) ☐ |
| **3** | SEC USE ONLY: |
| **4** | SOURCE OF FUNDS (SEE INSTRUCTIONS): |
| **5** | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e):<br><br>☐ |
| **6** | CITIZENSHIP OR PLACE OF ORGANIZATION:<br><br>USA |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | **7** | SOLE VOTING POWER:<br><br>64,195 |
|---|---|---|
| | **8** | SHARED VOTING POWER:<br><br>6,306 |
| | **9** | SOLE DISPOSITIVE POWER:<br><br>278 |
| | **10** | SHARED DISPOSITIVE POWER:<br><br>84,793 |

| | |
|---|---|
| **11** | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON:<br><br>85,071 |
| **12** | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS):<br><br>☐ |
| | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11): |

EXHIBIT B PAGE 30

| 13 | 73.3% |
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS):<br>IN |

EXHIBIT B PAGE 31

Table of Contents

CUSIP No.   228090 10 6

Page   3   of   20

| 1 | NAMES OF REPORTING PERSONS:<br><br>Molly M. Crowley<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY): |
|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (SEE INSTRUCTIONS):<br>(a)   ☒<br>(b)   ☐ |
| 3 | SEC USE ONLY: |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS): |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e):<br>☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION:<br><br>USA |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER:<br><br>0 |
|---|---|---|
| | 8 | SHARED VOTING POWER:<br><br>0 |
| | 9 | SOLE DISPOSITIVE POWER:<br><br>0 |
| | 10 | SHARED DISPOSITIVE POWER:<br><br>0 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON:<br><br>0 |
|---|---|
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS):<br>☐ |
| | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11): |

EXHIBIT B PAGE 32

| 13 | 0% |
|----|-----|
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS):<br><br>IN |

EXHIBIT B PAGE 33

Table of Contents

CUSIP No. | 228090 10 6 |

Page | 4 | of | 20 |

| 1 | NAMES OF REPORTING PERSONS:<br><br>Christine S. Crowley<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY): | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (SEE INSTRUCTIONS):<br>(a)  ☑<br>(b)  ☐ | | |
| 3 | SEC USE ONLY: | | |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS): | | |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e):<br>☐ | | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION:<br><br>USA | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER:<br><br>0 | |
| | 8 | SHARED VOTING POWER:<br><br>6,306 | |
| | 9 | SOLE DISPOSITIVE POWER:<br><br>0 | |
| | 10 | SHARED DISPOSITIVE POWER:<br><br>0 | |
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON:<br><br>6,306 | | |
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS):<br>☐ | | |
| | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11): | | |

EXHIBIT  B  PAGE  34

| 13 | 6.9% |
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS):<br><br>IN |

EXHIBIT B PAGE 35

Table of Contents

CUSIP No. 228090 10 6

Page 5 of 20

| 1 | NAMES OF REPORTING PERSONS:<br><br>Crowley Newco Corporation<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY):<br><br>20- 8536347 |
|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (SEE INSTRUCTIONS):<br><br>(a) ☑<br>(b) ☐ |
| 3 | SEC USE ONLY: |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS):<br><br>OO |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e):<br><br>☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION:<br><br>USA |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER:<br><br>0 |
|---|---|---|
| | 8 | SHARED VOTING POWER:<br><br>0 |
| | 9 | SOLE DISPOSITIVE POWER:<br><br>0 |
| | 10 | SHARED DISPOSITIVE POWER:<br><br>84,793 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON:<br><br>84,793 |
|---|---|
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS):<br><br>☐ |

PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11):

EXHIBIT B PAGE 36

| 13 | 73.0% |
|----|-------|
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS): <br><br> CO |

EXHIBIT B PAGE 37

# TABLE OF CONTENTS

Item 1. Security and Issuer
Item 2. Identity and Background
Item 3. Source and Amount of Funds or Other Consideration
Item 4. Purpose of Transaction
Item 5. Interest in Securities of the Issuer
Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer
Item 7. Material to be Filed as Exhibits
Signature
EX-99.A: JOINT FILING AGREEMENT



Table of Contents

## Item 1. Security and Issuer.

This Schedule 13D (this "Schedule") relates to the common stock, par value $.01 per share (the "Common Stock"), of Crowley Maritime Corporation, a Delaware corporation (the "Issuer" or the "Company"). The principal executive offices of the Issuer are located at 9487 Regency Square Boulevard, Jacksonville, Florida 32225.

## Item 2. Identity and Background.

This Statement is being filed by Thomas B. Crowley, Jr., Molly M. Crowley, Christine S. Crowley, and Crowley Newco Corporation ("Crowley Newco") (collectively, the "Reporting Persons"). The Reporting Persons are filing this Statement because they may be deemed to constitute a "group" within the meaning of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), with respect to the transactions described in Item 4 of this Statement. Except as expressly set forth in this Statement, each Reporting Person disclaims beneficial ownership of the shares of Common Stock beneficially owned by any other Reporting Person.

This Statement amends and restates in its entirety the Schedule 13G of Thomas B. Crowley, Jr., Molly M. Crowley and Christine S. Crowley (collectively, the "Crowleys") filed with the Securities and Exchange Commission (the "Commission") on December 19, 2006, as amended by Amendment No. 1 to the Schedule 13G filed on February 13, 2007, with respect to their individual beneficial ownership of the Common Stock.

The name, residence or business address and present principal occupation or employment (and the name, principal business and address of any corporation or other organization in which such employment is conducted) of each Reporting Person who is a natural person is set forth in Table No. 1 on Appendix A hereto, which Appendix A is incorporated by reference herein. The name, state or place of organization, principal business, principal business address, and principal office address of each Reporting Person that is not a natural person is set forth in Table No. 2 on Appendix A hereto.

Each Reporting Person who is a natural person is a citizen of the United States of America.

During the last five years, none of the Reporting Persons has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

During the last five years, none of the Reporting Persons has been a party to any civil proceeding of a judicial or administrative body of competent jurisdiction as the result of which he, she or it was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

EXHIBIT B PAGE 39

Table of Contents

**Item 3. Source and Amount of Funds or Other Consideration.**

Except for the shares of Common Stock deemed to be beneficially owned by Crowley Newco, the shares of Common Stock deemed to be beneficially owned by the Reporting Persons were acquired by means of gift, inheritance or other gratuitous transfer.

Crowley Newco's beneficial ownership of the shares of Common Stock arises from binding agreements with (a) the Crowley Maritime Corporation Retirement Savings Plan (the "RSP"), the Crowley Maritime Corporation Stock Savings Plan (the "SSP") and the Crowley Maritime Corporation Employee Stock Ownership Plan (the "ESOP") to acquire all the shares of Common Stock held by each in exchange for shares of common stock of Crowley Newco as set forth on Appendix B (the "Plan Contribution Agreement") and (b) Christine S. Crowley, Crowley Asset Management, L.P., The Non-Exempt Trust FBO Adrienne Crowley, The Thomas B. Crowley Jr. Separate Property Trust, The Annual Exclusion Trust FBO Adrienne Crowley, The Crowley Family Generation Skipping Trust U/T/A Dtd. 12/04/91, and The Marital Trust Under The Thomas B. Crowley Trust (collectively, the "Crowley Group") to contribute all the shares of capital stock in the Issuer held by each in exchange for shares of capital stock of Crowley Newco as set forth on Appendix B (the "Crowley Contribution Agreement"). The Plan Contribution Agreement and the Crowley Contribution Agreement are sometimes collectively referred to in this Schedule as the "Contribution Agreements," the RSP, the SSP and the ESOP as the "Plans," and the Plans and the Crowley Group as the "Continuing Stockholders."

Immediately prior to executing the Crowley Contribution Agreement, Thomas B. Crowley, Jr. was deemed to beneficially own 44,270 shares of Common Stock (49.3%), 314,794 shares of Series A Junior Convertible Preferred Stock, par value $100 per share, of the Issuer ("Company Series A Preferred") (99.9%), and 46,138 shares of Class N Common Shares, par value $.01 of the Issuer ("Company Class N") (100%); Molly M. Crowley was deemed to beneficially own 32,601 shares of Common Stock (36.3%), 225,848 shares of Company Series A Preferred (71.7%); and 46,138 shares of Company Class N (100%), and Christine S. Crowley was deemed to beneficially own 5,039 shares of Common Stock (5.6%) and 15,211 shares of Company Series A Preferred (4.8%). (Thomas B. Crowley, Jr. is deemed the beneficial owner of all the shares attributable to Molly M. Crowley and Christine S. Crowley.)

