***PURSUANT TO LOCAL RULE 3-4(a),***
***SEE SIGNATURE PAGE FOR***
***LIST OF PARTIES AND COUNSEL***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION, | **Case No. CV-08-00830 SI** |
| Plaintiff, | **[Hon. Susan Illston]** |
| vs. | **JOINT CASE MANAGEMENT** |
| | **STATEMENT AND RULE 26(f)** |
| FEDERAL INSURANCE COMPANY; TWIN | **REPORT** |
| CITY FIRE INSURANCE COMPANY; and | |
| RLI INSURANCE COMPANY, | |
| Defendants. | |
| | **Action Filed: January 7, 2008** |
| | **Removal Date: February 6, 2008** |
| | **Trial Date:    None Set** |

**JOINT CASE MANAGEMENT STATEMENT**

In accordance with the Court's February 6, 2008 Order, Plaintiff Crowley Maritime Corporation ("CMC") and Defendants Federal Insurance Company ("Federal"), Twin City Fire Insurance Company ("Twin City"), and RLI Insurance Company ("RLI") (the "Parties") hereby jointly submit this statement pursuant to Civil Local Rule 16-9 and Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

1.    <u>Jurisdiction and Service</u>

The Court has original jurisdiction here pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000,

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

exclusive of interest and costs, in light of the amounts which CMC is seeking.  No issues exist

regarding personal jurisdiction or venue.  CMC has effected service on Federal, Twin City and

RLI (the "Insurers").

    2.    <u>Facts</u>[1]

        a.    <u>CMC's Statement of Facts</u>

        (1)    <u>The Underlying Action</u>

    This case arises from a class action/shareholder derivative action filed in the Court of

Chancery in the State of Delaware (the "Franklin Action") against CMC and certain members

of its board of directors.  The Franklin Action challenged the propriety of certain expenditures

by CMC for life insurance policies which allegedly were intended to benefit CMC's

controlling shareholder, Thomas B. Crowley, Jr.  Breaches of fiduciary duties were alleged,

and damages and other relief were sought.

    CMC requested coverage for the Franklin Action under three directors and officers

liability insurance policies (a primary policy, first level excess policy, and second level excess

policy) issued by Federal, Twin City and RLI, respectively.  The policy limits are $10 million,

$10 million, and $5 million, respectively, subject to a single $500,000 retention.  The claims

asserted in the Franklin Action fell directly within the coverage of the Insurer's three policies.

    CMC notified the Insurers of the Franklin Action in December 2004, and shortly

thereafter Federal assigned an adjuster to monitor the claim.  Federal also approved CMC's

retention of Delaware counsel (the Morris, Nichols firm) to defend the suit.

    None of the Insurers had any duty, under their policies, to provide a defense to the

Franklin Action, and none of the Insurers provided a defense.  In addition, each of the Insurers

fully reserved its rights to deny coverage.

/ / /

---

[1]  This factual discussion is included solely for general background and is not intended to
constitute an admission of any fact or characterization of fact.  Discovery has not yet begun in
this case and the Parties reserve their rights accordingly.  Because the Parties were unable to
agree on a statement of facts, two separate statements are being provided -- the first  by CMC,
and the second by the Insurers.  The same is true with respect to the Parties' specification of
the factual and legal issues presented.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

(2)    The Consent-To-Settlement Policy Provisions

The Federal policy includes provisions that purport to require CMC to obtain Federal's prior written consent before settling any claim, and to require CMC to consult with Federal before negotiating any settlement, but those provisions are not enforceable under applicable California law where -- as here -- the insurer had no duty to defend, did not defend, and reserved its right to deny coverage. That is because an insurer's right to control the defense and settlement of an action against its insured is an adjunct to the insurer's duty to defend, and only where the insurer provides a defense and no conflict of interest exists does the insurer have the exclusive right to control defense and settlement. Such was not the case here, because Federal did not defend and its reservation of rights created a conflict.

Under applicable California law, CMC was not obligated to obtain the Insurers' consent before negotiating with the Franklin Action plaintiffs and settling the case. Its only obligations were to act in good faith in reaching a reasonable settlement, and to respond reasonably to any requests by the Insurers for further information. CMC met those obligations.

(3)    The Proposed Settlement

In March 2007 CMC reached a tentative agreement to settle the Franklin Action on favorable terms that involved both a settlement of the plaintiffs' claims and the purchase of the plaintiffs' CMC shares through a tender offer, which was to be followed by a merger. The tentative settlement agreement was subject to certain conditions. One such condition was that if the proposed tender offer or the subsequent merger "cannot be consummated for any reason, then the Settlement proposed herein shall be of no further force or effect and the Settlement and any amendment thereto and all orders relating to it shall be null and void and of no force and effect."

