PHILIP L. PILLSBURY, JR. (SBN 72261)
RICHARD D. SHIVELY (SBN 104895)
PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor
San Francisco, California 94111
Telephone:  (415) 433-8000
Facsimile:   (415) 433-4816
Email: ppillsbury@pillsburylevinson.com
        rshively@pillsburylevinson.com

DAVID B. GOODWIN (SBN 104469)
DEEPA VARADARAJAN (SBN 250845)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco California 94111-5356
Telephone:  (415) 591-7074
Facsimile:   (415) 955-6574
Email: DGoodwin@cov.com
        DVaradarajan@cov.com

Attorneys for Plaintiff
CROWLEY MARITIME CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA − SAN FRANCISCO DIVISION

|  |  |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; and RLI INSURANCE COMPANY,<br><br>Defendants. | Civil Case No.:  CV-08-00830 SI<br><br>**CROWLEY'S OPPOSITION TO MOTION BY TWIN CITY AND FEDERAL TO DISQUALIFY CROWLEY'S COUNSEL OF RECORD**<br><br>**Date:        August 22, 2008**<br>**Time:        9:00 a.m.**<br>**Place:       Courtroom 10**<br><br>**Action Filed:  January 7, 2008**<br>**Trial Date:  September 14, 2009** |

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

      A.   The Underlying *Franklin Fund* Action ........................................... 3

      B.   The Pillsbury & Levinson Firm ..................................................... 4

      C.   Settlement of the Underlying Action ............................................. 4

      D.   The Instant Action ...................................................................... 7

III.  ARGUMENT ....................................................................................... 7

      A.   The Governing Legal Standard ..................................................... 7

      B.   Crowley Has Given Its Consent That Mr. Pillsbury And Mr.
           Shively May Act As Trial Witnesses ............................................. 8

      C.   The Insurers Have Failed To Satisfy Their Burden Of
           Establishing Grounds For The Extraordinary Exercise Of The
           Court's Power To Disqualify Counsel .......................................... 10

           1.   The Insurers Introduce No Evidence That Mr. Pillsbury
                Would Be A Trial Witness .................................................. 10

           2.   The Insurers Have Not Made a Convincing Demonstration
                of Substantial Detriment If Mr. Shively Testifies At Trial ........... 11

           3.   The Insurers Also Have Failed to Demonstrate Injury to
                the Integrity of the Judicial Process .................................... 14

                a)   Crowley's Interests Would Be Impaired By
                     Disqualification Of Its Long-Time Counsel ..................... 14

                b)   This Motion To Disqualify Is A Tactical Ploy ................... 15

                c)   Mr. Shively's Testimony Is Not Necessary ..................... 16

IV.   CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Colyer v. Smith,*
 50 F. Supp. 2d 966 (C.D. Cal. 1999) ...................................................... 8, 13

*Comden v. Superior Court,*
 20 Cal. 3d 906 (1978) ................................................................................ 8

*Crenshaw v. MONY Life Ins. Co.,*
 318 F. Supp. 2d 1015 (S.D. Cal. 2004)...................................................... 7

*DCH Health Servs. Corp. v. Waite,*
 95 Cal. App. 4th 829 (2002) ...................................................................... 8

*Diamond Heights Homeowners Ass'n. v. Nat'l Am. Ins. Co.,*
 227 Cal. App. 3d 563 (1991) .................................................................... 18

*Eaton v. Siemens,*
 No. 2:07-CV-0315, 2007 WL 2318531 (E.D. Cal. Aug. 10, 2007) ............... 5, 8, 9, 10

*Franklin Balance Sheet Investment Fund et al. v. Thomas B. Crowley, Jr. et al.,*
 Civil Action No. 888-VCP ........................................................................ 3

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.,*
 135 Cal. App. 4th 958 (2006) .................................................... 2, 17, 18, 19

*Hamilton v. Maryland Cas. Co.,*
 27 Cal. 4th 718 (2002) ............................................................................ 17

*In re County of Los Angeles,*
 223 F.3d 990 (9th Cir. 2000) ................................................................. 7, 15

*In re EXDS, Inc.,*
 No. C05-0787, 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005) ............... 9, 15

*Lyle v. Superior Court,*
 122 Cal. App. 3d 470 (1981) .................................................................... 10

*Maxwell v. Superior Court,*
 30 Cal. 3d 606 (1982) .............................................................................. 14

*Pruyn v. Agricultural Ins. Co.,*
 36 Cal. App. 4th 500 (1995) .................................................................... 17

*Roush v. Seagate Tech. LLC,*
    150 Cal. App. 4th 210 (2007) .................................................................................... 7, 8

*Smith, Smith & Kring v. Superior Court,*
    60 Cal. App. 4th 573 (1997) ............................................................................... passim


## STATUTES

California Rule of Professional Conduct 5-210 ......................................................... 1, 8, 9

Civil L.R. 11-4 .............................................................................................................. 7

Fed. R. Civ. P. 11 ....................................................................................................... 16

Fed. R. Civ. P. 26 .............................................................................................. 3, 12, 13


## OTHER AUTHORITIES

Alan Windt, *Ins. Claims and Disputes* § 3:9 (5th ed. 2008) ............................................ 17

J. Walter Croskey, et al., *Cal. Prac. Guide:  Ins. Lit.* § 15:917 (rev. ed. 2008) ........... 2, 12

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Two of the defendants in this insurance coverage lawsuit – Twin City Fire Insurance Company and Federal Insurance Company ("Insurers") – move to disqualify plaintiff Crowley Maritime Corporation's long-time insurance counsel, Philip L. Pillsbury, Jr. and Richard Shively.  These Insurers base their motion on the ground that Messrs. Pillsbury and Shively might be called upon to testify as witnesses at trial.

