1    Philip L. Pillsbury, Jr. (SBN 72261)
2    Richard D. Shively (SBN 104895)
     PILLSBURY & LEVINSON, LLP
3    The Transamerica Pyramid
4    600 Montgomery Street, 31st Floor
     San Francisco, CA 94111
5    Telephone:  (415) 433-8000
     Facsimile:  (415) 433-4816
6    Email: ppillsbury@pillsburylevinson.com
7           rshively@pillsburylevinson.com

8    David B. Goodwin (SBN 104469)
9    Deepa Varadarajan (SBN 250845)
     COVINGTON & BURLING LLP
10   One Front Street, 35th Floor
     San Francisco California 94111-5356
11   Telephone:  (415) 591-7074
     Facsimile:    (415) 955-6574
12   Email:  DGoodwin@cov.com
13           Dvaradarajan@cov.com

14   Attorneys for Plaintiff
15   CROWLEY MARITIME CORPORATION

16           UNITED STATES DISTRICT COURT
17   NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

18

19   CROWLEY MARITIME                    )   Case No. CV-08-00830 SI
20   CORPORATION,                        )   [Hon. Susan Illston]
                                         )
21              Plaintiff,               )   DECLARATION OF STEVEN
                                         )   FICON IN OPPOSITION TO
22        vs.                            )   MOTION BY TWIN CITY AND
                                         )   FEDERAL TO DISQUALIFY
23   FEDERAL INSURANCE COMPANY;          )   CROWLEY'S COUNSEL OF
24   TWIN CITY FIRE INSURANCE            )   RECORD
     COMPANY; RLI INSURANCE              )
25   COMPANY; and DOES 1-20, inclusive,  )   Date:      August 22, 2008
26                                       )   Time:      9:00 a.m.
                Defendants.              )   Place:     Courtroom 10
27                                       )
28   _____    )

*(left margin, rotated)* PILLSBURY & LEVINSON, LLP / The Transamerica Pyramid / 600 Montgomery Street, 31st Floor - San Francisco, CA 94111

1

Action Filed:    **January 7, 2008**
Removal Date:    **February 6, 2008**
Trial Date:    **September 14, 2009**

I, Steven Ficon, declare as follows:

1.    I am the Director, Corporate Claims, for plaintiff Crowley Maritime Corporation ("Crowley" or the "Company"), and I have been authorized by Crowley to provide this Declaration in opposition to the motion, by defendants Twin City Fire Insurance Company ("Twin City") and Federal Insurance Company ("Federal"), to disqualify Crowley's counsel of record in this case. The statements in this Declaration are known to me to be true, except where expressly made on information and belief; in the latter instances, I am informed and believe that the statements are true.

2.    My responsibilities at Crowley include the oversight of claims against the Company, and in that capacity I was responsible for obtaining counsel to defend against the claims asserted in the underlying Franklin Fund Action,[1] and also for notifying Crowley's liability insurers of the claims and seeking coverage.

3.    I also retained Philip L. Pillsbury, Jr. and Richard D. Shively of the firm Pillsbury & Levinson to represent the Company as coverage counsel and as counsel of record in this case, because they have represented Crowley on multiple occasions in the past, and we have been pleased with their work. Crowley wishes to keep Messrs. Pillsbury and Shively, and the firm of Pillsbury & Levinson, as its counsel of record in this case, and I have been authorized by Crowley to ask the Court to deny the present motion to disqualify.

A.    **The Motion To Disqualify Is Not Meritorious**

---

[1] *Franklin Balance Sheet Investment Fund et al. v. Thomas B. Crowley, Jr. et al.,* Civil Action No. 888-VCP, Delaware Chancery Court for New Castle County (the "Franklin Fund Action" or the "underlying action").

DECLARATION OF STEVEN FICON  OPPOSING MOTION TO DISQUALIFY          Case No. CV-08-00830 SI

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

4.     I have reviewed Twin City's motion to disqualify, and Federal's joinder in that motion.  The motion to disqualify appears to be based upon two arguments: First, that an appearance of impropriety justifying disqualification of counsel would be created if Mr. Shively were called to testify at trial regarding his April 5, 2007 telephone conversation with Federal's in-house counsel Henry Nicholls; and, second, that Mr. Shively (and perhaps Mr. Pillsbury) somehow committed a fraud by seeking the Insurers' consent to a proposed settlement of the Franklin Fund Action that was reached in March 2007.  Neither argument has merit, and Crowley believes the motion amounts to an unwarranted attempt to interfere with Crowley's right to be represented by counsel of its own choice.

5.     Crowley does not believe that the representation by Messrs. Pillsbury and Shively will be rendered less effective by the possible need for Messrs. Pillsbury or Shively (or any member of the firm Pillsbury & Levinson) to testify concerning any matter in this case, including Mr. Shively's April 2007 telephone conversation with Mr. Nicholls.  I have been authorized to inform the Court that Crowley gives its informed written consent pursuant to California Rule of Professional Conduct 5-210(c) that Mr. Pillsbury, Mr. Shively, and other attorneys and employees with the Pillsbury & Levinson law firm may both act as trial counsel in this case and, if necessary, testify as witnesses at trial.

**B.     The Insurers Provided No Defense, Reserved The Right To Deny Coverage, And Failed To Reimburse Any Part Of The Settlement Payment**

6.     Crowley was served with process in the Franklin Fund Action on December 1, 2004.  I promptly gave formal notice of the Franklin Fund Action to Crowley's liability insurers --including Twin City and Federal (collectively, along with defendant RLI Insurance Company, the "Insurers") – on December 10, 2004.  Attached

DECLARATION OF STEVEN FICON  OPPOSING MOTION TO DISQUALIFY          Case No. CV-08-00830 SI

as **Exhibit A** is a copy of the notice letter I sent on December 10, 2004.[2] Each of the three Insurers responded with a letter in which it fully reserved the right to deny coverage for the Franklin Fund Action. Copies of those reservation of rights letters are attached as **Exhibits B** through **D.**

7.     None of the Insurers provided any defense for Crowley in the Franklin Fund Action. Crowley therefore directly retained and paid outside counsel to defend the Action. Jon E. Abramczyk of the Delaware firm Morris, Nichols, Arsht & Tunnell LLP served as lead defense counsel for Crowley. The San Francisco-based firm Orrick, Herrington & Sutcliffe LLP was retained as co-counsel, and several Orrick attorneys worked on the case, including Richard Vernon Smith. Crowley was never reimbursed by any of the Insurers during the pendency of the Franklin Fund Action for any of the defense costs it incurred.

8.     In defending the Franklin Fund Action, Crowley incurred defense costs in excess of $600,000.00. Federal has never reimbursed Crowley for any of the settlement costs it incurred, and Federal has failed to reimburse almost all the defense costs incurred by Crowley. Without providing any explanation or supporting calculation, Federal paid approximately $77,000 -- which amounted to only about 10% of Crowley's defense costs -- but that payment was not made until several months after the case settled and a final judgment of dismissal with prejudice was entered. Furthermore, the payment was made subject to a reservation of Federal's right to later seek reimbursement of the entire amount paid back from Crowley. Copies of the payment and cover letter are attached as **Exhibit E.**

9.     Crowley was obligated under its by-laws to pay -- and it did pay -- the defense costs and settlement amounts incurred in the Franklin Fund Action, on behalf

---

[2]    My letter of December 10, 2004 was directed to Crowley's broker, Aon Risk Services, and the broker forwarded my notice letter to each of the Insurers on December 20, 2004. A copy of the broker's transmittal letter is attached as **Exhibit K.**

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor - San Francisco, CA 94111

1   of the director and officer defendants.  Attached as **Exhibit F is a copy of** the Crowley

2   By-laws.  The indemnification obligation is set forth on page 17 of that document.

3          10.     The Federal policy, attached as **Exhibit G**, provides that the insured

4   Organization (Crowley) will "indemnify an Insured Person [directors and officers] for

5   Loss [and] advance Defense Costs on behalf of an Insured Person, to the fullest extent

6   permitted by statutory or common law."  Ex. G at § 14 ("Presumptive

7   Indemnification"), p. 13 of 19.  The policy specifies that Crowley (as the insured

8   Organization) is to act on behalf of directors and officers that are Insured Persons, in

9   adjusting and settling claims against them and in pursuing the enforcement of Federal's

10  obligation to pay loss.  See Ex. G at General Terms and Conditions Section, § 9

11  ("Parent Organization Rights and Obligations"), p. 5 of 6 ("By acceptance of this

12  policy, the Parent Organization agrees that it shall be considered the sole agent of, and

13  shall act on behalf of, each Insured with respect to:  . . .  the adjustment of loss

14  amounts; and the receipt or enforcement of payment of loss  . . . .  Each Insured

15  agrees that the Parent Organization shall act on its behalf with respect to all such

16  matters").

17

18      **C.     The Insurers Failed To Promptly Respond In Writing To The
            Request For Consent, And Failed To Investigate To Determine
19           Whether The Proposed Settlement Was Reasonable**

20         11.    After Mr. Shively wrote to the Insurers in March 2007, seeking their

21  consent to the proposed settlement, I never received -- and, to my knowledge, neither

22  Crowley's coverage counsel nor its defense counsel ever received -- any response from

23  Twin City or RLI.  I received no response from Federal until nearly three months later,

24  when a letter dated June 14, 2007 arrived from Federal's in-house attorney Henry

25  Nicholls.  A copy of this letter is attached as **Exhibit H**.   (I did not actually receive the

26  letter until early July 2007 because Federal mis-addressed it.)  The June 14 letter

27  purported to respond to the letter Mr. Shively had sent to the Insurers on March 28,

28

5

1  2007 but Federal's response was directed only to me, with no copy of the letter directed

2  to the coverage attorneys who had issued the request for consent on Crowley's behalf.

3      12.    The June 14 letter indicated that Federal intended to deny coverage for

4  the Franklin Fund settlement because Crowley had not obtained Federal's written

5  consent before completing the settlement. I was disappointed that Federal had waited

6  until after the proposed settlement was approved by the Delaware Chancery Court on

7  April 27, 2007, and until after a final judgment of dismissal had been entered, before

8  finally responding in writing to the March 28, 2007 request for consent. I was also

9  disappointed that Federal had failed to warn Crowley in advance that, if it proceeded to

10 complete the proposed settlement, then coverage would be denied. In light of Federal's

11 [date] reservation of rights letter, I had expected Federal to respond in writing if it had

12 any objections to the proposed settlement.

13     13.    From the date (in December 2004) when I first notified the Insurers of the

14 Franklin Fund Action until the date (in March 2007) when the Insurers were advised by

15 Mr. Shively that a proposed settlement had been reached, I received no inquiries from

16 any of the Insurers concerning the probability that the plaintiffs would ultimately

17 prevail, or the likely amount of their recovery in the event they should prevail. Nor, to

18 my knowledge, did anyone else at Crowley -- or defense counsel at the Morris, Nichols

19 or Orrick firms -- receive any such inquiries from the Insurers.

20     14.    At no time after the Insurers' consent to the proposed settlement was first

21 sought on March 28, 2007 did I --- or, to my knowledge, anyone else at Crowley, or

22 any of our outside counsel -- receive any inquiries from any of the Insurers asking:

23 (a) how much was proposed to be paid in exchange for a release of the plaintiffs'

24 claims; (b) what was the probability that the plaintiffs would have prevailed, had there

25 been no settlement; or (c) how much would the plaintiffs likely have recovered, had

26 there been no settlement.

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

6

1        15.    Attached as **Exhibits I** and **J** are the Twin City and RLI policies under

2    which Crowley sought coverage for the Franklin Fund Action.

3        I declare under penalty of perjury, under the laws of the United States of

4    America, that the foregoing is true and correct, and that this Declaration was executed

5    on July 31, 2008 in Jacksonville, Florida.

6

7                                    Steven Ficon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street. 31st Floor - San Francisco, CA 94111

DECLARATION OF STEVEN FICON  OPPOSING MOTION TO DISQUALIFY       Case No. CV-08-00830 SI

# EXHIBIT A

# CROWLEY°

VIA UPS OVERNIGHT MAIL
December 10, 2004

Aon Risk Services of Texas, Inc.
1330 Post Oak Blvd., Ste 900
Houston, Texas 77057·

Attn.: Maryann Schultz

**COVERAGE**

**CLAIM**

**Executive Protection Portfolio (D&O, Fiduciary, Crime & EPL)**

**Primary D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Federal Insurance Company (Chubb)
**Limit:** $10M Term Aggregate XS $500K retention, each loss
**Policy Number:** 8120-0792

**First XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Hartford/Twin City
**Limit:** $10M Aggregate XS $10M Underlying Limits
**Policy Number:** 00 DA 0100967 04

**Second XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** RLI Insurance Company
**Limit:** $5M Aggregate XS $20M Underlying Limit
**Policy Number:** EPG0002704A

**Civil Proceeding:** *Franklin Balance Sheet*
*Investment Fund, et al*
*v.*
*Crowley Maritime Corporation*
*Board of Directors*
*v.*
*Crowley Maritime Corporation*
(Nominal Derivative Defendant)

**Date of Claim/Service:** 12/1/04
**Our Reference:** 04DO0001
**Description:** FIRST REPORT

Dear Maryann:

The purpose of this letter is to provide written notice of the above-captioned claim. Please forward this loss notice and the enclosed lawsuit to the D&O Insurers identified in the caption.

**INTRODUCTION**

Crowley Maritime Corporation ("CMC") is a Delaware corporation, incorporated in its present form in 1992. The company was founded a century earlier.  Over the past century, the company has grown into a diversified marine transportation services provider currently employing approximately 4,000 people and a fleet of more than 270 vessels, including container ships, tankers, tugs and barges, as well as various land-based facilities, terminals, offices and equipment.

CMC has been a closely held company since its founding in 1892. In 2002 the company began filing reports with the Securities and Exchange Commission in accordance with the Securities and Exchange Act. Copies of all SEC filings by the company may be viewed at www.sec.gov.

RE: Franklin Balance Sheet Investment Fund, et al.
    vs. Thomas B. Crowley, Jr. et al.

December 10, 2004
Page 2

## THE CLAIM

On November 30, 2004, the enclosed lawsuit was filed in the Court of Chancery for the State of Delaware by plaintiffs Franklin Templeton group of mutual funds ("Franklin"), P. Oppenheimer Investment Partnerships LP/Oppenheimer Close International Ltd. ("Oppenheimer") and Wynnefield group of mutual funds ("Wynnefield") against the CMC Board of Directors and CMC as the nominal derivative defendant. The plaintiffs are minority shareholders who claim to beneficially own 9,369 shares of common stock, or approximately 10.5% of the outstanding shares of common stock. R. Bruce McNew, Taylor & McNew LLP, Greenville, DE represents the plaintiffs. On December 1, 2004, CMC was served with the complaint. The individual members of the Board have not been served as of this date. We will advise the dates of service on the individual Board members.

## DEFENSE COUNSEL

The defense of the CMC Board of Directors has been assigned to and will be coordinated by Orrick, Herrington and Suttcliffe, LLP, San Francisco. Delaware counsel Morris, Nichols, Arsht and Tunnell has also been retained. The Orrick firm successfully defended the most recent D&O claim filed against CMC, *Wood vs. CMC*. That claim was handled by Ruthann Rozenek and Donn Burkholder of Chubb's Specialty Claims Department, Los Angeles. We will provide underwriters with copies of additional pleadings filed in this matter, and await further instruction on the level of reporting required.

The undersigned will serve as the insured's primary contact on this matter. I can be reached at 510-251-7630 or at steve.ficon@crowley.com. Thank you for your assistance in reporting this matter.

Very truly yours,

Steven J. Ficon, CPCU
Manager, Corporate Claims

w/ Enclosure- Summons and Complaint

cc: Jim Juergens, VP, CMC Risk Management
    William P. Verdon, Esq., CMC Senior VP and General Counsel

# EXHIBIT B

# CHUBB GROUP OF INSURANCE COMPANIES

**CHUBB**

12 Vreeland Road, P.O. Box 981, Florham Park, New Jersey 07932-0981
Phone: (973) 360-6250 • Facsimile: (973) 360-6842

June 27, 2005

Mr. Steve Ficon
Crowley Maritime Corp.
155 Grand Avenue, Suite 700
Oakland, CA 94612

Re:  Insured:            Crowley Maritime Corp
     Policy No.:         8120-07-92
     Claim No.:          100304
     Writing Company:    Federal Insurance Company
     Claimant/Litigation: Franklin Balance Sheer Investment Fund, et al.

Dear Mr. Ficon:

Please accept this correspondence as the coverage position of Federal Insurance Company in connection with the matter Franklin Balance Sheet Investment Fund et al v. Thomas B. Crowley et al, filed in Chancery Court, New Castle County, State of Delaware, (the "Complaint").

This will confirm that Federal, following a review of the factual allegations in the Complaint described below, along with a review of the terms and provisions of the Executive Liability & Indemnification ("ELI"), Fiduciary Liability and Employment Practices Liability ("EPL") Coverage Sections of Executive Protection Policy No. 8120-0792 (the "Policy"), will agree to accept coverage as to Crowley Maritime Corporation, Thomas B. Crowley, Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, and Cameron W. Wolf, Jr. under the ELI Coverage Section, subject to a reservation of rights as set forth below.

As regards the Fiduciary Liability and EPL Coverage Sections, Federal has determined that coverage is not available for this matter and respectfully declines coverage as to all defendants under these coverage sections. If you would like a detailed coverage analysis relating to the inapplicability of these coverage section, Federal will provide same upon request.

Certain portions of the background of this matter will be summarized so you will understand the context of Federal's coverage position. However, you should refer to information contained in the Complaint, which provides the bases for our understanding of the facts giving rise to this matter. This letter does not modify the terms and conditions of the Policy, which we request that you review together with this letter. Please note that words in **bold** print are defined in the Policy.

Background

We received notice of this matter in our office on December 21, 2004, by way of receipt of a Complaint apparently filed on November 30, 2004 and served on the **Insured** on December 1, 2004.

The Complaint asserts a derivative claim for self-dealing by the defendants, which self-dealing was intended to benefit the controlling shareholder defendant. The Complaint alleges that the self-dealing was unfair and damaged plaintiff shareholders.

Specifically the Complaint sets out that Crowley Maritime Corporation's ("Crowley Maritime") Form 10-K for the year ending December 31, 2001 and filed on April 1, 2002, disclosed a series of transactions in

RECEIVED

JUN 3 0 2005

MGMT

pursuit of the corporate policy of entrenching its controlling stockholder, Thomas B. Crowley, Jr. ("Thomas Crowley"), in power through improper means.

The Complaint asserts that beginning in at least 1992, Crowley Maritime and Thomas Crowley entered into a series of long-running, split-dollar life-insurance agreements, wherein Crowley Maritime paid the life-insurance premiums on policies owned by Thomas Crowley. The agreements further provided that Thomas Crowley or his survivors were to repay the premiums after cashing in on the policy.

Thomas Crowley controls the majority of common stock and 99.9% of preferred stock in Crowley Maritime. In its annual report, Crowley Maritime explained that the split-dollar insurance agreements were intended to prevent an unrelated third party gaining a highly influential and potentially detrimental position with respect to the business and management of the company once family members are faced with paying estate taxes on their equity in Crowley Maritime and other assets.

The Complaint suggests that disclosure of the insurance agreements was prompted by the passage of the Sarbanes-Oxley Act of 2002 ("SOX"). SOX made it illegal for issuers of securities to make personal loans or extend other credit to their directors and executives. Crowley Maritime stated in its SEC filing that the law "might be construed as treating annual premium payments made after 30 July 2002...as new extensions of credit that would be prohibited". Based on concern about SOX, Crowley Maritime discontinued the premium payments on one insurance agreement and disclosed in its annual proxy statement that Thomas Crowley had repaid $7.5 million to Crowley Maritime reflecting prior premium payments on that agreement.

According to the SEC filing quoted in the Complaint, Thomas Crowley paid no interest on the paid-back premiums and Crowley Maritime will be bearing the after-tax cost of the interest on the financing that Thomas Crowley had to arrange to make the $7.5 million payment.

Based on these facts, Plaintiffs contend that even following the "repayment" of the $7.5 million, the damages arising from the insurance agreements include at least the following:

Interest on $7.5 million dollars commencing in 1992 and continuing to date, and annual premium payments on the $90 million dollars of insurance subject to two other insurance agreements (still in force) from 1998 to the present at the rate of $1.8 million annually, for a total of $10.8 million exclusive of interest on the latter portions.

Plaintiffs also contend that the insurance agreements have injured Crowley Maritime and the class in the amount of at least $15 million dollars and continue to injure the Crowley Maritime and the class at the rate of approximately $2.4 million dollars per year, reflecting interest on the increase in Crowley Maritime's long-term debt over this period.

I will now review the terms and conditions of the Policy.

