STROOCK & STROOCK & LAVAN LLP
MICHAEL F. PERLIS (State Bar No. 95992)
mperlis@stroock.com
RICHARD R. JOHNSON (State Bar No. 198117)
rjohnson@stroock.com
RACHAEL SHOOK (State Bar No. 251628)
rshook@stroock.com
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
lacalendar@stroock.com

Attorneys for Defendant and Counterclaimant
  TWIN CITY FIRE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>FEDERAL INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; RLI INSURANCE COMPANY; and DOES 1-20, inclusive,<br><br>　　　　Defendants. | **Case No. CV-08-00830 SI**<br><br>[Hon. Susan Illston]<br><br>**REPLY IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S MOTION TO DISQUALIFY RICHARD SHIVELY AND PHILIP PILLSBURY, OF THE FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:　　August 22, 2008<br>TIME:　　9:00 a.m.<br>PLACE:　 Courtroom 10<br><br>[Declaration of Michael F. Perlis filed concurrently] |

LA 51075414v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................4

    A. Rule 5-210 of the California Rules of Professional Conduct .....................................4

    B. Pillsbury, Shively, and Possibly Others at Pillsbury & Levinson LLP Should be Disqualified Because Their Testimony at Trial Will Cause Injury to the Integrity of the Judicial Process and Substantial Detriment to the Insurers ...............4

        1. The Issue of the Insurers' Consent to Settlement Is Material ........................4

        2. Crowley's Counsel's Testimony on the Issue of Consent is Necessary..........8

        3. The Issue of the Insurers' Consent is Contested ............................................9

        4. Crowley's Consent to its Counsel's Dual Roles as Advocates and Witnesses Does Not Override the Arrangement's Fundamental Unfairness to the Insurers ....................................................................................................9

        5. Crowley Will not Be Unduly Prejudiced by the Disqualification .................10

    C. The Declarations Filed In Support of Crowley's Opposition Are Irrelevant to the Motion and Should Not Change the Fact that Crowley's Counsel Should be Disqualified from Participation as Trial Counsel ..................................................11

        1. Crowley's Public Filings and Rudimentary Securities Law Indicate that Crowley Would not Have "Been Entitled to Pull out of the Franklin Action Settlement" Had the Insurers Refused to Consent to the Settlement ......................................................................................................11

        2. Basic Contract Law Indicates that Crowley Would not Have "Been Entitled to Pull out of the Franklin Action Settlement" Had the Insurers Refused to Consent to the Settlement ............................................13

        3. Crowley Misstates Applicable Securities Law in Asserting that it was "Constrained by Significant Confidentiality Issues" from Including the Insurers in the Settlement Negotiations with Plaintiffs .........................14

III. CONCLUSION .....................................................................................................................15

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51075414v1
- i -
REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

# TABLE OF AUTHORITIES

**CASES**

Page(s)

Aerojet-Gen. Corp. v. Commercial Union Ins.,
  155 Cal. App. 4th 132 (2007) ..................................................................................................7

Basic, Inc. v. Levinson,
  485 U.S. 224 (1988) ...............................................................................................................13

Benas v. Baca,
  No. CV 00-11507 LGB, 2003 WL 21530209 (C.D. Cal. Jul. 1, 2003) ...................................6

Cass v. American Guarantee & Liability Ins. Co.,
  No. 601180/06, 2006 WL 3359664 (N.Y. Sup. Oct. 30, 2006) ...............................................5

Fuller-Austin Insulation Co. v. Highlands Ins. Co.,
  135 Cal. App. 4th 958 (2006) .....................................................................................3, 6, 7, 15

Gribaldo, Jacobs, Jones and Assoc. v. Agrippini Versicherunges A.G.,
  3 Cal. 3d 434 (1970) ................................................................................................................7

Houck Construction, Inc. v. Zurich Specs. London Ltd.,
  No. CV 0603832 AG (PLAX), 2007 WL 1739711 (C.D. Cal. June 4, 2007) .......................7

Jamestown Builders v. Gen. Star Indem. Co.,
  77 Cal. App. 4th 341 (1999) ....................................................................................................7

Low v. Golden Eagle Ins. Co.,
  110 Cal. App. 4th 1532 (2003) ................................................................................................7

Lyle v. Super. Ct.,
  122 Cal. App. 3d 470 (1981) ................................................................................................4, 9

M.K.B. v. Eggleston,
  414 F. Supp. 2d 469 (S.D.N.Y. 2006) ...................................................................................10

People v. Donaldson,
  93 Cal. App. 4th 916 (2001) ..................................................................................................10

Safeco Ins. Co. v. Super. Ct.,
  71 Cal. App. 4th 782 (1999) ....................................................................................................7

Smith, Smith & Kring v. Super. Ct.,
  60 Cal. App. 4th 573 (1997) ................................................................................................4, 9

Vigilant v. Bear Stearns,
  10 N.Y.3d 170 (Ct. App. 2008) ...............................................................................................7

Yee v. Ventus Capital Svcs.,
  No. 05-03097 RS, 2006 WL 305087 (N.D. Cal. Oct. 26, 2006). .......................................4, 9

# TABLE OF AUTHORITIES
### (continued)

<u>**Page(s)**</u>

**STATUTES**

Cal. R. of Prof. Conduct 5-210 ................................................................................................. 1, 4, 5

"Rule 10b-5," 17 C.F.R. § 240.10b-5 ............................................................................................ 13

"Rule 11," Fed. R. Civ. Proc. 11 ............................................................................................... 2, 12

"Rule 100(b)(2)," 17 C.F.R. 243.100(b)(2) ..................................................................................... 15