Under the Crowley Contribution Agreement dated as of March 16, 2007, each owner of record in the Crowley Group has agreed that, subject to the satisfaction of the conditions of the Offer or the waiver of those conditions and at the time Crowley Newco accepts for payment the shares of Common Stock validly tendered and not withdrawn, such persons will contribute all of the shares of Common Stock (43,992 shares), Company Series A Preferred (314,794 shares) and Company Class N (46,138 shares) that they own in exchange for common stock, par value $.01 per share, of Crowley Newco ("Newco Common"), and non-voting shares of Class N, $.01 per share, of Crowley Newco ("Newco Class N"). At the contribution, except as set forth below, each share of Common Stock will be exchanged for one share of Newco Common and each share of Company Class N will be exchanged for one share of Newco Class N. Each share of Company Series A Preferred will also be exchanged for one-twelfth (1/12) of a share of Newco Common. Holders of Company Series A Preferred Stock will also receive additional Newco Common equal to the number of whole shares determined by dividing (1) the amount of the accrued but unpaid dividends on the Company Series A Preferred on the date that Crowley Newco accepts for payment the shares of Common Stock validly



Table of Contents

tendered and not withdrawn, in the Offer (as defined and described in Item 4) by (2) $1,200. The Marital Trust Under The Thomas B. Crowley Trust will receive a total of 31,478 shares of Newco Common (plus such other additional shares of Common Stock as are due as a result of unpaid dividends on the Company Series A Preferred) and 66,282 shares of Newco Class N. The Marital Trust Under The Thomas B. Crowley Trust will therefore receive 19,943 fewer shares of Newco Common in exchange for 20,144 shares of Newco Class N, reflecting a valuation discount from the Newco Common of one percent.

Under the Crowley Contribution Agreement, each owner covenants and agrees, among other things, not to (i) directly or indirectly, offer for sale, sell, transfer, tender, pledge, encumber, assign or otherwise dispose of, or enter into any contract, option or other arrangement or understanding with respect to or consent to the offer for sale, transfer, tender, pledge, encumbrance, assignment or other disposition of, any or all of its capital stock in the Issuer or any interest therein; (ii) grant any proxies or powers of attorney, deposit any of its capital stock in the Issuer into a voting trust or enter into a voting agreement with respect to any of its capital stock in the Issuer; or (iii) take any action that would make any representation or warranty of such owner contained in the Crowley Contribution Agreement untrue or incorrect or have the effect of preventing or disabling such owner from performing its obligations under the Crowley Contribution Agreement. The Crowley Contribution Agreement extends to the expiration or termination of the Offer.

Under the Plan Contribution Agreement dated as of March 16, 2007, each Plan has agreed that, subject to the satisfaction of the conditions of the Offer or the waiver of those conditions and at the time Crowley Newco accepts for payment the shares of Common Stock validly tendered and not withdrawn, the Plans will contribute all of the shares of Common Stock that they own in exchange for Newco Common. As of the date of the Plan Contribution Agreement, the Plans owned an aggregate of 14,570 shares of Common Stock. This number will increase by 25 shares of Common Stock if the Offer is consummated as a result of additional contributions to the Plans by the Company in such event, as described below. The number of shares of Common Stock contributed to Crowley Newco by the Plans is also subject to reduction to the extent that in connection with distributions to participants upon termination or for other reasons, the shares of Common Stock distributed are thereafter repurchased by the Issuer. In the contribution, each share of Common Stock will be exchanged for one share of Newco Common.

Under the Plan Contribution Agreement, each Plan covenants and agrees, among other things, not (i) directly or indirectly, offer for sale, sell, transfer, tender, pledge, encumber, assign or otherwise dispose of, or enter into any contract, option or other arrangement or understanding with respect to or consent to the offer for sale, transfer, tender, pledge, encumbrance, assignment or other disposition of, any or all of its Common Stock or any interest therein; (ii) grant any proxies or powers of attorney, deposit any of its Common Stock into a voting trust or enter into a voting agreement with respect to any of its Common Stock; or (iii) take any action that would make any representation or warranty of such Plan contained in the Plan Contribution Agreement untrue or incorrect or have the effect of preventing or disabling such Plan from performing such Plan's obligations under the Plan Contribution Agreement; except, in each case, for any of such actions necessary to consummate repurchases of Common Stock by the Issuer in accordance with the terms of such Plan's governing documents. Crowley Newco is not, however, entitled to enforce any provision of the Plan Contribution Agreement against a Plan if it would cause that Plan to violate its Plan documents or, in the opinion of the Plan's counsel, the Employee Retirement Security Act of 1974, as amended

EXHIBIT Ɓ PAGE 41

Table of Contents

("ERISA"). The Plan Contribution Agreement extends until the earlier of the expiration or termination of the Offer and August 15, 2007.

Prior to and in connection with the Plans' execution of the Plan Contribution Agreement, certain administrative and substantive provisions of each Plan's documents were amended with a view to the contribution, the Offer and the Merger (as defined and described in Item 4). One of these amendments provides for a special contribution of shares of Common Stock to each Plan by the Issuer immediately prior to the time Crowley Newco accepts for payment the shares of Common Stock validly tendered and not withdrawn, in the amounts of 14 shares to the RSP, six shares to the SSP and five shares to the ESOP.

As the record and beneficial owner of the only outstanding share of Newco Common and the beneficial owner by virtue of the Contribution Agreements as of the date hereof of approximately 77.5% of Newco Common and 100% of Newco Class N, Thomas B. Crowley, Jr. is also deemed to beneficially own all of the shares of Common Stock, Company Class N and Company Series A Preferred beneficially owned by Crowley Newco.

With respect to the proposed transaction described in Item 4 of this Schedule, the Reporting Persons estimate that the amount of funds that would be required to purchase all of the shares of outstanding capital stock not subject to the Contribution Agreements is approximately $98,000,000. The funds required to consummate the proposed transaction are expected to be provided from the Issuer's available cash and cash equivalents and from the Issuer's revolving credit facility.

See "The Tender Offer—Section 9. Source and Amount of Funds" in the Offer to Purchase, dated March 16, 2007, which is incorporated by reference into this Schedule.

## Item 4. Purpose of Transaction.

The disclosure in this item is qualified in its entirety by the information set forth in "Special Factors—Purpose and Structure of the Offer and the Merger, Purchaser's Reasons for the Offer and the Merger"; "The Tender Offer—Section 6. Price Range of Shares of Common Stock; Valuations Related to Plans; Dividends"; and "The Tender Offer—Section 11. Certain Effects of the Offer on the Market for Shares of Common Stock" in the Offer to Purchase, dated March 19, 2007, which is incorporated by reference into this schedule.

In addition to committing to the purchases under the Contribution Agreements described above, Crowley Newco is offering to purchase all of the outstanding shares of Common Stock not beneficially owned by Crowley Newco, pursuant to a tender offer, for $2,990 per share in cash (the "Offer"). The Offer is being made pursuant to a Stipulation and Agreement of Compromise, Settlement and Release, which would settle a pending lawsuit, *Franklin Balance Sheet Investment Fund v. Crowley*, a purported class action and a derivative complaint that was filed on November 30, 2004. The plaintiffs in that case have agreed to dismiss the lawsuit if they and the other holders of Common Stock who are not Continuing Stockholders have the opportunity, through a tender offer, to sell their Common Stock for $2,990 per share in cash. Crowley Newco is also making the Offer as part of its goal (and that of the other Reporting Persons) of acquiring the entire equity interest in the Issuer not already beneficially owned and taking the Issuer private.

EXHIBIT B PAGE 42

Table of Contents

Provided that the conditions to the Offer are satisfied or waived, as promptly as practicable following the time that the tendered shares of Common Stock are accepted for payment by Crowley Newco and the contributions under the Contribution Agreements are made, Crowley Newco is expected to merge with and into the Issuer (the "Merger"). The Issuer will be the surviving corporation of the Merger (the "Surviving Corporation"). In the Merger, (i) each outstanding share of Common Stock and Company Series A Preferred held of record by stockholders other than Crowley Newco shall cease to be outstanding, and such stockholders of record shall be entitled to receive from the Issuer as the surviving corporation in the Merger, the sum of $2,990 in cash for each such share of Common Stock and $249.16 (plus all unpaid cumulative dividends thereon to the date of the Merger) in cash for each share of Company Series A Preferred, (ii) each outstanding share of Common Stock, Company Series A Preferred Stock and Company Class N owned of record by the Crowley Newco shall cease to be outstanding, without any payment being made in respect thereof; and (iii) each share of Newco Common Stock shall be converted into one (1) share of Common Stock, and each share of Newco Class N shall be converted into one (1) share of Company Class N. Immediately following the effectiveness of the Merger, the stockholders of the Surviving Corporation will be the Continuing Stockholders. The Continuing Stockholders will hold the shares of stock of the Surviving Corporation as set forth on Appendix C.

The Issuer has never paid dividends on the Common Stock. Any payment of future dividends on the Common Stock of the Surviving Corporation will be at the discretion of the Board of Directors of the Surviving Corporation and will depend upon, among other things, the Surviving Corporation's earnings, financial condition, capital requirements, level of indebtedness, contractual restrictions with respect to the payment of dividends and other factors that the Board of Directors of the Surviving Corporation may deem relevant.

The restrictive covenants of the Issuer's financing agreements require, among other things, annual maintenance of working capital that is equal to or greater than 50% of the total charter hire and other lease obligations with remaining terms in excess of one year. Although the Issuer is restricted from repurchasing shares of any class of capital stock or declaring or paying any dividend, it may repurchase Common Stock from employee stock ownership plans and pay dividends in any twelve-month period so long as the combined cost does not exceed $10.0 million. The Issuer paid dividends on its Company Series A Preferred and repurchased Common Stock from employee stock ownership plans within all restrictions during 2006. The Issuer has stated that so long as the Company Series A Preferred remains outstanding, the Issuer does not anticipate paying dividends on its Common Stock.