Furthermore, the proposed tender offer was to include a number of conditions, including the conditions (a) that the Delaware court's approval of the proposed settlement had to be obtained, and (b) that the CMC board of directors must not have determined to oppose the offer or merger. Significantly, the CMC board of directors' discretion, in determining whether to oppose the offer or merger, was not limited in any way. Thus, the board could, for

example, have decided to oppose the offer and merger if the Insurers had informed CMC that they would not consent to the proposed settlement. In such event, CMC would have been entitled to cancel the offer and merger, and the proposed settlement could have been scuttled. Thus, the proposed settlement agreement provided that the effective date of the proposed settlement would not occur until five days after the latter of (a) the consummation of the offer and merger, or (b) the entry by the Delaware court of a final order and judgment approving the settlement.

(4)    CMC Seeks The Insurers' Consent To A Reasonable Settlement

In March 2007, after reaching the tentative settlement with the Franklin Action plaintiffs, CMC notified the Insurers and sought their consent to the proposed settlement. CMC also notified the Insurers that a hearing had been set in the Delaware court for April 27, 2007 -- at which time court approval of the proposed settlement would be sought. On April 5, 2007 Federal's attorney Henry Nichols responded by telephone, advising that Federal "ha[d] no problem with consenting" to the proposed settlement but wished to obtain additional information relating to the proposed settlement.[2] The requested information was promptly supplied by CMC, but no further response was ever received from Federal, and CMC never received any response at all from either Twin City or RLI. The CMC board ultimately determined that the proposed settlement was reasonable and in the best interests of the Company, so CMC proceeded to complete the proposed settlement, which was thereafter approved by the Delaware court as being "fair, reasonable and adequate and in the best interests of the Company, its shareholders and the Class."

As part of the settlement, $17.625 million was paid to the plaintiffs for a release of their claims. That was a reasonable amount, given the probability that the plaintiffs would have recovered a greater amount had the action gone to trial. As a result, the Insurers should have consented to the settlement -- whether or not they also reserved their rights to contest coverage.

---

[2]  In their Statement of Facts, the Insurers claim that Federal "disputes CMC's characterization of this conversation," but no alternative characterization of the conversation is provided, nor is it disputed that the conversation occurred.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    It also was agreed as part of the settlement that Crowley would pay, on behalf of the director

2    defendants, the plaintiffs' attorneys' fees and expenses in an amount to be determined by the

3    Delaware court.  The court ultimately issued an order awarding the plaintiffs their attorneys'

4    fees and expenses in the amount of $4,219,458.26, and Crowley paid those fees and expenses

5    as ordered by the court.  The court specifically concluded that this amount "represents a

6    reasonable attorney's fee under the circumstances of this case."  The fee award amount does

7    not detract from the conclusion that the settlement was reasonable, since the plaintiffs likely

8    would have obtained a higher fee award in addition to their recoverable damages had there

9    been no settlement.

10        In determining whether the proposed settlement was reasonable and should be

11    consented to, the Insurers were obligated[3] to consider the amount proposed to be paid for a

12    release of the plaintiffs' claims, the likely extent of the plaintiffs' recoverable damages should

13    they prevail, and the probability that the plaintiffs would prevail.  Under applicable California

14    law, the Insurers were not permitted to consider coverage issues.  However, the Insurers failed

15    to conduct any reasonable investigation sufficient to enable them to determine whether the

16    proposed settlement was a reasonable one that ought to be consented to.

17        (5)    Federal Wrongly Invokes Its Policy's Consent Provisions

18        On June 14, 2007 -- after the settlement was finalized -- Federal took the position that

19    there was no coverage for the Franklin Action settlement because Crowley had not obtained

20    Federal's consent in writing before consummating it.[4]  Federal's argument is incorrect for three

21    separate and independent reasons.

22

23

24    [3] The Insurers' obligation to give good faith consideration to the proposed settlement, and not
25    to unreasonably withhold their consent, derived not only from the express provisions of the
      insurance policies involved, but also from the covenant of good faith and fair dealing that is
26    implied by law into every insurance contract.

27    [4]   Federal has never reimbursed CMC for any portion of the settlement, and has failed to
      reimburse almost all the defense costs incurred by CMC.  However, without providing any
28    explanation or any supporting calculation, Federal did pay approximately $77,000 -- which
      amounted to a little more than 10% of CMC's defense costs.

First, as discussed above, the Federal policy's consent provisions were rendered inoperative (or waived or forfeited) under applicable California law by the circumstances that Federal (a) had no duty to defend and did not defend the Franklin Action, and (b) reserved its right to deny coverage.