As to Mr. Pillsbury, the Insurers offer not one whit of evidence that he was a witness to anything that could be the subject of testimony at trial in this case.  The undisputed evidence is that Mr. Pillsbury was *not* a witness.  *See* Declaration of Philip Pillsbury ¶¶ 2-4.  Accordingly, no basis at all exists for granting a motion to disqualify him.  *See Smith, Smith & Kring v. Superior Court*, 60 Cal. App. 4th 573, 581-82 (1997) (refusing to disqualify a lawyer on the ground that he might be a trial witness in the absence of admissible evidence of the facts the lawyer knows that would be the subject of trial testimony).

As to Mr. Shively, the Insurers misrepresent both the factual predicate for the motion and the legal standard that applies to the issue on which they say Mr. Shively is a witness.  As we show:

(1)    Under California law, a party is not entitled to disqualify the opposing lawyer on the ground that the lawyer will be a witness at trial as long as the lawyer's client has given informed written consent.  *See* California Rule of Professional Conduct 5-210 (C).  Crowley has given that consent.  *See* Declaration of Steve Ficon ¶ 5.  Thus, all of the Insurers' out-of-state cases (*see* Twin City Opening Mem. at 1 n.1 & 3 n.3; Joinder of Federal Insurance Company in Motion to Disqualify at 6) and their discussion of whether disqualification would be in appropriate in the absence of consent (Twin City Opening Mem. at 10-12) add nothing to the debate.

(2)    The Insurers contend in the alternative that the Court should exercise its inherent power to disqualify Mr. Shively.  (*Id*. at 12-17.)  The Insurers fail to make any showing that could possibly justify the Court's extraordinary exercise of that power.

First and most fundamentally, the Insurers must show that Mr. Shively would be a necessary trial witness and that no other person could testify to the same facts. *Smith*, 60 Cal. App. 4th at 581. To support that showing, the Insurers claim that a necessary part of Crowley's case is testimony from Mr. Shively that the claims adjuster for the primary insurer, Federal, consented to the settlement of the underlying *Franklin Fund* Action. (The Insurers identify no other reason why Mr. Shively's testimony would be relevant to any material issue before this Court.) The Insurers are dead wrong.

- Any testimony concerning consent to settle would not be part of *Crowley's* case. If anyone has the burden of proving the absence of consent to the *Franklin Fund* settlement, it is the Insurers, not Crowley. *See* J. Walter Croskey, et al., *Cal. Prac. Guide: Ins. Lit.* § 15:917 (rev. ed. 2008).

- In fact, on the undisputed record here, consent to settle isn't part of anyone's case, let alone a "critical" part of Crowley's case, as the Insurers posit. That is because the Insurers were not defending Crowley against the *Franklin Fund* action. Ficon Dec. ¶ 7. Under those circumstances, a policyholder may settle an underlying lawsuit, without forfeiting its insurance, regardless of whether the insurer consents. *See Fuller-Austin Insulation Co. v. Highlands Ins. Co.,* 135 Cal. App. 4th 958, 990-91 (2006). So whether Federal consented to the settlement of the *Franklin Fund* action is not an issue for trial.

- Even if Federal's consent were relevant, the Insurers have failed to show that consent to settle is a *contested* fact issue so that Mr. Shively's testimony would be necessary, as Cal. R. Prof. Conduct 5-210(A) requires. The Insurers introduced no evidence that the Federal claims adjuster disputes that he acknowledged that Federal would consent to the settlement. Absent that controverting evidence, no basis exists to call Mr. Shively as a witness.

Second, even if Mr. Shively were a necessary witness, the Insurers have failed to show – let alone to make the requisite "convincing demonstration" – that his testimony

would be so prejudicial to their case, or would cause such a severe "'injury to the integrity of the judicial process,'" that the Court should take the extraordinary step of depriving a party of counsel of its choice. *Smith*, 60 Cal. App. 4th at 579 (citation omitted). To the contrary, Mr. Shively's testimony, if given, would consist only of a brief rebuttal to just one of the Insurers' affirmative defenses in a case in which the Insurers have identified fourteen legal and twelve fact issues that they intend to take to trial. *See* Joint Case Management Statement and Rule 26(f) Report at 12-15 (filed May 12, 2008). The Insurers are represented by sophisticated counsel from major law firms. They would be able to present their case adequately even with brief rebuttal testimony from opposing counsel on one of twenty-six issues.

Finally, while not directly relevant to this motion, we respond in the Statement of Facts to the Insurers' unseemly assertion that Mr. Shively lied when he asked Federal and the other defendants to consent to the settlement of the *Franklin Fund* action in March 2007. By March 2007, the Insurers say, the settlement was a done deal. The undisputed record once again disproves the Insurers' claims. Crowley would have been entitled to pull out of the settlement if the Insurers had disclosed back in March 2007 what they are now telling the Court – that they will not pay. *See* Declaration of Richard Vernon Smith ¶¶ 4-7.

The Court should deny this motion.

## II.    STATEMENT OF FACTS

### A.    The Underlying *Franklin Fund* Action

Back in 2004, Crowley and certain of its directors were named as defendants in the *Franklin Fund* action, a shareholder class action lawsuit before the Court of Chancery of the State of Delaware entitled *Franklin Balance Sheet Investment Fund et al. v. Thomas B. Crowley, Jr. et al.,* Civil Action No. 888-VCP. The plaintiffs in that action alleged that Crowley and certain directors of the company breached their fiduciary duties by purchasing life insurance instruments. *See* Declaration of Jon Abramczyk ¶ 2 and Ex. A.