Coverage

Federal issued Executive Protection Policy No. 8120-0792 to Crowley Maritime Corporation as the **Parent Organization**. The **Policy Period** is effective from November 1, 2004 to November 1, 2005, pursuant to the Declarations portion of the General Terms and Conditions. The coverage sections include, in pertinent part, ELI, Fiduciary Liability and EPL. The Policy is a claims made policy and, except as otherwise provided therein, covers only **Claims** first made against an **Insured** during the **Policy Period**, as these terms are defined.

Coverage - ELI

The ELI coverage section provides limits of liability of $10 million each **Loss** each **Policy Period**. There is a sublimit for all **Security Derivative Demands** under Insuring Clause 4 in the amount of $250,000. The Deductible Amount under Insuring Clauses 2 and 3 of the ELI Coverage Section is $500,000 pursuant to

Endorsement No. 13 and is applicable to **Loss**, including related **Defense Costs**. No Deductible Amount is applicable to a **Loss** under Insuring Clauses 1 and 4 of the ELI Coverage Section.

### Insuring Clauses

*Executive Liability Coverage Insuring Clause 1*

1.  The Company shall pay, on behalf of each of the **Insured Persons, Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Executive Indemnification Coverage Insuring Clause 2*

2.  The Company shall pay, on behalf of the **Organization, Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.  The Company shall pay, on behalf of the **Organization, Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.  The Company shall pay, on behalf of the **Organization, Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

**Claim, Wrongful Act, Securities Claim, Securityholder Derivative Demand, Insured Person, Employee, Executive** and **Organization**, as amended by Endorsements No. 6, 11 and 13, are defined as follows:

4

**Claim** means:

(1)     when used in reference to the coverage provided by Insuring Clause 1 or 2:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document;

    (d)    a criminal proceeding commenced by the return of an indictment; or

    (e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document, against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)     when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**;

    (d)    a criminal proceeding commenced by the return of an indictment; or

    (e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom.

**Wrongful Act** means:

(a)    any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or

(b)    any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

**Securities Claim** means that portion of a Claim which:

(a)    is brought by a securityholder of an **Organization**

    (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

(ii)    derivatively, on behalf of such **Organization**, against an **Executive** of such **Organization**; or

(b)    alleges that an **Organization** or any of its **Insured Persons**

(i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

**Securities Claim** does not include:

(a)    any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b)    any **Claim** by or on behalf of a former, current, future or prospective **Employee** of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such **Employee** in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; or

(c)    any **Securityholder Derivative Demand**.

**Securityholder Derivative Demand** means:

(a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Executive** for a **Wrongful Act**; or

(b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Executive** for a **Wrongful Act** without first making a demand as described in (a) above, provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**.

**Employee** means any natural person whose labor or service is engaged by and directed by an **Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

**Executive** means any natural person who was, now is or shall become:

(a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America; or

(b)    a holder of a position equivalent to any position described in (a) above in an **Organization** chartered in any jurisdiction other than the United States of America.

**Insured Person** means any **Executive** or **Employee** of an **Organization**.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

Item 5.         **Organization**: Crowley Maritime Corporation and its Subsidiaries; Crowley Foundation; Ice Construction; Clean Pacific Alliance, LLC; Marine Response Alliance, LLC.

Individual defendants Thomas B. Crowley, Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, and Cameron W. Wolf, Jr. qualify as **Insured Persons** in their capacities as officers and/or directors and/or **Employees** of Crowley Maritime Corporation, subject to the following reservation of rights.

Further, Crowley Maritime Corporation qualifies as an **Insured** under Insuring Clause 3, subject to the following reservation of rights, as this claim arises from a **Securities Claim**.

Exclusions 7(b) and (c), as amended by Endorsement No. 13, preclude coverage for **Loss** on account of any **Claim** made against any **Insured Person** (b) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a judgment or other final adjudication adverse to the **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or (c) based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled.

In the event a judgment or final adjudication with a finding of deliberate fraud by any **Insured Person**, Exclusion 7(b) will apply. In the event **Loss** results from a **Claim** against any **Insured Person** based on any **Insured Person** gaining illegal profits or advantage, Exclusion 7(c) will apply to preclude coverage. The definition of **Loss** pursuant to section 5 of the policy includes **Defense Costs**.

Similarly, Exclusion 8(a), as added by Endorsement No. 13, preclude coverage for **Loss** on account of any **Claim** made against any **Insured** in connection with coverage under Insuring Clause 3, based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a judgment or other final adjudication adverse to the **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or based upon, arising from, or in consequence of such **Insured** having gained in fact any personal profit, remuneration or advantage to which such **Insured** was not legally entitled.

In the event a judgment or final adjudication with a finding of deliberate fraud by any **Insured** in connection with coverage under Insuring Clause 3, Exclusion 8(a) will apply. In the event **Loss**, except for **Defense Costs**, results from a **Claim** against any **Insured** based on any **Insured** gaining illegal profits or advantage, Exclusion 8(a) will apply to preclude coverage.

To the extent the **Insured Organization** is permitted or required to indemnify the **Insured Person**, Insuring Clause 2 applies, as well as the Deductible of $500,000. Subsection 14 provides for Presumptive Indemnification so that any payment by Federal is subject to the Policy's $500,000 Insuring Clause 2 deductible.

Please note that under Subsection 18, as amended by Endorsement No. 10, "Other Insurance and Indemnity" if any **Loss** arising from any **Claim** made against any **Insured Person** is insured under any other valid policy(ies), then this coverage section shall cover such **Loss** only to the extent that the amount of such **Loss** is in excess of the amount of payment from such other insurance. Please determine the identity of other liability insurance carriers to whom notice has been provided in connection with this matter and provide me with a copy of that carrier(s) written coverage position.

Federal's consent to the retention of Orrick, Herrington & Sutcliff, LLP and Morris Nichols Arsht & Tunnell, as defense counsel is subject to this reservation of rights; confirmation of an acceptable rate structure, education and experience; along with adherence to our Litigation Management Guidelines. A copy of our Litigation Management Guidelines will be forwarded to counsel under separate cover letter.

Further, as discussed with you previously, Federal continues to have concerns related to the involvement of Orrick, Herrington & Sutcliff, LLP in the matters which underlie the Complaint, as well the fact that Mr. Wolf, a former Orrick partner, is a named defendant in the action. Federal continues to recommend that Orrick not function as defense counsel in this matter due to this potential conflict of interest.

To the extent Crowley Maritime Corporation proceeds with the employment of Orrick, Herrington & Sutcliff as defense counsel in this matter, and such decision results in additional **Defense Costs** which would not have been incurred had a firm without the above potential conflict been retained, it is the position of Federal that such costs would not be within the ambit of the following policy provision:

> **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

In order to properly evaluate this matter, and pursuant to Subsection 15 of the ELI coverage section of the Policy, I need to be provided with all appropriate information upon request. Please place my name on your mailing list for all future correspondence so I may be kept advised of events contemporaneously with their occurrence. Additionally, I may request to meet with you and other key witnesses and representatives of Crowley Maritime Corporation to discuss the facts of this case, as well as liability, damage and coverage issues. Your cooperation in this regard will be appreciated and will help bring this matter to an appropriate resolution.

The foregoing statements of Federal's coverage position for this matter are premised upon the information presently in our possession and, by necessity, are subject to change as additional facts and allegations may be developed through the course of investigation, discovery and further pleading. Federal expressly reserves all rights under the Policy and available at law to deny or otherwise limit coverage on additional or alternative bases, as other terms, conditions, exclusions, endorsements and provisions of the Policy, including representations, statements, declarations and omissions in connection with the application therefor, may be found to be applicable.

Should you have any questions concerning this letter, please contact me at (973) 360-6924. My e-mail address is: hnicholls@chubb.com.

Sincerely,

Chubb & Son
a division of Federal Insurance Company

*Henry Nicholls / s /*

by:    HENRY NICHOLLS, Esq.
       Eastern Specialty Office
       hnicholls@chubb.com

/jl
(crowley062405.doc)

8

cc:     Ms. Patricia Toner
        Crowley Maritime Corp.
        155 Grand Avenue, Suite 700
        Oakland, CA  94612

        Richard Smith
        Orrick, Herrington & Sutcliffe, LLP
        405 Howard Street
        San Francisco, CA  94105

        Jon Abramczyk
        Morris Nichols Arsht & Tunnell
        1201 N. Market Street
        Wilmington, DE  19899

        Maryann Schultz
        Aon Risk Services
        1330 Post Oak Blvd., Suite 900
        Houston, TX   77056

# EXHIBIT C



**THE HARTFORD**

Jeremy S. Salzman, Esq.
Claims Consultant
Hartford Financial Products

March 2, 2005

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**#7003 3110 0002 1074 9150**

Janelle Quinn
Claims Coordinator
Aon Financial Services Group
4100 E. Mississippi Avenue – Suite 1300
Denver, CO 80246

RE:   **INSURER:**    **TWIN CITY FIRE INSURANCE CO. ("TWIN CITY")**
      **INSURED:**    **CROWLEY MARITIME CORPORATION, (the "COMPANY" or the "INSURED")**
      **POLICY:**     **EXCESS FINANCIAL PRODUCTS INSURANCE [D&O]**
      **POLICY NO.:** **DA 0100967 (the "TWIN CITY POLICY")**
      **MATTER:**     **FRANKLIN BALANCE SHEET INVESTMENT FUND, ET AL.**
      **OUR REF. NO.:** **05360917**

Dear Ms. Quinn:

On behalf of Twin City, this letter acknowledges receipt of your correspondence of December 20, 2004 providing us with our first notice of this matter, and confirms our receipt of the materials that you have provided to us. We are directing this letter to you in your capacity as the authorized representative of the Insured with respect to insurance matters; however, if you are not acting in that capacity, or if another party should be addressed or copied in that regard, please inform us immediately.  Please note our reference number above and kindly refer to it on future correspondence.

**The Action**

Based on the materials provided, we understand that this matter stems from a shareholder derivative complaint filed in the Court of Chancery for the State of Delaware in and for New Castle County styled, *Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, Oppenheimer Investment Partnership, LP and Oppenheimer Close International Ltd., Wynnfield Partners Smallcap Value LP I, Wynnfield Partners Smallcap Value LP, Wynnfield Smallcap Value Off-Shore Fund LPD and Channell Partnership II, LP, Individually, derivatively and on behalf of a Class of similarly situated stockholders, v. Thomas B. Crowley, Jr., Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, Cameron W. Wolf, Jr. v. Crowley Maritime Corporation*, which sought, *inter alia*, declaratory relief and disgorgement arising from allegations that Crowley Maritime has spent tens of

RECEIVE

MAR 0 7 2005

2 Park Avenue
New York, NY  10016
Telephone  212 277-0426
Facsimile  917 464-6680
jeremy.salzman@thehartford.com

millions of dollars as a gift for life insurance for its controlling stockholder's family's estate plan. The lawsuit alleges the procurement of the life insurance via three insurance agreements wasted corporate assets.

We realize that the allegations are unsubstantiated at this time and nothing herein is intended to suggest that they have legal or factual merit.

## The Twin City Policy

The Twin City Policy is a claims-made and reported policy with a Policy Period from November 1, 2004 to November 1, 2005, and provides an aggregate limit of liability of $10 million excess of $10 million in underlying limits provided Federal Insurance Company Policy No. 8120-0792 (the "Primary Carrier" or "Underlying Carrier" and "Primary Policy" or "Underlying Policy" respectively). The Limits of Liability and the Primary Policy's retention are inclusive of claims expenses and indemnity payments.  The Twin City Policy shall in no event grant broader coverage than would be provided by the Underlying Policy. Apart from the contractual provisions of the Twin City Policy, including its attachment point, premium, limit of liability and other terms and conditions specifically negotiated between Twin City and the Company, the Twin City Policy follows form to, incorporates and adopts **only certain** terms, conditions, exclusions and provisions of the Underlying Policy as provided by Endorsement No. 5 of the Twin City Policy, which provides:

> 1.   For purposes of this policy, the Primary Policy shall be deemed to include only the terms and conditions (including limit of liability) of and endorsements to the following coverage sections of the Primary Policy:

> | General Terms and Conditions (Ed. 11/2002) | Form 14-02-7303 |
> | Executive Liability and Indemnification (Ed. 11/2002) | Form 14-02-7302 |
> | Outside Directorship Liability (Ed. 11/2002) | Form 14-02-7887, 14-02-8844 |

> The policy shall not follow or otherwise be subject to any of the terms and conditions of or endorsements to any other coverage section of the Primary Policy provided, however, that with respect to the payment of loss under such other coverage section of the Primary Policy, the Insurer will recognize such payment for the purpose of reducing or exhausting the limits of liability of the Primary and/or Underlying Excess Policies.

> 2.   Notwithstanding any provision in the Underlying Insurance or this policy to the contrary, the maximum aggregate liability of the Underwriters under this policy on account of

all claims first made during the same Policy Year, whether covered under one or more of the coverage sections listed above, shall be the Limit of Liability set forth in Item C. of the Declarations of this policy.

**Therefore, we request copies of the coverage position letter(s) issued by the Underlying Carrier before issuing our own formal position.** If you should require Twin City's position sooner, please advise us.

Without waiver or limitation of any of the foregoing, we also ask that you inform us of all **other insurer(s)** besides the Underlying Carrier that have been placed on notice of this matter. This request applies to all other policies of insurance irrespective of whether they are similar in type to the Twin City Policy, whether the policy period of any such other policy has terminated prior to, is contemporaneous with, or overlaps in part the Policy Period of the Twin City Policy or whether notice was given pursuant to an extended reporting provision or discovery period of such other policy. Please provide us with complete copies of all other policies and any correspondence to/from other insurers regarding these matters and/or the events, facts or circumstances that may have given rise to the same. Please note that, pursuant to the Twin City Policy, should the Company have available to it **other insurance** that covers a loss also covered by the Twin City Policy, other than insurance specifically purchased as being excess thereof, the Twin City Policy shall operate in excess of, and not contribute with, such other insurance.

Please keep us advised of the status of this matter, including any settlement offers or demands, so that Twin City may at its discretion exercise its **right to associate in the defense and/or settlement** of any matter that may be covered by the Twin City Policy, even if the Underlying Policy has not been exhausted. We also ask that we be provided with periodic **status reports from defense counsel** and that we be copied on all substantive motions, answers, rulings or other pertinent documents and correspondence generated in this litigation. Finally, please provide us with copies of defense counsel's billing statements for the fees and expenses incurred in the defense of this matter, and an itemized **"Litigation Budget"** for defending the case through the motion to dismiss stage. We also request copies of any information requested by the Underlying Carrier and any excess carriers above Twin City's attachment point.

**<u>Full Reservation of Rights</u>**

Pending receipt of the requested information, as is customary, we expressly reserve all rights available under the Twin City Policy, the Underlying Policy, and at law, whether or not specifically referenced herein, including but not limited to the right to deny coverage and/or rescind the Twin City Policy upon any additional terms, conditions, exclusions, endorsements and other provisions of the Twin City Policy and/or the Underlying Policy, including statements, declarations, and omissions made in connection with the application(s) therefore, as may be found to be applicable. Twin City further reserves the right to raise additional defenses or exclusions to coverage as circumstances warrant. No subsequent action, if any, that may be taken by Twin City is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it, pursuant to the Twin City Policy, the Underlying Policy, at law, and/or in equity.

Please direct all requested information and any questions you may have, along with any further information to my attention. My direct number is (212) 277-0426 if you wish to discuss any aspect of this matter.

Very truly yours,

Jeremy S. Salzman, Esq.

cc: **VIA MAIL**
Steve Ficon
Crowley Maritime Corporation
155 Grand Avenue – Suite 700
Oakland, CA 94612

Patricia Toner
Crowley Maritime Corporation
155 Grand Avenue – Suite 700
Oakland, CA 94612

**VIA E-MAIL**
Brian Zink, Hartford Financial Products

# EXHIBIT D



January 7, 2005

RLI Insurance Company
Chicago Branch Office | Congress Center, Suite 350
525 W. Van Buren St. | Chicago, IL 60607-3823
Phone: 312-360-1566 | Fax: 312-360-1565
www.rlicorp.com

Crowley Maritime Corporation
155 Grand Avenue
Suite 700
Oakland, California 94612

RECEIVED

JAN 1 1 2005

| Policyholder: | **Crowley Maritime Corporation** |
| Policy No. | **EPG0002704A** |
| Policy Period: | **November 1, 2004 to November 1, 2005** |
| Our File No. | **00176418** |

To Whom It May Concern:

We are in receipt of the Class Action and Derivative Complaint filed on November 30, 2004, by Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, among others, against Thomas B. Crowley, Jr., Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, and Cameron W. Wolf, Jr. This Complaint was filed in New Castle County, Delaware. As you may be aware, RLI Insurance Company ("RLI") issued the captioned excess directors and officers policy to Crowley Maritime Corporation as named insured. This policy provides $5 million excess $20 million in limits of liability with an effective policy period from November 1, 2004 to November 1, 2005.

Generally speaking, the RLI excess policy "follows form" to the primary policy and all underlying excess policies. The "follow form" provision is set forth in the Insurance Clause contained in the RLI excess policy. The Insuring Agreement states, in pertinent part, as follows:

> The Insurer shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**.[1] Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. <u>Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** and, to the extent coverage is further limited or restricted thereby, the terms and conditions of any other **Underlying Insurance**, except as otherwise provided herein.</u> In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Insurance**.[2] (emphasis added).

According to the terms of the Insurance Clause, cited above, if coverage is not invoked in the Underlying Insurance, coverage cannot be invoked under the RLI excess policy.

---

[1] Underlying Limit is defined in the RLI excess policy as ". . .the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all Underlying Insurance plus the applicable uninsured retention, if any, under the **Primary Policy**."

[2] Pursuant to the policy definition, Underlying Insurance means ". . .all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them." In addition, Primary Policy means ". . .the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing the policy."

|F|U|N|D|A•M|E|N|T|A|L|L|Y|
*innovative*

Similarly, coverage under the RLI excess policy is only invoked upon the payment of the limits of liability provided by the Underlying Insurance.  Such payments must be made for loss covered by those policies.  We will need to review the coverage positions set forth by the carriers providing the Underlying Insurance before we will be able to advise you as to what potential coverage might be afforded under the RLI excess policy.  Please forward copies of any such correspondence you might have received to the attention of the undersigned at your earliest convenience.

We note that an endorsement on the RLI excess policy shall not follow form of, and shall not afford coverage with, certain sections of the primary policy.  We understand the Federal Insurance Company issued the primary policy to Crowley Maritime Corporation under policy numbered 8120-0792.

Please note that the foregoing has not been an exhaustive recitation of all potentially applicable terms, conditions, and exclusions contained in the captioned RLI excess policy.  RLI reserves all of its rights, both at law and pursuant to the terms, conditions, and exclusions contained in the captioned policy limit or deny coverage for these matters.

Very truly yours,

Amy E. Johnson
Senior Claim Examiner

# EXHIBIT E

**CHUBB**

Chubb Group of Insurance Companies
PO Box 1616
Warren, NJ 07059-1616
www.chubb.com

October 26, 2007

Richard D. Shively, Esq.
Pillsbury & Levinson, LLP
The Transamerica Pyramid
600 Montgomery Street, Thirty-First Floor
San Francisco, CA 94111

| Re: | **Insured** | : Crowley Maritime Corporation |
| | **Policy** | : Executive Protection Portfolio Policy No. 8120-0792 |
| | **Matter** | : Franklin Balance Sheet Investment Fund, et al. v. Crowley, et al., C.A. No. 888-VCP (Del. Ch.) |

Dear Mr. Shively:

Enclosed please find check in the amount of $76,967.54 to reimburse Crowley for invoices submitted to Federal regarding the Franklin Balance Sheet Invest Fund matter. Attached are the invoice recaps reviews for these bills.

Please be advised that this payment is being made under a Reservation of Rights including but not limited to the right to seek reimbursement of defense costs. Federal expressly reserves all rights under the policy and available at law to deny coverage on additional and alternative bases as other terms, conditions, exclusions, endorsements and provisions of the policy, including representations, statements, declarations and omissions in connection with the application therefore, are found to be applicable, whether or not based on facts now known or available to Federal.

Very truly yours,

Chubb & Son
a division of Federal Insurance Co.