"Regulation F-D," 17 C.F.R. 243.100, et seq. ......................................................................... 14, 15

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant and Counterclaimant Twin City Fire Insurance Company ("Twin City") and Defendant Federal Insurance Company ("Federal") (collectively, the "Insurers") have demonstrated, in their Motion to Disqualify Richard Shively and Philip Pillsbury, Jr., that Messrs. Shively and Pillsbury should be disqualified from acting as trial counsel for Plaintiff and Counter-defendant Crowley Maritime Corporation ("Crowley"), because: (1) they will be called as percipient witnesses regarding knowledge in their exclusive possession concerning: (a) Crowley's failure to obtain the Insurers' prior written consent to its settlement of the underlying action, (b) their own efforts to mislead the Insurers regarding whether and when Crowley had agreed to settle without the Insurers' consent, and (c) conversations Mr. Shively had with Federal and Crowley purportedly regarding the consent issue; (2) the Insurers will be prejudiced, and the integrity of the judicial process impaired, by Messrs. Shively's and Pillsbury's serving in the dual role of attorney-witness; and (3) Crowley will not be prejudiced by having to retain alternate trial counsel, since Messrs. Shively and Pillsbury will still be able to represent it in every capacity other than as an advocate before the jury (which is true *a fortiori* now that Crowley has retained additional counsel from a very large firm).[1]

Rather than responding to the Insurers' Motion on the merits, Crowley opted instead to: (1) attempt to confuse the issues and distract from the merits by submitting a brief that misstates

---

[1] Crowley, in its Opposition, has not rebutted (or really even addressed) any of the dispositive points demonstrating the necessity of disqualification. To the contrary, to the extent that the Opposition is relevant at all to the issue of disqualification, it actually supports the Insurers' Motion, inasmuch as it further demonstrates: (1) that Crowley's failure to obtain the Insurers' prior written consent to its settlement of the underlying litigation, and Messrs. Shively's and Pillsbury's materially misleading efforts to induce the Insurers to waive their rights under the consent provision, are hotly-contested factual issues concerning which Messrs. Shively and Pillsbury, among others, will be called to testify; (2) that Messrs. Shively's and Pillsbury's credibility as witnesses regarding their own false representations to the Insurers concerning consent, and Mr. Shively's disputed allegation that Federal consented in a telephone conversation with him, will be vigorously debated by trial counsel before the jury; and (3) that Crowley will not be prejudiced by the disqualification of Messrs. Shively and Pillsbury as trial advocates before the jury, since it has already retained a much larger, and well-respected, law firm that is perfectly capable of arguing the case to the jury.

LA 51075414v1                                                          - 1 -

REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S
MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF
PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

the law and the facts, and (apparently mistaking volume for substance) a three-inch thick stack of declarations that have nothing to do with the subject of the Motion, *viz.*, whether counsel will be called as witnesses and whether the Insurers will be prejudiced by their occupation of the dual roles; (2) respond in advance to Twin City's Motion for Rule 11 Sanctions, which has been served, but (due to the 21-day safe harbor) not yet filed; and (3) transmogrify the Opposition into a Motion for Partial Summary Judgment on the issue of consent, which Crowley now characterizes as a pure issue of law.[2]

Crowley's arguments about who will call Mr. Shively as a witness are completely beside the point. Such red-herring arguments have no bearing whatsoever on the legal standards for disqualification of attorney-witnesses. Moreover, they simply do not alter the fact that Shively is, by counsel's own admission, the only percipient witness to the purported contents of his telephone conversation with Federal (in which Crowley alleges that Federal gave consent). They also do not alter the fact that Shively and Pillsbury are the only competent percipient witnesses regarding what they knew about the settlement of the underlying action, and (in)accuracy of their demonstrably false statements regarding Crowley's failure to obtain the Insurers' prior written consent, when they drafted and transmitted to the Insurers the March 28, 2007 letter bearing their names as the signatories.

Given the fact that Shively and Pillsbury <u>will</u> be called as witnesses concerning these critical issues, and that their credibility as witnesses <u>will</u> be the subject of argument before the jury, their disqualification as trial counsel is warranted under California law because of the prejudice to the Insurers and the threat to the integrity of the judicial process, notwithstanding Crowley's consent to their serving as attorney-witnesses. That is exactly what the California cases cited in

---

[2] This last gambit is particularly disturbing given that it flies in the face of Crowley's counsel's representations to the Court during the case management conference that Twin City's request for an early summary judgment motion on consent would not be appropriate because consent would be a disputed factual issue concerning which Mr. Shively purportedly had percipient knowledge. (While Mr. Shively denies, in Paragraphs 10 and 11 of his Declaration, that Crowley's counsel argued during the case management conference that summary judgment on consent as a matter of law would be inappropriate because of purported factual disputes concerning which counsel was Crowley's only witness, Mr. Pillsbury, in Paragraph 3 of his Declaration, confirms that this is exactly what happened.)