If the Merger is consummated, the Common Stock will be deregistered under the Securities Exchange Act of 1934, as amended.

Other than as described in this Schedule, each of the Reporting Persons currently has no plan or proposals which relate to, or may result in, any of the matters listed in Item 4 of this Schedule (although each of the Reporting Persons reserves the right to develop such plans).

EXHIBIT B PAGE 43

Table of Contents

## Item 5. Interest in Securities of the Issuer.

The information below reflects the beneficial ownership of the Reporting Persons after giving effect to the Contribution Agreements.

**Thomas B. Crowley, Jr.**

(a)   85,071 shares[1] (73.3% of class)

(b)   
| | |
|---|---|
| Sole Power to Vote: | 64,195 shares[2] |
| Shared Power to Vote: | 6,306 shares[3] |
| Sole Power to Dispose: | 278 shares[4] |
| Shared Power to Dispose: | 84,793 shares[5] |

(c)   Not applicable

(d)   Not applicable

(e)   Not applicable

**Molly M. Crowley**

(a)   0 shares[6] (0% of class)

(b)   
| | |
|---|---|
| Sole Power to Vote: | 0 shares |
| Shared Power to Vote: | 0 shares |

---

[1]   Includes 278 share of Common Stock held by Crowley Foundation (the "Foundation") and the shares of Common Stock beneficially owned by Crowley Newco.

[2]   Includes 32,601 shares of Common Stock held by the Marital Trust under the Thomas B. Crowley Trust (the "Marital Trust"); 278 shares of Common Stock held by the Foundation; and 6,352 shares of Common Stock held by The Non-Exempt Trust FBO Adrienne Crowley, The Thomas B. Crowley, Jr. Separate Property Trust, The Annual Exclusion Trust FBO Adrienne Crowley and The Crowley Family Generation Shipping Trust U/T/A Dtd. 12/04/91 (the "Other Trusts"). Also includes 18,820 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Marital Trust and 6,144 shares of Common Stock acquirable upon conversion of the Company Series A Preferred held by the Other Trusts.

[3]   Includes (a) 684 shares of Common Stock held by Christine S. Crowley and (b) 4,355 shares of Common Stock held by Crowley Asset Management, L.P. (the "Partnership") and 1,267 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Partnership. Because Mr. Crowley is Ms. Crowley's spouse in the case of the 684 shares and because he has the power to remove her as general partner of the Partnership in the case of the Partnership shares, Mr. Crowley may be treated as sharing voting power and dispositive power with Ms. Crowley over the shares.

[4]   Consists of the 278 shares of Common Stock held by the Foundation.

[5]   Consists of the shares of Common Stock beneficially owned by Crowley Newco.

[6]   Prior to the Marital Trust's execution of the Contribution Agreement, Molly M. Crowley was deemed to beneficially own 32,601 shares of Common Stock held by the Marital Trust and 18,820 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Marital Trust by virtue of her shared power to dispose of the shares.

Page 11 of 20

EXHIBIT B PAGE 44

**Table of Contents**

|  |  |
|---|---|
| Sole Power to Dispose: | 0 shares |
| Shared Power to Dispose: | 0 shares |

**(c)**   Not applicable

**(d)**   Not applicable

**(e)**   Not applicable

**Christine S. Crowley**

**(a)**   6,306 shares[7] (6.9% of class)

| **(b)** | Sole Power to Vote: | 0 shares |
|---|---|---|
|  | Shared Power to Vote: | 6,306 shares |
|  | Sole Power to Dispose: | 0 shares |
|  | Shared Power to Dispose: | 0 shares |

**(c)**   Not applicable

**(d)**   Not applicable

**(e)**   Not applicable

**Crowley Newco Corporation**

**(a)**   84,793 shares[8] (73.0% of class)

| **(b)** | Sole Power to Vote: | 0 shares |
|---|---|---|
|  | Shared Power to Vote: | 0 shares |

---

[7]   Includes 684 shares of Common Stock held in Ms. Crowley's name, 4,355 shares of Common Stock held by the Partnership, of which Ms. Crowley is the general partner, and 1,267 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Partnership.

[8]   Includes 32,601 shares of Common Stock held by the Marital Trust; 6,352 shares of Common Stock held by the Other Trusts; 684 shares of Common Stock owned by Christine S. Crowley; 4,355 shares of Common Stock held by the Partnership, 18,820 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Marital Trust; 6,144 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Other Trusts; and 1,267 shares of Common Stock acquirable upon conversion of Company Series A Preferred held by the Partnership. Also includes 3,497 shares of Common Stock held by the SSP, 8,075 shares of Common Stock held by the RSP and 2,998 shares of Common Stock held by the ESOP.

Page 12 of 20

B  45

Table of Contents

| | | |
|---|---|---|
| Sole Power to Dispose: | | 0 shares |
| Shared Power to Dispose: | | 84,793 shares |

**(c)**  Not applicable

**(d)**  Not applicable

**(e)**  Not applicable

**Item 6.  Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

Items 3 and 4 of this Statement are incorporated herein by reference.

**Item 7.  Material to be Filed as Exhibits.**

Exhibit A    Joint Filing Agreement, dated as of March 19, 2007, by and among Thomas B. Crowley, Jr., Molly M. Crowley, Christine S. Crowley and Crowley Newco Corporation

Exhibit B    Offer to Purchase dated March 19, 2007 (incorporated by reference from Exhibit (a)(1)(i) to the Tender Offer Statement on Schedule TO filed with the Securities and Exchange Commission on the Issuer by Crowley Newco Corporation on March 19, 2007, File No. 000-04717).

Exhibit C    Stipulation and Agreement of Compromise, Settlement and Release dated March 19, 2007, *Franklin Balance Sheet Investment Fund v. Crowley*, Civil Action No. 888-N (incorporated by reference from Exhibit 99.1 to the Issuer's Current Report of Form 8-K filed with the Securities and Exchange Commission by the Issuer on March 19, 2007, File No. 000-04717).

Exhibit D    Contribution Agreement dated March 16, 2007 between Crowley Newco Corporation and Christine S. Crowley, Crowley Asset Management, L.P., The Non-Exempt Trust FBO Adrienne Crowley, The Thomas B. Crowley Jr. Separate Property Trust, The Annual Exclusion Trust FBO Adrienne Crowley, The Crowley Family Generation-Skipping Trust U/T/A Dated 12/04/91, and The Marital Trust Under The Thomas B. Crowley Trust (incorporated by reference from Exhibit (d)(ii) to the Tender Offer Statement on Schedule TO filed with the Securities and Exchange Commission on the Issuer by Crowley Newco Corporation on March 19, 2007, File No. 000-04717).

Exhibit E    Contribution Agreement dated March 16, 2007 between Crowley Newco Corporation and Crowley Maritime Corporation Retirement Stock Plan, the Crowley Maritime Corporation Stock Savings Plan and the Crowley Maritime Corporation Employee Stock Ownership Plan (incorporated by reference from Exhibit (d)(iii) to the Tender Offer Statement on Schedule TO filed with the Securities and Exchange Commission

EXHIBIT B PAGE 46

**Table of Contents**

on the Issuer by Crowley Newco Corporation on March 19, 2007, File No. 000-04717).

Page 14 of 20

EXHIBIT B PAGE 47

Table of Contents

CUSIP No.  228090 10 6                                          Page  15  of  20

## Signature

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: March 19, 2007

/s/ Thomas B. Crowley, Jr.
Name:  Thomas B. Crowley, Jr.