Second, Federal's breach of the implied covenant freed Crowley from compliance with the Federal policy's consent provisions. That is because an insurer cannot deprive the insured of the benefits of the contract while, at the same time, insisting on the enforcement of its own rights under the agreement. Federal breached the implied covenant by its failure to promptly respond substantively in writing to Crowley's notice of the proposed settlement and request for consent; by its deceptive conduct in misleading Crowley into believing that Federal "had no problem with consenting" to the proposed settlement; by failing to warn Crowley that, if it proceeded to consummate the proposed settlement, Federal would deny coverage; and by waiting until after the settlement had been finalized to first raise the issue. Federal also breached the implied covenant by failing to conduct an adequate investigation of the reasonableness of the proposed settlement, by failing to give it good faith consideration, and -- ultimately -- by refusing to consent to the settlement and then denying coverage on that basis. Federal failed to give as much consideration to Crowley's interests as it gave to its own. Essentially, Federal treated the proposed settlement as nothing more than an opportunity to avoid coverage.

Third, Federal's conduct gives rise to a waiver (or a forfeiture or estoppel) which prevents Federal from enforcing the Federal policy's consent provisions.

(6)     CMC's Covered Loss Exceeds $22 Million

The attorney fees and expenses incurred by Crowley defending the Franklin Action constitute a covered "Loss" as defined by the Federal policy. So, too, do the amounts paid to settle that Action, since a covered "Loss" is defined as expressly including "settlements." Those amounts also constitute covered losses under the Twin City and RLI policies, which follow form with the Federal policy. Crowley incurred covered defense costs, in an amount to be proven at trial, that exceed $600,000.00. The amount paid to settle the Franklin Action

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    includes the $17.625 million paid directly to the plaintiffs for a release of their claims, as well

2    as the $4,219,458.26 that was paid to their attorneys, for a total of $21,844,458.26.  Crowley

3    was obligated to, and did, pay the defense costs and settlement amounts on behalf of the

4    director defendants.  After deducting the $500,000.00 retention provided by the Federal policy,

5    Crowley's total covered loss exceeds $22 million.

6
7           (7)    The Federal Policy's "Illegal Profit" Exclusion Does Not Bar
                   Coverage For Any Portion Of The Settlement

8           The Insurers' contention that coverage is barred by Exclusions 7(c) or 8(a)(ii),

9    which bar coverage for the restitution of illegal profits obtained by insureds, is incorrect.

10   There is no basis for concluding that any insured person or organization gained any profit or

11   remuneration to which he or it was not legally entitled.  First, neither the terms of the

12   settlement approved by the Delaware court nor the court's opinion approving the settlement

13   determined in any way that any insured received any profit, remuneration or advantage to

14   which that insured was not legally entitled.  Second, the court did not determine (or suggest)

15   that the settlement payment represented a "return" to the Company of the amounts previously

16   paid for the split dollar policies.  The court never characterized, or treated, any portion of the

17   settlement as a recovery of money by or for the Company.

18          The damages sought in the underlying action consisted of "the premiums, costs and

19   expenses paid with respect to the Split-Dollar Agreements."  Plaintiffs' theory was that the

20   Company had wrongly paid to third parties, including insurers and attorneys, amounts (in the

21   form of premiums, costs and expenses) that benefited Mr. Crowley, since he was the

22   beneficiary of the life insurance policies at issue.  There was no allegation, or any evidence,

23   that any defendant other than Mr. Crowley was a beneficiary of the split dollar policies, or

24   otherwise received any "illegal profit" that ought to be restored to the Company.  The other

25   defendants were sued for alleged negligence and breach of fiduciary duty based on the

26
27
28

JOINT CASE MANAGEMENT STATEMENT                                    Case No. CV-08-00830 SI

1  contention that they had wrongly approved the corporate expenditures involved in purchasing

2  the split dollar policies.[5]

3        Since there was no contention that the other defendants received an illegal profit, the

4  exclusions at issue do not bar coverage for that portion of the settlement which is allocable to

5  the release of claims against the defendants other than Mr. Crowley. [6]  That is because --

6  pursuant to Section 9(a) of the policy -- no facts pertaining to Mr. Crowley are imputed to any

7  other defendant for purposes of applying the subject exclusions.  Thus, without conceding that

8  coverage for the portion of the settlement allocable to the release of claims against

9  Mr. Crowley is barred, the most that could be said is that resort must be had to the policy's

10  allocation clause to determine whether coverage is barred for any part of the settlement.

11        Section 17 governs the allocation of losses that are covered in part, and not covered in

12  part.  Section 17(a), which applies to Securities Claims such as those that were settled in the

13  Franklin Action, states that if the insured "incur[s] both loss that is covered . . . and loss that is

14  not covered," then "such amount" shall be allocated "between covered Loss and non-covered

15  loss as follows:  (i) The portion, if any, of such amount that is in part covered and in part not

16  covered under Insuring Clause 2 shall be allocated in its entirety to covered Loss . . . ."  Under

17  §17(a), the entire settlement payment is allocated to covered Loss if part of it is covered and

18  part is not covered.  As a result, coverage is not barred for any portion of the settlement.