1    Crowley tendered the *Franklin Fund* action to its three directors and officers

2   liability insurers:  Federal, which issued a primary D&O policy; Twin City, which

3   issued the first layer excess D&O policy; and RLI, which issued a second layer excess

4   D&O policy.  Ficon Dec. ¶¶ 10, 15 and Exs. G, I, & J.  Each insurer reserved its rights

5   to deny coverage for the action, and no insurer provided (or even offered to provide) a

6   defense.  *Id.* ¶¶ 7, 8 and Exs. B, C, D & E; Smith Dec. ¶ 8.

7    Crowley itself therefore retained and paid outside counsel to defend the

8   underlying action.  Jon E. Abramczyk of the Delaware firm of Morris, Nichols, Arsht &

9   Tunnell acted as the lead defense lawyer, with assistance from Crowley's regular

10   corporate counsel, Orrick, Herrington & Sutcliffe.  Ficon Dec. ¶ 7.

11   **B.    The Pillsbury & Levinson Firm**

12    Crowley retained Pillsbury & Levinson, a San Francisco-based law firm that

13   specializes in representing policyholders in insurance recovery and bad faith litigation,

14   as coverage counsel in connection with the *Franklin Fund* action.  Ficon Dec. ¶ 3.  Two

15   attorneys with that firm, Messrs. Pillsbury and Shively, have represented Crowley in a

16   variety of insurance matters.  *Id.* ¶ 3; Declaration of Richard D. Shively ¶¶ 2-3.

17   **C.    Settlement of the Underlying Action**

18    On March 19, 2007 Crowley reached a proposed agreement to settle the

19   *Franklin Fund* action on favorable terms that involved both a settlement of the

20   plaintiffs' claims and the purchase of their Crowley shares through a tender offer,

21   which was to be immediately followed by a short-form merger.  Abramczyk Dec. ¶ 5

22   and Ex. B.  Crowley's insurance counsel, Mr. Shively, notified the Insurers of this

23   proposed settlement in a letter dated March 28, 2007, which stated:  "We are writing to

24   inform you that an opportunity has arisen to settle the action on favorable terms, and to

25   seek your consent to pursue such a settlement. . . . [B]efore unequivocally accepting the

26   plaintiffs' settlement offer and proceeding to complete the settlement, Crowley is

27   asking its carriers to consent to the proposed settlement."  Shively Dec. ¶¶ 3-4 & Ex. A.

28   The letter also informed the Insurers that a hearing had been set in the Delaware Court

1  of Chancery for April 27, 2007, at which time court approval of the proposed

2  settlement would be sought. *Id*. The letter explained that there were "significant

3  confidentiality issues," that had prevented Crowley, as a practical matter, from

4  immediately inviting its D&O carriers to "join in the negotiations." *Id*.[1]

5    The Insurers repeatedly tell the Court that Mr. Shively deceived them in this

6  March 28, 2007 letter. They say that the *Franklin Fund* settlement in fact was already

7  "binding" as of March 28, 2007. *See* Twin City Op. Mem. at 12. The record does not

8  support the Insurers' charge. The Delaware Court of Chancery did not even approve

9  the settlement until April 27, 2007. By its own terms, the proposed settlement did not

10  become final until June 3, 2007. Smith Dec. ¶ 6 and Ex. A at p. 9, ¶ 5.

11    Moreover, the proposed settlement agreement contained a number of conditions

12  that entitled Crowley's Board of Directors to cancel the settlement at any time before it

13  became final. For example, the proposed settlement agreement provided that, if the

14  tender offer or merger "cannot be consummated *for any reason*, then the Settlement

15  proposed herein shall be of no further force and effect and . . . all orders relating to it

16  shall be null and void and of no force and effect." *Id*. ¶ 6 and Ex. A at p. 12 (italics

17  added). The tender offer also included a number of conditions, including that "[t]he

18  Board of Directors of Crowley Maritime or the Special Committee shall [not] have

19  determined to oppose the Offer and/or the Merger." *Id*. ¶ 5 and Ex. B at p. 33. Thus,

20  —————————————

21    [1] The Insurers suggest that Mr. Shively (or, although he never signed any letters or communicated with them on the subject, Mr. Shively's colleague, Mr. Pillsbury) was

22  lying when he said that confidentiality issues precluded Crowley from including the Insurers in settlement negotiations. However, the Insurers offer "no evidence in

23  support of this allegation," relying instead on "pure speculation." *Eaton v. Siemens,* No. 2:07-CV-0315, 2007 WL 2318531 at *6 (E.D. Cal. Aug. 10, 2007). The

24  undisputed record reflects that Crowley was, in fact, constrained by significant confidentiality issues from inviting the Insurers to join in the settlement negotiations at

25  an earlier date, as any leaks might have led to speculative trading in Crowley's stock and to speculative rumors—consequences that would have been detrimental to the

26  planned settlement and transaction and may have resulted in a violation of SEC

27  regulations. *See* Smith Dec. ¶¶ 12-16.

28

CROWLEY'S OPPOSITION TO MOTION TO DISQUALIFY CROWLEY'S COUNSEL OF RECORD, Case No. CV-08-00830 SI

1   the discretion of Crowley's Board of Directors to determine whether to oppose the offer

2   or merger was not limited at that point.  *Id.*  If the Insurers, in response to the March 28,

3   2007 letter, had promptly informed Crowley that they would not consent to the

4   proposed settlement, the Board would have been entitled to oppose the tender offer and

5   merger, thereby terminating the settlement.  *Id.* ¶¶ 4-7.

6        However, for eight weeks, between March 28, 2007 and June 3, 2007, the

7   Insurers made no effort to respond to Mr. Shively's letter.  The one exception is that on

8   April 5, 2007, Henry Nicholls, then a claim examiner for Federal, called Mr. Shively to

9   communicate that Federal "has no problem with consenting" to the proposed

10  settlement, and to request additional information, such as "copies of the invoices

11  reflecting Crowley's expenditures in defending the Action," and "documentation

12  relating to the Delaware court's determination of the fee award."  Shively Dec. ¶ 5.  Mr.