By: _____
Tracy S. Tkac, Esq.
Directors and Officers Claims
Direct Dial: (908) 903-5468
Fax : (908) 903-5300
Email: ttkac@chubb.com

/tms
cover ltr  10/23/07 billing



# CHUBB GROUP OF INSURANCE COMPANIES
15 Mountain View Rd. PO BOX 1616
Warren NJ 07059

**A**

| | | | |
|---|---|---|---|
| **Insured:** | CROWLEY MARITIME CORPORATION | | |
| **Claimant:** | Franklin Balance Sheer Investm | **Claim No:** | 0100304-00003 |
| **Issue Date:** | 10/25/2007 | **Check No:** | 0341661 |
| **Check Amt:** | 76,967.54 | | |
| **Payment For:** | Exp:  invoice #'s 840653, 846480, 844625, 843307,1072121, 10645 | | |

OCT 2 9 2007



"000034¡66¡" ¡:043301601¡: 079¡"¡877¡"



**CHUBB GROUP OF INSURANCE COMPANIES**
15 Mountain View Rd. PO BOX 1616
Warren NJ 07059

A

| | | | |
|---|---|---|---|
| **Insured:** | CROWLEY MARITIME CORPORATION | | |
| **Claimant:** | Franklin Balance Sheer Investm | **Claim No:** | 0100304-00003 |
| **Issue Date:** | 10/25/2007 | **Check No:** | 0341661 |
| **Check Amt:** | 76,967.54 | | |
| **Payment For:** | Exp: invoice #'s 840653, 846480, 844625, 843307,1072121, 10645 | | |

OCT 2 9 2007



# CHUBB GROUP OF INSURANCE COMPANIES

**CHUBB**

P.O. Box 1616, Warren, New Jersey 07059-1616
Phone: (908) 903-5622   Facsimile: (908) 903-5300

| | |
|---|---|
| **Audit Date:** | October 18, 2007 |
| | |
| **Firm:** | Morris, Nichols, Arsht & Tunnell |
| **Matter:** | Franklin Balance Sheet Investment Fund, et al |
| **Insured:** | Crowley Maritime Corporation |
| **Invoice Date:** | April 05, 2007 |
| **Invoice Number:** | 840653 |
| **Chubb Invoice ID:** | FPO3546 |
| **Claim Number:** | 100304 |
| **Examiner:** | Tracy Tkac |
| **Auditor:** | Kodili Ezetendu |

| | |
|---|---|
| **Amount of Invoice:** | $14,562.00 |
| **Amount of Reduction:** | $28.00 |
| **Adjusted Invoice Amount:** | $14,534.00 |
| **Payable Amount:** | $14,534.00 |

## SUMMARY OF FINDINGS

### NOT PAYABLE

**812   Unspecified Photocopying Charges**                                    **$25.00**
The number of pages copied and the cost per page are not indicated. The charges are not paid pending further clarification.

**815   Messenger/Courier/Overnight Mail**                                    **$3.00**
The use of expedited delivery service is discouraged and will be reimbursed only if its use is necessary to the defense of the case.

If you have any questions regarding this audit report, please do not hesitate to contact me at (908) 903-5436.

Very truly yours,

Kodili Ezetendu for Tracy Tkac



# CHUBB GROUP OF INSURANCE COMPANIES

P.O. Box 1616, Warren, New Jersey 07059-1616
Phone: (908) 903-5622   Facsimile: (908) 903-5300

| | |
|---|---|
| **Audit Date:** | October 18, 2007 |
| **Firm:** | Morris, Nichols, Arsht & Tunnell |
| **Matter:** | Franklin Balance Sheet Investment Fund, et al |
| **Insured:** | Crowley Maritime Corporation |
| **Invoice Date:** | July 09, 2007 |
| **Invoice Number:** | 844625 |
| **Chubb Invoice ID:** | FPO3550 |
| **Claim Number:** | 100304 |
| **Examiner:** | Tracy Tkac |
| **Auditor:** | Kodili Ezetendu |

| | |
|---|---|
| **Amount of Invoice:** | $1,133.28 |
| **Amount of Reduction:** | $1,133.28 |
| **Adjusted Invoice Amount:** | $0.00 |
| **Payable Amount:** | $0.00 |

## SUMMARY OF FINDINGS

### NOT PAYABLE

**601   Block Billing**                                                          **$1,133.28**

Grouping of multiple activities under a single line charge greater than one-tenth of an hour is not acceptable. Time spent for each distinct task must be billed separately and itemized daily per timekeeper. It appears this invoice is missing some pages. Kindly provide a detailed invoice with itemized line entries.

If you have any questions regarding this audit report, please do not hesitate to contact me at (908) 903-5436.

Very truly yours,

Kodili Ezetendu for Tracy Tkac



# CHUBB GROUP OF INSURANCE COMPANIES

P.O. Box 1616, Warren, New Jersey 07059-1616
Phone: (908) 903-5622   Facsimile: (908) 903-5300

| | |
|---|---|
| **Audit Date:** | October 18, 2007 |
| | |
| **Firm:** | Morris, Nichols, Arsht & Tunnell |
| **Matter:** | Franklin Balance Sheet Investment Fund, et al |
| **Insured:** | Crowley Maritime Corporation |
| **Invoice Date:** | June 06, 2007 |
| **Invoice Number:** | 843307 |
| **Chubb Invoice ID:** | FPO3545 |
| **Claim Number:** | 100304 |
| **Examiner:** | Tracy Tkac |
| **Auditor:** | Kodili Ezetendu |

| | |
|---|---|
| **Amount of Invoice:** | $65,806.20 |
| **Amount of Reduction:** | $4,562.66 |
| **Adjusted Invoice Amount:** | $61,243.54 |
| **Payable Amount:** | $61,243.54 |

## SUMMARY OF FINDINGS

### NOT PAYABLE

**450   Intra-Office Conferences**                                          **$457.60**

Under Chubb's Litigation Management Guidelines, when counsel consults with another attorney in the firm, only the senior attorney's time will be reimbursed, unless otherwise agreed to in advance by Chubb. These entries indicate time billed by more than one timekeeper and are not paid. The reductions include the entries for **JPD** on 05/14 and 05/18.

**812   Unspecified Photocopying Charges**                                  **$357.20**

The number of pages copied and the cost per page are not indicated. The charges are not paid pending further clarification.

**815   Messenger/Courier/Overnight Mail**                                  **$3.00**

The use of expedited delivery service is discouraged and will be reimbursed only if its use is necessary to the defense of the case.

**830   Overtime Charges**                                                 **$131.02**

Overtime charges are considered overhead expenses and are not reimbursable.

**900   Computerized Legal Research**                                       **$3,613.84**

Chubb will not pay for computer assisted research. We consider charges for expenses associated with the use of **Westlaw, Lexis**, Dialog, and other computer research databases and Internet access charges to be part of the firm's overhead and not reimbursable.

**CHUBB**

If you have any questions regarding this audit report, please do not hesitate to contact me at (908) 903-5436.

Very truly yours,

Kodili Ezetendu for Tracy Tkac



# CHUBB GROUP OF INSURANCE COMPANIES

**CHUBB**

P.O. Box 1616, Warren, New Jersey 07059-1616
Phone: (908) 903-5622   Facsimile: (908) 903-5300

| | |
|---|---|
| **Audit Date:** | October 18, 2007 |
| | |
| **Firm:** | Orrick, Herrington & Sutcliffe LLP |
| **Matter:** | Franklin Balance Sheet Investment Fund, et al |
| **Insured:** | Crowley Maritime Corporation |
| **Invoice Date:** | June 11, 2007 |
| **Invoice Number:** | 1072121 |
| **Chubb Invoice ID:** | FPO3548 |
| **Claim Number:** | 100304 |
| **Examiner:** | Tracy Tkac |
| **Auditor:** | Kodili Ezetendu |

| | |
|---|---|
| **Amount of Invoice:** | $1,020.00 |
| **Amount of Reduction:** | $0.00 |
| **Adjusted Invoice Amount:** | $1,020.00 |
| **Payable Amount:** | $1,020.00 |

## SUMMARY OF FINDINGS

This invoice is payable in full.

If you have any questions regarding this audit report, please do not hesitate to contact me at (908) 903-5436.

Very truly yours,

Kodili Ezetendu for Tracy Tkac

# CHUBB GROUP OF INSURANCE COMPANIES

CHUBB

P.O. Box 1616, Warren, New Jersey 07059-1616
Phone: (908) 903-5622   Facsimile: (908) 903-5300

| | |
|---|---|
| **Audit Date:** | October 18, 2007 |
| **Firm:** | Orrick, Herrington & Sutcliffe LLP |
| **Matter:** | Franklin Balance Sheet Investment Fund, et al |
| **Insured:** | Crowley Maritime Corporation |
| **Invoice Date:** | April 13, 2007 |
| **Invoice Number:** | 1064503 |
| **Chubb Invoice ID:** | FPO3547 |
| **Claim Number:** | 100304 |
| **Examiner:** | Tracy Tkac |
| **Auditor:** | Kodili Ezetendu |

| | |
|---|---|
| **Amount of Invoice:** | $220.00 |
| **Amount of Reduction:** | $50.00 |
| **Adjusted Invoice Amount:** | $170.00 |
| **Payable Amount:** | $170.00 |

## SUMMARY OF FINDINGS

### NOT PAYABLE

**948   Overhead Expenses**                                                                **$50.00**
Chubb will not pay for the firm's overhead expenses. The entry 'Word Processing' is considered firm overhead and is not reimbursable.

If you have any questions regarding this audit report, please do not hesitate to contact me at (908) 903-5436.

Very truly yours,


Kodili Ezetendu for Tracy Tkac

# EXHIBIT F

# AMENDED AND RESTATED

# BY-LAWS

### of

# CROWLEY MARITIME CORPORATION

### (Effective February 27, 2007)

## ARTICLE I

## Offices

<u>Section 1</u>.    The registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

<u>Section 2</u>.    The corporation may also have offices at such other places both within and without the State of Delaware as the board of directors may from time to time determine or the business of the corporation may require.

## ARTICLE II

## Meetings of Stockholders

<u>Section 1</u>.    Meetings of stockholders for any purpose may be held at such time and place, within or without the State of Delaware, as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

<u>Section 2</u>.    An annual meeting of stockholders shall be held on such day and at such time as may be designated by the Board of Directors.  Any previously scheduled annual meeting of stockholders may be postponed by resolution of the Board of Directors upon public notice given on or prior to the date previously scheduled for such annual meeting of stockholders.  Except as otherwise provided by the Restated Certificate of Incorporation, as amended from time to time (the "certificate of incorporation"), at the annual meeting of stockholders the holders of Common Stock and Series A Junior Convertible Preferred Stock

shall elect by a plurality vote a board of directors. Such other business shall be transacted at the annual meeting of stockholders as shall properly come before it.

Section 3. Written notice of the annual meeting of stockholders stating the place, date and hour of the meeting shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 4. The officer who has charge, of the stock ledger of the corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

Section 5. Special meetings of the stockholders entitled to vote, for any purpose or purposes, unless otherwise prescribed by statute or by the restated certificate of incorporation, may be called at any time by the Chairman of the Board and shall be called by the Chairman of the Board or the Secretary at the request in writing of a majority of the board of directors, or at the request in writing of stockholders owning not less than one-tenth (1/10) in voting power of the Common Stock and Series A Junior Convertible Preferred Stock of the corporation issued and outstanding. Such request shall state the purpose or purposes of the

proposed meeting. Special meetings of stockholders may be called under other circumstances as provided in the certificate of incorporation.

Section 6. Written notice of a special meeting stating the place, date and hour of the meeting and the purpose or purposes for which the meeting is called, shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting, to each stockholder entitled to vote at such meeting.

Section 7. Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 8. The holders of a majority of the stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the certificate of incorporation. If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 9. When a quorum is present at any meeting, the vote of the holders of a majority of the stock entitled to vote present in person or represented by proxy shall decide any questions brought before such meeting, unless the question is one upon which by express

provision of the statutes, the certificate of incorporation or of these by-laws, a different vote is

required in which case such express provision shall govern and control the decision of such

question.

Section 10.    Unless otherwise provided in the certificate of incorporation, each

holder of Common Stock shall at every meeting of the stockholders be entitled to one (1) vote

for each share of Common Stock held by such stockholder, and each holder of Series A Junior

Convertible Preferred Stock or Series B Preferred Stock shall be entitled to such votes as are

specified in the certificate of incorporation.  Any person entitled to vote may do so in person or

by proxy, but no proxy shall be voted on after three (3) years from its date, unless the proxy

provides for a longer period.

Section 11.    Unless otherwise provided in the certificate of incorporation, any

action required to be taken at any annual or special meeting of stockholders of the corporation, or

any action which may be taken at any annual or special meeting of such stockholders, may be

taken without a meeting, without prior notice and without a vote, if a consent or consents in

writing, setting forth the action so taken, shall be signed by the holders of outstanding stock

having not less than the minimum number of votes that would be necessary to authorize or take

such action at a meeting at which all shares entitled to vote thereon were present and voted.

Prompt notice of the taking of the corporate action without a meeting by less than unanimous

written consent shall be given to those stockholders who have not consented in writing.

## ARTICLE III

### Directors

Section 1.    Except as otherwise provided in the certificate of incorporation, the

number of directors constituting the whole board shall be fixed from time to time by the board of

directors, but shall not be less than six (6) nor greater than ten (10). During any period when the holders of the Series B Preferred Stock as one class have the right to elect one (1) director, then and during such time as such right continues the then authorized number of directors shall be increased by one (1). Except as otherwise provided in the certificate of incorporation, the directors shall be elected at the annual meeting of the stockholders, except as provided in Section 2 of this Article, and each director elected shall hold office until his successor is elected and qualified. Directors need not be stockholders.

Section 2.    Except as provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office although less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and shall qualify, unless he sooner resigns or is removed. If there are not directors in office, then an election of directors may be held in the manner provided by statute. If, at the time of filling any vacancy or any newly created directorship, the directors then in office shall constitute less than a majority of the whole board (as constituted immediately prior to any such increase), the Court of Chancery may, upon application of any stockholder or stockholders holding at least ten percent (10%) of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any other vacancies or newly created directorships, or to replace the directors chosen by the directors then if office.

Section 3.    The business and affairs of the corporation shall be managed by or under the direction of its board of directors which may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the certificate of

incorporation or by these by-laws directed or required to be exercised or done by the

stockholders.

## Meetings of the Board of Directors

Section 4.    The board of directors of the corporation may hold meetings, both

regular and special, either within or without the State of Delaware.

Section 5.    The annual meeting of the board of directors shall beheld

immediately after the annual stockholders' meeting and at the place where such meeting is held

or at the place announced by the Chairman of such meeting.  No notice of an annual meeting of

the board of directors shall be necessary and such meeting shall be held for the purpose of

electing officers and transacting such other business as may lawfully come before it.

Section 6.    Regular meetings of the board of directors may be held without

notice at such time and at such place as shall from time to time be determined by the board.

Section 7.    Special meetings of the board may be called by the Chairman of

the Board on not less than two (2) days' notice to each director; special meetings shall be called

by the Chairman of the Board or Secretary in like manner and on like notice on the written

request of two directors.

Section 8.    At all meetings of the board a majority of directors shall constitute

a quorum for the transaction of business and the act of a majority of the directors present at any

meeting at which there is a quorum shall be the act of the board of directors, except as may be

otherwise specifically provided by statute or by the certificate of incorporation.  If a quorum

shall not be present at any meeting of the board of directors, the directors present thereat may

adjourn the meeting from time to time, without notice other than announcement at the meeting,

until a quorum shall be present.

Section 9.    Unless otherwise restricted by the certificate of incorporation or these by-laws, any action required or permitted to be taken at any meeting of the board of directors or of any committee thereof may be taken without a meeting, if all members of the board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the board or committee.

Section 10.    Unless otherwise restricted by the certificate of incorporation or these by-laws, members of the board of directors, or any committee designated by the board of directors, may participate in a meeting of the board of directors, or any committee, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

### Committees of Directors

Section 11.    The board of directors may, by resolution passed by a majority of the whole board, designate one or more committees, each committee to consist of one (1) or more of the directors of the corporation. The board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the board of directors to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the board of directors, shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all

7

papers which may require it; but no such committee shall, except as authorized by applicable law, have the power or authority in reference to amending the certificate of incorporation, adopting an agreement of merger or consolidation, recommending to the stockholders the sale, lease or exchange of all or substantially all of the corporation's property and assets, recommending to the stockholders a dissolution of the corporation or a revocation of a dissolution, or amending the by-laws of the corporation; and, unless the resolution or the certificate of incorporation expressly so provide, no such committee shall have the power or authority to declare a dividend, to authorize the issuance of stock or to adopt a certificate of ownership and merger.  Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the board of directors.

Section 12.    Each committee shall keep regular minutes of its meetings and report the same to the board of directors when required.

### Compensation of Directors

Section 13.    Unless otherwise restricted by the certificate of incorporation, the board of directors shall have the authority to fix the compensation of directors.  The directors may be paid their expenses, if any, of attendance at each meeting of the board of directors and may be paid a fixed sum for attendance at each meeting the board of directors or a stated salary as director.  No such payment shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor.  Members of special or standing committees may be allowed like compensation for attending committee meetings.

## ARTICLE IV

### Notices

Section 1.    Whenever, under the provisions of applicable law, the certificate of incorporation or these by-laws, notice is required to be given to any director or stockholder, it shall be given by personal delivery, mail, facsimile or telegraphic communication addressed to such director or stockholder, at his address as it appears on the records of the corporation, and such notice shall be deemed to be given at the time when the same shall be delivered personally, deposited in the United States mail or transmitted as appropriate.  Notice to directors may also be made by telephone.

Section 2.    Notice of a meeting need not be given to any director or stockholder who signs a waiver of notice, whether before or after the meeting, or who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to such director or stockholder.

## ARTICLE V

### Officers

Section 1.    The officers of the corporation shall be chosen by the board of directors and shall be a Chairman of the Board, a President, a Vice-President, a Secretary and a Treasurer.  The board of directors may also choose additional Vice-Presidents, and one (1) or more Assistant Secretaries and Assistant Treasurers.  Any number of offices may be held by the same person, unless the certificate of incorporation or these by-laws otherwise provide.

Section 2.    The board of directors at its first meeting after each annual meeting of stockholders shall choose a Chairman of the Board, one (1) or more Vice-Presidents, a Secretary and a Treasurer.

Section 3.    The board of directors may appoint such other officers and agents as it shall deem necessary who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the board.

Section 4.    The compensation of all officers of the corporation shall be fixed in a manner authorized by the board of directors.

Section 5.    The officers of the corporation shall hold office until their successors are chosen and qualify.  Any officer elected or appointed by the board of directors may be removed at any time by the affirmative vote of a majority of the board of directors.  Any vacancy occurring in any office of the corporation shall be filled by the board of directors.

## Chairman of the Board

Section 6.    The Chairman of the Board shall be the chief executive officer of the corporation, shall preside at all meetings of the stockholders and the board of directors and shall have general supervision over the business and affairs of the corporation and shall see that all orders and resolutions of the board of directors are carried into effect and exercise and perform such other powers and duties as may be from time to time assigned to him by the board of directors and prescribed by these by-laws.

Section 7.    He shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the board of directors or the Chairman of the Board to some other officer or agent of the corporation.

**The President**

Section 8.      The President shall be the chief operating officer of the corporation, shall in the absence of the Chairman of the Board, perform the duties and exercise the powers of the Chairman of the Board, and shall exercise and perform such other powers and duties as may be from time to time assigned to him by the board of directors or the Chairman of the Board, or prescribed by these by-laws.

**The Vice-Presidents**

Section 9.      The Vice-Presidents shall perform such duties and have such powers as the board of directors, the Chairman of the Board, or the President from time to time prescribe.

**The Secretary and Assistant Secretary**

Section 10.      The Secretary shall attend all meetings of the board of directors and all meetings of the stockholders and record all the proceedings of the meetings of the corporation and of the board of directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required.  He shall give, or cause to be given, notice of all meetings of the stockholders and, except as otherwise provided in these by-laws, special meetings of the board of directors, and shall perform such other duties as may be prescribed by the board of directors, Chairman of the Board or President, under whose supervision he shall be. He shall have custody of the corporate seal of the corporation and he, or an Assistant Secretary, shall have authority to affix the same to any instrument requiring it and when so affixed, it may be attested by his signature or by the signature of such Assistant Secretary.  The board of directors may given general authority to any other officer to affix the seal of the corporation and to attest the affixing by his signature.

Section 12.    The Assistant Secretary, or if there be more than one (1), the Assistant Secretaries in the order determined by the board of directors (or if there be no such determination, then in the order of their election) shall, in the absence of the Secretary or is the event of his inability or refusal to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the board of directors, Chairman of the Board or President may from time to time prescribe.

## The Treasurer and Assistant Treasurers

Section 13.    The Treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the corporation in such depositories as may be designated by the board of directors.

Section 14.    He shall disburse the funds of the corporation as may be ordered by the board of directors, taking proper vouchers for such disbursements, and shall render to the President and the board of directors, at its regular meetings, or when the board of directors so requires, an account of all his transactions as Treasurer and of the financial condition of the corporation.

Section 15.    If required by the board of directors, he shall give the corporation a bond in such sum and with such surety or sureties as shall be satisfactory to the board of directors for the faithful performance of the duties of his office and for the restoration to the corporation, in case of his death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession or under his control belonging to the corporation.

Section 16.    The Assistant Treasurer, or if there shall be more than one (1), the Assistant Treasurers in the order determined by the board of directors (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of his inability or refusal to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board of Directors, Chairman of the Board, or President may from time to time prescribe.

## ARTICLE VI

### Certificate of Stock

Section 1.    Every holder of stock in the corporation shall be entitled to have a certificate, signed by, or in the name of the corporation by, the Chairman of the Board, the President or a Vice-President and the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the corporation, representing the number of shares owned by him in the corporation.