LA 51075414v1                                     - 2 -
REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S
MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF
PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

Twin City's Motion and in Crowley's Opposition provide, and Crowley offers no authority or argument to the contrary. Instead, it seeks to avoid the attorney-witness problem by convincing this Court to issue a ruling to the effect that the Insurers' prior written consent is unnecessary and irrelevant as a matter of law -- a tactic that must fail, given that the very case that they cite as the purported basis of their argument, *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (2006), is squarely against them on that point.[3]

Finally, there should be no confusion about this point: The Insurers' Motion to Disqualify is not a tactical maneuver on their part. The Insurers are not the ones who wrote the March 28, 2007 letter purporting to seek consent for a settlement to which Crowley had already agreed, and offering false excuses regarding why Crowley failed to seek prior consent as required by the terms of the polices. The Insurers are not the parties who filed a lawsuit for "bad faith" on the basis that the Insurers withheld consent from a settlement that was already a done deal. The Insurers did not file a First Amended Complaint that repeatedly raises consent as an issue. (*See* Footnote 5 below.) The Insurers did not argue to this Court that summary judgment on the issue of consent would be inappropriate because it was a disputed factual issue concerning which their counsel had a different story to tell.[4] Crowley's counsel did all of those things, which make their testimony and their credibility relevant to such an extent that the Insurers, and the judicial process itself, would be prejudiced by counsel's service in the dual role of trial attorney and witness, a problem that cannot be ameliorated (or even addressed) by the informed consent of Crowley, the party that created this problem. Accordingly, pursuant to the authorities cited in the Insurers' Motion (and Crowley cites none to the contrary), Messrs. Shively and Pillsbury should be disqualified from serving as trial counsel.

---

[3] However, if the Court is now inclined to decide that issue at this stage of the case, Twin City would be glad to file the early summary judgment motion regarding consent as it offered to do in the first instance, since a ruling on the issue would result in Twin City's dismissal from the case. But, if the Court is still disinclined to hear an early summary judgment motion on consent, then Crowley's Opposition makes it perfectly clear (if it was not already) that consent is a critical issue concerning which both Shively and Pillsbury will be called to testify, thus making their service as trial counsel inappropriate.

[4] While Crowley argues that there could be other sources of this information, it does not identify any other person who had any input into the March 28, 2007 letter.

## II. ARGUMENT

Before addressing much further below the entirely irrelevant issues that Crowley raises in the Declarations of Abramczyk, Vernon, and Ficon, Twin City first addresses the merits of its Motion to Disqualify, which Crowley does not and cannot address.

### A. Rule 5-210 of the California Rules of Professional Conduct

Pursuant to California Rule of Professional Conduct 5-210 ("Rule 5-210"), an attorney may not represent a client in a jury trial in which the attorney will testify as a witness unless: "(a) the testimony relates to an uncontested matter; (b) the testimony relates to the nature and value of legal services rendered in the case; or (c) the client gives informed written consent." Rule 5–210 applies where the attorney "knows or should know that he or she ought to be called as a witness in litigation in which there is a jury." See Commentary to Rule 5-210. Even if a client gives informed written consent to its attorney's dual role, a court may, nevertheless, disqualify the attorney as trial counsel if the attorney's representation will cause injury to the integrity of the judicial process. *Smith, Smith & Kring v. Super. Ct.*, 60 Cal. App. 4th 573, 579 (1997), quoting, *Lyle v. Super. Ct.*, 122 Cal. App. 3d 470, 482 (1981); *Yee v. Ventus Capital Svcs.,* No. 05-03097 RS, 2006 WL 305087 at *1 (N.D. Cal. Oct. 26, 2006).

Relevant factors to consider include: (1) the combined effects of the strong interest parties have in representation by counsel of their choice and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel; (2) the possibility counsel is using the motion to disqualify for purely tactical reasons; (3) whether counsel's testimony is, in fact, genuinely needed; and (4) whether it is the trial attorney or another member of his/her firm who will be the witness. *Smith*, 60 Cal. App. 4th at 580-581 (vacating trial court's order recusing firm because moving party failed to provide adequate evidence showing why the firm must testify or how testimony would be harmful to the integrity of the judicial process).

### B. Pillsbury, Shively, and Possibly Others at Pillsbury & Levinson LLP Should be Disqualified Because Their Testimony at Trial Will Cause Injury to the Integrity of the Judicial Process and Substantial Detriment to the Insurers

#### 1. The Issue of the Insurers' Consent to Settlement Is Material

Crowley proposes a series of mystifying theories, contradicted by virtually every pleading filed in this case to date, on why 'consent' is not significant enough to the case to warrant the Insurers' concern. Crowley claims that "consent to settle isn't part of anyone's case, let alone a 'critical' part of anyone's case," "[the Insurers'] consent is not an issue in this case, let alone a material one," "[the Insurers'] consent to settle or a supposed failure to cooperate is not part of Crowley's case in chief," and "consent to settle is not an issue in this case." (Opposition, pp. 2, 12-13, 17). In truth, the issue of the Insurers' consent is at the heart of Crowley's own claims, Twin City's counterclaim, and the Insurers' defenses.

Crowley built its claims of bad faith and breach of contract on the assertion that it sought the Insurers' consent, which was "wrongfully withheld," and now ignores the very foundation of its own arguments. In an attempt to evade disqualification, Crowley has forgotten the logic of its FAC, which repeatedly emphasized the Insurers' allegedly wrongful refusal to consent to the *Franklin Action* settlement and in fact mentions the consent issue at least ten times in its ten pages.[5] Clearly, Crowley has devoted considerable space and rhetoric to the "non-issue" of consent. One wonders what would be left of the FAC if this "non-issue" were removed from its pages.[6]