/s/ Molly M. Crowley
Name:  Molly M. Crowley


/s/ Christine S. Crowley
Name:  Christine S. Crowley


**Crowley Newco Corporation**

/s/ Thomas B. Crowley, Jr.
By: Thomas B. Crowley, Jr.
Title:  Chief Executive Officer


**Attention: Intentional misstatements or omissions of fact constitute Federal criminal violations (See 18 U.S.C. 1001)**

EXHIBIT B PAGE 48

Table of Contents

## APPENDIX A

### Table No. 1
### Natural Persons

| Name | Residence or Business Address | Principal Occupation or Employment | Place of Occupation or Employment |
|---|---|---|---|
| Thomas B. Crowley, Jr. | c/o Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 | Chairman, President, and CEO of Crowley Maritime Corporation | Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 |
| Molly M. Crowley | c/o Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 | Self-employed real estate investor and Director, Crowley Maritime Corporation | Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 |
| Christine S. Crowley | c/o Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 | Homemaker | |

### Table No. 2
### Corporations, General Partnerships, Limited Partnerships, Syndicates, or Other Groups of Persons

| Name | State or Place of Organization | Business Purpose | Address of Principal Business | Address of Principal Office |
|---|---|---|---|---|
| Crowley Newco Corporation | Delaware | Acquisition vehicle | c/o Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 | c/o Crowley Maritime Corp. 555 12th Street, Suite 2130 Oakland, California 94607 |

Page 16 of 20

EXHIBIT B PAGE 49

Table of Contents

## APPENDIX B

### Issuer Stock Currently Outstanding to be Contributed To Crowley Newco

| Name | Shares of Common Stock |
|------|---:|
| Christine S. Crowley | 684 |
| Crowley Asset Management, L.P. | 4,355 |
| The Non-Exempt Trust FBO Adrienne Crowley | 1,896 |
| The Thomas B. Crowley Jr. Separate Property Trust | 2,189 |
| The Annual Exclusion Trust FBO Adrienne Crowley | 767 |
| The Crowley Family Generation Skipping Trust U/T/A Dtd. 12/04/91 | 1,500 |
| The Marital Trust Under The Thomas B. Crowley Trust | 32,601 |
| The Crowley Maritime Corporation Employee Stock Ownership Plan [1][2] | 2,998 |
| The Crowley Maritime Corporation Stock Saving Plan [1][3] | 3,497 |
| The Crowley Maritime Corporation Retirement Stock Plan [1][4] | 8,075 |

| Name | Shares of Class N |
|------|---:|
| The Marital Trust Under The Thomas B. Crowley Trust | 46,138 |

| Name | Shares of Series A Preferred |
|------|---:|
| Crowley Asset Management, L.P. | 15,211 |
| The Thomas B. Crowley Jr. Separate Property Trust | 63,889 |
| The Crowley Family Generation Shipping Trust U/T/A Dtd. 12/04/91 | 9,846 |
| The Marital Trust Under The Thomas B. Crowley Trust | 225,848 |

(1) Assumes no repurchases of shares from Plan participants prior to acceptance for payment of shares of Common Stock validly tendered and not withdrawn.

(2) If the Offer is consummated, the Issuer will contribute an additional five shares to the Plan immediately prior to the time Crowley Newco accepts for payment the shares of Common Stock validly tendered and not withdrawn.

(3) If the Offer is consummated, the Issuer will contribute an additional six shares to the Plan immediately prior to the time Crowley Newco accepts for payment the shares of Common Stock validly tendered and not withdrawn.

Page 17 of 20


EXHIBIT B PAGE 50

**Table of Contents**

(4)  If the Offer is consummated, the Issuer will contribute an additional 14 shares to the Plan immediately prior to the time Crowley Newco accepts for payment shares of Common Stock validly tendered and not withdrawn.

Page 18 of 20

EXHIBIT B PAGE 51

Table of Contents

## APPENDIX C

### Crowley Newco Capital Stock to be Received

| Name | Shares of Newco Common |
|------|------:|
| Christine S. Crowley | 684 |
| Crowley Asset Management, L.P. [1] | 5,622 |
| The Non-Exempt Trust FBO Adrienne Crowley | 1,896 |
| The Thomas B. Crowley Jr. Separate Property Trust [1] | 7,513 |
| The Annual Exclusion Trust FBO Adrienne Crowley | 767 |
| The Crowley Family Generation Skipping Trust U/T/A Dtd. 12/04/91 [1] | 2,320 |
| The Marital Trust Under The Thomas B. Crowley Trust [1] | 31,478 |
| The Crowley Maritime Corporation Employee Stock Ownership Plan [2][3] | 3,003 |
| The Crowley Maritime Corporation Stock Saving Plan [2][3] | 3,503 |
| The Crowley Maritime Corporation Retirement Stock Plan [2][3] | 8,089 |

| Name | Shares of Newco Class N |
|------|------:|
| The Marital Trust Under The Thomas B. Crowley Trust | 66,282 |

(1) Number will be increased by a number of whole shares equal to the number determined by dividing (1) the amount of the accrued but unpaid dividends on the Company, Series A Preferred on the closing date of the Offer by (2) $1,200.

(2) Assumes no repurchases of shares from Plan participants prior to acceptance for payment of shares of Common Stock validly tendered and not withdrawn.

(3) Reflects increase in shares of Common Stock that would be owned by each Plan if the Offer is successfully consummated. See footnotes (2), (3) and (4) to Appendix B.

Page 19 of 20

EXHIBIT B PAGE 52

Exhibit C

EFiled: Apr 24 2007 2:57PM
Transaction ID 14597629
Case No. 888-VCP

IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| FRANKLIN BALANCE SHEET INVESTMENT FUND AND FRANKLIN MICROCAP VALUE FUND, P. OPPENHEIMER INVESTMENT PARTNERSHIP LP AND OPPENHEIMER CLOSE INTERNATIONAL LTD., WYNNEFIELD PARTNERS SMALLCAP VALUE LP I, WYNNEFIELD PARTNERS SMALLCAP VALUE LP, WYNNEFIELD SMALLCAP VALUE OFF-SHORE FUND LTD. AND CHANNELL PARTNERSHIP II, LP, AND JOHN H. NORBERG, JR., Individually, derivatively and on behalf of a Class of similarly situated stockholders, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No. 888-VCP |
| THOMAS B. CROWLEY, JR., MOLLY M. CROWLEY, PHILLIP E. BOWLES, GARY L. DEPOLO, EARL T. KIVETT, WILLIAM A. PENNELLA, LELAND S. PRUSSIA, CAMERON W. WOLFE, JR., | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| CROWLEY MARITIME CORPORATION, | ) ) | |
| Nominal Derivative Defendant. | ) | |

# PLAINTIFFS' BRIEF IN SUPPORT OF
# THE PROPOSED SETTLEMENT

DATED: April 24, 2007

TAYLOR & McNEW, LLP
R. Bruce McNew (# 967)
2710 Centerville Road, Suite 210
Wilmington, Delaware 19808
(302) 655-9200

ATTORNEYS FOR PLAINTIFFS

EXHIBIT ___C___ PAGE ___53___

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

    I.    The Plaintiffs.................................................................................. 3

    II.    The Company and its Capital Structure and the Defendants ...................... 3

    III.    Nature of the Claims ............................................................... 4

    IV.    Crowley's Approach to Acting as a Public Company ............................... 5

    V.    The Insurance Agreements ............................................................ 6

    VI.    Damages ........................................................................................ 7

    VII.    The Settlement and its Benefits.................................................... 7

    VIII.    Objectors to the Settlement. ....................................................... 14

STATEMENT OF QUESTIONS INVOLVED ....................................................... 18

    I.    Should the Settlement be Approved as Fair, Reasonable and Adequate? 18

ARGUMENT ........................................................................................................ 19

    I.    This Settlement is Fair, Reasonable and Adequate and Should be Approved............................................................................................ 19

        A.  Applicable Legal Standards. ................................................ 19

        B.  The Risks of Success on the Claims.................................... 20

        C.  The Benefits Exceed Those Obtainable in a Successful Trial ........... 21

        D.  The Objections are Without Merit. ....................................... 22

CONCLUSION ..................................................................................................... 27

EXHIBIT C PAGE 54

# TABLE OF AUTHORITIES

**Cases**

Aronson v. Lewis,
    Del. Supr., 473 A.2d 805 (1984) ................................................................. 19

Baupost LP, 1983 A-1 v. Providential Corp.,
    Del. Ch. 1993 WL 401866 at 2 (1993). ....................................................... 18

Fike v. Ruger,
    Del. Ch. 754 A.2d 354 (1999) ..................................................................... 23

Geller v. Tabas,
    Del Supr., 462 A.2d 1078 (1983) ........................................................... 18, 22

In re Caremark International, Inc. Derivative Litigation,
    Del. Ch. 698 A.2d 959 (1996) ..................................................................... 18

In re Prodigy Communications Corp. Shareholders Litigation,
    Del. Ch., 2002 WL 1767543 at 3 ................................................................. 22

In re Resorts International Shareholders International Appeals,
    Del. Supr., 570 A.2d 259 (1990) ................................................................. 25

In re Resorts International Shareholders Litigation,
    Del. Ch., 1988 WL 92749 at 9  (1998) ........................................................ 22

In re Siliconix Shareholders Litigation,
    Del. Ch. 2001 WL 716787 at 166 (2001). ................................................... 24

In re Triarc Companies, Inc.,
    Del. Ch., 791 A.2d 872, 8-79 (2001) .......................................................... 22

In re Vitalink Communications Corp. Shareholders Litigation,
    Del. Ch. 1991 WL 238816 at 10-11 (1991) ................................................ 18

Kahn v. Sullivan,
    Del. Supr., 594 A.2d 48, 58 (1991) ............................................................ 18

Lampf, Plena, Lipkind, Prupis & Petigrow v. Gilbertson,
    501 U.S. 350, 112 S. Ct. §21 (1991) .......................................................... 23

EXHIBIT ___ C ___ PAGE 55

Nottingham Partners v. Dana,
    Del. Supr., 564 A.2d 1089, 1101-02 (1989) ................................................................. 18

PaineWebber R & D Partners II, L.P. v. Centocor, Inc.,
    (Del. Ch.) 1999 WL 160123 at 50 (1999.). .................................................................. 18

Polk v. Good,
    Del. Supr., 507 A.2d 531 (1986)................................................................................... 18

Tooley v. Donaldson Lufkin & Jenrette, Inc.,
    Del. Supr., 845 A.2d 1031 (2004)................................................................................ 19

EXHIBIT _C_ PAGE _56_

## NATURE AND STAGE OF PROCEEDINGS

On November 30, 2004 Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, P. Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund Ltd. and Channell Partnership II, LP, and John H. Norberg, Jr. ("Plaintiffs") commenced this action as a derivative action and a class action against certain directors of Crowley Maritime Corporation ("Crowley" or the "Company") alleging breaches of fiduciary duties by the defendants directors owed to Crowley Maritime and its stockholders. The action was commenced following a lengthy investigation into matters first revealed on April 1, 2002.