19        (8)    The Settlement Payment And Fee Award Both Constitute Covered "Loss"

20

21  [5]  Even if a director acted negligently (for example, by not making sure he was fully informed
before authorizing the challenged transactions), that would not be sufficient to invoke the

22  illegal profit exclusion.  *See Bistricer v. Federal Ins. Co.*, 2003 WL 22251290, *4 (S.D.N.Y.
2003) ("Since neither dishonesty nor personal profit are elements of the alleged negligence,

23  plaintiffs would be entitled to coverage with respect to this claim"); *see also Federal Ins. Co.
v. Kozlowski*, 18 A.D.3d 33, 41 (N.Y.App.Div. 2005) (the "Supreme Court properly rejected

24  the applicability of the personal profit exclusion . . . [where] the indictment charges Kozlowski
not only with crimes involving personal profit, but [also] those, such as making false entries to

25  facilitate loans for other Tyco employees, from which he did not directly profit").

26

27  [6]  The settlement payment was undifferentiated -- the settlement agreement did not purport to
allocate particular portions of the total amount paid to the release of claims against particular

28  defendants.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

The Insurers have advanced two arguments why the settlement costs supposedly do not fall within the policy's definition of a covered loss.  First, because they were paid by "Crowley Newco Corp.," which allegedly is not an insured under the Federal policy.  Second, because they were "substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an [Insured] Organization in connection with its purchase of any securities."  The first argument contends that Crowley Newco Corp. ("CNC") is not the same as Crowley Maritime Corporation ("CMC"); the second argument assumes that, in essence, it *is* the same -- that CNC was a mere instrumentality or funding mechanism through which CMC met its obligation, under the settlement, to purchase the plaintiffs' shares through a tender offer.

The Stipulation Re Settlement and Offer to Purchase show that CNC was, in fact, a funding mechanism employed by the Company to effectuate the share purchase obligation included in the settlement.  The Stipulation provided that CNC would be formed by Mr. Crowley (CMC's majority shareholder at all relevant times) and then, after it made a cash tender offer -- that was to be funded by CMC -- to acquire plaintiffs' shares and completed the acquisition of the shares, CNC would "merge with and into the Company, with the Company continuing as the surviving Company following the merger."  CNC never existed before the settlement, was created solely to effectuate the settlement, then promptly merged into CMC and ceased to exist as soon as the settlement was completed.  The settlement was actually paid by CMC, through CNC.

Thus, the Insurers' first argument -- that the settlement payment is not "Loss" because CMC did not pay it -- is incorrect.  The second argument -- that the settlement payment is not "Loss" because it amounts to an increased price paid for securities -- is also incorrect.  A portion of the amounts paid to the plaintiffs represented consideration for the release of their claims; that amount was a settlement payment, rather than a payment for securities.  The other amounts paid to the plaintiffs *did* represent a price paid for securities -- securities that were purchased in order to facilitate a going-private transaction.  However, Crowley is only claiming coverage for that portion of the amounts paid to the plaintiffs that is attributable to the release of their claims; it is *not* claiming the remaining portion, which is attributable to the

1   going-private transaction.  The former portion fits within the policy's definition of covered

2   "Loss," which expressly includes "settlements."

3        Finally, the fee award also constitutes a covered loss.  That was the Ninth Circuit's

4   holding in *Safeway Stores, Inc. v. National Union Fire Ins. Co.*, 64 F.3d 1282 (1995).  There,

5   as here, a corporation that had defended and settled a shareholders class action against

6   directors and officers sought reimbursement of settlement costs from its D&O carrier.  As here,

7   the settlement in *Safeway* obligated the company to pay the plaintiffs' attorneys' fees.  The

8   court ruled that, because "the settlement costs [including the attorneys' fees] were an actual

9   out-of-pocket loss to Safeway incurred in defense of its directors and officers . . .  the

10  settlement costs, and the defense costs as well, are covered by the D&O policy."  64 F.3d at

11  1287.  The same is true here.

12        b.    The Insurers' Statement of Facts

13       The Insurers object to CMC's inclusion of extended legal argument in CMC's

14  "Statement of Facts," and have not attempted to respond in kind herein because to do so would

15  be improper under local rules and the Court's Standing Orders.  This case arises from a

16  putative derivative and class action filed in Delaware Chancery Court (the "Franklin Action")

17  against CMC's Chairman, CEO and controlling shareholder Thomas B. Crowley, Jr. ("Mr.

18  Crowley") and other CMC directors.  CMC was a nominal defendant.  The plaintiffs in the

19  Franklin Action sought to recover premiums and related expenses that CMC paid for life

20  insurance policies which allegedly were intended to benefit Mr. Crowley and his family.

21       CMC requested coverage for the Franklin Action under a primary directors and officers

22  liability insurance policy issued by Federal and excess policies issued by Twin City and RLI.