13  Shively promptly sent the requested information, but received no further response from

14  Federal before the settlement was finalized on June 3, 2007.  Shively Dec. ¶¶ 6-7 and

15  Exs. B-E; Ficon Dec. ¶¶ 11-14.  While the Insurers dispute Mr. Shively's

16  characterization of his conversation with Mr. Nicholls (*see* Twin City's Opening Mem.

17  at 9; Federal Joinder at 5), they have offered no evidence – *e.g.*, no declaration from

18  Mr. Nicholls or anyone else – of an alternate version of those events.

19       The Crowley Board ultimately determined that the proposed settlement was

20  reasonable and in the best interests of the company.  So Crowley proceeded to complete

21  it after the Delaware court had made a factual finding that the proposed settlement was

22  "fair, reasonable and adequate and in the best interests of the Company, its shareholders

23  and the Class," and had approved the settlement.  Abramczyk Dec. ¶ 6 and Ex. C at p.

24  3, ¶ 6.  Crowley paid the settlement amount to the plaintiffs as well as the attorneys'

25  fees for plaintiffs' class action counsel in the amount that the Delaware court

26  determined to be reasonable.  Abramczyk Dec. ¶ 7, Smith Dec. ¶¶ 9-11.

27       On June 14, 2007, seven weeks after the Delaware court approved the settlement

28  and two weeks after the settlement became final, Federal took the position for the first

time that its D&O policy provided no coverage for the settlement.  Ficon Dec. ¶¶ 12-14; Shively Dec.¶ 7.  This action followed.

### D.    The Instant Action

In this case, Crowley seeks reimbursement of the defense and settlement costs that it paid for the *Franklin Fund* action.  Crowley alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Federal, and declaratory relief against Twin City and RLI.

At the initial case management conference, Twin City argued that it would be entitled to summary judgment on the ground that Crowley failed to obtain the Insurers' consent before settling the *Franklin Fund* action.  Messrs. Shively and Pillsbury, who attended the conference on behalf of Crowley, disagreed with Twin City's aggressive and unfounded position.  However, at no time did they suggest that they would be necessary witnesses during the trial of this case – about consent or any other issue.  Pillsbury Dec. ¶ 4; Shively Dec. ¶ 10.  The Insurers' assertions to the contrary in their moving papers (Twin City Opening Mem. at 1, 4) have no support in the actual record.

## III.    ARGUMENT

### A.    The Governing Legal Standard

This Court has adopted the California Rules of Professional Conduct to govern the ethical obligations of counsel appearing before it.  Civil L.R. 11-4; *see In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (federal courts "apply state law in determining matters of disqualification").

Under California law, "disqualification is a drastic course of action . . . ." *Roush v. Seagate Tech. LLC,* 150 Cal. App. 4th 210, 219 (2007).  "Because they are often tactically motivated, motions to disqualify should be subjected to particular judicial scrutiny" and are "disfavored."  *Crenshaw v. MONY Life Ins. Co.,* 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004) (citations omitted).  Although a court has discretionary authority to disqualify counsel, California courts routinely caution trial courts that their discretion to disqualify counsel is quite limited.  *See Smith,* 60 Cal. App. 4th at 579.

1    It is well-settled that courts "start with the presumption that, unless proven

2    otherwise, lawyers will behave in an ethical manner." *DCH Health Servs. Corp. v.*

3    *Waite,* 95 Cal. App. 4th 829, 834 (2002); *see also Eaton v. Siemens,* No. 2:07-CV-

4    0315, 2007 WL 2318531 * 6 (E.D. Cal. 2007) ("This court properly assumes that

5    lawyers behave ethically."). The moving party in a motion for disqualification

6    therefore "bears the burden of proof to demonstrate the basis for disqualification."

7    *Eaton,* 2007 WL 2318531 at *6.

8    A motion to disqualify must "be accompanied by declarations and admissible

9    evidence sufficient to establish the factual predicate upon which the motion depends."

10    *Id.*, quoting *Colyer v. Smith,* 50 F. Supp. 2d 966, 967 (C.D. Cal. 1999) (denying motion

11    to disqualify when the moving party failed to demonstrate a need for the testimony of

12    opposing counsel); *see also Smith,* 60 Cal App. 4th at 577-78 (same). The court on a

13    motion to disqualify must disregard factual contentions made in a memorandum of

14    points and authorities or any other "unverified statement." *Smith,* 60 Cal App. 4th at

15    578; *see also Colyer,* 50 F. Supp. 2d at 974 (refusing to disqualify opposing counsel

16    based on moving party's "marginal showing").

17    Although the "classic disqualification case involves the attorney switching

18    sides" (*Roush*, 150 Cal. App. 4th at 219), thirty years ago, the California Supreme

19    Court held that a lawyer who is a potential trial witness also was subject to

20    disqualification. *See Comden v. Superior Court,* 20 Cal. 3d 906, 915-16 (1978). In

21    reaction to that decision, the California Rules of Professional Conduct were amended to

22    permit a lawyer to act both as counsel and a trial witness as long as the client consents.

23    *Smith,* 60 Cal. App. 4th at 578-59 (noting that the amended Rules supersede *Comden*).

24    **B.    Crowley Has Given Its Consent That Mr. Pillsbury And Mr. Shively May Act As Trial Witnesses**

25    The current version of the relevant California Rule of Professional Conduct,

26    Rule 5-210, provides, in pertinent part:

27    A member shall not act as an advocate before a jury which
     will hear testimony from the member unless:

28

-8-

(A) The testimony relates to an uncontested matter; or . . .

(C) The member has the informed, written consent of the client. . . .