Section 2.    Any of or all the signatures on the certificate may be facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

### Lost Certificates

Section 3.    The board of directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a

new certificate or certificates, the board of directors may, in its discretion and as a condition

precedent to the issuance thereof, require the owner of such lost, stolen or destroyed certificate or

certificates, or his legal representative, to advertise the same in such manner as it shall require

and/or to give the corporation a bond in such sum as it may direct as indemnity against any claim

that may be made against the corporation with respect to the certificate alleged to have been lost,

stolen or destroyed.

### Transfers of Stock

Section 4.      Upon surrender to the corporation or the transfer agent of the

corporation of a certificate for shares duly endorsed or accompanied by proper evidence of

succession, assignation or authority to transfer, it shall be the duty of the corporation to issue a

new certificate to the person entitled thereto, cancel the old certificate and record the transaction

upon its books.

### Fixing Record Date

Section 5.      In order that the corporation may determine the stockholders

entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the

board of directors may fix a record date, which record date shall not precede the date upon which

the resolution fixing the record date is adopted by the board of directors, and which record date

shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting. If

no record date is fixed by the board of directors, the record date for determining stockholders

entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the

day next preceding the day on which notice is given, or if notice is waived, at the close of

business on the day next preceding the day on which the meeting is held.. A determination of

stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to

any adjournment of the meeting; provided, however, that the board of directors may fix a new record date for the adjourned meeting.

Section 6.    In order that the corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which date shall not be more than ten (10) days after the date upon which the resolution fixing the record date is adopted by the board of directors. If no record date has been fixed by the board of directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the board of directors is required by applicable law, shall the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the board of directors and prior action by the board of directors is required by applicable law, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be a the close of business on the day on which the board of directors adopts the resolution taking such prior action.

Section 7.    In order that the corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is

adopted, and which record date shall be not more than sixty (60) days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

### Registered Stockholders

Section 8.    The corporation shall be entitled to recognize    the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and to hold liable for calls and assessments a person registered on its books as the owner of shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

### ARTICLE VII

### General Provisions

### Dividends

Section 1.    Dividends upon the capital stock of the corporation, subject to the provisions of the certificate of incorporation, if any, may be declared by the board of directors at any regular or special meeting, pursuant to applicable law. Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the certificate of incorporation.

Section 2.    Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for

such other purpose as the directors shall think conducive to the interest of the corporation, and the directors may modify or abolish any such reserve in the manner in which it was created.

### Annual Statement

Section 3.    The board of directors shall present at each annual meeting, and at any special meeting of the stockholders when called for by vote of the stockholders entitled to vote thereat, a full and clear statement of the business and condition of the corporation.

### Checks

Section 4.    All checks or demands for money and notes of the corporation shall be signed by such officer or officers or such other person or persons as the board of directors may from time to time designate.

### Fiscal Year

Section 5.    The fiscal year of the corporation shall be fixed by resolution of the board of directors.

### Seal

Section 6.    The corporate seal shall have inscribed thereon the name of the corporation, the date of its organization and the word "Delaware." The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

### ARTICLE VIII

### Indemnification

Section 1.    The corporation shall indemnify any person who was or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he is or was a director or officer of the corporation or of a subsidiary of the corporation or by reason of the fact

that such director or officer is or was serving at the request of the corporation as a director, officer, employee, trustee, fiduciary, advisor or agent of another company, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding, to the fullest extent permitted by the General Corporation Law of the State of Delaware.

The foregoing right of indemnification shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under, any provision of the certificate of incorporation, agreement, vote of stockholders or disinterested directors or otherwise, and shall continue as to a person who has ceased to be a director, officer, employee, trustee, fiduciary, advisor or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

Section 2.    The corporation may indemnify any other person who was or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he is or was an employee or agent of the corporation or of a subsidiary of the corporation or is or was serving at the request of the corporation or of a subsidiary of the corporation or is or was serving at the request of the corporation as a director, officer, employee, trustee, fiduciary, advisor or agent of another company, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding, to the fullest extent permitted by the General Corporation Law of the State of Delaware.

# ARTICLE IX

## Amendments

Section 1.    These by-laws may be altered, amended or repealed or new by-laws may be adopted by the stockholders entitled to vote or by the board of directors, when such power is conferred upon the board of directors by the certificate of incorporation, at any regular meeting of the stockholders or of the board of directors or at any special meeting of the stockholders or of the board of directors if notice of such alteration, amendment, repeal or adoption of new by-laws be contained in the notice of such special meeting.

# EXHIBIT G

# *INSURED'S COPY*

CROWLEY MARITIME CORPORATION
155 GRAND AVENUE, SUITE 700
OAKLAND, CA   94612

**PRODUCT:** EPPFOLIO

**POLICY NO:** 000081200792

**TRANSACTION:** ENDORSEMENT



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

DELETE ENDORSEMENT(S)

In consideration of the premium charged, it is agreed that Endorsement Number(s) 5 is/are deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

—————————————————————
Authorized Representative

**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

PRIVATE COMPANY MODIFICATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)  Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 4.   Retention:

| | | |
|---|---|---|
| (A) | Insuring Clauses 1 and 4: | None |
| (B) | Insuring Clauses 2 and 3 (**Claims** other than **Securities Claims**): | $500,000.00 |
| (C) | Insuring Clauses 2 and 3 (**Securities Claims** only): | $500,000.00" |

(2)  Item 7 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 7.   Pending or Prior Date:

| | | |
|---|---|---|
| (A) | Insuring Clauses 1, 2 and 4: | August 22, 1985 |
| (B) | Insuring Clause 3: | November 1, 1998"" |

(3)  Insuring Clause 3. Entity Securities Coverage of this coverage section is amended to read in its entirety as follows:

"*Entity Liability Coverage Insuring Clause 3*

3.   The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but

only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section."

(4)    Subsection 5. Definitions of this coverage section is amended in the following respects:

(a)    The definition of "**Application**" is amended to read in its entirety as follows

"**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement. **Application** shall also include, for each **Organization**, the financial statements last issued to shareholders before this policy's inception date, whether or not such financial statements were attached to or submitted with a signed application for this coverage section. All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section."

(b)    The definition of "**Claim**" is amended to read in its entirety as follows:

"**Claim** means:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a)    a written demand for monetary damages or non-monetary relief;

(b)    a civil proceeding commenced by the service of a complaint or similar pleading;

(c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

(d)    a criminal proceeding commenced by the return of an indictment,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom, or

(e)    a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Insured Person**; or

(2)    when used in reference to the coverage provided by Insuring Clause 3:

(a)    a written demand for monetary damages or non-monetary relief;

(b)    a civil proceeding commenced by the service of a complaint or similar pleading;

(c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**; or

(d)    a criminal proceeding commenced by the return of an indictment,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom, or

(e)     a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Organization**; or

(3)     when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g), or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written request to toll or waive a statute of limitations or the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such request or demand is first received by an **Insured**)."

(c)     The following definition of "**Employee**" is added:

"**Employee** means any natural person whose labor or service is engaged by and directed by an **Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor."

(d)     The following definition of "**Executive**" is added:

"**Executive** means any natural person who was, now is or shall become:

(a)     a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America; or

(b)     a holder of a position equivalent to any position described in (a) above in an **Organization** chartered in any jurisdiction other than the United States of America."

(e)     The definition of "**Insured Person**" is amended to read in its entirety as follows:

"**Insured Person** means any **Executive** or **Employee** of an **Organization**."

(f)     The definition of "**Securities Claim**" is amended to read in its entirety as follows:

"**Securities Claim** means that portion of a Claim which:

(a)     is brought by a securityholder of an **Organization**

(i)     in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

(ii)     derivatively, on behalf of such **Organization**, against an **Executive** of such **Organization**; or

(b)     alleges that an **Organization** or any of its **Insured Persons**

(i)     violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

     (ii)     committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

**Securities Claim** does not include:

(a)     any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b)     any **Claim** by or on behalf of a former, current, future or prospective **Employee** of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such **Employee** in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; or

(c)     any **Securityholder Derivative Demand**."

(g)     The definition of "**Securityholder Derivative Demand**" is amended to read in its entirety as follows:

"**Securityholder Derivative Demand** means:

(a)     any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Executive** for a **Wrongful Act**; or

(b)     any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Executive** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**."



(5)     Subsection 6 of this coverage section is amended in the following respects:

(a)     Paragraph (b) of Subsection 6 is amended by replacing the phrase "on or prior to the Pending or Prior Date" with the phrase "on or prior to the applicable Pending or Prior Date".

(b)     Paragraph (c) of Subsection 6 is amended to read in its entirety as follows:

"(c)     brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

     (i)     a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, solicitation by, any **Executive**;

     (ii)     a **Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;

**CHUBB**

(iii)    a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)    a **Claim** brought by an **Insured Person** who has not held the position of director, officer, **Manager** or in-house general counsel or any equivalent position with any **Organization** for at least four (4) years prior to the date such **Claim** is first made, and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, an **Organization** or any other **Insured Person** who holds or has held any such position within such four (4) year period."

(c)    Paragraph (e) of Subsection 6 is amended to read in its entirety as follows:

"(e)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which an **Executive** seeks compensation in a wrongful termination **Claim**."

(d)    The following is added to Subsection 6 as Exclusion 6(i):

"(i)    based upon, arising from, or in consequence of any employment-related **Wrongful Act**; provided that this Exclusion 6(i) shall not apply to a **Claim** by an **Executive** for the wrongful termination of such **Executive**."

(e)    The following is added to Subsection 6 as Exclusion 6(j):

"(j)    based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder."

(6)    Subsection 7 of this coverage section is amended in the following respects:

(a)    Paragraph (b) of Subsection 7 of this coverage section is amended to read in its entirety as follows:

"(b)    based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final and non-appealable judgment or adjudication adverse to such **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or"

(b)    The following is added to Subsection 7 as Exclusion 7(c):

"(c)    based upon, arising from, or in consequence of such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

(7)    Subsection 8 of this coverage section is amended to read in its entirety as follows:

"The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** made against any **Organization**:

(a)    based upon, arising from, or in consequence of:

    (i)      any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Organization**, if a final and non-appealable judgment or adjudication adverse to such **Organization** establishes such a deliberately fraudulent act or omission or willful violation; or

    (ii)     such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled;

(b)    for any actual or alleged liability of an **Organization** under any contract or agreement; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement;

(c)    based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment;

(d)    based upon, arising from, or in consequence of actual or alleged libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(e)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this coverage section; provided that this Exclusion 8(e) shall not apply to any **Securities Claim** or **Securityholder Derivative Demand**;

(f)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark or service mark, trade name, or trade dress, or misappropriation of ideas or trade secrets; or

(g)    based upon, arising from, or in consequence of any actual or alleged:

    (i)      price fixing, restraint of trade, monopolization or attempted monopolization, unfair trade practice, price discrimination or predatory pricing; or

    (ii)     violation of the Interstate Commerce Act, the Sherman Antitrust Act, the Clayton Act, the Federal Trade Commission Act, the Robinson-Patman Act, or the Celler-Kefauver Act; any amendment to or rule or regulation promulgated under any of the foregoing; any other federal, state or local statute involving competition or the prevention of anticompetitive practices, or any rule or regulation promulgated under any such statute; any similar provision of any federal, state or local statute, rule or regulation anywhere in the world; or any similar provision of the common law anywhere in the world."

(8)    Paragraph (b) of Subsection 15. Reporting and Notice of this coverage section is amended to read in its entirety as follows:

    "(b)    If during the **Policy Period** an **Insured**:

**CHUBB**

      (i)      becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

      (ii)     gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above or from the **Securityholder Derivative Demand** referred to in (ii) above shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i) or (ii) above was first given to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made."

(9)     Paragraph (b) of Subsection 17. Allocation of this coverage section is amended to read in its entirety as follows:

"(b)     If in any **Claim** other than a **Securities Claim** the Insureds incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss."

(10)    The second paragraph of Subsection 20 of this coverage section is amended to read in its entirety as follows:

"If the total assets of any such acquired organization or new **Subsidiary** exceed twenty-five percent (25%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require."

(11)    Subsection 23. Related Entity Public Offering of this coverage section is amended to read in its entirety as follows:

"***Certain Securities Offerings***

23.     If any **Organization** files, or causes to be filed, any registration statement in contemplation of the sale or offering of securities of any kind or nature whatsoever in a transaction that is not exempt from registration under the Securities Act of 1933, as amended, the Company will provide a quotation for coverage with respect to **Claims**

against **Insured Persons** arising from such sale or offering; provided, however, that the Company will have no obligation to provide any such quotation unless, as a condition precedent thereto, the **Insureds** shall have given to the Company, not less than thirty (30) days before the effective date of such registration statement, written notice concerning the contemplated sale or offering (including the full details thereof) and all other information requested by the Company.  Coverage pursuant to any such quotation shall be subject to such terms, conditions and limitations, and payment of such additional premium, as the Company in its sole discretion may require.  There shall be no such coverage unless and until the Company issues a separate written endorsement to this coverage section expressly stating that such coverage is being provided.  The additional premium specified by the Company shall, if the Company's quotation is accepted, be payable to the Company in full not later than the date on which the registration statement becomes effective."

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

**CHUBB**

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* SM
*Executive Liability and Entity Securities*
*Liability Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1.    **Parent Organization:**
CROWLEY MARITIME CORPORATION
155 GRAND AVENUE, SUITE 700
OAKLAND, CA 94612

Item 2.    Limits of Liability:

(A)  Each **Claim**:                                                      $10,000,000.00

(B)  Each **Policy Period**:                                             $10,000,000.00

(C)  Sublimit for all **Securityholder Derivative Demands** under Insuring Clause 4:   $250,000.00

Item 3.    Coinsurance Percentage:

(A)  **Securities Claims**:                                              0.00%

(B)  **Claims** other than **Securities Claims**:                       0.00%

Item 4.    Retention:

(A)  Insuring Clauses 1 and 4:                                          None

(B)  Insuring Clause 2 (**Claims** other than **Securities Claims**):   $500,000.00

(C)  Insuring Clauses 2 and 3 (**Securities Claims** only):             $500,000.00

Item 5.  **Organization:**

CROWLEY MARITIME CORPORATION AND ITS SUBSIDIARIES;
CROWLEY FOUNDATION;
ICE CONSTRUCTION

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio* [SM]
*Executive Liability and Entity Securities*
*Liability Coverage Section*

Item 6.   Extended Reporting Period:

   (A) Additional Period:       one year
   (B)  Additional Premium:     150 % of Annualized Premium for the Expiring **Policy Period**

Item 7.  Pending or Prior Date:      August 22, 1985



In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

## Insuring Clauses

*Executive Liability Coverage Insuring Clause 1*

1.  The Company shall pay, on behalf of each of the **Insured Persons**, **Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Executive Indemnification Coverage Insuring Clause 2*

2.  The Company shall pay, on behalf of the **Organization**, **Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.  The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Securities Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but only if such **Securities Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.  The Company shall pay, on behalf of the **Organization**, **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted before or during the **Policy Period**, but only if such **Securityholder Derivative Demand** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

## Definitions

5.     When used in this coverage section:

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.

**Application** shall also include, for each **Organization**, all of the following documents whether or not submitted with or attached to any such signed application: (i) the Annual Report (including financial statements) last issued to shareholders before this policy's inception date; (ii) the report last filed with the Securities and Exchange Commission on Form 10-K before this policy's inception date; (iii) the report last filed with the Securities and Exchange Commission on Form 10-Q before this policy's inception date; (iv) the proxy statement and (if different) definitive proxy statement last filed with the Securities and Exchange Commission before this policy's inception date; (v) all reports filed with the Securities and Exchange Commission on Form 8-K during the twelve months preceding this policy's inception date; and (vi) all reports filed with the Securities and Exchange Commission on Schedule 13D, with respect to any equity securities of such **Organization**, during the twelve months preceding this policy's inception date.  All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section.

**Claim** means:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(3)    when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.



Except as may otherwise be provided in Subsection 12, Subsection 13(g),or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such demand is first received by an **Insured**).

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

(a)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b)    such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in this coverage section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** means any natural person who was, now is or shall become:

(a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America;

(b)    a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America; or

(c)    solely with respect to **Securities Claims**, any other employee of an **Organization**, provided that such other employees shall not, solely by reason of their status as employees, be **Insured Persons** for purposes of Exclusion 6(c).

**Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of the **Organization**) incurred by the **Organization** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Organization** whether it is in the

best interest of the **Organization** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

**Loss** means:

(a)    the amount that any **Insured Person** (for purposes of Insuring Clauses 1 and 2) or the **Organization** (for purposes of Insuring Clause 3) becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**; or

(b)    for purposes of Insuring Clause 4, covered **Investigative Costs**.

**Loss** does not include:

(a)    any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b)    any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)    any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d)    taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

(e)    any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages;

(f)    any amount allocated to non-covered loss pursuant to Subsection 17 of this coverage section; or

(g)    any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a



debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securities Claim** means that portion of a **Claim** which:

    (a)    is brought by a securityholder of an **Organization**

        (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)   derivatively, on behalf of such **Organization**, against an **Insured Person** of such **Organization**; or

    (b)    alleges that an **Organization** or any of its **Insured Persons**

        (i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

        (ii)   committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**,

provided that **Securities Claim** does not include any **Claim** by or on behalf of a former, current, future or prospective employee of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such employee in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; and provided, further, that **Securities Claim** does not include any **Securityholder Derivative Demand**.

**Securityholder Derivative Demand** means:

    (a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

    (b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in (a) above,
provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means:

(a)    any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or

(b)    any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**.

## Exclusions

*Applicable To All Insuring Clauses*

6.    The Company shall not be liable for **Loss** on account of any **Claim**:

(a)    based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)    based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c)    brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)    a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured Person**;

(ii)    an employment **Claim** brought or maintained by or on behalf of an **Insured Person**;

(iii)    a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)    a **Claim** brought by an **Insured Person** who has not served in an **Insured Capacity** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Insured**



**Person** who is serving or has served in an **Insured Capacity** within such four (4) year period;

(d)   based upon, arising from, or in consequence of:

    (i)   any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

    (ii)   any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, its securityholders or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d);

(e)   for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which a claimant seeks compensation in an employment **Claim**;

(f)   for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(g)   for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**; or

(h)   made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**.

---

*Applicable To Insuring Clauses 1 and 2 Only*

7.   The **Company** shall not be liable under Insuring Clause 1 or 2 for **Loss** on account of any **Claim** made against any **Insured Person**:

(a)   for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world; or

(b)   based upon, arising from, or in consequence of:

    (i)   the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**; or

    (ii)    such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

*Applicable To Insuring Clause 3 Only*

8.    The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Securities Claim** made against any **Organization**:

    (a)    based upon, arising from, or in consequence of:

        (i)    the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an **Organization** or by any past, present or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization**; or

        (ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled,

as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding; or

    (b)    for any actual or alleged liability of an **Organization** under any contract or agreement that relates to the purchase, sale, or offer to purchase or sell any securities; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement.

---

*Severability of Exclusions*

9.    (a)    No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying the exclusions in Subsection 7 of this coverage section.

    (b)    Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, president, chief executive officer or chairperson of an **Organization** shall be imputed to such **Organization** for the purpose of applying the exclusions in Subsection 8 of this coverage section.

---

*Spouses, Estates and Legal Representatives*

10.    Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:



**Execu** **e Protection Portfolio** SM

*Executive Liability and Entity Securities*
*Liability Coverage Section*

(a)   the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b)   the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**.  The coverage provided by this Subsection 10 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

## Coordination With Employment Practices Liability Coverage Section

11.   Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such Employment Practices Liability Coverage.  Any remaining **Loss** otherwise covered by this coverage section which is not paid under such Employment Practices Liability Coverage shall be covered as provided in, and shall be subject to the Limit of Liability, Retention and Coinsurance Percentage applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

## Extended Reporting Period

12.   If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 15(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 21 below.  The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.  The right to purchase an extension of coverage as described in this Subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

**Execut e Protection Portfolio** SM
**Executive Liability and Entity Securities**
**Liability Coverage Section**

---

*Limit of Liability, Retention and Coinsurance*

13. (a)  The Company's maximum liability for all **Loss** on account of each **Claim**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

(b)  The Company's maximum aggregate liability under Insuring Clause 4 for all **Investigative Costs** on account of all **Securityholder Derivative Demands** shall be the Sublimit set forth in Item 2(C) of the Declarations for this coverage section. Such Sublimit is part of, and not in addition to, the Limits of Liability set forth in Items 2(A) and 2(B) of the Declarations.

(c)  **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(d)  The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 17 of this coverage section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section. Such Retention shall be depleted only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk. Except as otherwise provided in Subsection 14, no Retention shall apply to any **Loss** under Insuring Clause 1 or 4.

(e)  If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(f)  To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(a) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(A) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**. To the extent that **Loss** resulting from a **Claim** other than a **Securities Claim** is covered under Insuring Clause 2 or 3 (as determined by Subsection 17(b) of this coverage section) and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 3(B) of the Declarations for this coverage section, and the Company's liability shall apply only to the remaining percentage of such **Loss**.