---

[5] In March 2007…Crowley … sought the Insurers' consent to the proposed settlement…" (FAC, ¶ 8); "[o]n April 5, 2007 Federal's attorney Henry Nicholls responded by telephone, advising that Federal, 'had no problem with consenting' to the proposed settlement but wished to obtain additional information relating to the proposed settlement." (*Id*.); "…the Insurers should have consented to the settlement," (*Id.* at ¶ 9); "In determining whether the proposed settlement was reasonable and should be consented to…the Insurers were not permitted consider coverage issues…" (*Id.* at ¶ 10); "…the Insurers failed to conduct any reasonable investigation sufficient to enable them to determine whether the proposed settlement was a reasonable one that ought to be consented to. The Insurer's obligation to give good faith consideration to the proposed settlement, and not to unreasonably withhold their consent, derived not only from the express provisions of the Policies involved, but also from the policies of good faith and fair dealing…"(*Id*.); see also *Id.* at ¶ 11 (arguing that the consent provisions were rendered inoperative); *Id.* at ¶ 12 (arguing that Federal breached the implied covenant by misleading Crowley into believing Federal would consent); *Id.* at ¶ 13 (arguing that Federal waived the consent provision); *Id.* at ¶ 14 (arguing that Crowley was not obligated to obtain consent); *Id.* at ¶ 17 (realleging and incorporating ¶¶ 1-16); *Id.* at ¶ 28 (arguing that Federal breached its duty of good faith by unreasonably withholding consent); *Id.* at ¶ 35 (realleging and incorporating ¶¶ 1-34).

[6] Crowley further argues that the Insurers will not endure substantial detriment due to its Counsels' dual role as trial counsel and percipient witnesses because "consent to settle[,]" which is a condition precedent to coverage of settlement payments, is an affirmative defense "on which the Insurers bear the burden." (Opposition, p. 12). This assertion is not correct. *See*, *e.g.*, *Cass v. American Guarantee & Liability Ins. Co.*, No. 601180/06, 2006 WL 3359664 at *4 (N.Y. Sup. Oct. 30, 2006) (insured has burden of proving satisfaction of conditions precedent policy obligations or

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

In addition to employing a revisionist view of its own FAC, Crowley's Opposition misrepresents California law in an attempt to persuade the Court that "'consent to settle' is not an issue in this case." (Opposition pp. 17-19.) Crowley states that "*Fuller-Austin Insulation Co. v. Highlands Ins. Co*., 135 Cal. App. 4th 958 (2006)[] addresses the issue that the Insurers seek to raise here" and held that "a non-defending insurer that stands silent in the face of a request to approve a settlement cannot escape its coverage obligations on that ground alone." (Opposition p. 17-18). First, as described *supra*, it was Crowley, and not the Insurers, that "raised" the issue of consent in the FAC. Second, Crowley's own description of an Insurer "stand[ing] silent in the face of a request to approve a settlement" belies the differences between *Fuller-Austin* and the instant case, despite Crowley's insistence that the two are "virtually indistinguishable."

In *Fuller-Austin*, the Insured invited the excess insurers to participate in settlement negotiations if they executed a confidentiality agreement and did not interfere with the negotiation process. 135 Cal. App. 4th at 968-969, 989. Representatives of two excess insurers attended a settlement meeting in October 1997, *id.* at 969, and the *Fuller-Austin* court noted that the excess insurers "knew about" continuing negotiations resulting in a plan approved by the majority of the claimants in August 1998. *Id.* However, here, the Insurers heard *nothing* about Crowley's settlement negotiations, which began around December 2006, or about the settlement in general until the end of March 2007, *well after* Crowley had already signed the Stipulation of Settlement, presented it to the Court, obtained board approval, announced it in its SEC filings and a press release, and commenced the tender offer. As such, the *Fuller-Austin* court's determination that the operative policy's consent provision could not be "read to permit an excess insurer to hover in the background of critical settlement negotiations and thereafter resist all responsibility on the basis of lack of consent" does not apply to the Insurers in this case, who had no chance to "hover in the

---

waiver of them by insurer). It is also profoundly irrelevant. Crowley seems to imply that the Insurers could only disqualify Crowley's Counsel if Crowley intended its Counsel to testify on an issue that Crowley deemed relevant to its case in chief and on which Crowley bears the burden. Rule 5-210 is not so limited. *See, e.g*, *Benas v. Baca*, No. CV 00-11507 LGB, 2003 WL 21530209, *3 (C.D. Cal. Jul. 1, 2003) (granting Plaintiff's motion to disqualify defense counsel because Plaintiff intended to call defense counsel as a trial witness to impeach a defense witness).

LA 51075414v1                                                             - 6 -
REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S
MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF
PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

background" of settlement negotiations they were unaware of or to consent to a settlement Crowley had already agreed to. *Fuller-Austin*, 135 Cal. App. 4th at 990.

Besides, a review of the *Fuller-Austin* case reveals that the court's view of California law is directly contrary to Crowley's proffered views:

> Summarized, California law provides that a defending insurer must consent to a settlement in order for there to be coverage, but "if an insurer 'erroneously denies coverage and/or improperly refuses to defend the insured' in violation of its contractual duties, 'the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement....' [Citation.]" [Citation.] The trial court erred in finding that these principles mandated the conclusion that appellants had surrendered their right to consent solely by reserving their rights and not undertaking the defense of the matter. An insurer does not breach any duty to the insured merely by reserving its rights under the policy. [Citation.] Thus, by reserving their rights to contest coverage, appellants did not wrongfully deny coverage in violation of their policies. Moreover, appellants did not breach any duty to defend Fuller-Austin, as their policies did not contain any defense obligations.

*Fuller-Austin*, 135 Cal. App. 4th at 984-85 (citations omitted).