On February 25, 2005 the Defendants moved to dismiss the Complaint. The motion was briefed and argument was heard on September 30, 2005. This Court directed that additional briefing be filed. In lieu of filing an additional brief, Plaintiffs, on December 27, 2005, moved to amend the Complaint and to intervene an additional stockholder Plaintiff. On January 19, 2006, the Court ordered further proceedings on the Motion to Dismiss pending resolution of these two motions. Those two motions were briefed and the hearing was held on June 9, 2006.

By decision of October 19, 2006, this Court granted those two motions and directed Plaintiffs to file the Amended Complaint with the additional intervening Plaintiff. Plaintiff filed their Amended Complaint on October 24, 2006. On November 7, 2006, Defendants again moved to dismiss the action. On March 19, 2007, the parties filed a proposed settlement of the action and, pursuant to the terms of the proposed

EXHIBIT C PAGE 57

settlement, a company controlled by Defendant Thomas Crowley commenced a tender offer for any and all shares of outstanding common stock of the Company, with certain limited exceptions, for a price of $2,990 per share.

Pursuant to this Court's Order of March 21, 2007, the Court conditionally certified the action as a class and derivative action and scheduled a hearing on April 27, 2007 to hear Plaintiffs' Motion for Approval of the Settlement and for an Award of Attorney's Fees and Expenses. The Court, at the request of the parties, directed that consideration of the application for an award of attorney's fees and expenses be deferred and heard on May 30, 2007. This is Plaintiffs' brief in support of the settlement.

EXHIBIT C PAGE 58

## STATEMENT OF FACTS

I.        The Plaintiffs

Plaintiffs in this action are long standing stockholders of Crowley Maritime Corporation.[1]  Collectively, the Plaintiffs own approximately 30% of the stock of Crowley Maritime not owned or controlled by the Crowley family.  Plaintiffs have owned stock of Crowley continuously since as early as 1991.  Plaintiffs have been among the largest, if the largest, public stockholders of Crowley for over 10 years.  The Plaintiffs represent a cross section of institutional investors and private shareholders.  They are Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund (part of the Franklin Templeton Group of Mutual Funds) P. Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund Ltd. and Channell Partnership II, LP, and John H. Norberg, Jr.

II.       The Company and its Capital Structure and the Defendants

Crowley Maritime through its subsidiaries provides maritime transportation services in domestic and international market through four operating business lines.  The Company provides numerous services on both the East and West coasts of the United States, Alaska, the Gulf of Mexico and Puerto Rico.  The Company is involved in the construction, ownership, leasing and insuring of maritime vessels.  The Company employees approximately 4,000 people and has fleet of more than 270 vessels.  The Company also has numerous land based facilities and assets.

---

[1] Unless otherwise noted, the facts are taken from the Complaint and represent only Plaintiffs' views.

3

EXHIBIT __C__ PAGE __59__

The Company was founded in 1892 by the grandfather of Defendant Thomas Crowley, Jr. ("Thomas Crowley").  It currently has operating revenues in excess of $1 billion annually.  The capital stock of the Company is divided into Common Stock, Preferred A Convertible Stock and Class N non-voting stock.  The Crowley family, headed by Defendant Thomas Crowley, owns all of the Class A Preferred Stock and Class N non-voting stock. In addition, as of April 25, 2003 the Crowley Family owned or controlled approximately 65% of the common stock of the Company.

The Defendants were the Board of Directors at the time of the commencement of the action, November 30, 2004[2].    The individual Defendants are Thomas Crowley, Chairman, President and Chief Executive Officer of the Company, Molly Crowley, Thomas Crowley's mother, Phillip E. Bowles, William A. Pennella, Gary L. Depolo, Earl T. Kivett, Leland S. Prussia, Cameron W. Wolfe, Jr.

III.      Nature of the Claims

The Complaint challenged a series of transactions under which the Board approved the purchase, at Company expense, of tens of millions of dollars of life insurance in various agreements, as amended and/or "terminated" from time to time, owned, not by the Company, but by Thomas Crowley.  The insurance was purchased on the lives of members of the Crowley Family.  These purchases took place in a series of transactions commencing as of April 6, 1992.  In all, there were three separate insurance agreements involving as many as ten separate life insurance policies totaling at one point $141,296,319 in death benefits.  As set out in ¶ 37 of the Amended Class Action and Derivative Complaint the challenged transactions are as follows:

---

[2] The Board has remained unchanged since the commencement of the action.

EXHIBIT C PAGE 60

| Action | Date | Defendants On the Board |
|---|---|---|
| Approval of Insurance Agreement 1 (see Paragraph 73) | as of 4/6/92 | Bowles; Wolfe |
| Approval of Amendment 1 to Insurance Agreement 1 (see Paragraph 75) | as of 5/1/95 | All but Pennella and Kivett |
| Approval of Amendment 2 to Insurance Agreement 1 (see Paragraph 76) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Amendment 3 to Insurance Agreement 1 (see Paragraph 77) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Insurance Agreement 2 (see Paragraph 78) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Insurance Agreement 3 (see Paragraph 79) | as of 11/24/98 | All but Pennella and Kivett |
| Approval of each and every annual payment made under each of those agreements which payments were subject to unilateral suspension by admission of the Company in this action and its 2003 Proxy (see Paragraph 83) | Annually since 1992 | Various |
| Entering into the December 23, 2003 Settlement Agreement and the related implementing transactions including the agreement to pay the premiums due on a personal loan taken out by Thomas Crowley. (see Paragraph 87) | 12/23/05 | All |
| Failing to rescind and void the insurance agreements and recover the funds paid hereunder (see Paragraph 97) | | All |
| Annually paying the tax consultation costs to defendant Crowley arising from the Insurance Agreements (see Paragraph 96) | Beginning at least in 2002 | All |

IV.    Crowley's Approach to Acting as a Public Company

Notwithstanding that Crowley's management and board knew that the company had many public stockholders, it refused to acknowledge its obligations to those stockholders as a public company. For example, the Company engaged in the 1992 restructuring for the purpose and effect to which was to benefit the Crowley Family. Only after the litigation in this Court did the transaction result in the elimination of enhanced voting control for the Crowley Family.

EXHIBIT C PAGE 61

Similarly, in 1995 the Company engaged in the self tender strictly for the purpose of providing liquidity to a Crowley Family Trust. The self tender served no purpose of the Company and, instead, was engaged in and at the request of and for the purposes of benefiting the Crowley Family Trust. In 2001, the Company engaged in the self tender in an effort to attempt to avoid its obligations as a reporting company. That effort failed and the Company finally recognized its reporting obligations to its public stockholders.

Prior to that time, the Company's disclosures were non-existent with respect to material self-dealing transactions.

V.          The Insurance Agreements

On April 1, 2002 the Company first disclosed the life insurance arrangements between it and Thomas Crowley. The insurance arrangements obliged the Company to spend tens of millions of dollars, yet obliged Thomas Crowley to do nothing. In short, the Agreements provided that the Company would buy life insurance to be owned by Thomas Crowley for the benefit of Thomas Crowley and his estate. Thomas Crowley was not obliged to use the proceeds of the funds in any way and, was not for practical purposes limited or restricted in any fashion by the Agreements.

The purported purpose of the Agreements was to ensure and perpetuate Crowley family control. While the Agreements permitted Thomas Crowley the option of maintaining control, should he choose to do so, as noted above, he was not obliged to do that and at all times the transactions were designed and had the effect of using Company funds to address Thomas Crowley's estate planning problems.

Each year the Company voluntarily, by its own admission, continued to contribute to these insurance agreements until the payments were suspended on July 30, 2002. The

6

EXHIBIT C PAGE 62

suspension of those payments, however did nothing to effect the viability of the life insurance and, because of the structure of the Agreements, in essence allowed Thomas Crowley to use the Company funds, through a reduction of his liabilities to the Company to continue making payments on the insurance. At their peak the insurance agreements provided life insurance in the face amount of $141,296,319 as part of this scheme.

VI.      Damages

The damages sought in the Complaint exceed $23,000,000 at the time of the settlement. Indeed, the Complaint alleges that the Company at all times should have owned the policies and thus cash surrender value of the policies. During the fiscal year 2003 the cash surrender value of the policies exceeded $18 million. As of the commencement of the action in November 2004, the Company had already been injured through the improper expenditures of at least $15 million dollars and they continued at the rate $2.4 million per year. Thus, as of the time of the time of the settlement, damages sought by the Complaint exceeded $23 million. Complaint ¶ 101.