23  The Federal policy has a $10 million limit of liability, subject to a $500,000 retention.  The

24  Twin City policy has a $10 million limit excess of the limit of the Federal Policy, and the RLI

25  policy has a $5 million limit excess of the limits of the Federal and Twin City policies.  The

26  Twin City policy, subject to its terms and conditions, generally applies in conformance with

27  the terms of the Federal policy.  The RLI insurance contract follows form to, and affords

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    coverage in conformance with, certain sections of the Federal policy, and also contains various

2    of its own provisions, terms and conditions.

3        The Federal policy provides that "[t]he Insureds agree not to settle or offer to settle any

4    **Claim** . . . without [Federal's] prior written consent," and that Federal "shall be consulted in

5    advance by the Insureds, regarding . . . the settlement of such **Claim**, including but not limited

6    to . . . negotiating any settlement."

7        Starting no later than December 2006, the Franklin Action parties held settlement

8    negotiations without notice to the Insurers.  On March 19, 2007, without prior notice to or

9    consent by the Insurers, the Franklin Action parties executed a Stipulation and Agreement of

10   Compromise, Settlement and Release (the "Agreement").  The Agreement provided that,

11   subject to approval by the Delaware Court, Mr. Crowley would take CMC private by using a

12   separate entity, Crowley Newco Corp. ("Newco"), to make a cash tender offer for CMC's

13   outstanding public stock, including that held by the Franklin Action plaintiffs.  The tender

14   offer would be followed by a short-form merger between Newco and CMC.  The Agreement

15   also provided that CMC would pay the Franklin Action plaintiffs' attorneys' fees in an amount

16   to be determined by the Delaware Court.

17       By letter dated March 28, 2007, Richard Shively, counsel for CMC, requested the

18   Insurers' consent to a "proposed settlement."  CMC alleges that Federal's claims examiner told

19   Mr. Shively in a subsequent telephone call that Federal "ha[d] no problem consenting" to the

20   "proposed settlement," subject to the receipt of certain additional information.  Federal

21   disputes CMC's characterization of this conversation.  CMC does not contend that any of the

22   Insurers gave written consent to the settlement.

23       On April 28, 2007, the Delaware Court approved the Agreement.  Newco subsequently

24   completed the tender offer and short-form merger.  CMC contends that $17.625 million of the

25   amounts paid in connection with the tender offer represented the cost of obtaining a release of

26   the claims asserted in the Franklin Action.  The Insurers dispute CMC's contention.  The

27   Insurers further contend that neither CMC nor any other Insured suffered any Loss (as defined

28   by the policy and the applicable law) in connection with the tender offer.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-11-

On August 30, 2007, the Delaware Court awarded $4,219,458.26 in attorney's fees and expenses to the Franklin Action plaintiffs.  The court awarded fees based on a percentage of the difference between the tender offer price for CMC stock and the trading price prior to disclosure of the tender offer.  The court found that CMC had agreed to pay the plaintiffs' attorney's fees because doing so would allow CMC to complete the merger more easily.

    c. <u>Factual Issues According to CMC</u>

Disputed issues of fact include but are not limited to:

(1) Was the settlement of the Franklin Action a reasonable settlement?

(2) Did CMC pay the settlement?

(3) Were the Franklin Action plaintiffs' "illegal profits" allegations asserted only against Mr. Crowley (*i.e.*, did those allegations not extend to the other director and officer defendants)?

(4) Did Mr. Crowley receive an "illegal profit"?

(5) Did any defendant other than Mr. Crowley receive an "illegal profit"?

(6) Did the Insurers fail to perform an adequate investigation into the reasonableness of the proposed settlement?

(7) Did the Insurers fail to give good faith consideration to the proposed settlement?

(8) Do the Insurers have a pattern and practice of unreasonably withholding their consent to proposed settlements in circumstances such as those present here (*i.e.*, where they have no duty to defend, have not defended, and have reserved their right to deny coverage)?

(9) Did the Insurers act with malice, fraud and/or oppression?

    d. <u>Factual Issues According To The Insurers</u>

Disputed issues of fact include but are not limited to:

**Consent issues:** (1) whether CMC settled, offered to settle, or entered into a legally binding stipulation of settlement of the Franklin Action prior to notifying the Insurers or seeking their consent; (2) whether CMC failed to consult the Insurers in advance with respect to negotiating the settlement of the Franklin Action; (3) whether CMC's March 28, 2007 letter

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

concerning the settlement of the Franklin Action contained false statements as to the terms or status of the settlement or as to CMC's stated explanation for its delay in disclosing the settlement to the Insurers.