Although the Insurers acknowledge this rule in their motion, they nonetheless include citations to numerous out-of-state cases to support the argument that Messrs. Pillsbury and Shively are subject to *per se* disqualification if they are potential trial witnesses. *See* Twin City Opening Mem. at 1 n.1, 3 n.3, 10-12. However, those other states do not recognize an "informed consent" exception, so all of the Insurers' out-of-state citations are inapposite. *See, e.g., In re EXDS, Inc.,* No. C05-0787, 2005 WL 2043020 at *10 (N.D. Cal. Aug. 24, 2005) (explaining that the cases cited by the party moving for disqualification "are inapplicable . . . because … they are from jurisdictions whose laws are inconsistent with California law"); *see also Eaton,* 2007 WL 2318531 at *8 (rejecting plaintiff's reliance on California law decided prior to the amendment of the Rules of Professional Conduct to add a "client consent provision").[2]

This disqualification motion implicates the two exceptions from Rule 5-210 quoted above.

*First,* the Insurers have not laid a foundation to show that the testimony that they claim Mr. Pillsbury and Mr. Shively might provide goes to a contested matter. *See* Cal. R. Prof. Conduct 5-210(A). Critically, they do not introduce any evidence from the Federal Insurance Company claims adjuster suggesting that he would deny that he told Crowley that Federal would have no problem consenting to the *Franklin Fund* settlement.

---

[2] Most jurisdictions in the United States follow the ABA Model Rules of Professional Conduct, which prohibit lawyers from acting in a dual role of witness and attorney, even if the client consents. California has not adopted the ABA Model Rules. Instead, as noted, the California Rules of Professional Conduct explicitly recognize a client consent exception.

*Second*, Crowley has given its informed written consent that Mr. Pillsbury, Mr. Shively and other members of the Pillsbury & Levinson law firm may both act as trial counsel in this case and, if necessary, testify as witnesses at trial. Ficon Dec. ¶ 5; *see* Cal. R. Prof. Conduct 5-210(C).

Accordingly, unless the Court decides to take the extraordinary step of exercising its power to disqualify Messrs. Pillsbury and Shively, the Court must deny this motion. *See, e.g., Smith*, 60 Cal. App. 4th at 582; *Eaton*, 2007 WL 2318531 at * 8.

C.    **The Insurers Have Failed To Satisfy Their Burden Of Establishing Grounds For The Extraordinary Exercise Of The Court's Power To Disqualify Counsel**

Although this Court has the discretion to disqualify counsel in extraordinary circumstances even if the client consents to an attorney's dual role as lawyer and witness, the Court's discretion is quite limited. To begin with, a client's consent "changes the emphasis which the trial court must place upon the competing interests" in reaching its disqualification decision." *Smith*, 60 Cal. App. 4th at 579 (quoting *Lyle v. Superior Court*, 122 Cal. App. 3d 470, 482 (1981)). "[I]f a party is willing to accept less effective counsel because of the attorney's testifying, neither his opponent nor the trial court should be able to deny this choice to the party without a *convincing demonstration* of detriment to the opponent or injury to the integrity of the judicial process." *Lyle*, 122 Cal. App. 3d at 482 (emphasis added). "In other words . . . the trial court can disqualify counsel only when it is confronted with manifest interests which it must protect from palpable prejudice." *Id.* The California courts have identified only two circumstances in which disqualification would be appropriate, when: (a) the moving party proves "a convincing demonstration of detriment" or (b) "injury to the judicial process." *Id.* The Insurers' disqualification motion makes neither showing.

1.    **The Insurers Introduce No Evidence That Mr. Pillsbury Would Be A Trial Witness**

The Insurers move to disqualify Mr. Pillsbury, Mr. Shively, and unnamed lawyers or employees of the Pillsbury & Levinson law firm on the ground that they will

-10-

1   be witnesses at trial.  The Insurers fail entirely to meet their burden when it comes to

2   showing that to Mr. Pillsbury or, indeed, anyone else at the Pillsbury & Levinson law

3   firm (with the possible exception of Mr. Shively, whose role in the case is discussed in

4   Section III.C.2 below) is a necessary witness.  The record has no evidence of any

5   telephone conversations or letters in which Mr. Pillsbury participated, or anything else

6   on which he might testify at trial.  In fact, the only *evidence* about Mr. Pillsbury is that

7   his name is on a letter that someone else (Mr. Shively) signed.  *See* Declaration of

8   Michael F. Perlis in Support of Twin City's Motion to Disqualify ¶ 4 and Ex. A.

9       The sum and substance of the Insurers' discussion of Mr. Pillsbury is outside of

10  the record.  They claim in their memorandum (but do not support with declarations

11  under penalty of perjury) that Mr. Pillsbury, during a status conference before this

12  Court, made various statements or concessions that require him to testify at trial.  *See*

13  Twin City Opening Mem. at 1, 4.  That is not enough.  *Smith,* 60 Cal. App. 4th at 578

14  (statements in a memorandum of points and authorities are insufficient to support a

15  disqualification motion; all facts must be supported by a declaration under penalty of

16  perjury).  In fact, Mr. Pillsbury has submitted a declaration – under penalty of perjury –

17  denying that he said any such thing and eliminating any basis for suggesting that he

18  could be a witness at trial in this case.  *See* Pillsbury Dec. ¶ 4.

19      Accordingly, the Insurers cannot satisfy their burden when it comes to Mr.

20  Pillsbury.  As to the unnamed other employees of Pillsbury & Levinson, the Insurers

21  offer no discussion at all, let alone admissible evidence.  The Court should deny this

22  portion of the Insurers' motion on the ground that the Insurers have failed to establish

23  the factual predicate for the relief they seek.  *Smith,* 60 Cal. App. 4th at 578.  We turn

24  next to the portion of the Insurers' motion that is directed to Mr. Shively.