(g)  All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 15(b) below, regardless of whether such date is before or during the **Policy Period**.

**CHUBB**

(h)    The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

## Presumptive Indemnification

14.    If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to:

(i)    the applicable Insuring Clause 2 Retention set forth in Item 4 of the Declarations for this coverage section; and

(ii)    the applicable Coinsurance Percentage set forth in Item 3 of the Declarations for this coverage section.

## Reporting and Notice

15.    (a)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(i)    sixty (60) days after the date on which any **Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

(ii)    if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)    the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim**, stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(b)    If during the **Policy Period** an **Insured**:

(i)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company;

(ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

*Execu e Protection Portfolio* <sup>SM</sup>

**Executive Liability and Entity Securities
Liability Coverage Section**

(iii)   gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Securityholder Derivative Demand** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 15(a) or (b) a description of the **Claim**, circumstances, or **Securityholder Derivative Demand**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or **Securityholder Derivative Demand**.

**Defense and Settlement**

16.  (a)   It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds**.

(b)   The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent. Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c)   With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds**, and shall be consulted in advance by the **Insureds**, regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

(d)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e)   Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

**Allocation**

**CHUBB**

17.  (a)   If in any **Securities Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss as follows:

(i)   The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 2 shall be allocated in its entirety to covered **Loss**, subject, however, to the applicable Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively; and

(ii)   The portion, if any, of such amount that is in part covered and in part not covered under Insuring Clause 1 or 3 shall be allocated between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Securities Claim**, based also on the relative benefits to the **Insureds** from settlement of the covered matters and from settlement of the non-covered matters; provided that the amount so allocated to covered **Loss** under Insuring Clause 3 shall be subject to the Retention and Coinsurance Percentage set forth in Items 4(C) and 3(A) of the Declarations for this coverage section, respectively.

The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.  The allocation described in (i) above shall be final and binding on the Company and the **Insureds** under Insuring Clause 2, but shall not apply to any allocation under Insuring Clauses 1 and 3.

(b)   If in any **Claim** other than a **Securities Claim** the **Insured Persons** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insured Persons** and others (including the **Organization**), the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

(c)   If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**.  If the **Insureds** and the Company cannot agree on an allocation:

(i)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(ii)   the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

(iii)   the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

***Execut., Protection Portfolio*** <sup>SM</sup>

***Executive Liability and Entity Securities***
***Liability Coverage Section***

(d)   Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

### Other Insurance

18.   If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

### Payment of Loss

19.   In the event payment of **Loss** is due under this coverage section but the amount of such **Loss** in the aggregate exceeds the remaining available Limit of Liability for this coverage section, the Company shall:



(a)   first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this coverage section; then

(b)   to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this coverage section.

Except as otherwise provided in this Subsection 19, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

### Changes in Exposure

Acquisition /Creation of Another Organization

20.   If before or during the **Policy Period** any **Organization**:

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)   acquires another organization by merger into or consolidation with an **Organization** such that the **Organization** is the surviving entity,



such other organization and its **Insured Persons** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*



21.    If:

(a)    the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

(b)    another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 21, the entire premium for this coverage section shall be deemed fully earned.

The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

---

### Cessation of Subsidiary

22.    In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**.

---

### Related Entity Public Offering

23.    If any **Organization** files or causes to be filed, with the United States Securities and Exchange Commission or an equivalent agency or government department in any country other than the United States of America, any registration statement in contemplation of a public offering of equity securities by any entity other than the **Parent Organization** (irrespective of whether such public offering is an initial public offering or a secondary or other offering subsequent to an initial public offering), then the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of such registration statement or the sale, offer to sell, distribution or issuance of any securities pursuant to such registration statement, unless (i) the Company receives written notice at least thirty (30) days prior to the effective date of such registration statement providing full details of the contemplated offering, and (ii) the Company, in its sole discretion, agrees by written endorsement to this coverage section to provide coverage for such **Claims** upon such terms and conditions, subject to such limitations and other provisions, and for such additional premium as the Company may require. If the Company in its sole discretion agrees to provide coverage for such **Claims**, the additional premium specified by the Company shall be payable to the Company in full not later than the date on which such registration statement becomes effective.

---

### Representations and Severability

24.    In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** under Insuring Clause 2 to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge. For purposes of the preceding sentence:

(a)    the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**;

CHUBB

(b)   the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)   except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

### AMEND EXCLUSION 6(C) ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (c) of Subsection 6. Exclusions Applicable to All Insuring Clauses of this coverage section is amended by adding the following new subparagraph (v):

    (v)    a **Claim** brought against **Insured Persons** of the **Organization** by a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator or similar official who has been appointed to take control of, supervise, manage or liquidate the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative



**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

AMEND REPORTING AND NOTICE (a)(i) ENDORSEMENT

In consideration of the premium charged, it is agreed that clause (a)(i) of Subsection 15 Reporting and Notice of this coverage section is amended to read in its entirety as follows:

(i)     Nine (90) days after the date on which any **Parent Organization's** chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Claim** has been made;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative



**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

### AMEND POLLUTION EXCLUSION ENDORSEMENT

The Exclusions Applicable to all Insuring Clauses are amended by deleting paragraph 6(d) in its entirety and replacing it with the following:

(d)      based upon, arising from, or in consequence of:

    (i)       the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or

    (ii)      any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants,** or any voluntary decision to do so; except that this **Exclusion** will not apply to those portions of any **Claim** that:

        1.    allege that **Wrongful Acts** resulted in any actual or alleged violations of the Securities Act of 1933, the Securities exchange Act of 1934, any state "blue sky" law, or any other federal, state or local securities law or any rule or regulation promulgated under any of the foregoing, or

        2.    are a derivative action by or on behalf of or in the name or right of, the **Insured Organization** brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, the **Insured Organization** or any **Insured Person** or **Exclusion** (d)(ii) as set forth in paragraph above will not apply to those portions of any **Claim** involving **Wrongful Acts** in connection with **Insured** testing for, monitoring, cleaning-up, removal, containment, treatment, detoxification, or neutralization of **Pollutants**, if such actions are undertaken by an **Insured** for a fee in the ordinary course of their business at the written direction or request of a third party which is not an **Insured** and is not a governmental agency or other regulatory entity, and relate to an actual or alleged breach of a written contract or agreement; so long as the **Wrongful Act(s)** that form the basis of any such **Claim** made against any **Insured Person** does not in any way relate to any liability arising out of the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere.

---

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**CHUBB**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004                    Company: Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

OUTSIDE NOT-FOR-PROFIT DIRECTORSHIP LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Solely for purposes of the coverage provided under Insuring Clause 1 and Insuring Clause 2 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions is amended to read in its entirety as follows:

"**Insured Capacity** means:

(a)    a position as a duly elected or appointed director, officer or **Manager**, or as the in-house general counsel, of any **Organization** chartered in the United States of America;

(b)    a position equivalent to one of the positions described in (a) above in an **Organization** that is chartered in a jurisdiction other than the United States of America;

(c)    an **Outside Non-Profit Directorship** held by a duly elected or appointed director, officer or **Manager** of an **Organization** or other employee of an **Organization**; or

(d)    solely with respect to **Securities Claims**, a position as an employee of an **Organization**.

Except as specifically provided in part (c) of this definition, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization."

For purposes of any coverage that may be provided under Insuring Clause 3 or Insuring Clause 4 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions shall remain unchanged.

(2)    "**Non-Profit Outside Entity**" means a non-profit corporation, community chest, fund or foundation that (i) is not an **Organization** and (ii) is exempt from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

---

(3)    "**Outside Non-Profit Directorship**" means a position held by an **Insured Person**, with the knowledge and consent of the **Organization** or at the request of the **Organization**, as a director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity**.

(4)    The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Non-Profit Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) a **Non-Profit Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity** in any capacity; this exclusion shall not, however, apply to:

    (a)    a **Claim** brought or maintained derivatively on behalf of a **Non-Profit Outside Entity** by one or more securityholders of the **Non-Profit Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Non-Profit Outside Entity**, provided that such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Non-Profit Outside Entity**; or

    (b)    an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of a **Non-Profit Outside Entity** who is not an **Insured Person**.

(5)    Exclusion 6(d) of this coverage section is amended to read in its entirety as follows:

    "(d)    based upon, arising from, or in consequence of:

        (i)    any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

        (ii)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

    including but not limited to any **Claim** for financial loss to the **Organization**, any securityholder or creditor of the **Organization**, any **Non-Profit Outside Entity**, or any securityholder, creditor or member of a **Non-Profit Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d)."

(6)    Exclusion 6(g) of this coverage section is amended to read in its entirety as follows:

    "(g)    for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**.  This Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Non-Profit Directorship** but shall apply to any **Claim**, or portion thereof, that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in the **Outside Non-Profit Directorship** or after ceasing to serve in the **Outside Non-Profit Directorship**."

(7)    Exclusion 7(a) of this coverage section is amended to read in its entirety as follows:

    "(a)    for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** or securities of a **Non-Profit Outside Entity**, within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments



thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world."

(8)    Subsection 18. Other Insurance of this coverage section is amended to read in its entirety as follows:

"18.    ***Other Insurance and Indemnity***

(a)    If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Without in any way limiting the foregoing, it is expressly understood and acknowledged that with respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, coverage for any such **Loss** under this coverage section shall be specifically excess of the applicable retention (or deductible) and limit of liability of any other insurance (whether maintained by the **Non-Profit Outside Entity** or otherwise) that is available to such **Insured Person** by reason of his or her service in such **Outside Non-Profit Directorship**. Any payment by **Insureds** of a retention or deductible under any other insurance described in this paragraph shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

(b)    With respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, coverage for any such **Loss** under this coverage section shall also be specifically excess of any indemnification (other than indemnification by the **Organization**) that is available to such **Insured Person** by reason of his or her service in such **Outside Non-Profit Directorship**, including indemnification available from or provided by the **Non-Profit Outside Entity**. The **Insureds** agree that they will use their best efforts promptly to enforce any right of an **Insured Person** to obtain indemnification from a **Non-Profit Outside Entity** or any other organization."

(9)    Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(10)   If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Non-Profit Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

**CHUBB**

# ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

## PRIVATE COMPANY MODIFICATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 4.    Retention:

(A)    Insuring Clauses 1 and 4:           None

(B)    Insuring Clauses 2 and 3 (**Claims**
other than **Securities Claims**):        $500,000.00

(C)    Insuring Clauses 2 and 3 (**Securities
Claims** only):                       $None""

(2)    Item 7 of the Declarations for this coverage section is amended to read in its entirety as follows:

"Item 7.    Pending or Prior Date:

(A)    Insuring Clauses 1, 2 and 4:        August 22, 1985

(B)    Insuring Clause 3:                 November 1, 1998""

(3)    Insuring Clause 3. Entity Securities Coverage of this coverage section is amended to read in its entirety as follows:

"*Entity Liability Coverage Insuring Clause 3*

3.    The Company shall pay, on behalf of the **Organization**, **Loss** which the **Organization**
becomes legally obligated to pay on account of any **Claim** first made against the
**Organization** during the **Policy Period** or, if exercised, during the Extended Reporting
Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted
by the **Organization** or the **Insured Persons** before or during the **Policy Period**, but

only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section."

(4)     Subsection 5. Definitions of this coverage section is amended in the following respects:

(a)     The definition of "**Application**" is amended to read in its entirety as follows

"**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.  **Application** shall also include, for each **Organization**, the financial statements last issued to shareholders before this policy's inception date, whether or not such financial statements were attached to or submitted with a signed application for this coverage section.  All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this coverage section."

(b)     The definition of "**Claim**" is amended to read in its entirety as follows:

"**Claim** means:

(1)     when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

(d)     a criminal proceeding commenced by the return of an indictment,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom, or

(e)     a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Insured Person**; or

(2)     when used in reference to the coverage provided by Insuring Clause 3:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**; or

(d)     a criminal proceeding commenced by the return of an indictment,

**CHUBB**

against an **Organization** for a **Wrongful Act**, including any appeal therefrom, or

    (e)    a written request to toll or waive a statute of limitations applicable to an alleged **Wrongful Act** by an **Organization**; or

    (3)    when used in reference to the coverage provided by Insuring Clause 4, a **Securityholder Derivative Demand**.

Except as may otherwise be provided in Subsection 12, Subsection 13(g), or Subsection 15(b) of this coverage section, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written request to toll or waive a statute of limitations or the case of a written demand, including but not limited to any **Securityholder Derivative Demand**, when such request or demand is first received by an **Insured**)."

(c)    The following definition of "**Employee**" is added:

"**Employee** means any natural person whose labor or service is engaged by and directed by an **Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers.  **Employee** shall not include any independent contractor."

(d)    The following definition of "**Executive**" is added:

"**Executive** means any natural person who was, now is or shall become:

    (a)    a duly elected or appointed director, officer, **Manager**, or the in-house general counsel of any **Organization** chartered in the United States of America; or

    (b)    a holder of a position equivalent to any position described in (a) above in an **Organization** chartered in any jurisdiction other than the United States of America."

(e)    The definition of "**Insured Person**" is amended to read in its entirety as follows:

"**Insured Person** means any **Executive** or **Employee** of an **Organization**."

(f)    The definition of "**Securities Claim**" is amended to read in its entirety as follows:

"**Securities Claim** means that portion of a Claim which:

    (a)    is brought by a securityholder of an **Organization**

        (i)    in his or her capacity as a securityholder of such **Organization**, with respect to his or her interest in securities of such **Organization**, and against such **Organization** or any of its **Insured Persons**; or

        (ii)    derivatively, on behalf of such **Organization**, against an **Executive** of such **Organization**; or

    (b)    alleges that an **Organization** or any of its **Insured Persons**

        (i)    violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or

(ii)    committed a **Wrongful Act** that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such **Organization**.

**Securities Claim** does not include:

(a)    any **Claim** based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder;

(b)    any **Claim** by or on behalf of a former, current, future or prospective **Employee** of the **Organization** that is based upon, arising from, or in consequence of any offer, grant or issuance, or any plan or agreement relating to the offer, grant or issuance, by the **Organization** to such **Employee** in his or her capacity as such of stock, stock warrants, stock options or other securities of the **Organization**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Organization**; or

(c)    any **Securityholder Derivative Demand**."

(g)    The definition of "**Securityholder Derivative Demand**" is amended to read in its entirety as follows:

"**Securityholder Derivative Demand** means:

(a)    any written demand, by a securityholder of an **Organization**, upon the Board of Directors or Board of **Managers** of such **Organization** to bring a civil proceeding in a court of law against an **Executive** for a **Wrongful Act**; or

(b)    any lawsuit by a securityholder of an **Organization**, brought derivatively on behalf of such **Organization** against an **Executive** for a **Wrongful Act** without first making a demand as described in (a) above,

provided such demand or lawsuit is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**."

(5)    Subsection 6 of this coverage section is amended in the following respects:

(a)    Paragraph (b) of Subsection 6 is amended by replacing the phrase "on or prior to the Pending or Prior Date" with the phrase "on or prior to the applicable Pending or Prior Date".

(b)    Paragraph (c) of Subsection 6 is amended to read in its entirety as follows:

"(c)    brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 6(c) shall not apply to:

(i)    a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization**, provided such **Claim** is brought and maintained without any active assistance or participation of, solicitation by, any **Executive**;

(ii)    a **Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;



(iii)   a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this coverage section; or

(iv)   a **Claim** brought by an **Insured Person** who has not held the position of director, officer, **Manager** or in-house general counsel or any equivalent position with any **Organization** for at least four (4) years prior to the date such **Claim** is first made, and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, an **Organization** or any other **Insured Person** who holds or has held any such position within such four (4) year period."

(c)   Paragraph (e) of Subsection 6 is amended to read in its entirety as follows:

"(e)   for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 6(e) shall not apply to mental anguish or emotional distress for which an **Executive** seeks compensation in a wrongful termination **Claim**."

(d)   The following is added to Subsection 6 as Exclusion 6(i):

"(i)   based upon, arising from, or in consequence of any employment-related **Wrongful Act**; provided that this Exclusion 6(i) shall not apply to a **Claim** by an **Executive** for the wrongful termination of such **Executive**."

(e)   The following is added to Subsection 6 as Exclusion 6(j):

"(j)   based upon, arising from, or in consequence of any actual or alleged violation of the Securities Act of 1933, any amendments thereto or any rule or regulation promulgated thereunder."

(6)   Subsection 7 of this coverage section is amended in the following respects:

(a)   Paragraph (b) of Subsection 7 of this coverage section is amended to read in its entirety as follows:

"(b)   based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final and non-appealable judgment or adjudication adverse to such **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or"

(b)   The following is added to Subsection 7 as Exclusion 7(c):

"(c)   based upon, arising from, or in consequence of such **Insured Person** having gained in fact any profit, remuneration or advantage to which such **Insured Person** was not legally entitled."

(7)   Subsection 8 of this coverage section is amended to read in its entirety as follows:

"The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** made against any **Organization**:

(a)   based upon, arising from, or in consequence of:

(i)     any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Organization**, if a final and non-appealable judgment or adjudication adverse to such **Organization** establishes such a deliberately fraudulent act or omission or willful violation; or

(ii)    such **Organization** having gained in fact any profit, remuneration or advantage to which such **Organization** was not legally entitled;

(b)    for any actual or alleged liability of an **Organization** under any contract or agreement; provided that this Exclusion 8(b) shall not apply to liability that would have attached to such **Organization** in the absence of such contract or agreement;

(c)    based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment;

(d)    based upon, arising from, or in consequence of actual or alleged libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(e)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this coverage section; provided that this Exclusion 8(e) shall not apply to any **Securities Claim** or **Securityholder Derivative Demand**;

(f)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark or service mark, trade name, or trade dress, or misappropriation of ideas or trade secrets; or

(g)    based upon, arising from, or in consequence of any actual or alleged:

(i)    price fixing, restraint of trade, monopolization or attempted monopolization, unfair trade practice, price discrimination or predatory pricing; or

(ii)    violation of the Interstate Commerce Act, the Sherman Antitrust Act, the Clayton Act, the Federal Trade Commission Act, the Robinson-Patman Act, or the Celler-Kefauver Act; any amendment to or rule or regulation promulgated under any of the foregoing; any other federal, state or local statute involving competition or the prevention of anticompetitive practices, or any rule or regulation promulgated under any such statute; any similar provision of any federal, state or local statute, rule or regulation anywhere in the world; or any similar provision of the common law anywhere in the world."

(8)    Paragraph (b) of Subsection 15. Reporting and Notice of this coverage section is amended to read in its entirety as follows:

"(b)    If during the **Policy Period** an **Insured**:



(i)      becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

(ii)     gives written notice to the Company of a **Securityholder Derivative Demand**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above or from the **Securityholder Derivative Demand** referred to in (ii) above shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i) or (ii) above was first given to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 15(a) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made."

(9)    Paragraph (b) of Subsection 17. Allocation of this coverage section is amended to read in its entirety as follows:

"(b)    If in any **Claim** other than a **Securities Claim** the Insureds incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement.  The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss."

(10)    The second paragraph of Subsection 20 of this coverage section is amended to read in its entirety as follows:

"If the total assets of any such acquired organization or new **Subsidiary** exceed twenty-five percent (25%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require."

(11)    Subsection 23. Related Entity Public Offering of this coverage section is amended to read in its entirety as follows:

"***Certain Securities Offerings***

23.    If any **Organization** files, or causes to be filed, any registration statement in contemplation of the sale or offering of securities of any kind or nature whatsoever in a transaction that is not exempt from registration under the Securities Act of 1933, as amended, the Company will provide a quotation for coverage with respect to **Claims**

against **Insured Persons** arising from such sale or offering; provided, however, that the Company will have no obligation to provide any such quotation unless, as a condition precedent thereto, the **Insureds** shall have given to the Company, not less than thirty (30) days before the effective date of such registration statement, written notice concerning the contemplated sale or offering (including the full details thereof) and all other information requested by the Company.  Coverage pursuant to any such quotation shall be subject to such terms, conditions and limitations, and payment of such additional premium, as the Company in its sole discretion may require.  There shall be no such coverage unless and until the Company issues a separate written endorsement to this coverage section expressly stating that such coverage is being provided.  The additional premium specified by the Company shall, if the Company's quotation is accepted, be payable to the Company in full not later than the date on which the registration statement becomes effective."