Additionally, since *Fuller-Austin* was decided, the California Court of Appeal has enforced a consent-to-settlement provision as to a non-defending excess insurer with knowledge of ongoing settlement negotiations. *Aerojet-Gen. Corp. v. Commercial Union Ins.*, 155 Cal. App. 4th 132, 146 (2007) (approving the trial court's summary judgment in favor of excess insurers, based on the consent-to-settle provision, despite the fact that the insurers had no duty to defend and in spite of the insured's argument that the insurers' silence during ongoing settlement negotiations should have estopped them from invoking the consent-to-settlement provision).[7]

---

[7] In proffering its mischaracterization of *Fuller-Austin*, Crowley fails to note that consent-to-settle provisions are routinely enforced in California. *See, e.g., Houck Construction, Inc. v. Zurich Specs. London Ltd.*, No. CV 0603832 AG (PLAX), 2007 WL 1739711 (C.D. Cal. June 4, 2007); *Gribaldo, Jacobs, Jones and Assoc. v. Agrippini Versicherunges A.G.*, 3 Cal. 3d 434, 449 (1970); *Fuller-Austin Insulation Co. v. Highlands Ins.*, 135 Cal. App. 4th 958, 984 (2006); *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1546-1547 (2003); *Jamestown Builders v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 347 (1999); *Safeco Ins. Co. v. Super. Ct.*, 71 Cal. App. 4th 782, 787 (1999). *See also Vigilant v. Bear Stearns*, 10 N.Y.3d 170 (Ct. App. 2008) (granting summary judgment motion in favor of excess insurers, reasoning that "as a sophisticated business entity, [the Insured] expressly agreed that the insurers would 'not be liable' for any settlement in excess of $5 million entered into without [the Insurer's] consent. Aware of this contingency in the policies, Bear Stearns nevertheless elected to finalize all outstanding settlement issues and executed a consent agreement before informing its carriers of the terms of the settlement.")

LA 51075414v1     - 7 -

REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

Moreover, Twin City has filed a counterclaim for breach of contract against Crowley based in part on Crowley's breach of the Policies' provision requiring Twin City's consent to settlement. Needless to say, evidence of Crowley's pointed failure to obtain Twin City's consent is material to Twin City's counterclaim for the breach of the consent provision. And even assuming, *arguendo*, that Crowley had not made the Insurers' allegedly wrongful withholding of consent part of its case in chief, the fact remains that the Insurers are entitled to mount their own defenses and to call witnesses with knowledge relevant to those defenses. The Insurers cannot fairly and thoroughly do so when the necessary witnesses are simultaneously allowed to advocate opposing positions to the jury. In other words, even if the Insurers must "bear the burden" on the consent issue, they are still entitled to a fair shot at doing so.

### 2. Crowley's Counsel's Testimony on the Issue of Consent is Necessary

As stated *supra*, the March 28, 2007 letter purportedly seeking the Insurers' consent to the Franklin Action settlement was written on Pillsbury & Levinson letterhead and signed by Mr. Shively on behalf of himself and Mr. Pillsbury. The Insurers believe and allege that the Letter contains material misrepresentations crafted to induce "consent" to a settlement that had already occurred, and so the Letter is central to the Insurers' defenses and to Twin City's counterclaim for breach of contract. Meanwhile, Crowley cites to this Letter as evidence of its attempt to gain the Insurers' consent to settlement (FAC ¶ 8), and thus the Letter is key to Crowley's own claims.

Messrs. Shively, Pillsbury, and possibly others at Pillsbury & Levinson are the only persons who can testify to the genesis of the Letter. Crowley's Opposition states that the requisite testimony could be obtained from Jon E. Abramczyk or Richard Vernon Smith. (Opposition, p. 13). However, neither of these gentlemen is even competent to authenticate the letter, which they neither wrote, nor signed, or issued on their own letterhead; thus their testimony is no substitute for that of Crowley's Counsel.[8]

---

[8] While Crowley appears to suggest, in its response to Twin City's interrogatories, that other counsel had some input into the letter, it declines, on the basis of a bogus assertion of attorney-client privilege, even to identify them. In any event, neither Mr. Abramczyk nor Mr. Smith claims to have provided any input into the letter.

LA 51075414v1                                      - 8 -

REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

Additionally, to the Insurers' knowledge, Mr. Shively is the only witness who will support Crowley's account regarding Federal's purported consent to the settlement, as Mr. Nicholls apparently disputes Crowley's characterization of his conversation with Mr. Shively. (*See*, Declaration of Henry P. Nicholls, ¶¶ 3-9; JCMS [Perlis Decl. 1, Ex. E], pp. 4, 11). Mr. Shively, and perhaps others at his firm, would also appear to be the only witnesses regarding what, if anything, they told their client, Crowley, about the purported statements of Mr. Nicholls during this telephone call, on which purported statements Crowley claims to have detrimentally relied.

### 3. The Issue of the Insurers' Consent is Contested

Crowley asserts that the Insurers have not shown that Messrs. Shively and Pillsbury's anticipated testimony will go to a contested matter, specifically because the Insurers failed to introduce evidence that Mr. Nicholls will contradict Crowley's assertions re Federal's response to Crowley's request for "consent." (Opposition, pp. 9, 12). As stated *supra*, and as described in Michael F. Perlis' declaration filed in Support of the Motion, Mr. Nicholls apparently does dispute Crowley's version of his conversation with Mr. Shively. (*See*, Nicholls Decl., ¶¶ 3-9; JCMS [Perlis Decl. 1, Ex. E], pp. 4, 11). Additionally, the Insurers have already submitted abundant evidence demonstrating that at the point their consent was "sought" Crowley had already agreed to the settlement.[9] Crowley's repeated protestations that the issue of consent is not "contested" only serve to underscore the fact that it *is* contested.