Had Plaintiffs been successful in proving their claims at trial, the most likely remedy the Court would have ordered would have required Thomas Crowley to repay at $23 million to the Company. This payment would have undoubtedly benefited the Company, however, for the individual stockholders there would have been no direct benefit from this remedy. In short, this relief would have been derivative.

VII.     The Settlement and its Benefits

It has been apparent that neither the Plaintiffs, other minority shareholders, nor Thomas Crowley were satisfied with their relationship. During the course of the litigation, the Plaintiffs recognized that an alternative resolution of this action which the

EXHIBIT C PAGE 63

Plaintiffs concluded could be at least as beneficial to them, would be an opportunity to liquidate their minority position at a favorable price. The Plaintiffs were only willing to agree to a transaction available to all other public stockholders. Obviously, from a economic standpoint, Thomas Crowley would have an interest in such transaction only if it resulted in him taking the Company private.

As set forth in the affidavits of the Plaintiffs, as minority stockholders, they were not in a position to control dividend policy of the Company and were not in a position to cause a transaction which would have provided them liquidity in their stock. Thomas Crowley has at all times stated that he was unwilling to dispose of his shares and had previously stated he had no intention of taking the company private. Further, the Company has not paid, and has not stated any intention ever to pay, any dividends on the stock.

In addition, the public float of the Company stock is very small and the stock has a history of trading only rarely and thinly in the "pink sheet" market. Thus, although there was a bid and ask price for the stock, neither the Plaintiffs nor any other shareholder of sizeable holdings had an opportunity to liquidate his or her holdings at any predictable price or time frame.

The proposed settlement obligates Thomas Crowley to make an offer to purchase all the outstanding public shares of the Company at a price of $2,990 per share through a tender offer and follow-up merger. This price represents an $1,190 premium over the bid price in the pink sheets of $1,800 per share as of December, 2006, a sixty-five percent (66%) premium. Approximately 28,200 shares of common stock are subject to the offer. Thus, the transaction collectively offers non-controlling shareholders a premium of over

EXHIBIT C PAGE 104

*Settlement based on 12/6 share price*

$33.5 million, even assuming that all shareholders could have sold at the last reported trade price. Because of the thin market, it is clear that all of the shareholders could not have sold at that price and thus the settlement offers to the shareholders a minimum value of at least $33.5 million dollars over the stock price at the time the final stage of settlement talks were reached. The bid price when the action was commenced, November 30, 2004 was $1,100 per share. The settlement represents a premium of $1,890 or over 170% over the price at that time.

From a minority stockholder's perspective, an investment in Crowley presents, theoretically, a great opportunity. The Company had a solid position to exploit potential growth opportunities in its business. The reality, however, was far different. The stock traded at a discount for a variety of reasons. They included, the control of Thomas Crowley, management's approach to minority stockholders, the absence of any dividend on the stock, in addition to the thin nature of the trading market and the relative size of the public float of the common stock when compared with large actively and publicly traded companies.

Over the years, the minority stockholders have made efforts to have Crowley management act in the manner more appropriate for a publicly held company. Essentially, these efforts have been unsuccessful. This, coupled with information in the Company's disclosures, made it clear the Crowley management was unlikely, in the foreseeable future, to change its view of its minority stockholders or its management of the Company in a way which that would enhance the minority shareholders' stock. Additionally, given the fact that Thomas Crowley was relatively young and, quite credibly, indicated that he had no intention of ever selling his stock, Plaintiffs concluded

9

EXHIBIT C PAGE 65

that, on a long term basis, not only would their investment, and the investment other public stockholders, reflect a relatively illiquid minority position in a stock which did not and foreseeable would not pay dividends, but that value would be further eroded by the approach of Crowley management to its public stockholders.

The action was commenced for the purpose of recovery of over $23 million which the Company spent for obviously private Crowley Family purposes, paying for life insurance owned by Thomas Crowley so that he could use the proceeds, if he decided to do so, to pay estate taxes and maintain his control of the Company. The way the Agreements were structured, Thomas Crowley in fact, had no practical obligation to the Company and could have chosen to sell the Company at any time he wanted and still keep the over $140 million in life insurance proceeds for himself. The Company's disclosures, meager as they were, made it clear that this was not some form of compensation for Thomas Crowley, who, according to the Company's disclosures was already handsomely and separately rewarded for his activities as the Company's chief executive and chairman. Plaintiffs believed it was critical in maintaining what value minority shareholders had as well as to enforcing appropriate rules of corporate governance, to recover these funds and to stop the misuse of corporate money. Plaintiffs believe that had this matter gone to trial, Plaintiffs would have been successful and would have recovered an excess of $23 million for the Company.

This recovery, of course, would have gone only to the Company and would have not directly benefited any minority stockholder. Further, based upon the history of the management's activities, Plaintiffs did not believe that this would have changed management's attitude towards minority. Thus, Plaintiffs viewed this litigation as, likely,

EXHIBIT C PAGE 66

only the first of what would need to be a series of actions designed to seek judicial assistance in compelling management to act appropriately and to treat Crowley as a public company.

Therefore, while Plaintiffs were committed to the successful pursuit of this litigation, they were aware that even if the claims had been successfully tried and the judgment collected, the likely result would have been the payment to the Company in excess of $23 million. Thomas Crowley would still own approximately two-thirds of the Company and nothing that the Plaintiffs likely would have accomplished, in this litigation, would have required Thomas Crowley to pay one penny in dividends to any stockholder. Therefore, while a successful trial and collection of judgment would have greatly benefited the shareholders indirectly, it would have provided no direct immediate tangible benefit to them.

The novel approach to settlement in this case provides a direct tangible and immediate benefit to all minority stockholders. The settlement provides an opportunity for stockholders voluntarily and without coercion to liquidate their positions in Crowley stock. The proposed settlement contains thresholds requiring that an overwhelming number of the minority stockholders express a desire to sell in order for the tender offer and merger to be completed. The requirement is that prior to closing the tender offer Thomas Crowley be in a position to complete a short form merger. If he obtains 95% of the outstanding stock of the Company in the tender offer, this will translate into approximately 85% of the public shares being tendered, in other words six out of seven public shares have tendered into the tender offer. Even if only 90% is obtained, this will mean five out of seven public shares were tendered, about 70% of the minority shares.

11

This will demonstrate an overwhelming approval by the public stockholders of the proposed transaction. In addition, to the extent that a public stockholder does not like the price being offered in the tender offer or merger, that stockholder has the option of seeking an appraisal before this Court. No stockholder will be forced to accept the price negotiated by the Plaintiffs.

The price negotiated by the Plaintiffs of $2,990 represents a substantial premium over any price which could be realistically be expected to be obtained by any minority stockholder in any transaction, other than a buy-out by Thomas Crowley. This is a tremendous opportunity for shareholders, given that Thomas Crowley has complete operational control of the Company, has chosen not to pay dividends for a number of years, and had no pressing interest in pursuing a buy-out of minority stockholders at this time, or indeed in the foreseeable future. In discussions with representatives of Thomas Crowley, it was expressed to Plaintiffs that it was Thomas Crowley's intention to operate the Company in its present capital structure well into the indefinite future.

The "Pink Sheets", on which the Company stock trades, operate through a bid and ask system. The bid price is the price in which a market maker is prepared to buy at least one share of the stock. The ask price is the price in which a market maker is prepared to sell at least one share of stock. There are no assurances nor any indications of how "deep" the market is: that is just how many shares could be bought or sold at that price. History has demonstrated that in the selling of minority blocks of stock, the larger block to be sold the greater the downward pressure on the price. Therefore, the bid price offered for the stock represented the best a shareholder could hope to obtain and, to the extent there were a large number of shares being sold, either by that seller or by some

12

EXHIBIT C PAGE 68

group of sellers, the price would likely erode. At the time the action was commenced, the bid price for the stock was $1,100 per share. The settlement represents an increase of $1,890 over that or a premium of 170%. At the time the parties entered into final settlement negotiations in late 2006, the bid price for the stock was $1,800 per share. The transaction price of $2,990 represents a premium of $1,190 or 65% over that price.

In considering whether to accept this price, the Plaintiffs considered a number of factors. The principal factors weighing in favor of accepting the proposed settlement are that the price of $2,990 represents a substantial, and otherwise unrealizable, premium over the market price for the stock and provides all shareholders an opportunity to realize that value immediately in cash. Absent the transaction, there is no reason to believe that the market for Crowley stock would materially improve either in price or liquidity. Further, there was no reason to believe that Crowley stock would commence paying a dividend at any time. The proposed settlement unlocks and provides the ability to realize $1,190 per share in value otherwise not available to the shareholders, an aggregate value of approximately $33.4 million. Plaintiff considered this opportunity to directly realize a value of at least $33.4 million as superior to the benefit which the minority stockholders would have received from a successful trial of the case: an indirect benefit through the payment to the Company of $23 million. Thus, Plaintiff considers the proposed settlement not only fair, reasonable and adequate but in fact superior to a complete and total victory at trial.