**Loss issues:** (4) whether the Newco tender offer and merger included a release payment; (5) whether the value of the CMC stock and other consideration that Newco received through the tender offer was equal to or greater than the cost of the tender offer; (6) whether any Insureds incurred any loss in connection with the tender offer; (7) whether any Insured reaped any profits or benefits in connection with the tender offer; (8) whether CMC or any Insured was legally obligated to pay any amount in connection with the tender offer; (9) whether any amounts paid in connection with the settlement of the Franklin Action represented the disgorgement or restitution of life insurance premiums or other benefits that Mr. Crowley and his family were not entitled to receive or retain; (10) whether CMC agreed to pay the attorney's fee award in order to facilitate completion of the tender offer; (11) whether CMC or any Insured demanded any payment prior to the commencement of this litigation.

**Exclusion issues:** (l2) whether the Franklin Action was based on, arising from, or in consequence of Mr. Crowley or other CMC directors having gained in fact any profit, remuneration or advantage to which they were not legally entitled.

    3.    Legal Issues

        a.    Legal Issues According to CMC

Legal issues include but are not limited to:

(1)    Are the Insurers legally not entitled (because of waiver, estoppel, forfeiture, etc.) to enforce the policy provisions which purport to require CMC to obtain prior consent before negotiating or completing any settlement?

(2)    Would CMC have been legally entitled to cancel and abandon the proposed settlement (and tender offer and merger) if the Insurers had promptly advised CMC that they would not consent to the proposed settlement?

(3)    Do the amounts paid for a release of the Franklin Action plaintiffs' claims fall within the Federal policy's definition of a covered "loss"?

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

(4)    What is the impact of the Federal policy's allocation clause?

b.    <u>Legal Issues According To The Insurers</u>

Legal issues include but are not limited to:

**Consent issues:**  (1) whether CMC's failure to obtain the Insurers' prior written consent to settlement bars coverage for any amounts incurred in connection with the settlement of the Franklin Action; (2) whether CMC's failure to consult the Insurers in advance with respect to settlement negotiation bars coverage for any amounts incurred in connection with the settlement of the Franklin Action; (3) whether CMC's stated explanation in its March 28, 2007 letter for its delay in disclosing the settlement to the Insurers excused CMC's failure to obtain the Insurers' prior written consent.

**Loss issues:** (4) whether amounts paid by a non-insured entity, Newco, constitute Loss under the Policy; (5) whether amounts paid in exchange for corporate stock and other consideration constitute Loss; (6) whether any payment in connection with the tender offer is excluded from Loss under the Federal policy because it "represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an Organization in connection with its purchase of any securities or assets"; (7) whether amounts representing the disgorgement or restitution of amounts or benefits that Mr. Crowley and his family were not entitled to receive or retain constitute Loss; (8) whether the amounts in question were paid to resolve liability for an insured's willful acts under Cal. Ins. Code § 533 and the applicable law; (9) whether the relief Franklin plaintiffs obtained pursuant to the settlement agreement is something they sought, and could have obtained, by prevailing in the litigation; (10) whether the fee award in the Franklin Action represented Loss that CMC was legally obligated to pay on account of a Claim, or whether CMC voluntarily agreed to pay that award for its own business purposes; (11) whether the plaintiffs in the Franklin Action would have been entitled to the amount of fees awarded if they had prevailed in the litigation.

**Exclusion issues:**  (12) whether coverage for the Franklin Action is barred by Exclusions 7(c) or 8(a)(ii) of the Federal policy's Executive Liability and Entity Securities Liability Coverage Section.

**Exhaustion issues (as to Twin City and RLI):** (13) whether the underlying limits of their respective policies have been exhausted; (14) whether the amount of any covered portion of the settlement exceeded the limit of liability and retention of the primary policy and, with respect to RLI, the limit of liability of Twin City's policy.

4.   Motions

On April 14, 2008, the Court ruled on Twin City's and RLI's motions to dismiss.  No motions are presently pending.

Twin City anticipates filing a Rule 11 Motion and a motion to disqualify CMC's counsel.  Twin City also anticipates requesting leave of court to file an early Rule 56 motion on limited issues, to be followed by a more comprehensive Rule 56 motion after sufficient discovery, if necessary.  The other Parties do not presently anticipate filing any motions in the immediate future, but reserve their rights to do so, and expect to file Rule 56 motions after sufficient discovery.

5.   Amendment of Pleadings

CMC filed a First Amended Complaint on April 18, 2008.  Federal and Twin City filed Answers to that Complaint and Twin City filed a counterclaim.  CMC will file a reply to that counterclaim.  RLI will file its Answer on May 9, 2008.  Based on the presently available information, the Parties do not intend to file further amended pleadings.  The Insurers propose a deadline of September 30, 2008 for amending pleadings; CMC proposes that the Parties be permitted to amend their pleadings only if good cause is shown.

6.   Evidence Preservation

At the Rule 26(f) meet-and-confer conducted on April 24, 2008, the parties affirmed that all potentially relevant evidence shall be preserved.