25      **2.    The Insurers Have Not Made a Convincing Demonstration of
        Substantial Detriment If Mr. Shively Testifies At Trial**

26      The Insurers contend that if Mr. Shively both acts as trial counsel and also

27  testifies, that would pose a substantial detriment to the Insurers because "counsel's

28

-11-

1  testimony will *according to Crowley* be critical to the contested issue of consent," and

2  counsel will be able to "bolster" its own testimony with respect to the "*material* consent

3  issue." Twin City Opening Mem. at 16 (italics added). The Insurers mischaracterize

4  the pertinent facts and the applicable law.

5      *First*, consent to settle or a supposed failure to cooperate is not part of Crowley's

6  case in chief. Those are affirmative defenses on which the Insurers bear the burden of

7  proof. *See* J. Walter Croskey, et al., *Cal. Prac. Guide: Ins. Lit.* § 15:917 (rev. ed.

8  2008) (citing cases). Crowley has never represented that Mr. Shively (or Mr. Pillsbury)

9  would testify in this case or that his testimony would be critical to any material issue.

10 *See* Pillsbury Dec. ¶¶ 3-5.

11     *Second*, as noted, the Insurers have introduced no admissible evidence that

12 consent (or a supposed failure to cooperate) is contested. The Court must "disregard

13 counsel's conclusory allegations" when evaluating "any contention of detriment."

14 *Smith,* 60 Cal. App. 4th at 579. Counsel's say-so in a memorandum of points and

15 authorities is not enough. *Id*. at 578.

16     *Third*, as discussed at pages 16-19 below, consent is not an issue in this case, let

17 alone a material one. *See* Section III.C.3(c) *infra*.

18     *Fourth*, even if consent were an issue on which testimony from Mr. Shively

19 were relevant, the issue would be one of fourteen legal issues and twelve fact issues for

20 trial. *See* Joint Case Management Statement and Rule 26(f) Report at 12-15 (filed May

21 12, 2008). Mr. Shively's testimony, if given, would consist of only a brief rebuttal to

22 the Insurers' showing on one portion of one of the those twenty-six issues, *i.e.*, whether

23 the Federal claims adjuster indicated that consent to the settlement would not be a

24 problem. The Insurers make no showing that brief rebuttal testimony on this single

25 limited issue out of twenty-six issues would substantially impair their ability to present

26 their case at trial. While the Insurers contend that the jury might be confused (Twin

27 City Opening Mem. at 16), this Court can clear up any confusion with appropriate jury

28 instructions.

1    Moreover, if the Insurers have their way, Mr. Shively would be far from the only

2    lawyer who testifies at trial.  For example, in the listing of potential witnesses in its

3    Rule 26 disclosure, Twin City identified *eleven* lawyers by name as well as "all other

4    attorneys and paralegals" from the law firms of Morris, Nichols, Arsht & Tunnell;

5    Pillsbury & Levinson; Orrick, Herrington & Sutcliffe; Morrison & Foerster; and Taylor

6    & McNew.  *See* Shively Dec. ¶ 12 & Ex. G (Twin City Fire Insurance Company's

7    Initial Disclosures Pursuant to F.R.C.P. 26(a)(1) at 3-4, 7).  Federal's Rule 26

8    disclosure identifies *eight* lawyers by name as well as unnamed lawyers from those

9    same law firms.  *See id.* ¶ 12 & Ex. H (Rule 26(a)(1) Disclosures of Federal Insurance

10   Company at 2-4).  In the face of this onslaught of lawyer witnesses at trial, a brief

11   examination of Mr. Shively would not be out of the ordinary to the jury.

12       *Fifth*, the Insurers also assert that they plan to contest the veracity of Mr.

13   Shively's March 28, 2007 letter and to argue that the *Franklin Fund* settlement had

14   already been completed by that date.  But they do not make any showing that Mr.

15   Shively would be the sole (let alone a necessary) witness on that topic.  *See Smith,* 60

16   Cal. App. 4th at 581 (party moving to disqualify must show that the testimony is

17   "unobtainable from other witnesses"); *Colyer v. Smith,* 50 F. Supp. 2d 966, 974 (C.D.

18   Cal. 1999) (same).  To the contrary, such testimony could be easily obtained from other

19   individuals, such as Jon E. Abramczyk, who was lead defense counsel in the underlying

20   action, and Richard Vernon Smith of the San Francisco office of Orrick, Herrington &

21   Sutcliffe, who was co-counsel in the underlying action, as the declarations from

22   Messrs. Smith and Abramczyk reflect.

23       *Finally,* although the Insurers claim that the mere fact that opposing counsel

24   might also be called upon to testify necessarily prejudices their interests, citing the

25   ABA Rules and a New York decision (Twin City Opening Mem. at 15), the California

26   courts have rejected any suggestion that this fact alone is enough to disqualify opposing

27   counsel.  As the California Supreme Court explained, "the State Bar has concluded that

28   a fully informed client's right to chosen counsel outweighs potential conflict or threat

1    to trial integrity posed by counsel's appearance as a witness." *Maxwell v. Superior*

2    *Court*, 30 Cal. 3d 606, 620 n. 9 (1982); *see also Smith*, 60 Cal. App. 4th at 579.