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_
_____
Authorized Representative

**CHUBB**

# ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

## ADD ORGANIZATION WITH PRIOR ACTS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 5 of the Declarations for this coverage section is amended to include the following organization(s):

Clean Pacific Alliance L.L.C.
Marine Response Alliance L.L.C.;

provided that no coverage will be available under this coverage section for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any **Wrongful Act** committed, attempted, or allegedly committed or attempted by any organization specified above or any **Insured Person** thereof prior to November 01, 1996.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**CHUBB**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

## AMEND SUBSECTION 18 OTHER INSURANCE ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 18 Other Insurance of this coverage section is amended to read in its entirety as follows:

18.     If any **Loss** under this coverage section is insured under any other valid and collectible insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative



**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company: Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8120-0792

Issued to: CROWLEY MARITIME CORPORATION

---

AMEND REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 24. Representations and Severability of this coverage section is deleted and replaced with the following:

> For purposes of determining whether coverage is available under Insuring Clause 1 or 2 of this coverage section, the **Application** will be construed as a separate application for coverage by each of the **Insured Persons**, and no knowledge possessed by an **Insured Person** will be imputed to any other **Insured Person**.

> For purposes of determining whether coverage is available under Insuring Clause 3 or 4 of this coverage section:

> (a)    the statements and representations in the **Application** will be deemed to have been made by all **Organizations**;

> (b)    the knowledge of the person(s) who signed the **Application** will be imputed to all **Organizations**; and

> (c)    the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** will be imputed to such **Organization** and its **Subsidiaries**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 9

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

## AMEND EXCLUSION 6(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (b) of Subsection 6 Exclusions of this coverage section is amended to read in its entirety as follows:

(b)      based upon, arising from, or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

DOUBLE EXCESS FOR PROFIT OUTSIDE DIRECTORSHIP LIABILITY COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Solely for purposes of the coverage provided under Insuring Clause 1 and Insuring Clause 2 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions is amended to read in its entirety as follows:

> "**Insured Capacity** means:
>
> (a)     a position as a duly elected or appointed director, officer or **Manager**, or as the in-house general counsel, of any **Organization** chartered in the United States of America;
>
> (b)     a position equivalent to one of the positions described in (a) above in an **Organization** that is chartered in a jurisdiction other than the United States of America;
>
> (c)     an **Outside Directorship** held by a duly elected or appointed director, officer or **Manager** of an **Organization** or other employee of an **Organization**; or
>
> (d)     solely with respect to **Securities Claims**, a position as an employee of an **Organization**.
>
> Except as specifically provided in part (c) of this definition, **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization."

For purposes of any coverage that may be provided under Insuring Clause 3 or Insuring Clause 4 of this coverage section, the definition of "**Insured Capacity**" in Subsection 5. Definitions shall remain unchanged.

(2)     With respect to any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**:

(a)     The final sentence of paragraph (d) of Subsection 13 Limit of Liability, Retention and Coinsurance of this coverage section is deleted; and

(b)     Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

Item 4.  Retention:

|   |   |   |
|---|---|---|
| (A) | Insuring Clause 1: | None |
| (B) | Insuring Clause 2 (**Claims** other than **Securities Claims**): | $500,000.00 |
| (C) | Insuring Clause 2 (**Securities Claims** only): | $500,000.00 |

(3)     "**For Profit Outside Entity**" means any for-profit entity or organization that (i) is not an **Organization** and (ii) is not exempt from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

(4)     "**Outside Directorship**" means a position held by an **Insured Person**, with the knowledge and consent of the **Organization** or at the request of the **Organization**, as a director, officer, trustee, governor or equivalent executive of an **Outside Entity**.

(5)     "**Outside Entity**" means any **For Profit Outside Entity**.

(6)     The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured Person** for **Wrongful Acts** of such **Insured Person** in an **Outside Directorship**, if such **Claim** is brought or maintained by or on behalf of (i) an **Outside Entity** or (ii) any director, officer, trustee, governor or equivalent executive of an **Outside Entity** in any capacity; this exclusion shall not, however, apply to:

(a)     a **Claim** brought or maintained derivatively on behalf of an **Outside Entity** by one or more securityholders of the **Outside Entity** who are not directors, officers, trustees, governors or equivalent executives of the **Outside Entity**, provided that such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any director, officer, trustee, governor or equivalent executive of the **Outside Entity**; or

(b)     an employment **Claim** brought or maintained by or on behalf of a director, officer, trustee, governor or equivalent executive of an **Outside Entity** who is not an **Insured Person**.

(7)     Exclusion 6(d) of this coverage section is amended to read in its entirety as follows:

"(d)    based upon, arising from, or in consequence of:

(i)     any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, any securityholder or creditor of the **Organization**, any **Outside Entity**, or any securityholder,


**CHUBB**

creditor or member of a **Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 6(d)."

(8)  Exclusion 6(g) of this coverage section is amended to read in its entirety as follows:

"(g)  for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**. This Exclusion 6(g) shall not apply to **Claims** for **Wrongful Acts** of an **Insured Person** in an **Outside Directorship** but shall apply to any **Claim**, or portion thereof, that is for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insured Person** before beginning to serve in an **Outside Directorship** or after ceasing to serve in an **Outside Directorship**."

(9)  Exclusion 7(a) of this coverage section is amended to read in its entirety as follows:

"(a)  for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Organization** or securities of an **Outside Entity**, within the meaning of Section 16(b) of the Securities Exchange Act of 1934, any amendments thereto, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world."

(10)  Subsection 18. Other Insurance of this coverage section is amended to read in its entirety as follows:

"18.  ***Other Insurance and Indemnity***

(a)  If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Without in any way limiting the foregoing, it is expressly understood and acknowledged that with respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, coverage for any such **Loss** under this coverage section shall be specifically excess of the applicable retention (or deductible) and limit of liability of any other insurance (whether maintained by the **Outside Entity** or otherwise) that is available to such **Insured Person** by reason of his or her service in such **Outside Directorship**. Any payment by **Insureds** of a retention or deductible under any other insurance described in this paragraph shall reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

(b)  With respect to **Loss** resulting from a **Claim** against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, coverage for any such **Loss** under this coverage section shall also be specifically excess of any indemnification (other than indemnification by the **Organization**) that is available to such **Insured Person** by reason of his or her service in such **Outside Directorship**, including indemnification available from or provided by the **Outside Entity**. The **Insureds** agree that they will use their best efforts promptly to enforce any right of an **Insured Person** to obtain indemnification from an **Outside Entity** or any other organization."

(11)   Nothing in this endorsement is intended, nor shall anything herein be construed, to increase any of the Company's Limits of Liability shown in Item 2 of the Declarations for this coverage section.

(12)   If the Company or any of its subsidiaries or affiliated companies makes payment under another policy, or under another coverage section of this policy, on account of a **Claim** that (i) is also covered under this coverage section and that (ii) is made against an **Insured Person** for his or her **Wrongful Acts** in an **Outside Directorship**, then this coverage section's Limit of Liability with respect to that **Claim** (as set forth in Item 2(A) of the Declarations for this coverage section) shall be reduced by the amount of the payment so made under such other policy or other coverage section.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

———————————————————
Authorized Representative

**CHUBB**

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Executive Liability and Entity Securities Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: November 1, 2004

Company:  Federal Insurance Company

Endorsement No. 11

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that sections (1) and (2) of the definition of **Claim** as set forth in Subsection 5 of this coverage section are amended to read in their entirety as follows:

(1)     when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document;

(d)     a criminal proceeding commenced by the return of an indictment; or

(e)     an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(2)     when used in reference to the coverage provided by Insuring Clause 3:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**;

(d)     a criminal proceeding commenced by the return of an indictment; or

---

14-02-9138 (1/2004)                     Page 1

(e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

---

Authorized Representative



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

**Executive Protection Portfolio** SM
General Terms and Conditions Section

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

Policy Number: 8120-0792

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Parent Organization:**         CROWLEY MARITIME CORPORATION
          **Principal Address:**           155 GRAND AVENUE, SUITE 700
                                            OAKLAND, CA 94612

Item 2.   **Policy Period:**    From   12:01 A.M. on    November 1, 2004
                                To     12:01 A.M. on    November 1, 2005
                                Local time at the address shown in Item 1.

Item 3.   Coverage Summary
          Description:
              GENERAL TERMS AND CONDITIONS
              EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY
              EMPLOYMENT PRACTICES LIABILITY
              FIDUCIARY LIABILITY
              CRIME

Item 4.   Termination of
          Prior Bonds or Policies: 8120-0792  (November 1, 2003 - November 1, 2004)

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

**Executive Protection Portfolio** [SM]
General Terms and Conditions Section

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

*Henry A Aulisi*
_____
Secretary

*Thomas F Motamed*
_____
President

11/01/04
_____
Date

*Robert Hamburger*
_____
Authorized Representative

14-02-7302DFED (Ed. 11/2002)        Page 2 of 6



In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

### Territory

1.  Coverage shall extend anywhere in the world.

### Terms and Conditions

2.  Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

### Definitions

3.  When used in this policy:

    **Claim** shall have the meaning set forth in the applicable coverage section.

    **Insured** shall have the meaning set forth in the applicable coverage section.

    **Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

    **Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

### Limits of Liability and Retentions

4.  Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

### Notice

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

5.  Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

    Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

    > Attn: Claims Department
    > Chubb Group of Insurance Companies
    > 82 Hopmeadow Street
    > Simsbury, Connecticut 06070-7683

    All other notices to the Company shall be given in writing addressed to:

    > Attn: Underwriting
    > Chubb Group of Insurance Companies
    > 82 Hopmeadow Street
    > Simsbury, Connecticut 06070-7683

    Any such notice shall be effective on the date of receipt by the Company at such address.

**Valuation and Foreign Currency**

6.  All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

**Subrogation**

7.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

**Action Against the Company**

**CHUBB**

*Executive Protection Portfolio* [SM]
*General Terms and Conditions Section*

8.  No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

### Parent Organization Rights and Obligations

9.  By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

### Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

### Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a)  sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

    (b)  twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

    (c)  upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

    (d)  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

    (e)  at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

**Executive Protection Portfolio** <sup>SM</sup>

*General Terms and Conditions Section*

circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### Termination of Prior Bonds or Policies

12.   Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### Bankruptcy

13.   Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14.   The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# EXHIBIT H



CHUBB

Chubb Group of Insurance Companies
P.O. Box 1616
Warren, NJ 07059-1616
www.chubb.com

June 14, 2007

Mr. Steve Ficon
Crowley Maritime Corp.
155 Grand Avenue, Suite 700
Oakland, CA 94612

Re:   Insured:                Crowley Maritime Corp
      Policy No.:             8120-07-92
      Claim No.:              100304
      Writing Company:        Federal Insurance Company
      Claimant/Litigation:    Franklin Balance Sheer Investment Fund, et al.

Dear Mr. Ficon:

As I believe you are aware, I am handling this matter on behalf of Federal Insurance Company.

On March 22, 2007, I was informed by Jon Abramczyk of Morris, Nichols, Arscht & Tunnell, for the first time, that Crowley Maritime Corp ("Crowley or the Insured") had engaged in undisclosed settlement discussions as a result of which this matter was settled through a buy out arrangement with the plaintiffs and a commitment to pay a plaintiffs attorney fee award.

In this regard, subsection 16, titled Defense and Settlement, of the Executive Liability and Indemnification Coverage Section of Crowley's, Executive Protection Policy number 8120-0792 (the "Policy") provides in pertinent part that:

(a)     It shall be the duty of the **Insureds** and not the duty of the Company to defend **Claims** made against the **Insureds.**

(b)     The **Insureds** agree not to settle or offer to settle any **Claim,** incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent. Provided the **Insureds** comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.

(c)     With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds,** and shall be consulted in advance by the **Insureds,** regarding the investigation, defense and settlement of such **Claim,** including but not limited to selecting appropriate defense counsel and negotiating any settlement.

2

(d)     The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

(e)     Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section.

Please note that both the Insured's failure to advise Federal of the settlement negotiations and its settlement of this matter without consent violates the foregoing provisions of subsection 16 of the Policy.

Federal continues to expressly reserve all rights under the Policy and available at law including those arising out of the Insured's violation of subsection 16 of the Policy.

Should you have any questions concerning this letter in the meantime, please contact me at (908) 903-5453. My e-mail address is: hnicholls@ chubb.com.

Sincerely,

Chubb & Son
a division of Federal Insurance Company

*Henry Nicholls / J /*

by:     HENRY NICHOLLS, Esq.
Eastern Specialty Claims
hnicholls@chubb.com

/jl
(crowley060707.doc)

cc:     Ms. Patricia Toner
Crowley Maritime Corp.
155 Grand Avenue, Suite 700
Oakland, CA  94612

Maryann Schultz
Aon Risk Services
1330 Post Oak Blvd., Suite 900
Houston, TX   77056



CHUBB GROUP OF INSURANCE COMPANIES

P.O. Box 1616, Warren, NJ 07059-1616

PRESORTED
FIRST CLASS
U.S. POSTAGE
PAID

NOTIFY SENDER OF NEW ADDRESS
945 NSE 1 BOSC 30 06/21/07
:CROWLEY MARITIME CORP
555 12TH ST STE 300
OAKLAND CA 94607-4076

BC: 94607407630    *29905-04573-21-20

Ms. Patricia Toner
Crowley Maritime Corp.
155 Grand Avenue, Suite 700
Oakland, CA !

# PILLSBURY & LEVINSON, LLP

### ATTORNEYS AT LAW

RICHARD D. SHIVELY

March 28, 2007

### *Via Fedex Overnite*

Chubb Group of Insurance Companies
12 VREELAND ROAD
FLORHAM PARK, NJ  07932-9095
ATTN:  HENRY NICHOLLS, ESQ.

RLI INSURANCE COMPANY
525 W. VAN BUREN STREET, SUITE 350
CHICAGO. IL  60607
ATTN:  AMY E. JOHNSON

Hartford/Twin City
2 Park Avenue
New York, NY  10016
Attn: Jeremy Salzman, Esq.

COVERAGE

Executive Protection Portfolio (D&O, Fiduciary, Crime & EPL)

**Primary D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Federal Insurance Company (Chubb)
**Limit:** $10M Term Aggregate XS $500K retention, each loss
**Policy Number:** 8120-0792

**First XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Hartford/Twin City
**Limit:** $10M Aggregate XS $10M Underlying Limits
**Policy Number:** 00 DA 0100967 04

**Second XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** RLI Insurance Company
**Limit:** $5M Aggregate XS $20M Underlying Limit
**Policy Number:** EPG0002704A

CLAIM

CIVIL PROCEEDING:  FRANKLIN BALANCE
                   SHEET INVESTMENT
                   FUND, ET AL.
                   v.
                   CROWLEY MARITIME
                   CORPORATION BOARD
                   OF DIRECTORS
                   v.
                   CROWLEY MARITIME
                   CORPORATION
                   (NOMINAL DERIVATIVE
                   DEFENDANT)

**DATE OF CLAIM/SERVICE:** 12/1/04
**DESCRIPTION:** STATUS REPORT
**EXPENSE TO DATE:** $574,911.87
**OUR REF#** 04DO0001
**CHUBB REF#:** 100304
**HARTFORD REF#:** 05360917
**RLI REF#:** 00176418

March 28, 2007
Page 2 of 3

Interested Underwriters:

This firm has been retained to represent your insured, Crowley Maritime Corporation ("Crowley"), in connection with its claim for insurance coverage for the referenced action (the "Franklin Fund Action"). We are writing to inform you that an opportunity has arisen to settle the action on favorable terms, and to seek your consent to pursue such a settlement.

The settlement opportunity arose when the plaintiffs in the Franklin Fund Action offered to dismiss their lawsuit if they and the other unaffiliated holders of Crowley common stock were given an opportunity, through a tender offer, to sell their common stock for $2,990 per share in cash. A proposed settlement on those terms has not yet been consummated, and is subject to three contingencies. First, the tender offer must be accepted by a prescribed proportion of the unaffiliated common stock holders. Second, the proposed settlement must be approved by the Delaware Chancery Court. Third, the lawsuit must be dismissed and the time for an appeal must expire.

The proposed settlement would be in the best interest of both Crowley and its D&O insurers for two reasons. First, it would eliminate the potential for a large judgment against Crowley that might well be covered under the policies referenced above. Second, it would result in Crowley no longer being a public company -- which, in turn, would reduce the potential for future claims that might trigger coverage under the referenced policies.

After the plaintiffs had initiated the idea of a buyout to settle the Franklin Fund Action, Crowley was constrained by significant confidentiality issues that prevented it, as a practical matter, from immediately inviting its D&O carriers to join in the negotiations. Those issues related not only to applicable SEC disclosure rules, but also to financing arrangements necessary to fund the proposed purchase of the plaintiffs' shares.

The proposed settlement includes a provision that would require Crowley to pay attorneys' fees and costs incurred by the plaintiffs in prosecuting the Franklin Fund Action. Crowley would be looking to its carriers to cover -- among other costs of the settlement -- those fees and costs, as well as Crowley's own defense costs in excess of its self insured retention. However, before unequivocally accepting the plaintiffs' settlement offer and proceeding to complete the settlement, Crowley is asking its carriers to consent to the proposed settlement.

March 28, 2007
Page 3 of 3

        There is a court hearing on the proposed settlement set for April 27, 2007.  We would appreciate hearing from you as soon as possible, so that Crowley can proceed, if possible, to seize this opportunity to obtain a favorable settlement.

                        Very truly yours,

                        PILLSBURY & LEVINSON, LLP

                        Philip L. Pillsbury, Jr.
                        Richard D. Shively

                By _____

                        Richard D. Shively

bcc:  Art Mead, Esq.
      Steven Ficon
      Philip L. Pillsbury, Jr.

# PILLSBURY & LEVINSON, LLP

A T T O R N E Y S    A T    L A W

RICHARD D. SHIVELY

April 23, 2007

**_Via Federal Express_**
Henry Nicholls, Esq.
Chubb & Son, a division of
Federal Insurance Company
Directors and Officers Claims
15 Mountain View Road
P.O. Box 1616
Warren, NJ 07059-1616

Re:  *Franklin Balance Sheet Investment Fund et al. v.*
*Crowley Maritime Corp. et al.*
Policy No. 8120-0792
Your Ref. No. 100304

Dear Mr. Nicholls:

This letter will confirm our telephone conversation last Friday, during which you agreed on behalf of Chubb that the submission, by your insured Crowley Maritime Corporation ("Crowley"), of a summary of the defense costs incurred in connection with the referenced action and supporting backup materials such as attorney fee invoices would not constitute any waiver of privileges (such as the attorney-client privilege and the attorney work product privilege) applicable to that summary and to those materials. You also agreed, on behalf of Chubb, that it would not contend that Crowley's submission of that summary and those materials to Chubb in unredacted form constituted any waiver of applicable privileges, or that such a submission would result in any waiver as to any other documents.

On the basis of those agreements, I am enclosing herewith -- pursuant to your request and in support of Crowley's request for Chubb's approval of the proposed settlement of the referenced action -- Crowley's summary of defense costs together with supporting backup materials. Those documents bear Bates Stamp Nos. CR-OM 001 to CR-OM 155.

I also agreed to provide you with the *Franklin Fund* plaintiffs' forthcoming application to the Delaware Chancery Court for the recovery of their attorneys' fees and litigation expenses promptly after it has been served. You told me that Chubb may wish

THE TRANSAMERICA PYRAMID • 600 MONTGOMERY STREET • THIRTY-FIRST FLOOR • SAN FRANCISCO, CA 94111
(415) 433-8000 • FACSIMILE (415) 433-4816

to participate in the formulation of Crowley's response/opposition to the plaintiffs' fee request.

　　　　Please feel free to contact me regarding any questions you may have about the enclosed materials.

　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　PILLSBURY & LEVINSON, LLP


　　　　　　　　　By _____
　　　　　　　　　　　　Richard D. Shively


Encls.

Herase Nichols, Esq.
April 23, 2007
Page 3


bcc:   Art Mead, Esq. (w/o encls.)
       Steven Ficon (w/o encls.)
       Jon Abramczyk, Esq. (w/o encls.)
       Philip L. Pillsbury, Jr., Esq. (w/o encls.)

# PILLSBURY & LEVINSON, LLP

### ATTORNEYS AT LAW

RICHARD D. SHIVELY

May 15, 2007

***Via Federal Express***
Henry Nicholls, Esq.
Chubb & Son, a division of
Federal Insurance Company
Directors and Officers Claims
15 Mountain View Road
P.O. Box 1616
Warren, NJ 07059-1616

> Re: *Franklin Balance Sheet Investment Fund et al. v.*
> *Crowley Maritime Corp. et al.*
> Policy No. 8120-0792
> Your Ref. No. 100304

Dear Mr. Nicholls:

Pursuant to your request, enclosed is a copy of Plaintiffs' Brief In Support Of An Award of Attorneys' Fees and Expenses. I welcome your comments and suggestions about how Crowley should respond.

Best regards.

Sincerely,

Richard D. Shively

RDS:sm
Enclosure
cc: Jeremy Salzman, Esq. (Hartford/Twin City) (w/ encl.)
    Amy E. Johnson (RLI) (w/ encl.)

Henry Nicholls, Esq.
May 15, 2007
Page 2


bcc:   Art Mead, Esq. (w/o encl.)
       Steven Ficon (w/o encl.)
       Jon Abramczyk, Esq. (w/o encl.)