### 4. Crowley's Consent to its Counsel's Dual Roles as Advocates and Witnesses Does Not Override the Arrangement's Fundamental Unfairness to the Insurers

Even where a client consents to its counsel's dual role as witness and trial advocate, disqualification is still proper to avoid injury to the integrity of the judicial process. *Smith, Smith & Kring v. Super. Ct.*, 60 Cal App. 4th 573, 579 (1997), quoting, *Lyle v. Super. Ct*., 122 Cal. App. 3d 470, 482 (1981); *Yee v. Ventus Capital Svcs., No*. 05-03097 RS, 2006 WL 305087 at *1 (N.D. Cal. Oct. 26, 2006). A party may be prejudiced where a lawyer's service as both advocate and

---

[9] See Perlis Decl. 1 with attached exhibits, including the March 28, 2007 Letter; the Stipulation of Settlement, Compromise and Release filed in the underlying Franklin Action; Crowley's Schedule 14d-9 filed with the SEC on March 19, 2007; Crowley's Press Release dated March 19, 2007; and the Joint Case Management Statement filed in the instant case.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

witness in the same matter causes confusion over the lawyer's role. *See, e.g.*, *People v. Donaldson*, 93 Cal. App. 4th 916, 928 (2001) (referring to ABA Ann. Model Rules Prof. Conduct (4th ed. 1999), Legal Background, rule 3.7(a)); *M.K.B. v. Eggleston*, 414 F. Supp. 2d 469, 470 (S.D.N.Y. 2006) (advocate-witness rule "seeks to avoid the confusion and prejudice that may result where a testifying lawyer may have to offer arguments about his own credibility. . . or where there may be an implication that the testifying lawyer is lying to benefit his client").

Here, because Counsel's testimony will be critical to the central issue of consent, the veracity of such statements will be highly debated and the credibility of these witnesses will be vigorously attacked. Thus, allowing Counsel both to testify as a witness (whose testimony will likely be impeached) and to act as trial counsel would permit Counsel unfairly, whether intentionally or not, to bolster Counsel's testimony to the detriment of the Insurers. Counsel would have an unfair opportunity to rehabilitate his testimony – a benefit unavailable to most witnesses and to the Insurers. Moreover, Counsel's representation as trial advocates could also confuse the jury and possibly give more credibility to Counsel as witness. Because Crowley would have the benefit of having a witness also advocate its case, the Insurers will face an uphill battle in arguing the falsity of Counsel's representations regarding the material consent issue.[10]

### 5. Crowley Will not Be Unduly Prejudiced by the Disqualification

The Motion does not seek to Disqualify Crowley's Counsel from all participation in this litigation, but only from acting as trial advocates and from participating in pre-trial activities (such

---

[10] Crowley glibly, and ineffectually, attempts to downplay the potentially confusing and unfair effects of its Counsels' dual role, noting that Federal and Twin City's respective Initial Disclosures reveal that in addition to attorneys at Pillsbury & Levinson, Federal and Twin City may call counsel from Orrick, Herrington & Sutcliffe (Crowley's counsel in the Franklin Action), Morrison & Foerster (Crowley's Special Committee's counsel in connection with the Franklin Action) and Taylor & McNew (counsel for the plaintiffs in the Franklin Action). (Opposition, p. 13). Crowley opines that "[i]n the face of this onslaught of lawyer witnesses at trial, a brief examination of Mr. Shively would not be out of the ordinary to the jury." *Id*. This argument blithely ignores that none of these other "lawyer witnesses" will be *arguing to the jury in the same proceeding about the subjects of their own testimony.* Twin City fails to accept the conclusion that if the jury is exposed to a series of witnesses who also happen to be lawyers, and who testify regarding a separate litigation, the jury will be magically immune to the natural bias and confusion inherent in having Crowley's trial counsel act as sworn witnesses *and* advocates at trial.

as the taking of depositions) that will result in materials ultimately presented to the jury. Twin City and Federal brought their Motion over a year in advance of the scheduled trial date to avoid prejudice to Crowley. Moreover, Crowley has recently associated new counsel who, by the time of trial, will be well-versed in the litigation.

### C. The Declarations Filed In Support of Crowley's Opposition Are Irrelevant to the Motion and Should Not Change the Fact that Crowley's Counsel Should be Disqualified from Participation as Trial Counsel

Twin City does not wish to become embroiled in the confusion Crowley seeks to create by attaching five declarations and numerous exhibits to its Opposition, as Twin City's argument rests firmly on the facts and law argued *supra*; however, Twin City does not appreciate misrepresentations of law and fact being put forth in a litigation to which it is a party and in which its interests are at stake, and for that reason, Twin City addresses the various "red herrings" proffered in Crowley's Opposition on the basis of the attached declarations.[11]

#### 1. Crowley's Public Filings and Rudimentary Securities Law Indicate that Crowley Would not Have "Been Entitled to Pull out of the Franklin Action Settlement" Had the Insurers Refused to Consent to the Settlement

By the time the Insurers received the March 28, 2007 Letter requesting their "consent" to settlement, Crowley had already agreed to the *Franklin Action* settlement. Crowley's Opposition asserts that on March 28, 2007, based on certain conditions in the Settlement Agreement and tender offer, Crowley could have pulled out of the settlement if the Insurers did not consent (even though the letter does not appear to request payment for anything other than fees within the primary policy limit). (Opposition, p. 3). Crowley argues that these conditions are proof that the settlement was not a "done deal" by the time the Insurer's consent was "sought" on March 28, 2007 and provides the Declaration of Richard Vernon Smith (the "Smith Decl.") in support of its assertions.

Crowley notes that the tender offer included a condition that "[t]he Board of Directors of Crowley Maritime Special Committee shall [not] have determined to oppose the Offer and/or the

---

[11] While Twin City would normally move to strike the Declarations as non-responsive and purely argumentative, it does not believe that such a motion is worth the Court's time. If the case proceeds, we can address the declarations in discovery, now that Crowley has waived the attorney-client privilege.