VIII.   Objectors to the Settlement.

By letter to the Court dated April 9, 2007, Leonard Rosenthal ("Rosenthal") or ("Objector") objected to the proposed settlement in this action. Rosenthal objected to the Settlement on the following grounds:

(1)   The proposed Settlement does not recover funds for the corporation but instead provides funds to the shareholders directly.

(2)   The Settlement "forces the minority shareholders to sell out their shares at an under value price."

(3)   Plaintiffs' counsel did not investigate the fairness of the buy-out offer but relied "instead on the fairness opinion of investment bank hired by the people he was suing."

(4)   The investment banker's opinion does not satisfy professional standards for establishing fairness.

Rosenthal claims to be a shareholder of Crowley but attaches no proof to his objection. Plaintiffs are informed and therefore believe that there is a Leonard Rosenthal who is a registered owner of two shares of Crowley stock. These two shares represent 0.00007 (seven thousandths of one percent) of the shares to be acquired in the proposed transaction.

In an objection dated April 9, 2007, Rosenthal claims that the proposed settlement "forces the minority stockholders to sell out" at an undervalued price. This quite simply is not true. The proposed settlement offers an opportunity to tender into a tender offer. That tender offer has sufficiently high thresholds that it will not proceed unless it receives overwhelming minority shareholder support. No shareholder is forced to tender into the

14

tender offer. It is non-cohesive. No shareholder is forced to accept the price in either the tender offer or the merger. All shareholders retain the right to an appraisal. In short, if Rosenthal does not want the offer or the merger price, he does not have to accept it.

The Rosenthal objection inaccurately states that Plaintiffs' counsel relied on the fairness opinion of an investment bank hired by the Defendants. Nothing could be further from the case. The price of $2,990 was established by all the Plaintiffs working as a committee. The Plaintiffs relied on their own internal evaluations in reaching this number. The Plaintiffs did not represent and do not represent to anyone the price of $2,990 represents "fair value" or "enterprise value" or any other type of value. Instead, it is a negotiated price which Plaintiffs felt represented an overwhelming superior result to all minority stockholders and which Plaintiffs felt should be offered to all minority stockholders. In reaching their decision to settle the case including the price at which to settle and the manner in which to structure the settlement, Plaintiffs relied on their own resources including their own internal evaluations. They did not rely upon the evaluation by or on behalf of any Defendant.

Attached to Plaintiffs' Appendix is what Plaintiffs believe to be the biography of Rosenthal available on-line. Appendix Tab J. Also in Plaintiffs' Appendix is information indicating that there is an apparent relationship between Rosenthal and an investment banker, Gary Luten, who operates an organization called The Shareholder Forum. Appendix Tab I. The Shareholder Forum describes itself as "an independent forum for shareholders of Crowley Maritime Corporation…initiated to provide its participants with effective access to information and a meaningful exchange of views on issues relating to investor interest". The manager, Transition Investments Inc., is

believed to be controlled by Gary Luten who is identified as its President and who conducts the forum. See Appendix Tab E.

Upon the announcement of the Settlement, Luten was initially quite laudatory about the results. Appendix Tab G. He referred to it as "good work" by Plaintiffs' counsel and congratulated Plaintiffs' counsel on the proposed Settlement. He further stated that he hoped that "all shareholders realized the benefits of your good work and hoped that they appreciated what you have accomplished for them." Subsequently, Luten solicited Plaintiffs' counsel seeking to participate in any attorney fee and expense which was awarded by the Court. Once Plaintiffs' counsel informed him that it did not see any basis for the Court award the forum any of the unspecified "expenses" as requested by Luten, Luten solicited information from Plaintiffs' counsel relating to the Settlement, apparently in coordination with formulating the objection by Rosenthal. That information is apparently what Rosenthal refers to in his objection where he refers to Plaintiffs' counsel's "own statement". Once the objection was made, Luten again solicited an opportunity to participate in the attorney's fees and expenses. Appendix Tab H.

On April 16, 2007 James F. and Carter Thacher sent an objection to the Court. The Thachers claim to have owned 206 shares of Crowley, which they sold on May 17, 2006 for $1,800 per share in the "Pink Sheet" market. They object because they are not able to participate in the offer and further ask the Court to delay the settlement so they can investigate further. The Thachers say that they were unaware of the existence of the lawsuit at the time they sold.

Crowley's public disclosures, since the action commenced, including the two most recent 10Q's and the most recent 10K preceding May 17, 2006 have contained disclosures relating to the litigation. Appendix Tabs A-D. See Crowley Form 10Q for the quarterly period ending March 31, 2006 filed May 15, 2006.  Appendix Tab B at page 31-32; Crowley formed 10K/A Amendment No. 1 for the fiscal year ending December 31, 2005 filed April 14, 2006. Appendix Tab C at page 64; Crowley form 10Q for the quarterly period ending September 30, 2005 at page 44 filed November 10, 2005. Appendix Tab D.  Each of these disclosures put the public on notice regarding the existence of the litigation and the specific nature of the claims alleged.  Each of these disclosures makes clear that the action was filed both as a class action and as a derivative action.

EXHIBIT  C  PAGE 73

## STATEMENT OF QUESTIONS INVOLVED

IX.     Should the settlement be approved as fair, reasonable and adequate?



## ARGUMENT

X.    This Settlement is Fair, Reasonable and Adequate and Should be Approved.

### A.    Applicable Legal Standards.

It has long been the policy of Delaware to encourage voluntary settlement of disputed claims. e.g. Kahn v. Sullivan, Del. Supr., 594 A.2d 48, 58 (1991); Nottingham Partners v. Dana, Del. Supr., 564 A.2d 1089, 1101-02 (1989). Delaware law particularly favors settlement of shareholder derivative actions because these promote judicial economy. e.g. In re Vitalink Communications Corp. Shareholders Litigation, Del. Ch. 1991 WL 238816 at 10-11 (1991), aff'd, Del. Supr. 610 A.2d 725 (1992).

In evaluating a proposed settlement of a derivative or class action the Court's function is to consider the nature of the claim, the defenses thereto, the legal and factual circumstances of the case, and then apply its own business judgment in deciding whether the settlement is reasonable in light of these factors. e.g. Geller v. Tabas, Del Supr., 462 A.2d 1078, 1082 (1983); Polk v. Good, Del. Supr., 507 A.2d 531, 535 (1986); PaineWebber R & D Partners II, L.P. v. Centocor, Inc., (Del. Ch.) 1999 WL 160123 at 50 (1999). The principal focus is on upon the benefits provided by the settlement in light of the claims and the likelihood of success on the merits. Id; Baupost LP, 1983 A-1 v. Providential Corp., Del. Ch. 1993 WL 401866 at 2 (1993). The Court is to assess the strengths and weaknesses of the claims asserted and to evaluate the fairness and adequacy of the other consideration offered in exchange for the release being granted. e.g. In re Caremark International, Inc. Derivative Litigation, Del. Ch. 698 A.2d 959, 961 (1996). In light of the foregoing standards, the settlement should be approved because it is fair,

EXHIBIT _C_ PAGE _75_

reasonable and adequate in light of the nature of the claims, the defenses thereto and the benefits of the settlement.

**B.    The Risks of Success on the Claims.**

The goal of the action was to recover damages incurred by the Company as a result of wrongful conduct by the Defendants: the alleged wrong was misuse of corporate funds for improper purpose benefiting the Company's controlling stockholder, Thomas Crowley. The claims were plead both as derivative claims and as class individual claims.

To succeed on the derivative claims, Plaintiffs would have had to first establish that the Board could not adequately consider the demand as Plaintiffs made no demand on the Board. This Court is well familiar with the standard in Aronson v. Lewis, Del. Supr., 473 A.2d 805 (1984), overruled on the other grounds 746 A.2d 244 (2000) and its progeny. While Plaintiffs believe they would have succeeded in convincing the Court that the demand was excused, this issue is not free from doubt.

In addition to succeeding in motion practice relating to demand issues, Plaintiffs would have had to convince the Court that the money spent by the Company purchasing money for life insurance for Thomas Crowley constituted a breach of fiduciary duties. Plaintiffs believe they had a strong likelihood of success based on the facts of this case, however, again, the issue is not free from doubt.

Plaintiffs also included a class action count based upon the theory that the wrongs constituted individual claims. In Tooley v. Donaldson Lufkin & Jenrette, Inc., Del. Supr., 845 A.2d, 1031 (2004) the Supreme Court established a test for determining whether a claim was a derivative case or an individual one, susceptible to class action treatment. The test turns on the nature of the relief to be awarded. Because, under the

facts of this case, Plaintiffs believe the nature of the relief to be awarded was not clear, that is whether the relief would be awarded to the corporation or to the minority stockholders directly, they plead the case in the alternative. Specifically, the Complaint stated to the extent complete compensation was not awarded by the Court in a derivative manner, the class claims were asserted. Plaintiffs believe it is most likely that the Court would have awarded relief in a derivative manner, however, again because the Court's determination of a remedy would await a final decision on the merits, it was not clear what relief the Court would order.