7.   Disclosures

Pursuant to the Court's February 6, 2008 Order, FED. R. CIV. P. 26(a) disclosures have been or will be completed no later than May 9, 2008.

/ / /

/ / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

8.   Discovery

    a.   Discovery Taken To Date

None.

    b.   Scope of Anticipated Discovery

One or more of the Parties expect to take discovery regarding CMC's requests for coverage and consent, the Insurers' response thereto, the events leading up to the Franklin Action, the events and claims at issue in that Action, the conduct and settlement of that Action, the tender offer and short form merger, and certain matters relating to these topics.  CMC also expects to take discovery regarding:  the Insurers' investigation of the reasonableness of the proposed settlement; whether the Insurers gave good faith consideration to the proposed settlement; whether the Insurers have a pattern and practice of withholding consent to proposed settlements by their insureds under circumstances where the Insurers have no duty to defend, do not defend, and have reserved their rights to deny coverage; and whether the Insurers acted with malice, fraud and/or oppression.

    c.   Proposed Limitations / Modification of Discovery Rules

The Insurers request that 30 depositions be allowed per side without leave of Court. CMC believes that no more than 10 depositions for each side are warranted absent a showing of good cause.

    d.   Proposed Discovery Plan

The Parties propose a fact discovery deadline of February 16, 2009.   The Parties do not presently anticipate a need to conduct discovery in phases.  Twin City requests the Court to appoint a special master to sit in on attorney depositions that Twin City will notice; CMC believes no such order should be issued absent a showing of good cause.

9.   Class Actions

Not applicable.

10.   Related Cases

The Parties are not aware of any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

11.    <u>Relief</u>

CMC's First Amended Complaint seeks the following types of relief against Federal: compensatory damages, exemplary damages, attorneys' fees and costs in the present action, and prejudgment interest.  CMC also seeks declaratory relief against Twin City and RLI. CMC asserts that a total of over $22 million is covered under the Insurers' policies, including $17.625 million that CMC asserts it paid to the plaintiffs in the Franklin Action for a release of their claims, $4,219,458.26 that CMC asserts it paid to the Franklin Action plaintiffs' counsel in fees and costs as part of the settlement, and the costs (including attorneys' fees) incurred by CMC defending the Franklin Action.

12.    <u>Settlement and ADR</u>

Settlement does not appear likely before the end of discovery, but the Parties are willing to explore a possible amicable resolution.  To this end, the Parties filed an ADR Certification on April 25, 2008, agreeing to hold a private mediation with a JAMS neutral before January 5, 2009.

13.    <u>Magistrate Judge</u>

The Parties do not consent to proceed before a magistrate judge.

14.    <u>Other References</u>

The Parties agree that the case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    <u>Narrowing of Issues</u>

One or more of the Insurers believe that the issues in this litigation can be greatly narrowed or entirely resolved if the Court permits one or more of the Insurers to file early summary judgment motions on limited issues, followed by more comprehensive motions if necessary following sufficient discovery.  CMC expects that the coverage issues raised by the Insurers may be susceptible to being resolved in CMC's favor by way of summary judgment.

16.    <u>Expedited Schedule</u>

This case is not suitable for expedited handling.

/ / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

17.    Scheduling

The Parties propose the following deadlines:  (a) February 16, 2009 for fact discovery; (b) March 3, 2009 for initial expert disclosures and reports; (c) March 24, 2009 for rebuttal expert disclosures and reports; (d) April 9, 2009 for expert depositions; (e) May 1, 2009 for filing dispositive motions; (f) June 1, 2009 for filing oppositions to dispositive motions; and (g) June 15, 2009 for filing replies in support of dispositive motions.  The Parties anticipate that the case should be ready to proceed to trial on September 14, 2009, with a final pretrial conference to be scheduled accordingly.

18.    Trial

The case will be tried to a jury.  The Insurers will request the bifurcation of trial on CMC's first and third counts (breach of contract and declaratory relief) from trial of CMC's second count (bad faith).  The Parties expect that a trial, if necessary, will run between two and three weeks.

19.    Disclosure of Non-Party Interested Entities or Persons

Federal filed its Certification of Interested Entities or Persons on February 6, 2008. That Certification provides that Federal is a wholly owned subsidiary of The Chubb Corporation, that no other publicly held corporation owns 10% or more of the stock of Federal, that The Chubb Corporation is a holding company whose common stock is listed and principally traded on the New York Stock Exchange under the trading symbol "CB," and that no publicly held entity owns 10% or more of the common stock of The Chubb Corporation.