3        The Insurers have not demonstrated substantial detriment.

4        ### 3.    The Insurers Also Have Failed to Demonstrate Injury to the Integrity of the Judicial Process

5        The Insurers also fail to prove that disqualification of Messrs. Shively and

6    Pillsbury is necessary to avoid injury to the integrity of the judicial process.  In

7    assessing whether to disqualify counsel on this ground, California courts "start with the

8    proposition that the right of a party to be represented in litigation by the attorney of his

9    or her choice is a *significant right* and ought not to be abrogated in the absence of some

10   indication the integrity of the judicial process will otherwise be injured." *Smith*, 60

11   Cal. App. 4th at 580 (citation omitted) (emphasis added).  California courts also

12   consider three factors:  (a) "the combined effects of the strong interest parties have in

13   representation by counsel of their choice, and in avoiding the duplicate expense and

14   time-consuming effort involved in replacing counsel already familiar with the case";

15   (b) "the possibility that counsel is using the motion to disqualify for purely tactical

16   reasons"; and (c) "whether counsel's testimony is, in fact, genuinely needed." *Id.* at

17   580-81 (citations omitted).  Courts "should resolve the close case in favor of the

18   client's right to representation by an attorney of his or her choice." *Id.* at 579.  In this

19   case, the balance of the interests overwhelmingly weighs in favor of Crowley's right to

20   representation by its chosen counsel, Messrs. Shively and Pillsbury.

21        ### a)    Crowley's Interests Would Be Impaired By Disqualification Of Its Long-Time Counsel

22

23        California law recognizes that a party has a strong interest in using counsel of its

24   choice:  "[t]he right of a party to be represented in litigation by the attorney of his or

25   her choice is a significant right." *Id.* at 580 (citation omitted).  "It must be kept in mind

26   that disqualification usually imposes a substantial hardship on the disqualified

27   attorney's innocent client, who must bear the monetary and other costs of finding a

28   replacement." *Id.* at 581 (citation omitted).

-14-

1    The record on this motion proves just that.  Messrs. Pillsbury and Shively have

2    "represented Crowley on multiple occasions in the past."  Ficon Dec. ¶ 3.  They thus

3    have knowledge of the corporation and of the individuals involved there.  In addition,

4    they have become familiar with the *Franklin Fund* action and have been representing

5    Crowley in connection with that matter for well over a year.  Shively Dec. ¶ 3.

6    Crowley has "been pleased with their work," and "wishes to keep Messrs. Pillsbury and

7    Shively, and the firm of Pillsbury & Levinson, as its counsel of record in this case."

8    Ficon Dec. ¶ 3.  Crowley would necessarily incur significant expense if other counsel

9    had to duplicate all of their efforts.

10            **b)    This Motion To Disqualify Is A Tactical Ploy**

11           "A motion to disqualify a law firm can be a powerful litigation tactic to deny an

12   opposing  party's counsel of choice."  *In re County of Los Angeles*, 223 F.3d 990, 996

13   (9th Cir. 2000) (where counsel has a "formidable reputation" in a certain area,

14   defendants "may find it advantageous to remove him as an opponent").  When, as here,

15   a motion to disqualify is not grounded on a past representation of the opposing party,

16   "'the attempt by an opposing party to disqualify the other side's lawyer must be viewed

17   as part of the tactics of an adversary proceeding.'"  *Smith*, 60 Cal. App. 4th at 581.  As

18   such, the motion "demands judicial scrutiny to prevent . . . substantial [in]justice to the

19   parties."  *In re EXDS*, 2005 WL 2043020 at *3 (internal quotes and citations omitted).

20           Here, the Insurers present no evidence at all, let alone admissible evidence, to

21   show that they are genuinely aggrieved.  Their protestation of innocence on the

22   "tactical ploy" factor in their moving papers is no substitute for actual evidence.  *Smith*,

23   60 Cal. App. 4th at 578 (factual statements in memoranda of points and authorities are

24   insufficient to satisfy a party's burden in a motion to disqualify).  In fact, on the

25   undisputed record here, the motion can only be characterized as a tactical exercise.

26   •    Notably, one of the defendant insurers – RLI – did not join in the motion.

27   •    The supposedly disputed issue concerns a *Federal* claims adjuster, Mr. Nicholls,

28        and Twin City does not suggest that it is bound by anything the Federal adjuster

1   had to say about consent to settle. Twin City makes no showing that Mr.

2   Shively (or Mr. Pillsbury) is a necessary and only witness to anything

3   concerning *Twin City*. Yet it was *Twin City* that brought this motion.

4   • The moving papers are replete with quite heated rhetoric about Messrs. Shively

5   and Pillsbury and about the supposed lack of merit of Crowley's insurance claim

6   – rhetoric that is largely irrelevant to this motion and plainly is designed to try to

7   "poison the well" for future proceedings in the case. It also is rhetoric that is flat

8   wrong, for the reasons discussed previously. Twin City's hyperbolic attitude is

9   further exemplified in a separate pleading it recently sent to Crowley – a Motion

10   for Sanctions Pursuant to Fed. R. Civ. Proc. 11 – in which Twin City tells the

11   Court that Crowley's lawyers, who have been well-respected members of the

12   San Francisco Bar for a combined total of sixty years, in fact filed this lawsuit

13   for the "purpose of perpetrating insurance fraud."

14   • A reasonable conclusion from all this is that Twin City filed this motion and

15   Federal joined it not because they seriously think that this Court will grant the

16   motion, but because they want to burden Crowley with the cost of opposing the

17   motion and to manufacture controversies (like their wholly groundless claims

18   about Mr. Shively's March 28, 2007 letter), in the hope of inducing Crowley to

19   drop the case.

20   This factor also weighs strongly in favor of Crowley.

21   ### c)    Mr. Shively's Testimony Is Not Necessary

22   The final factor is whether the testimony of Mr. Shively is "in fact, genuinely

23   needed." *Smith*, 60 Cal. App. 4th at 581 (internal quotations omitted). In determining

24   the necessity of counsel's testimony, the Court should consider "the significance of the

25   matters to which he might testify, the weight his testimony might have in resolving

26   such matters, and the availability of other witnesses or documentary evidence by which

27   these matters may be independently established." *Smith,* 60 Cal. App. 4th at 581. The

28   Insurers contend that counsel's testimony – "particularly that of Shively" – is needed

-16-

1    because it "will be critical in establishing the veracity of the March 28, 2007 letter and

2    other material statements necessary to determine whether Twin City was notified of and

3    consented to the Settlement. . . . As conceded by Crowley itself, the consent issue is

4    especially critical to establishing and defending the causes of action in the instant case

5    because consent is a condition to Twin City's obligations under its policy."  Twin City

6    Opening Mem. at 14.  The Insurers are mistaken.

7         Most fundamentally, "consent to settle" is not an issue in this case.  So

8    testimony on that issue, from Mr. Shively or anyone else, is unnecessary.