# PILLSBURY & LEVINSON, LLP

### ATTORNEYS AT LAW

RICHARD D. SHIVELY

May 29, 2007

**_Via Federal Express_**
Henry Nicholls, Esq.
Chubb & Son, a division of
Federal Insurance Company
Directors and Officers Claims
15 Mountain View Road
P.O. Box 1616
Warren, NJ 07059-1616

Re: *Franklin Balance Sheet Investment Fund et al. v.*
     *Crowley Maritime Corp. et al.*
     Policy No. 8120-0792
     Your Ref. No. 100304

Dear Mr. Nicholls:

   Enclosed is a copy of Crowley's opposition to the plaintiffs' application for attorneys' fees and expense reimbursement, which was filed last Friday.

   Best regards.

                              Sincerely,

                              Richard D. Shively

RDS:sm
Encl. (Opp. Brief)
cc: Jeremy Salzman, Esq. (Hartford/Twin City) (w/ encl.)
    Amy E. Johnson (RLI) (w/ encl.)

Henry Nicholls, Esq.
May 29, 2007
Page 2


bcc:   Art Mead, Esq. (w/o encl.)
       Steven Ficon (w/o encl.)
       Jon Abramczyk, Esq. (w/o encl.)



**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: June 27, 2006

Company:  Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8120-0792

Issued to:  CROWLEY MARITIME CORPORATION

---

AMEND ITEM 1 OF THE DECLARATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 1 of the Declarations for these General Terms and Conditions is amended to read in its entirety as follows:

Item 1:  **Parent Organization:**
Principal Address:

Crowley Maritime Corporation
attn:  Risk Management Department
9487 Regency Square Blvd.
Jacksonville, FL  32225

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-9132 (1/2004)              Page 1



**CHUBB**

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

---

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under
the laws of Indiana, herein called the Company

Policy Number: 8120-0792

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.  **Parent Organization:**    CROWLEY MARITIME CORPORATION
         Principal Address:          Attn: Risk Management Dept.
                                     9487 Regency Sq. Blvd.
                                     Jacksonville, FL 32225

Item 2.  **Policy Period:**    From   12:01 A.M. on      November 1, 2006
                               To     12:01 A.M. on      November 1, 2007
                               Local time at the address shown in Item 1.

---

Item 3.  Coverage Summary
         Description:
             GENERAL TERMS AND CONDITIONS
             EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY
             EMPLOYMENT PRACTICES LIABILITY
             FIDUCIARY LIABILITY
             CRIME

Item 4.  Termination of
         Prior Bonds or Policies: 8120-0792  (Nov 1, 2005 - Nov 1, 2006)

14-02-7302DFED (Ed. 11/2002)        Page 1 of 6

# CROWLEY®

November 17, 2006

Chubb Group of Insurance Companies
12 Vreeland Road
Florham Park, NJ  07932-9095
Attn: Henry Nicholls, Esq

Hartford/Twin City
2 Park Avenue
New York, NY  10016
Attn: Jeremy Salzman, Esq.

RLI Insurance Company
525 W. Van Buren Street
Suite 350
Chicago, IL 60607
Attn: Amy E. Johnson

## COVERAGE

**Executive Protection Portfolio (D&O, Fiduciary, Crime & EPL)**

**Primary D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Federal Insurance Company (Chubb)
**Limit:** $10M Term Aggregate XS $500K retention, each loss
**Policy Number:** 8120-0792

**First XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** Hartford/Twin City
**Limit:** $10M Aggregate XS $10M Underlying Limits
**Policy Number:** 00 DA 0100967 04

**Second XS D&O**
**Insured:** Crowley Maritime Corporation
**Policy Period:** 11/1/2004-11/1/2005
**Insurer:** RLI Insurance Company
**Limit:** $5M Aggregate XS $20M Underlying Limit
**Policy Number:** EPG0002704A

## CLAIM

**Civil Proceeding:** *Franklin Balance Sheet Investment Fund, et al*

*v.*

*Crowley Maritime Corporation Board of Directors*
*v.*
*Crowley Maritime Corporation* (Nominal Derivative Defendant)

**Date of Claim/Service:** 12/1/04
**Description:** Status Report
**Expense to date:** $444,851.70
**Our ref#:** 04DO0001
**Chubb Ref #:** 100304
**Hartford Ref #:** 05360917
**RLI Ref #:** 00176418

---

Interested Underwriters:

I am writing to provide a status update on the referenced action.

As you may recall, on November 30, 2004 Franklin Balance Sheet Investment Fund and a number of other investment funds filed derivative and direct claims against Crowley's board of directors alleging that certain directors violated fiduciary duties by entering into split dollar life insurance agreements with Mr. Crowley and certain trusts. The complaint sought a declaration that the action could properly be brought as both a class and derivative action, a declaration that the alleged policy of entrenching Mr. Crowley as controlling stockholder is illegal and void, and an award of damages equal to the premiums

RE: Franklin Balance Sheet Investment Fund, et al.                                    November 17, 2006
    vs. Crowley Maritime Corporation Board of Directors                                    Page 2

paid by the company on the split dollar life insurance plus interest, the costs and expenses incurred by the Company in implementing the alleged policy and attorneys fees and costs. Defendants moved to dismiss the complaint and plaintiff's filed a motion for leave to amend the complaint and to allow another stockholder to intervene. Full details of the cumulative briefing is provided in the enclosed

September 26, 2006 litigation status report prepared by defense counsel Morris, Nichols, Arsht and Tunnell.

On October 19, 2006, the Court granted Plaintiff's motion for leave to amend the complaint and intervene a new plaintiff and ordered the Plaintiffs to promptly amend their complaint. The Court also sanctioned the Plaintiff's $10,000 to reimburse the Defendant for legal fees incurred in part by the Plaintiff's failure to initially file a legally complete complaint. A copy of the Court's October 19, 2006 Memorandum Opinion is enclosed.

On October 25, 2006, the Plaintiffs' paid their sanctions, which amount was credited to defense counsel's fee statement. On October 26, 2006 the Plaintiff's filed and served their Amended Complaint, copy of which is also enclosed.

I would also like to advise, as you will note in the caption, that total defense costs incurred to date are fast approaching the $500,000 deductible. We plan on submitting an itemized list and copies of all defense invoices to Chubb within the 60 days to facilitate future requests for reimbursement. Hartford /Twin City and RLI should let me know if they would like copies of these invoices as well.

We will keep Underwriters advised of further developments.

Very truly yours,

Steven J. Ficon, CPCU
Manager, Corporate Claims

w/ enclosures

cc:  Maryann Schultz / Aon Financial Services Group, Inc
     Dwight Menard
     Art Mead

# EXHIBIT I



**THE HARTFORD**

## EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

TWIN CITY FIRE INSURANCE COMPANY
Indianapolis, Indiana

**Policy Number** 00 DA 0100967-04

Agency Code, Name & Address
80620
AON RISK SERVICES OF TEXAS INC
1330 POST OAK BOULEVARD
SUITE 900
HOUSTON, TX 77056

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE (ITEM D.) FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. THIS POLICY DOES NOT PROVIDE FOR THE UNDERWRITERS TO DEFEND THE INSURED, AND ANY DEFENSE COSTS AND OTHER CLAIM EXPENSE COVERED UNDER THE POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

## DECLARATIONS

**ITEM A.** Name of Insured: (hereinafter called the "Insured")

CROWLEY MARITIME CORPORATION

Address of Insured: 155 GRAND AVENUE
SUITE 700
OAKLAND, CA 94612

**ITEM B.** Policy Period: From 12:01 a.m. on 11/01/04    To 12:01 a.m. on 11/01/05
(Standard Time at the address stated in Item A)

**ITEM C. LIMIT OF LIABILITY:**    $10,000,000    Aggregate each Policy Period, including claim expense.

**ITEM D. SCHEDULE OF UNDERLYING INSURANCE:**

(1)    Primary Policy:    DIRECTORS AND OFFICERS LIABILITY

Company:    FEDERAL INSURANCE COMPANY

Policy Number:    8120-0792

Limit of Liability:    $10,000,000

(2)    Underlying Excess Policy(ies):    N/A

**ITEM E. ENDORSEMENTS EFFECTIVE AT INCEPTION:**    AS SCHEDULED

**ITEM F. TERMINATION OF PRIOR POLICY(IES):**    DA 0100967-03

**ITEM G. DISCOVERY CLAUSE:**

(1) Additional Premium:    150% OF THE ANNUAL PREMIUM

(2) Additional Period:    TWELVE (12) MONTHS

**ITEM H. POLICY PERIOD PREMIUM:**    $110,500.00

_____
Authorized Representative

1/4/05
Date

DO 00 R034 02 1103

**EXCESS FINANCIAL PRODUCTS INSURANCE POLICY**

**SCHEDULED ENDORSEMENTS**

It is agreed that Item E. Endorsements Effective At Inception is amended to read as follows:

The following endorsements are attached to and made part of this policy:

SCHEDULE

|   | | | |
|---|---|---|---|
|   | RN00N02600 | 5/93 | IN WITNESS PAGE |
| 1 | DO00H11001 | 12/03 | NUCLEAR LIABILITY EXCLUSION |
| 2 | DO00R01301 | 5/97 | EXCESS PENDING AND PRIOR LITIGATION EXCLUSION |
| 3 | DO00R01602 | 2/04 | EXCESS ABSOLUTE PRIOR NOTICE EXCLUSION |
| 4 | GU207 | 6/78 | EXCESS RECOGNIZE DEPLETION ENDORSEMENT |
| 5 | GU207 | 6/78 | NON FOLLOW FORM ENDORSEMENT |
| 6 | GU207 | 6/78 | RELIANCE ON PROPOSAL |
| 7 | DO04R29301 | 5/97 | CANCELLATION ENDORSEMENT - CALIFORNIA |
| 8 | DO00H09700 | 11/02 | AMENDMENT OF "POLICY YEAR" TO "POLICY PERIOD" |
| 9 | HG00H00900 | 3/02 | MAILING ADDRESS FOR NOTICE ENDORSEMENT |
|   | HG00H00101 | 5/03 | IMPORTANT NOTICE TO POLICYHOLDERS - TERRORISM RISK INSURANCE ACT OF 2002 |
|   | EL04R11100 | 4/93 | IMPORTANT INFORMATION TO POLICYHOLDERS |

# The Hartford

### EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

## I.    INSURING AGREEMENT

A.    The Insurer designated in the Declarations (a Stock Insurance Company herein called the "Underwriters"), in consideration of the payment of the premium and subject to all of the terms, conditions and exclusions of this policy, agrees with the Insured(s) as follows:

The Underwriters shall provide the Insured(s) with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collectible or not.

## II.    LIMIT OF LIABILITY



A.    It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") and the Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of Underwriters in each Policy Year.

B.    In the event of the reduction or exhaustion of the aggregate limits of liability under the Primary and Underlying Excess Policy(ies) by reason of losses paid thereunder for claims first made while this policy is in force, this policy, shall:

1.    in the event of such reduction, pay the excess of the reduced Primary and Underlying Excess Limits,

2.    in the event of exhaustion, continue in force as Primary Insurance, subject to the Underwriters' Limit of Liability and to other terms, conditions and exclusions of this policy,

provided always that in the latter event this policy shall only pay excess of the retention/deductible applicable to such Primary Insurance as set forth in the Primary Policy, which shall be applied to any subsequent loss in the same manner specified in such primary insurance. Written notice of exhaustion of Underlying Insurance shall be given the Underwriters immediately upon such exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Underwriters to defend any Insured or to pay defense or any claim expenses in addition to the Limit of Liability set forth in Item C. of the Declarations.

C.    The inclusion of more than one Insured shall not operate to increase the Underwriters Limit of Liability as set forth in Item C of the Declarations.

## III.  PRIMARY AND UNDERLYING INSURANCE

A.  This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend and except as otherwise provided herein) as are contained in or as may be added to the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy(ies).

B.  In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(ies).

C.  It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall be maintained in full effect while this policy is in force except for any reduction of the aggregate limits contained therein (as provided for in Paragraph II(B) above).

D.  Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Underwriters shall be liable only to the extent that it would have been liable had the Insured complied therewith.

## IV.  COSTS, CHARGES AND EXPENSES

A.  No costs, charges or expenses for investigation or defense of claims shall be incurred, or settlements made, without the Underwriters' written consent, such consent not to be unreasonably withheld; however, in the event of such consent being given, the Underwriters will pay, subject to the provisions of Paragraph II, such costs, settlements, charges or expenses. Should any claim or suit be settled or disposed of for not more than the Underlying Insurance (Item D of the Declarations) then no costs shall be paid by the Underwriters.

B.  The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any claim against any Insured(s) for matters covered by this policy even if the Primary or Underlying Excess Policy(ies) has not been exhausted.

C.  All expenses resulting from the investigation and defense of claims to which this policy applies, including court costs, appeal bonds, pre-judgment interest, and post-judgment interest, shall be included in the Limit of Liability of this policy and not in addition thereto.

## V.  GENERAL CONDITIONS

A.  Definitions

1.  Primary Policy means the policy scheduled in Item D(1) of the Declarations.

2.  Underlying Excess Policy(ies) means the policy(ies) scheduled in Item D(2) of the Declarations.

3.  Underlying Insurance means all those policies scheduled in Item D of the Declarations.

4.  Policy Year means the period of one year following the effective date and hour of this policy or any anniversary thereof, or if the time between the effective date or any anniversary and the termination of the policy is less than one year, such lesser period.

B.  Discovery Clause

If the Underwriters shall cancel or refuse to renew this policy, the Insured shall have the right upon payment of an additional premium as set forth in Item G(1) of the Declarations, to an extension of the coverage granted by this policy in respect of any claim or claims which may be made against

the Insured during the period set forth in Item G(2) of the Declarations, after the date of such cancellation or non-renewal, but only in respect of any act committed before the date of cancellation or non-renewal of the policy. A written request for this extension, together with payment of the appropriate premium, must be made to the Underwriters within ten (10) days after the effective date of cancellation or non-renewal of this policy.

C.    Subrogation

All recoveries or payments recovered or received subsequent to a settlement under this policy shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the Insured and the Underwriters.

D.    Cancellation Clause

This policy may be cancelled by the Insured at any time by written notice or surrender of this policy. This policy may also be cancelled by, or on behalf of, the Underwriters by delivering to the Insured or by mailing to the Insured by registered, certified or other first class mail, at the Insured's address shown in this policy, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall become effective. The mailing of such notice as aforesaid shall be sufficient proof of notice, and this policy shall terminate at the date and hour specified in such notice.

If the policy shall be cancelled by the Insured, the Underwriters shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitations permitted by law.

E.    Termination of Any Underlying Insurance

This policy shall terminate immediately upon the termination of any Underlying Insurance, whether by the Insured or any Underlying Insurer. Notice of cancellation or non-renewal of all or part of the Underlying Insurance duly given by any such Insurer shall serve as notice of the cancellation or non-renewal of this policy by the Underwriters.

F.    Termination of Prior Policy(ies)

The taking effect of this policy shall terminate, if not already terminated, the policy(ies) specified in Item F of the Declarations.

G.    Notice

The Underwriters shall be given notice in writing as soon as is practicable (a) in the event of the cancellation of any Underlying Insurance and (b) of any additional or return premiums charged or paid in connection with any Underlying Insurance.

Any changes in coverage or in the Insured in the Underlying Insurance shall be promptly reported to the Underwriters and the Insured shall, upon request, furnish the Underwriters with copies of such changes.

In the event any claim is made against any Insured, written notice shall be given to the Underwriters at Hartford Plaza, Hartford, CT, 06115,  ATTN: CLAIMS DIVISION, and otherwise pursuant to all

appropriate notice provisions contained in the Underlying Insurance. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time.

If legal proceedings are begun, the Insured shall forward to Underwriters each pleading or document, or a copy thereof, received by the Insured or the Insured's representatives, together with copies of reports or investigations made by the Insured with respect to such proceedings.

H.    Company Authorization Clause

Except as respects the giving of notice to exercise the Discovery Clause under Paragraph V(b), by acceptance of this policy, the Insured named in Item A of the Declarations agrees to act on behalf of all Insured(s) with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy.

I.    The Insured shall give the Underwriters such information and cooperation as they may reasonably require.

J.    Loss shall be paid in United States currency.

K.    Appeals

In the event the Insured or the Insured's Primary or Underlying Excess Insurer(s) elects not to appeal a judgment which exceeds the Underlying Insurance, the Underwriters may elect to do so at their own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto.

L.    Other Insurance

If other insurance is available to the Insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and not contribute with, such other insurance.





IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Brian S. Becker, Secretary

David Zwiener, President

ENDORSEMENT NO:    1

**This endorsement, effective 12:01 am,**    11/01/04                    forms part
**of policy number**    00 DA 0100967-04

**issued to:**            CROWLEY MARITIME CORPORATION

**by:**                TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS FINANCIAL PRODUCTS INSURANCE POLICY

The Underwriters shall not be liable to make any payment for loss based upon, arising from, or in any way related to any:

1.    actual, alleged or threatened discharge, dispersal, release or escape of ; or

2.    direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize,

nuclear material, nuclear waste or radiation.

Without limiting the foregoing, this exclusion shall also apply to any Derivative Claim or Securities Claim alleging the above described loss.

"Derivative Claim" means a civil proceeding commenced in the name of an entity insured under this policy by any security holders of such entity in their capacity as such against a natural person insured under this policy for a wrongful act of such person in their capacity with the insured entity.

"Securities Claim" means any claim: (i) alleging a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or any similar law, including any rules or regulations promulgated thereunder; or (ii) arising from the purchase or sale of, or the offer to purchase or sell, any securities issued by an entity insured under this policy.

All other terms and conditions remain unchanged.

David Zwiener, President

ENDORSEMENT NO:      2

This endorsement, effective 12:01 am,    11/01/04                            forms part
of policy number          00 DA 0100967-04

issued to:
                    CROWLEY MARITIME CORPORATION

by:
                    TWIN CITY FIRE INSURANCE CO.


## EXCESS PENDING AND PRIOR LITIGATION EXCLUSION


### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

It is agreed that in addition to any exclusions made part of the Underlying Insurance, the following exclusion shall apply to this policy:

Underwriters shall not be liable to make any payment for loss in connection with any claim made against any Insured:

1.  arising from any litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured occurring prior to, or pending as of, __8/22/85__, of which any Insured had received notice or otherwise had knowledge as of such date;

2.  arising from any subsequent litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured; or

3.  arising from any act of an Insured which gave rise to such prior or pending litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured.


All other terms and conditions remain unchanged.

ENDORSEMENT NO:    3

**This endorsement, effective 12:01 am,**    11/01/04                           forms part
**of policy number**    00 DA 0100967-04

**issued to:**    CROWLEY MARITIME CORPORATION

**by:**    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCESS ABSOLUTE PRIOR NOTICE EXCLUSION

This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

In addition to any exclusions made part of the Underlying Insurance, the following exclusion shall apply to this policy:

Underwriters shall not be liable to make any payment for loss in connection with any claim made against the Insured(s):

where all or part of such claim is, directly or indirectly, based on, attributable to, arising out of, resulting from, or in any manner related to wrongful acts or any facts, circumstances or situations of which notice of claim or occurrence which could give rise to a claim has been given prior to the effective date of this policy under any other policy or policies.

All other terms and conditions remain unchanged.

David Zwiener, President

GU 207
(6-78)

# ENDORSEMENT    4

This endorsement, effective on 11/01/04                                  at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04              of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**EXCESS RECOGNIZE DEPLETION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Excess Financial Products Insurance Policy

Section **II. LIMIT OF LIABILITY,** is amended to include the following:

If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under this policy shall not apply to any claim that is subject to such sub-limit of liability.  However, any such claim shall be recognized under this policy solely for purposes of exhausting, to any extent, the Underlying Insurance.

All other terms and conditions remain unchanged.

GU 207
(6-78)

## ENDORSEMENT    5

This endorsement, effective on 11/01/04                    at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04          of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

### NON FOLLOW FORM ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.     For purposes of this policy, the Primary Policy shall be deemed to include only the terms and conditions
       (including limits of liability) of and endorsements to the following coverage sections of the Primary Policy :

       General Terms and Conditions        Form 14-02-7303
              (Ed. 11/2002)

       Executive Liability and Indemnification   Form 14-02-7302
              (Ed. 11/2002)

       Outside Directorship Liability        orm 14-02-7887, 14-02-8844
              (Ed. 11/2002)

The policy shall not follow or otherwise be subject to any of the terms and conditions of or endorsements to any other
coverage section of the Primary Policy provided, however, that with respect to the payment of loss under such other
coverage section of the Primary Policy, the Insurer will recognize such payment for the purpose of reducing or exhausting
the limits of liability of the Primary and/or Underlying Excess Policies.

2.     Notwithstanding any provision in the Underlying Insurance or this policy to the contrary, the maximum
       aggregate liability of the Underwriters under this policy on account of all claims first made during the same
       Policy Year, whether covered under one or more of the coverage sections listed above, shall be the Limit of
       Liability set forth in Item C. of the Declarations of this policy.

All other terms and conditions remain unchanged.