LA 51075414v1                                                             - 11 -
REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S
MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF
PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI

Merger." (Opposition, p. 5, citing Smith Decl. ¶ 5 and Ex. B at p. 33). But Crowley fails to explain how a condition requiring the Board and Special Committees' approval rendered the settlement less-than-final as of March 28, 2007, when Crowley's own public filings reveal that by March 19, 2007, Crowley's Board and the Special Committee *had already approved the settlement*.[12] And, Twin City fails to understand how this undisguised effort at 'poisoning the well' has any bearing on the motion before the Court.

Crowley also states that the Settlement Agreement provided that, if the tender offer or merger "cannot be consummated *for any reason*, then the Settlement proposed herein shall be of no further force and effect and…all orders relating to it shall be null and void and of no force and effect." (Opposition, p. 5, citing Smith Decl., ¶ 6 and Ex. A at p. 12) (emphasis in Opp.). In his declaration, Mr. Smith expresses a belief that if Crowley's Board opposed the tender offer due to a denial of coverage by the Insurers, the tender offer would not have proceeded. (Smith Decl. ¶ 7). However, he does not explain how the Board could have changed its mind regarding the tender offer after it had already told the Court, its shareholders, and the investing public that it recommended the tender offer as in the best interest of the company and its shareholders, without any mention of any necessity of insurer consent.[13] Moreover, if insurer consent really was material

---

[12] See Crowley's Schedule 14-D9, filed with the SEC on March 19, 2007, p. 13-14 of 58, attached as Ex. D to Perlis Decl. 1.

[13] Mr. Smith also fails to explain why he declares under penalty of perjury, at ¶ 9, that "it is pure speculation for the Insurers to assert that the $17.625 million Crowley is claiming as a settlement payment to the plaintiffs exceeded the maximum possible recovery by the minority stockholders who comprised the plaintiff class [in the underlying *Franklin Fund* action,]" when Crowley itself asserted, in its own *Brief in Opposition to Plaintiffs' Application for Attorneys' Fees* (Perlis Decl. 2, Ex. C, p. 16-17), that the maximum total liability would have been no more than $12 million, considerably less than the purported $17.625 million settlement sum, and did not quarrel with the *Franklin Fund Plaintiffs' Brief in Support of the Proposed Settlement* (Perlis Decl. 2, Ex. D), represented to the Court that the benefits to Plaintiffs of the proposed settlement "Exceed Those Obtainable in a Successful Trial." (*Id.* at p. 21) ["A successful trial would have obtained a recovery of $23 million for the Company. Proportioning that to the shareholders other than Thomas Crowley, they would have indirectly received the benefit of approximately one-third of $23 million, the proportion of their ownership or approximately $7.6 million."].) (If the Court misses the relevance of this dispute to the instant Motion, that is understandable, since Mr. Smith is responding, in ¶ 9, to Twin City's Rule 11 motion, which has only been served, and not yet filed.) In any event, this is but another example of the Crowley camp's penchant for conflicting, situational representations. Perhaps, in the future, Crowley might consider its prior representations to other courts before offering contrary representations to this Court.

to the board's decision to proceed with the tender offer, then why is it that neither the Stipulation of Settlement, nor the tender offer, nor any of Crowley's public filings indicated that the settlement and/or tender offer were conditioned on the Insurers' consent? In asserting that (1) the settlement was contingent upon the Insurer's consent when (2) no such contingency was revealed to Crowley's shareholders, Crowley is in effect admitting that it violated its disclosure obligations under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.[14]

Besides, if the Insurers' consent was at all important to Crowley, then why did it not disclose the settlement terms to the insurers and purport to seek their consent until eight days after it had signed the Stipulation of Settlement, approved the tender offer, submitted it to the Court for approval, and disclosed it to the public? Crowley's Declarations offer no explanation of this conduct, which does not suggest any interest on Crowley's part in what the insurers had to say.

### 2. Basic Contract Law Indicates that Crowley Would not Have "Been Entitled to Pull out of the Franklin Action Settlement" Had the Insurers Refused to Consent to the Settlement

Crowley asserts that the Franklin Action settlement was not "binding" as of the date it sent the March 28, 2007 Letter because "[t]he Delaware Court of Chancery did not even approve the settlement until April 27, 2007" and "[b]y its own terms, the proposed settlement did not become final until June 3, 2007." (Opposition, p. 5, citing Smith Decl., ¶ 6 and Ex. A. at p. 9, ¶ 5). In so stating, Crowley in effect asserts that its Board was free to breach its own contract. By March 28, 2007, Crowley had already signed the Stipulation, which provided that: (1) Crowley was obligated to "jointly apply to the Court for an Order . . . with respect to notice and the settlement hearing"

---

[14] Rule 10b-5 provides that "*It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,* (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or *to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading*, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale of any security*." (emphasis added). The fact that the tender offer and settlement were conditioned on the Insurers' consent is arguably "material" under the standard set forth in *Basic, Inc. v. Levinson,* 485 U.S. 224 (1988) (an omitted fact is "material" under 10b-5 if there is a substantial likelihood that its disclosure would have been considered significant by a reasonable investor). Even the most inexperienced securities lawyer should know not to omit such a material fact.