### C.    The Benefits Exceed Those Obtainable in a Successful Trial

As to the shareholders other than Thomas Crowley, it is clear that the benefits of the settlement exceed the benefit which a successful trial of the action would have obtained. A successful trial would have obtained a recovery of $23 million for the Company. Proportioning that to the shareholders other than Thomas Crowley, they would have *indirectly* received the benefit of approximately one-third of $23 million, the proportion of their ownership or approximately $7.6 million. The proposed settlement provides them a premium for their stock of at least $33.4 million, approximately 4.35 times the benefit they would have received from a successful trial and recovery critically; the benefit of the settlement is a direct and is paid directly to the individual shareholders.

For the sake of clarity, Plaintiffs wish to emphasize that the $33.4 million is the premium being received. The total value of the transaction is approximately $100 million. Of that $100 million, $33.4 million represents the premium over the market price otherwise available to minority stockholders.

**D.    The Objections are Without Merit.**

The objection of the Thachers is that because they willingly sold their shares at $1,800 each on May 17, 2006, a price acknowledged to be fair market value at the time, they will receive nothing in the settlement.  They object to the Settlement because they are included in the release but will not receive any payment due to the nature of the relief obtained.  The Thachers assert that this is unfair because they had no notice of the litigation at the time they sold and because they should be permitted to pursue whatever claim they may have.  They do not assert that they have any particular claim which they believe they could or would pursue. The Thacher objection is, in essence, the Thachers' desire to participate in receiving the settlement consideration.  The Thachers do not complain that the settlement consideration is inadequate, only that it is not available to them.  Finally, they ask for additional time to research this action and the proposed settlement.  Accepting, for the purpose of this argument the Thachers' assertions that they own stock at the commencement of the action and sold as stated in their letter, something for which they have submitted no proof, their objection should still be denied.

There is no unfairness to the Thachers as they knowingly and willingly sold stock into the market with no expectation of retaining any rights and failed to act on any rights in a timely fashion.  Finally, the Thachers' request for adjournment of the hearing to provide them additional time should be denied.  The Thachers do not state what if anything they need to investigate nor identify how much time they believe such an investigation would take.  In short, they have provided the Court no basis in which to grant any adjournment.

EXHIBIT C PAGE 78

Whether the Thachers subjectively had notice of the lawsuit is irrelevant. Undoubtedly, the Thachers had objective notice of the lawsuit because the lawsuit of this action was repeatedly mentioned in the company's public filings after its commencement from March 31, 2005 through the date of Thacher's purported sale. See Appendix, Exhibit Tabs A-D. Those public filings make clear the nature of the lawsuit and the nature of the claims asserted. The Thachers cite to no, and Plaintiffs submit there is no, authority for the proposition that subjective ignorance of a company's public disclosure constitutes grounds to object to a proposed settlement of any nature.[3]

Second, Delaware law is clear that shareholders who decide to sell during the pendency of litigation have no right to be excluded from a class in a settlement on the grounds that they do not receive any economic benefit from the settlement. In In re Triarc Companies, Inc., Del. Ch., 791 A.2d 872, 8-79 (2001) Vice Chancellor Lamb rejected just such an assertion. The Court noted that particularly when "derivative-type relief" is sought "it is unavoidable that persons who sever their economic relationship with the corporation during litigation will not benefit from a settlement or a judgment in favor of the class." This Court has also recognized persons who sell during the pendency of litigation sell into market at a price which "implicitly reflected the value of the pending and any prospective lawsuits." In re Resorts International Shareholders Litigation, Del. Ch., 1988 WL 92749 at 9 (1998); In re Prodigy Communications Corp. Shareholders Litigation, Del. Ch., 2002 WL 1767543 at 3.

Nor is it appropriate to delay consideration of a settlement based on an unspecific claim of the need for more time. In order to delay a settlement an objector must show the

---

[3] One thing is clear from the Thachers' subjective ignorance, they could not possibly have been relying on the lawsuit to protect any rights they may have or may have had.

EXHIBIT __C__ PAGE 79

need for the additional time. <u>Geller v. Tabas</u>, Del. Supr., 462 A.2d 1078, 1081 (1983). Finally, in considering the fairness of the settlement to the objectors, the Court can consider the nature of the claims being released. <u>In re Triarc</u>, *supra*. The Thachers identify no specific claim which they wish to assert. Even without the specification of a potential claim, however, the Court could observe that the matters raised in the Complaint, and as to which the release relates, were first disclosed on April 1, 2002. The Thachers, acknowledging they were unaware of and therefore did not rely upon the pendency of any lawsuit, declined to take any action at any time to preserve any rights they might have. As a result of this inactivity, any claim relating to the facts alleged in the Complaint, if asserted for the first time now, would almost certainly be time barred. e.g., <u>Fike v. Ruger</u>, Del. Ch. 754 A.2d 354 (1999) (three years for fiduciary duty claims under Delaware law); <u>Lampf, Plena, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 112 S. Ct. §21 (1991) (one year from discovery, three years from violation for Federal Securities Claims). Here, there is no unfairness to the Thachers.

Even if the Court were to accept that Rosenthal's objection has been made in good faith,[4] it should be rejected as meritless. The first objection: that the recovery does not obtain anything for the Corporation, but instead results in recovery directly to the minority shareholders, is a factor indicating a superior benefit to the minority stockholders, not a basis for an objection. Clearly the proposed Settlement, providing substantial direct benefits, is superior to the indirect benefit which the shareholders would receive had money been paid to the Corporation.

---

[4] The Plaintiffs respectfully submits that there is substantial indication that Rosenthal's objection has not been interposed in good faith.

Rosenthal's objection that the proposed Settlement "forces the minority shareholders to sell" is simply false. There is nothing in the proposed Settlement which in any way forces a minority shareholder to tender shares into the Tender Offer. Further, the Tender Offer has exceedingly high minimal thresholds in so that it will proceed only if it receives overwhelming support of the minority stockholders.

Rosenthal's assertion that Plaintiffs' counsel stated that it relied on the fairness opinion of an investment bank hired by the Defendants is also inaccurate. The tentative price of the proposed Settlement was reached before any work performed by any of the investment banking firms hired by the "outside" directors. Further, as can be seen from the e-mail sent from Plaintiffs' counsel to Luten (who was apparently acting as front to collect the information on behalf of Rosenthal), Plaintiffs' counsel did not state that Plaintiffs relied on any fairness opinion. Indeed, Plaintiffs specifically have not stated that they view the offer as constituting "fair value". Instead, the proposed Settlement is quite clear, it is a price which the Plaintiffs view as highly advantageous for all minority stockholders.

To the extent Rosenthal objects that a controlling stockholder can, through a non-coercive tender offer and follow up short form merger, obtain complete ownership of a company without having to pay fair value (except through appraisal rights), his objection is really to the state of Delaware law. e.g., <u>In re Siliconix Shareholders Litigation</u>, Del. Ch. 2001 WL 716787 at 166 (2001). Indeed this is the problem with Rosenthal's last objection, that the fairness opinion does not satisfy standards with "fair value". Even if his objection is factually correct, that is that the valuation opinions do not satisfy

EXHIBIT C PAGE 81

standards for "fair value", it is legally irrelevant as there is no obligation under present Delaware law to pay fair value under these facts.

This is one of the factors in which Plaintiffs considered in reaching the proposed Settlement. Thomas Crowley was not under any obligation, given the present state of Delaware law, to pay fair value to the minority stockholders in any transaction for the foreseeable future. Unless Thomas Crowley decided to take the company private, something he was not obliged to do and in fact he stated that he did not intend to do, and unless in seeking to take it private he failed to obtain control of 90% of the votes in a non-coercive tender offer, fair value would not be available to shareholders except through an appraisal.

In fact, Rosenthal's objection proves too much. Under the settlement, Rosenthal and any other stockholder who desires "fair value" has the right to obtain it through an appraisal before this Court. See also, In re Resorts International Shareholders International Appeals, Del. Supr., 570 A.2d 259, 268 (1990) holding that preserving a right to appraisal is a special factor to consider in assessing whether any shareholder was treated unfairly in a settlement. Here the opportunity to obtain "fair value" exists only because of the proposed Settlement and only if the proposed Settlement is approved and the transaction goes forward. If the Court determines not to approve the Settlement, not only would the offer of $2,990 be lost to minority stockholders but, for those who feel that it is an inadequate price, the opportunity for an appraisal would also be lost.

Rosenthal's objection, on behalf of his two shares should be rejected.

EXHIBIT C PAGE 82

## CONCLUSION

For the foregoing reasons, the settlement should be approved.

DATED:  April 24, 2007                    Respectfully submitted,

                                          TAYLOR & McNEW, LLP

                   BY:       */s/ R. Bruce McNew*
                                R. Bruce McNew (# 967)
                                2710 Centerville Road, Suite 210
                                Wilmington, Delaware 19808
                                (302) 655-9200

EXHIBIT C PAGE 83

# CERTIFICATION

I hereby certify that, on May 2, 2008, a copy of the foregoing *DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's EM/ECF System.

By:  /s/ Michael F. Perlis
     Michael F. Perlis

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51048136

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF CROWLEY MARITIME CORPORATION'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM FOR BREACH OF CONTRACT - Case No. CV-08-00830 SI**