Twin City filed its Certification of Interested Entities or Persons on February 6, 2008. That Certification provides that Twin City is a wholly owned subsidiary of Hartford Fire Insurance Company, that no other publicly held corporation owns 10% or more of the stock of Twin City, that Hartford Fire Insurance Company is a wholly owned subsidiary of the Hartford Financial Services Group, Inc., that no other publicly held corporation owns 10% or more of the stock of Hartford Fire Insurance Company, that Hartford Financial Services Group, Inc. is a publicly traded corporation whose common stock is listed and principally traded on the New

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1 York Stock Exchange under the trading symbol "HIG," and that no publicly held entity owns

2 10% or more of the common stock of Hartford Financial Services Group, Inc.

3     RLI filed its Certification of Interested Entities or Persons on April 24, 2008.  That

4 Certification provides that RLI is a wholly owned subsidiary of RLI Corp., that no other

5 publicly held corporation owns 10% or more of the stock of RLI, that RLI Corp. is a publicly

6 traded corporation whose common stock is listed and principally traded on the New York

7 Stock Exchange under the trading symbol "RLI," and that no publicly held entity owns 10% or

8 more of the common stock of RLI Corp.

9     CMC filed its Certification of Interested Entities or Persons on March 7, 2008.  That

10 Certification provides that CMC is a wholly-owned subsidiary of Crowley Holdings, Inc.  No

11 publicly held corporation owns 10% or more of the stock of Crowley.  Crowley Holdings, Inc.

12 is a closely held Delaware corporation.  No publicly held entity owns 10% or more of its

13 common stock.

14     20.    Other Matters

15     The Parties are not presently aware of any other matters that may facilitate the just,

16 speedy and inexpensive disposition of this matter.

17

18 Date:  May 12, 2008          Respectfully submitted,

19

20      /s/  Richard D. Shively
   PHILIP L. PILLSBURY, JR. (State Bar No. 72261)
21   RICHARD D. SHIVELY (State Bar No. 104895)
   ERIC K. LARSON (State Bar No. 142791)
22   **PILLSBURY & LEVINSON, LLP**
   The Transamerica Pyramid
23   600 Montgomery Street, 31st Floor
   San Francisco, California  94111
24   Telephone:    (415) 433-8000
   Facsimile:    (415) 433-4816
25   E-Mail:      ppillsbury@pillsburylevinson.com
            rshively@pillsburylevinson.com
26            rlarson@pillsburylevinson.com
   Attorneys for Plaintiff
27   CROWLEY MARITIME CORPORATION

28

1

2        ____/s/ Joseph A. Bailey III, Esq._____
         G. EDWARD RUDLOFF, JR. (State Bar No. 56058)
3        KEVIN A. NORRIS (State Bar No. 206022)
         **RUDLOFF WOOD & BARROWS LLP**
4        2000 Powell Street, Suite 900
         Emeryville, California  94608
5        Telephone:  (510) 740-1500
         Facsimile:  (510) 740-1501
6        E-Mail:        erudloff@rwblaw.com
                        knorris@rwblaw.com
7
         David Newmann, Esq.  (admitted *pro hac vice*)
8        Joseph A. Bailey III, Esq.  (admitted *pro hac vice*)
         **HOGAN & HARTSON LLP**
9        555 Thirteenth Street NW
         Washington DC 20004
10       Telephone:    (202) 637-5600
         Facsimile:    (202) 637-5910
11       E-Mail:        dnewmann@hhlaw.com
                        jabaileyIII@hhlaw.com
12       Attorneys for Defendant
         FEDERAL INSURANCE COMPANY
13

14

15       ____/s/  Michael F. Perlis_____
         MICHAEL F. PERLIS (State Bar No. 95992)
16       RICHARD R. JOHNSON (State Bar No. 198117)
         RACHAEL SHOOK (State Bar No. 251628)
17       **STROOCK & STROOCK & LAVAN LLP**
         2029 Century Park East, Suite 1800
18       Los Angeles, California  90067-3086
         Telephone:  (310) 556-5800
19       Facsimile:  (310) 556-5959
         E-Mail:        mperlis@stroock.com
20                      rjohnson@stroock.com
                        rshook@stroock.com
21       Attorneys for Defendant
         TWIN CITY FIRE INSURANCE COMPANY
22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-20-

JOINT CASE MANAGEMENT STATEMENT                    Case No. CV-08-00830 SI

1

2                                    /s/ Karen G. Levy
     WILLIAM C. MORISON (State Bar No. 99981)
3    MICHAEL D. PROUGH (State Bar No. 168741)
     KAREN G. LEVY (State Bar No. 213172)
4    **MORISON ANSA HOLDEN ASSUNCAO & PROUGH LLP**
     500 Ygnacio Valley Rd., Suite 450
5    Walnut Creek, California  94596
     Telephone:  (925) 937-9990
6    Facsimile:  (925) 937-3272
     E-Mail:      William.Morison@morisonansa.com
7                    Michael.Prough@morisonansa.com
                     Karen.Levy@morisonansa.com
8    Attorneys for Defendant
     RLI INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-21-