9         Specifically, under California law, when an insurer is defending a policyholder,

10   the insurer typically controls the defense and any settlement of the case.  *See generally*

11   *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 728 (2002).  By contrast, insurers that

12   do not provide a defense to their insured cannot control settlement or enforce consent

13   clauses purporting to avoid coverage for unauthorized settlements.  *See e.g., Pruyn v.*

14   *Agricultural Ins. Co.*, 36 Cal. App. 4th 500, 516 (1995); Alan Windt, *Ins. Claims and*

15   *Disputes* §3:9 (5th ed. 2008) (a non-defending insurer may not deny coverage for an

16   unauthorized settlement "because consent to settle clauses are designed to protect

17   defending insurers").

18        A recent decision by the California Court of Appeal, *Fuller-Austin Insulation*

19   *Co. v. Highlands Ins. Co.,* 135 Cal. App. 4th 958 (2006), addresses the issue that the

20   Insurers seek to raise here.  In *Fuller-Austin,* the court considered whether a non-

21   defending excess insurer that reserved its rights to contest coverage could rely on a

22   "consent to settle" provision to avoid liability for a settlement that it did not authorize.

23   In that case, the underlying policies did not require the insurers to provide a defense,

24   the insurers did not provide a defense, and the insured "neither sought nor obtained the

25   approval" of the excess insurers prior to finalizing the settlement.  *Id.* at 969.  The

26   Court of Appeal concluded that even if the insurers had not "breached their policies by

27   erroneously denying coverage or refusing to defend," they could not rely on the consent

28   provision to avoid liability:

> [B]ecause [insurers] were neither acknowledging coverage nor providing a defense, and therefore were in no way exercising control over the asbestos claims brought against Fuller-Austin, we find it difficult to permit [insurers] to rely…on a consent provision that is designed to protect defending insurers.

*Id.* at 985 (citation omitted).  The court did "not believe that the policies can be read to permit an excess insurer to hover in the background of critical settlement negotiations and thereafter resist all responsibility on the basis of lack of consent."  *Id.* at 990. Instead, the court explained, allowing the policyholder to enter into a settlement without the insurers' participation "while permitting [insurers] to challenge the [settlement] for fairness, reasonableness and lack of fraud or collusion . . . does no violence to the policy language requiring [insurers'] consent."  *Id.*  Accordingly, *Fuller-Austin* held that a non-defending insurer that stands silent in the face of a request to approve a settlement cannot escape its coverage obligations on that ground alone.  *Id.* at 990-91.[3]

The pertinent facts of the instant case are virtually indistinguishable from those of *Fuller-Austin*.  Here, too, the underlying policies did not require the Insurers to provide a defense, the Insurers did not provide a defense, and Crowley did not obtain the Insurers' consent prior to finalizing the settlement.  Under *Fuller-Austin,* the Insurers did not have the right to avoid coverage on the ground that they withheld their consent to the settlement.

Where consent makes a difference – and the reason why Crowley requested it back in March 2007 – is that if the Insurers had consented, the reasonableness of the

---

[3] *Fuller-Austin* also noted that insurers have a duty of good faith and fair dealing that requires them to respond to requests to approve a settlement, and that an insurer (like the Insurers here) that does not respond may have breached that duty and thereby lost the right to enforce any "consent to settle" clause in the insurance policy.  *See Fuller-Austin*, 135 Cal. App. 4th at 985-88; *see also Diamond Heights Homeowners Ass'n. v. Nat'l Am. Ins. Co.,* 227 Cal. App. 3d 563, 578, 581 (1991).

settlement amount would not be an issue in this case, whereas "reasonableness" (and the collateral issues of whether the settlement is fraudulent or unduly collusive) remains in dispute absent the Insurers' consent. *Id.* at 990-91. But the Insurers introduced no evidence to suggest that Mr. Shively is a necessary witness, or a witness at all, to any issue concerning the reasonableness of the *Franklin Fund* settlement (or to any claim of fraud or collusion). *Smith,* 60 Cal. App. 4th at 581 (moving party must show that the testimony from the lawyer who is the subject of the motion to disqualify is "necessary and unobtainable from other witnesses"). To the contrary, the witnesses on that issue – if "reasonableness" could possibly remain at issue in the case after the ruling of the Delaware Court of Chancery approving the settlement and finding it to be fair and reasonable (Abramczyk Dec. ¶ 6 and Ex. C at p. 3) – are likely to be representatives of Crowley and Crowley's defense counsel in the *Franklin Fund* action, Messrs. Abramczyk and Smith.

In short, the Insurers have "failed to provide an adequate evidentiary showing" as to why Mr. Shively (or Mr. Pillsbury) "must testify or how any testimony would be harmful to the integrity of the judicial process." *Smith,* 60 Cal. App. 4th at 582. Accordingly, the Court should reject the extraordinary relief that the Insurers request.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the motion to disqualify.

Dated:  August 1,  2008                        Respectfully submitted,

**PILLSBURY & LEVINSON LLP
COVINGTON & BURLING LLP**


By:   /s/ David B. Goodwin
      DAVID B. GOODWIN

      Attorneys for Plaintiff
      CROWLEY MARITIME CORPORATION