Rev. Ed. Date (04/02)
GU 207 (6-78)

Page 1 of 1

GU 207
(6-78)

## ENDORSEMENT        6

This endorsement, effective on 11/01/04                                    at 12:01 A.M. standard time, forms a part of

Policy No. 00 DA 0100967-04                     of the TWIN CITY FIRE INSURANCE CO.

Issued to CROWLEY MARITIME CORPORATION

David Zwiener, President

### RELIANCE ON PROPOSAL

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that the Underwriters have issued this policy in reliance upon the Proposal

"Proposal" means:

(1)    the application for this policy, including any materials or information submitted therewith;

(2)    any application, including any materials or information submitted therewith, for any policy in an uninterrupted series of policies issued by the Underwriters, or any insurance company controlling, controlled by or under common control with the Underwriters, of which this Policy is a renewal or replacement;

(3)    any application for any Underlying Insurance, including any materials or information submitted therewith; and

(4)    any publicly available information filed by the Insured with the United States Securities and Exchange Commission prior to the inception date of this policy.

All other terms and conditions of this policy remain unchanged.

This endorsement, effective 12:01 am,      11/01/04                                          forms part
of policy number

     00 DA 0100967-04

issued to:

     CROWLEY MARITIME CORPORATION

by:

     TWIN CITY FIRE INSURANCE CO.

# CANCELLATION ENDORSEMENT

# CALIFORNIA

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following definitions apply solely for purposes of this endorsement:

1) "Insurer" means the insurance company which issued this policy;

2) "Named Insured" means the entity listed on the Declarations Page; and

3) "First Named Insured" means the entity listed on the Declarations Page.

It is agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

A. CANCELLATION

  1.   The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation, provided the First Named Insured does not cancel this policy after the effective date of the acquisition of the First Named Insured as described in this policy.

  2.   If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on non-payment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

  3.   Written notice of cancellation shall be delivered or mailed to the producer of record and the Named Insured at the mailing address shown on the policy at least ten (10) days prior to the effective date of cancellation. The notice shall state the effective date of and the reason for the cancellation. Proof of mailing of the notice shall be sufficient proof of notice.

B. NONRENEWAL

  If the Insurer decides not to renew the policy, the Insurer shall mail or deliver to the producer of record and the Named Insured notice of nonrenewal at the mailing address shown on the policy at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy. Proof of mailing of the notice shall be sufficient proof of notice.

  We are not required to send notice of nonrenewal in the following situations:

DO 04 R293 01 0597

ENDORSEMENT NO:     7

a.    If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

b.    If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements cited above.

c.    If you have obtained replacement coverage, or if the Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d.    If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e.    If the Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f.    If we have made a written offer to the First Named Insured, in accordance with the time frames shown in the nonrenewal notice requirements cited above, to renew the policy under changed terms or conditions or at an increased premium rate when the increase exceeds 25%.

C.    MIDTERM CHANGES IN COVERAGE

If a policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately, no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured which materially increase any of the risks or hazards insured against.

2.    Failure by the Named Insured to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

3.    A determination by the commissioner that loss of or changes in an Insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the Insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

4.    A change by the Named Insured in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the Named Insured and the producer of record at the mailing address shown on the policy at least thirty (30) days prior to the effective date of any increase, reduction or change. The notice shall state the effective date of, and the reasons for, the increase, reduction, or change.

All other terms and conditions of this Policy remain unchanged.

ENDORSEMENT NO:        8

**This endorsement, effective 12:01 am,**    11/01/04        forms part
**of policy number**    00 DA 0100967-04

**issued to:**        CROWLEY MARITIME CORPORATION

**by:**            TWIN CITY FIRE INSURANCE CO.


## AMENDMENT OF "POLICY YEAR" TO "POLICY PERIOD"

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that:

1.    Section V. GENERAL CONDITIONS A. Definitions 4. is deleted and replaced by:

    Policy Period means the period set forth in Item B of the Declarations, subject to prior termination pursuant to Section V. D. and Section V. E.

2.    All references to "Policy Year" throughout this policy are deleted and replaced by "Policy Period".



All other terms and conditions of this Policy remain unchanged.

DO 00 H097 00 1102                    © 2002, The Hartford                        Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT NO.:**        9

**This endorsement effective on
at 12:01 A.M. standard time**        11/01/04

**Forms part of Policy Number:**    00 DA 0100967-04

**Issued to:**                CROWLEY MARITIME CORPORATION

**By:**                    TWIN CITY FIRE INSURANCE CO.

## MAILING ADDRESS FOR NOTICE ENDORSEMENT

I.    **Notice of Claim or Wrongful Act**

    A.  It is hereby understood and agreed that a notice of any claim or wrongful act
shall be given in writing to the following:

*THE HARTFORD
CLAIMS DEPARTMENT
HARTFORD FINANCIAL PRODUCTS
2 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10016*

*FACSIMILE:  (212) 277-0915*

    B.  It is hereby understood and agreed that where it is stated in the policy or
declarations page that a notice of any claim or wrongful act shall be given in
writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted in
its entirety and replaced with the following:

Notice of any claim or wrongful act shall be given in writing to the following:

*THE HARTFORD
CLAIMS DEPARTMENT
HARTFORD FINANCIAL PRODUCTS
2 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10016*

*FACSIMILE:  (212) 277-0915*

II.    **All Other Notices**

    A. **All notices for a claim or wrongful act must be mailed to the address as specified above in Item (I) of this endorsement.**

    B. It is hereby understood and agreed that all notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*THE HARTFORD*
*COMPLIANCE DEPARTMENT*
*HARTFORD FINANCIAL PRODUCTS*
*2 PARK AVENUE*
*5TH FLOOR*
*NEW YORK, NEW YORK 10016*

    C. With the exception of notice of a claim or wrongful act, it is hereby understood and agreed that where it is stated in the policy or declarations page that a notice shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted in its entirety and replaced with the following:

    All notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*THE HARTFORD*
*COMPLIANCE DEPARTMENT*
*HARTFORD FINANCIAL PRODUCTS*
*2 PARK AVENUE*
*5TH FLOOR*
*NEW YORK, NEW YORK 10016*

All other terms and conditions of the policy remain unchanged.

**Named Insured:**      CROWLEY MARITIME CORPORATION

**Policy Number:**      00 DA 0100967-04

**Effective Date of this Notice:**   11/01/04

**Insurer:**            TWIN CITY FIRE INSURANCE CO.

# IMPORTANT NOTICE TO POLICYHOLDERS – TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, we must make terrorism coverage as defined by the Act available in your policy.  However, the actual coverage provided by your policy for acts of terrorism, as is true for all coverages, is limited by the terms, conditions, exclusions, limits, other provisions of your policy, any endorsements to the policy and generally applicable rules of law.

Any terrorism coverage provided by this policy is partially reinsured by the United States of America under a formula established by Federal Law.  Under this formula, the United States will pay 90% of covered terrorism losses exceeding a statutorily established deductible paid by insurers until such time as insured losses under the program reach $100 billion. If that occurs, Congress will determine the procedures for, and the source of, any payments for losses in excess of $100 billion.

You will not be required to pay a premium for terrorism coverage at this time.  If, upon renewal of your policy, a premium is going to be charged for terrorism coverage, we will provide you with notification of what that premium will be.

**HG 00 H001 01 0503**                 © 2003, The Hartford                 Page 1 of 1

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

THE HARTFORD
COMPLIANCE DEPARTMENT
HARTFORD FINANCIAL PRODUCTS
2 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10016
1-212-277-0400

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

Consumer Affairs Division
California Department of Insurance
300 South Spring Street
Los Angeles, CA 90013
1-800-233-9045

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance have your policy number available.

ILNP 85 14 03 89 CA
EL 04 R111 00 0493

00 DA 0100967-04    11/01/04

# EXHIBIT J

RLI Insurance Company

## Declarations

## Excess Policy

Policy Number: EPG0002704A

Item 1.  **Entity** - Name and Address:

Crowley Maritime Corporation
155 Grand Avenue, Ste. 700
Oakland, CA 94612

Item 2.  **Policy Period**:
From:     November 1, 2004
To:       November 1, 2005
at 12:01 a.m. at the address stated in Item 1.

Item 3.  Limit of Liability:
Each **Policy Period**   $ 5,000,000

Item 4.  **Underlying Insurance**:

|  | Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| (A) **Primary Policy**: | Federal Insurance Company | 8120-0792 | $10,000,000 | November 1, 2004 - November 1, 2005 |
| (B) Other Policies: | | | | |
| First Excess: | Twin City Fire Insurance Co. | 00DA 010096704 | $10,000,000 | November 1, 2004 - November 1, 2005 |

Item 5.  Endorsements Effective at Inception: 2

Item 6.  Termination of Prior Policies:  EPG0002704

Item 7.  Pending or Prior Date: November 1, 2003

Item 8.  Notice to the Insurer Shall Be Addressed to:     RLI Insurance Company
9025 North Lindbergh Drive
Peoria, Illinois 61615-1431

The Insurer issuing this Policy has caused this Policy to be signed by it authorized officers, but it shall not be valid unless also signed by a duly Authorized Representative.

RLI Insurance Company

By: _____

Authorized Representative

**RLI Insurance Company**
**9025 North Lindbergh Drive, Peoria, IL 61615**

## SUPPLEMENTAL DECLARATIONS

EPG0002704A

Insured and Mailing Address:

Crowley Maritime Corporation
155 Grand Avenue, Ste. 700
Oakland, CA 94612

**Coverage for loss caused by certified acts of terrorism are partially reimbursed by the United States Government under a formula whereby the United States Government pays 90% of a covered terrorism loss that exceed a prescribed deductible paid by the insurance Company providing coverage.**

Please note: The portion of your annual premium that is attributable to coverage for acts of terrorism is $Waived

Policy No. EPG0002704A                                                RLI Insurance Company

# EXCESS POLICY

**In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, RLI Insurance Company, herein called the "Insurer," and the Insureds agree as follows:**

## Insuring Clause

1. The Insurer shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** and, to the extent coverage is further limited or restricted thereby, the terms and conditions of any other **Underlying Insurance**, except as otherwise provided herein. In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Insurance**.

## Definitions

2. When used in this Policy:

   (a) **"Entity"** means the organization designated in Item 1 of the Declarations.

   (b) **"Insureds"** means those persons or organizations insured under the **Primary Policy**.

   (c) **"Primary Policy"** means the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

   (d) **"Policy Period"** means the period of time specified in Item 2 of the Declarations, subject to prior termination in accordance with Section 13 below. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

   (e) **"Sublimit"** means any **Underlying Insurance** limit of liability which:

      (i) applies only to a portion of the coverage granted under such **Underlying Insurance**, and

      (ii) reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** as set forth in Item 4 of the Declarations.

   (f) **"Underlying Insurance"** means all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them.

   (g) **"Underlying Limit"** means the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all **Underlying Insurance** plus the applicable uninsured retention, if any, under the **Primary Policy**.

## Maintenance of Underlying Insurance

3. All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and each such policy shall afford the same coverage as such policy afforded at inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder. If the **Underlying Insurance** is not so maintained, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

## Depletion of Underlying Limit

4. Only in the event of reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance**, or the **Insureds** in the event of financial impairment or insolvency of an insurer of the **Underlying Insurance**, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this Policy shall:

(a) in the event of reduction of the **Underlying Limit**, attach excess of the reduced **Underlying Limit**, and

(b) in the event of exhaustion of the **Underlying Limit**, continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.

The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Insurer.

## Underlying Sublimits

5.  If any **Underlying Limit** is subject to a **Sublimit**:

(a) coverage hereunder shall not drop down excess of such **Sublimit**, however

(b) the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of covered loss subject to such **Sublimit**.

## Limit of Liability

6.  The Insurer's maximum liability for all loss covered under this Policy shall be the amount set forth in Item 3 of the Declarations.

## Claim Participation

7.  The Insurer may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this Policy even if the **Underlying Insurance** has not been exhausted.

## Pending or Prior Matters

8.  The Insurer shall not be liable under this Policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

## Subrogation - Recoveries

9.  In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insured**.

Any amounts recovered after payment hereunder, through subrogation or otherwise, shall be apportioned in the inverse order of payment of loss hereunder. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries.

## Notice

10. The **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the Insurer written notice of any of the following events as soon as practicable, but in no event later than thirty (30) days after such event:

(a) the alteration or cancellation of any **Underlying Insurance**;

(b) any notice by the **Insureds** under any **Underlying Insurance**;

(c) any additional or return premiums charged or paid in connection with any **Underlying Insurance**; and

(d)  the exhaustion of the limit of liability under any **Underlying Insurance**.

All notices to the Insurer under this Policy shall be given, in writing, to the address shown in Item 8 of the Declarations. Such notice shall be effective on the date of receipt by the Insurer at such address.

### Insurer Authorization Clause

11.  By acceptance of this Policy, the **Entity** agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for under this Policy (except the giving of notice to apply for any extended reporting period), and the **Insureds** agree that the **Entity** shall act on their behalf.

### Alteration

12.  No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized employee of the Insurer.

### Termination

13.  This Policy shall terminate at the earliest of the following times:

(a)  sixty days after the receipt by the **Entity** of a written notice of termination from the Insurer;

(b)  upon the receipt by the Insurer of written notice of termination from the **Entity**;

(c)  upon expiration of the **Policy Period**; or

(d)  at such other time as may be agreed upon by the Insurer and the **Entity**.

Notice to the **Insureds** of cancellation or non-renewal of any **Underlying Insurance** duly given by any underlying insurer shall serve as notice to the **Insureds** of cancellation or non-renewal of this Policy by the Insurer.

The Insurer shall refund the unearned premium computed at customary short rates if the Policy is terminated by the **Entity**. Under any other circumstances the refund shall be computed pro rata.

### Termination of Prior Policies

14.  Any policies specified in Item 6 of the Declarations shall terminate, if not already terminated, as of the inception date of this Policy.

# Excess Policy

**ENDORSEMENT**

Issued to: **Crowley Maritime Corporation**

Insurer: **RLI Insurance Company**

Effective date of
this endorsement: **November 1, 2004**

To be attached to and form part of
Policy No.: **EPG0002704A**

Endorsement No: **1**

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## TERMINATION/CANCELLATION ENDORSEMENT

It is agreed that subsection 13, TERMINATION, is deleted in its entirety and that, with respect to the cancellation, termination or non renewal of this Policy, the terms and conditions of the **Primary Policy** shall apply.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

# Excess Policy

**ENDORSEMENT**

Issued to: **Crowley Maritime Corporation**

Insurer: **RLI Insurance Company**

Effective Date of
this Endorsement: **November 1, 2004**

To be attached to and form part of
Policy No.: **EPG0002704A**

Endorsement No.: **2**

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

With respect to any one or more "certified acts of terrorism," we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Acts of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism.":

1. The act result in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

# Excess Policy

**ENDORSEMENT**

Issued: to: **Crowley Maritime Corporation**

Issued by: **RLI Insurance Company**

Effective Date of
this Endorsement: **November 1, 2004**

To be attached to and form part
of Policy No.: **EPG0002704A**

Endorsement No.: **3**

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## AMEND FOLLOW FORM ENDORSEMENT

It is hereby understood and agreed that, notwithstanding anything in this Policy to the contrary, this Policy shall follow form of, and shall afford coverage in conformance with, the following sections of the **Primary Policy:**

| | |
|---|---|
| General Terms and Conditions | Form 14-02-7302 |
| Executive Liability and Indemnification | Form 14-02-7303 |

It is further understood and agreed that this Policy shall not follow form of, and shall not afford coverage in conformance with, the following sections of the **Primary Policy:**

| | |
|---|---|
| Employment Practices Liability | Form 14 -02-7304 |
| Fiduciary Liability | Form 14 -02-7306 |
| Crime | Form 14 -02-7307 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED



**Maryann Schultz**
832-476-6793 Direct
832-476-6590 Fax
maryann_schultz@ars.aon.com

*Aon Risk Services*

December 6, 2004

Ms. Patricia Toner
Crowley Maritime Corporation
155 Grand Avenue, Suite 700
Oakland, CA  94612

**RE:    D&O Liability
Policy #EPG 0002704A (RLI - 2nd excess)
Effective: 11/1/2004 – 11/1/2005**

Dear Pat:

Enclosed please find Endorsement #3 to the above-referenced policy. This amendment clarifies that this policy is only excess of the Chubb D&O and not the other coverage parts. It has been checked and found to be correct. This should complete your receipt of all corrections to this policy.

Please take a few minutes to review and file the enclosed item and, should you have any questions, feel free to contact us.

Thank you again for your business!

Regards,


Maryann Schultz
Technical Associate
Aon Financial Services Group

/mas
Enclosure

cc:    Alan Teed (Aon) – w/enclosure

RECEIVED

DEC 1 3 2004

*Aon Risk Services of Texas, Inc.*
*d/b/a Aon Risk Insurance Services of Texas, Inc. • CA License 0559715*
1330 Post Oak Blvd., Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

# EXHIBIT K

*Author's Direct Line:* 303-782-3354
*Author's Fax:*         303-782-2535

**AON**

*Aon Risk Services*
*Financial Services Group*

<u>**VIA Airborne: 24271794853**</u>

December 20, 2004

Chubb Group of Insurance Companies
15 Mountain View Drive
Warren, NJ 07059
Attention: Claims Department

|  |  |  |
|---|---|---|
| **RE:** | **Insured:** | Crowley Maritime Corporation |
|  | **Policy:** | Type of Policy: Directors' and Officers' |
|  |  | Policy Number: 8120-0792 |
|  |  | Policy Period: 11/01/2004 –11/01/2005 |
|  | **Matter:** | *Franklin Balance Sheer Investment Fund, et al* |

Dear Claims Adjuster,

On behalf of Crowley Maritime, Corp. and its Insureds, and in accordance with the reporting provisions of the policy, we hereby give notice under the Policy, or any other applicable policies, that a claim has been made against certain Insureds in the above referenced action. I have enclosed a copy of the Complaint, as well as a letter from the risk manager for the above referenced action. The details are as follows:

| Claimant | Court & File Date | Allegations | Demand |
|---|---|---|---|
| *Franklin Balance Sheet Investment Fund, et al* | November 30, 2004 | XXX | XXX |

The Insureds have selected James Kramer and Richard Smith, of the law firm, Orrick, Herrington & Sutcliffe, LLP, 405 Howard St., San Francisco, CA 94105, telephone numbers (415) 773-5759 and (415) 773-5839, as well as Jon Abramczyk, of the law firm, Morris Nichols Arsht & Tunnell, 1201 N. Market St., Wilmington, DE, 19899, telephone number, (302) 575-7211.

RECEIVED

DEC 2 1 2004

Chubb Group of Insuranc  ompanies.
12/20/2004

Please acknowledge receipt of this claim and provide Chubb's consent to the retention of defense counsel, and authorization to incur defense costs. If there are any litigation management guidelines, which you would request the Insureds to comply with, please provide a copy of those guidelines.

By copy of this letter, we are also providing the Insured's excess D&O carriers with notice of this claim. In addition to myself, courtesy copies of any correspondence should be sent to: Steve Ficon, of Crowley Maritime Corporation, 155 Grand Avenue, Suite 700, Oakland, CA 94612; Patricia Toner, of Crowley Maritime Corporation, 155 Grand Avenue, Suite 700, Oakland, CA 94612; James Kramer, of Orrick, Herrington & Sutcliffe, LLP; Richard Smith, of Orrick, Herrington & Sutcliffe, LLP; Jon Abramczyk, of Morris Nichols Arsht & Tunnell; and Maryann Schultz, of Aon FSG.

If you need any additional information, or if I can be of further assistance, please do not hesitate to contact me.

Sincerely,

Janelle Quinn
Claims Coordinator
Aon Financial Services Group

jq
Enclosures

cc:     Steve Ficon
        Crowley Maritime Corporation
        w/o enclosures
        Via Airborne Express: 24271606450

        Patricia Toner
        Crowley Maritime Corporation
        w/o enclosures
        Via Airborne Express: 24271639652

Chubb Group of Insurance Companies.
12/20/2004

The Hartford
2 Park Avenue
New York, NY 10016
Policy #: DA 01000967-04
Via Airborne Express: 24271834156

RLI Insurance Company
9025 North Lindbergh Drive
Peoria, IL 61615
Policy #: EPG0002704A
Via Airborne Express: 2421817850

Maryann Schultz
Aon Risk Services
1330 Post Oak Blvd. Ste 900
Houston, TX 77056
w/o enclosures
Via Email

Jon Abramczyk
Morris Nichols Arsht & Tunnell
1201 N. Market St.
Wilmington, DE 19899
w/o enclosures
Via Airborne Express: 24271909454

James Kramer
Orrick, Herrington & Sutcliffe, LLP
405 Howard Street
San Francisco, CA 94105
w/o enclosures
Via Airborne Express: 24271660652

Richard Smith
Orrick, Herrington & Sutcliffe, LLP
405 Howard Street
San Francisco, CA 94105
w/o enclosures
Via Airborne Express: 24271674151