(Perlis Decl. 1, Ex. B, ¶ 3); (2) Crowley's attorneys were "duly authorized and empowered to execute this Stipulation" on behalf of Crowley (*Id.*, ¶ 14); (3) any party shall have the right "to insist upon the strict performance of any and all of the provisions of the Settlement Agreement" (*Id.*, ¶ 16); (4) the "Stipulation shall be binding upon and inure to the benefit of the parties hereto" (*Id.*, ¶ 19); and (5) "the parties and their attorneys agree to cooperate fully with [plaintiffs and their counsel] in seeking Court approval of this Stipulation and the Settlement, and to use their best efforts to effect, as promptly as practicable, the consummation of this Stipulation and the Settlement provided for hereunder (including any amendments thereto) and the dismissal of the Action . . ." (*Id.*, ¶ 22). The parties had already filed a Proposed Scheduling Order scheduling the hearing date at which the court would add its final stamp of approval, and the court approved that Scheduling Order on March 21, 2007. (Perlis Decl. 2, Exs. A and B).[15]

### 3. Crowley Misstates Applicable Securities Law in Asserting that it was "Constrained by Significant Confidentiality Issues" from Including the Insurers in the Settlement Negotiations with Plaintiffs

Crowley's Opposition states that "the undisputed record reflects that Crowley was, in fact, constrained by significant confidentiality issues from inviting the Insurers to join in the settlement negotiations" prior to March 28, 2007. (Opposition, p. 5 n. 1). These issues included fear of "leaks" which might have lead to speculative trading, rumors, and to a violation of securities laws. *Id.* For support, Crowley cites to the Smith Decl., which lists general concerns re confidentiality and cites specifically to SEC Regulation F-D, under which "the selective disclosure of material non-public information to certain persons is a violation of the law." (Smith Decl., ¶ 14). Under Crowley and Smith's erroneous interpretation of Regulation F-D, since any proposed settlement by a public company would constitute material non-public information, no Insured could ever legally provide to its Insurer the information it would need to investigate and consider whether to consent to a proposed settlement. This, clearly, has not been the case in the thousands of securities actions that

---

[15] Moreover, by March 19, 2007, Jon Abramczyk, Crowley's counsel in the Franklin Action, had filed a letter with the Delaware court enclosing the Settlement Stipulation and Proposed Order and describing such as "an agreed-upon Stipulation of Settlement and related papers for settlement of the referenced action." (Perlis Decl. 2, Ex. E). If the Stipulation did not, as the letter suggests, represent the "agreed-upon" Settlement, Crowley was being dishonest with the Delaware Chancery Court, just as Crowley is now being dishonest with this Court.

have settled with insurance company money throughout the decades.[16] The absurdity of Crowley's argument defies further comment.[17]

### III. CONCLUSION

For the foregoing reasons, Twin City respectfully requests that the Court enter an Order granting the Motion to Disqualify.

DATED: August 8, 2008

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
Michael F. Perlis
Richard R. Johnson
Rachael Shook

By: _____*/s/ Michael F. Perlis*_____
Michael F. Perlis
Attorneys for Defendant/Counterclaimant
TWIN CITY FIRE INSURANCE COMPANY

---

[16] For example, in *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, the case cited repeatedly in Crowley's Opposition, the Insured provided such confidential information to the Insurers and invited them to participate in the settlement negotiations as long as they executed a confidentiality agreement. 135 Cal. App. 4th 958, 989 (2006).

[17] Besides, Rule 100(b)(2) sets out exclusions from Regulation F-D's coverage, including an exclusion for communications made to a person who owes the issuer a duty of trust or confidence (i.e., a "temporary insider" such as an attorney, investment banker, or accountant). A second exclusion is for communications made to any person who "expressly agrees to maintain the information in confidence." Crowley has been keen to point out that an Insurer owes its Insured a duty of trust and confidence, and the Insurers certainly could have expressly agreed to keep all relevant information in confidence. Mr. Smith admits that a disclosure can be made so long as the recipient of the information agrees to keep it confidential, but then purports to excuse Crowley's failure to obtain the Insurers' consent on grounds that "Crowley did not know whether the Insurers would so agree, or whether they could be depended upon to maintain strict confidentiality." (Smith Decl.., ¶ 14.) (Of course, it never even bothered to ask.) Finally, given its purported confidentiality concerns, Twin City wonders how Crowley brought itself to disclose the relevant settlement terms to its valuation experts, counsel for plaintiffs (who were all shareholders), fairness opinion consultants, and, eventually, to the public, via its March 19, 2007 press release and SEC filings, long before it said anything to Twin City. Crowley's story makes no sense.

**PROOF OF SERVICE**

STATE OF CALIFORNIA   )
                      ) ss
COUNTY OF SAN FRANCISCO )

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action. My business address is: 2029 Century Park East, Los Angeles, CA 90067-3086.

On August 08, 2008, I served the foregoing document(s) described as: **REPLY IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S MOTION TO DISQUALIFY RICHARD SHIVELY AND PHILIP PILLSBURY, OF THE FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

> William Campbell Morison-Knox
> Morison-Knox Holden Melendez & Prough LLP
> 500 Ygnacio Valley Rd., Suite 450
> Walnut Creek, CA 94596

☒ **(VIA U.S. MAIL)** In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth above.

☐ **(VIA FACSIMILE)** By causing such document to be delivered to the office of the addressee via facsimile.

☐ **(VIA OVERNIGHT DELIVERY)** By causing the document(s), in a sealed envelope, to be delivered to the office of the addressee(s) at the address(es) set forth above by overnight delivery via Federal Express, or by a similar overnight delivery service.

I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 08, 2008, at Los Angeles, California.

| Linda R. Bedre | /s/ Linda R. Bedre |
|---|---|
| [Type or Print Name] | [Signature] |

LA 51075414v1                                               - 16 -

REPLY IN SUPPORT OF DEFENDANT & COUNTERCLAIMANT TWIN CITY FIRE INS. CO.'S MOT. TO DISQUALIFY RICHARD SHIVELY & PHILIP PILLSBURY, OF THE LAW FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL - Case No. 08-0830 SI