G. EDWARD RUDLOFF, JR. (State Bar No. 56058)
KEVIN A. NORRIS (State Bar No. 206022)
**RUDLOFF WOOD & BARROWS LLP**
2000 Powell Street, Suite 900
Emeryville, California 94608
Telephone: (510) 740-1500
Facsimile: (510) 740-1501
E-Mail:    erudloff@rwblaw.com
           knorris@rwblaw.com

DAVID NEWMANN  (admitted *pro hac vice*)
JOSEPH A. BAILEY III  (admitted *pro hac vice*)
**HOGAN & HARTSON LLP**
555 Thirteenth Street NW
Washington DC 20004
Telephone:    (202) 637-5600
Facsimile:    (202) 637-5910
E-Mail:    dnewmann@hhlaw.com
           jabailey@hhlaw.com

Attorneys for Defendant
FEDERAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>              Plaintiff,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; and RLI INSURANCE COMPANY,<br><br>              Defendants. | Case No.  CV 08 0830 SI<br><br>**DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY**<br><br>Complaint Filed:    01/07/08<br>Hearing Date:       08/22/08<br><br>Accompanying Document:<br>    Declaration of Henry Nicholls |

Defendant Federal Insurance Company ("Federal") submits this reply to Plaintiff Crowley Maritime Corporation's ("CMC") Opposition to the Motion to Disqualify (the "Opposition").[1]

Notably, the Opposition never states that CMC will *not* call Richard Shively or Philip Pillsbury as a

---

[1] Federal understands that Defendant Twin City Fire Insurance Company is filing a comprehensive reply to the Opposition. Accordingly, Federal will limit its reply to certain assertions made by CMC regarding Federal's communications with Richard Shively and other CMC counsel.

1

DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY TO
PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY
Case No. CV 08 0830 SI

witness at trial. In fact, Mr. Shively and Mr. Pillsbury both tell the Court that "any such determination would be *premature* at this point," Shively Decl. ¶ 10; Pillsbury Decl. ¶ 4 — clearly implying that CMC may call *both* attorneys at witnesses. Indeed, the Opposition acknowledges that, at a minimum, Mr. Shively *will* be a "*necessary witness*" if CMC's failure to obtain consent to settlement remains a disputed issue at the time of trial. Opp. at 2-3.

Rather than disavowing any intention to rely on Mr. Shively's or Mr. Pillsbury's testimony, CMC contends that these individuals can continue serving as counsel if the Court rules at the very outset of this litigation that CMC's failure to obtain its insurers' consent to settlement "is not an issue in this case." Opp. at 17. To advance this theory, CMC argues that the Court should consider and resolve in CMC's favor a whole host of disputed factual and legal issues — all before any dispositive motions have been filed, before any depositions have been conducted, and before CMC has produced a single document in response to defendants' discovery requests. Yet this Court obviously cannot be called upon to consider or resolve such issues in the current posture of this case. Indeed, the fact that CMC's Opposition depends on the immediate resolution of these key substantive issues demonstrates that the Motion to Disqualify is well founded.

In any event, as discussed below, the various factual assertions regarding Federal on which CMC bases its Opposition, including CMC's assertions regarding Mr. Shively's April 5, 2007 conversation with Federal claims examiner Henry Nicholls, are plainly in dispute.

## I. CMC'S ASSERTION THAT NICHOLLS CONSENTED TO THE SETTLEMENT IS FALSE

CMC contends that its allegations regarding Mr. Shively's April 5, 2007 conversation with Mr. Nicholls are not contested because Federal has not submitted a declaration by Mr. Nicholls. But CMC forgets that this particular factual dispute <u>is established on the face of the pleadings in this case</u>. CMC itself chose to include in its Complaint three separate allegations regarding Mr. Shively's and Mr. Nicholls' conversation. Am. Compl. ¶¶ 8, 12, 13. Federal's Answer to the Complaint denies each of those allegations. Federal Answer ¶¶ 8, 12, 13. In fact, CMC concedes that "the Insurers dispute Mr. Shively's characterization of his conversation with Mr. Nicholls."

Opp. at 6. No declaration from Mr. Nicholls is required to establish that Mr. Shively's testimony on this topic would involve a "contested matter." [2]

To eliminate any question that Mr. Shively's testimony is contested, Federal is submitting Mr. Nicholls' declaration herewith. The declaration confirms that Mr. Nicholls disputes CMC's and Mr. Shively's characterization of their conversation. Nicholls Decl. ¶¶ 3-7. In particular, Mr. Nicholls never consented to the settlement and never gave any assurance that Federal would consent to the settlement. *Id.* ¶¶ 4-5, 7. Far from consenting to the settlement, Mr. Nicholls specifically told Mr. Shively that he understood CMC was not seeking coverage for the tender offer portion of the settlement, and Mr. Shively did not suggest otherwise. *Id.* ¶ 4. CMC would not have had any basis for seeking coverage for the tender offer, because the resulting costs would not constitute Loss as defined by the Policy, and Mr. Shively did not contend otherwise. *Id.* Mr. Nicholls may have indicated in this context that he assumed that Federal would not object to this aspect of the settlement, but that is only because he understood from Mr. Shively's comments that CMC was not seeking coverage for any portion of the tender offer. *Id.*

Mr. Nicholls also did not consent to the portion of the settlement pertaining to any fee award to the plaintiff's counsel. *Id.*. ¶ 5. Instead, he said Federal would need additional information, including the briefing on plaintiff's fee application, before he could evaluate Federal's position regarding this aspect of the settlement and any resulting fee award. *Id.* ¶ 5.

Federal agrees with CMC on one point: Mr. Shively's inaccurate statements regarding his conversation with Mr. Nicholls should never be submitted into evidence. That is because Mr. Shively's statements have no bearing on the plain consent provisions of the Federal Policy. Those provisions specifically state that Federal "shall not be liable for any element of Loss incurred [or] or for any obligation assumed . . . without [Federal's] prior written consent." Ficon Decl., Ex. G at Executive Liability and Entity Securities Liability Coverage Section ("EL Section") ¶ 16(b)

---

[2] Contrary to CMC's position, CMC has the burden of establishing that this or any other exception to Rule of Professional Conduct 5-210 applies. See Benas v. Baca, No. CV 00-11507 LGB, 2003 WL 21530209, *3 (C.D. Cal. July 1, 2003), clarified, 2003 WL 21692037 (C.D. Cal. July 10, 2003).

1. (emphasis added). Even Mr. Shively does not claim that Mr. Nicholls ever gave "prior written consent" to the settlement. Further, Mr. Shively concedes that Mr. Nicholls' alleged statements about the possibility of future consent were subject to Federal's review of additional information, including the briefing on the fee application. Shively Decl. ¶ 5.

Since even Mr. Shively's testimony does not suggest that the consent requirements of the Policy were satisfied, it is unclear why CMC believes the conversation between Mr. Shively and Mr. Nicholls is relevant. CMC offers no explanation for this in its Opposition. Nonetheless, CMC's Opposition makes clear that it intends to rely on Mr. Shively's testimony, and possibly Mr. Pillsbury's, if the consent issue goes to trial. Under these circumstances, disqualification from service as trial counsel is plainly appropriate. *See, e.g., Benas,* 2003 WL 21530209, *3.

## II. CMC'S ASSERTION THAT FEDERAL HAD NO RIGHT TO ENFORCE THE POLICY'S CONSENT REQUIREMENTS IS BASELESS

CMC also argues that Federal lost its right to enforce the Policy's consent requirements because Federal reserved its rights and did not handle the defense of the Franklin Fund Action. Opp. at 17-18. That argument must be rejected for four independent reasons.

First, CMC's argument is predicated on cases involving insurance policies that gave an *insurer* the duty to defend the underlying action. See, e.g., Opp. at 17 (citing *Pruyn v. Agricultural Ins. Co.,* 36 Cal. App. 4th 500, 516 (2d Dist. 1995)). Here, by contrast, the Federal Policy squarely placed the duty to defend on CMC, not Federal, but nevertheless unambiguously required Federal's prior written consent to settlement. *See* Ficon Decl., Ex. G at EL Section ¶¶ 16(a)-(b). The mere fact that Federal did not have a duty to defend obviously does not preclude Federal from enforcing the express consent requirements of the Policy. *See Gribaldo, Jacobs, Jones & Assoc. v. Agrippini Versicherunges A.G.*, 3 Cal. 3d 434, 449 (1970) (consent to settle provision enforceable even though insurer did not have duty to defend); *Am. Int'l Specialty Lines Ins. Co. v. Cont'l Cas. Ins. Co.*, 142 Cal. App. 4th 1342, 1368 (2d Dist. 2006) (same, noting that duty to defend precedent did not prove the contrary). Rather, the consent provision must be applied as written. *See, e.g., Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 204 (4th Dist.

RUDLOFF WOOD & BARROWS LLP
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

1  2008) ("If contractual language in an insurance contract is clear and unambiguous, it governs, and
2  we do not rewrite it for any purpose" (internal quotation marks omitted)); *Jamestown Builders, Inc.*
3  *v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 346 (4th Dist. 1999) (consent to settle provisions are
4  fully enforceable "in the absence of economic necessity, insurer breach, or other extraordinary
5  circumstances"); *Low v. Golden Eagle Ins. Co.,* 110 Cal. App. 4th 1532, 1544 (1st Dist. 2003)
6  (same).

7  Second, CMC attempts to support its position by citing *Fuller-Austin Insulation Co. v.*
8  *Highlands Ins. Co.,* 135 Cal. App. 4th 958 (2d. Dist. 2006), but the holding in that case addresses
9  *excess* carriers who were invited to participate in settlement negotiations and declined to do so. The
10 holding in *Fuller-Austin* obviously does not apply to Federal, a primary carrier, and has no bearing
11 in any event where, as here, the carriers were given no opportunity to participate in settlement
12 negotiations. *See* ALLAN D. WINDT, INS. CLAIMS & DISPUTES ("WINDT") § 3:9 n.5 (2008) (noting
13 the limited application of the *Fuller-Austin* holding). Indeed, this is clear from the same treatise
14 sentence that CMC's brief tellingly quotes only in part, and from the footnote accompanying that
15 sentence. *Id.*; Opp. at 17.

16 Third, contrary to CMC's argument, the very authority on which CMC relies makes clear
17 that an insurer does not lose its right to consent merely by proceeding under a reservation of rights.
18 *Fuller-Austin*, 135 Cal. App. 4th at 984.

19 Fourth, there is no basis whatsoever for CMC's contention that Federal did not comply with
20 its duty to pay Defense Costs. Federal's initial reservation letter indicated that Federal would
21 reimburse Defense Cost**s** under a reservation of rights, subject to satisfaction of the $500,000
22 retention. Ficon Decl., Ex. B at 6-7. Federal of course had no duty to pay Defense Costs prior to
23 satisfaction of the retention. Ficon Decl., Ex. G at EL Section Decl. Item 4 and ¶¶ 2, 13(d); Shively
24 Decl., Ex. E at Nov. 17, 2006 Letter (acknowledging applicability of retention). CMC first
25 submitted defense invoices on April 23, 2007 — one month after CMC executed the settlement
26 stipulation. *See* Shively Decl., Ex. E at Apr. 23, 2007 Letter; Nicholls Decl. ¶ 8. Federal audited
27 the invoices to determine what portion of the invoices were properly chargeable as Defense Costs
28

RUDLOFF WOOD & BARROWS LLP
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

5
DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY TO
PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY
Case No. CV 08 0830 SI

1  and reimbursed CMC for the entire amount of Defense Costs that exceeded the $500,000
2  deductible. The fact that Federal did not pay defense costs prior to the settlement is purely a
3  function of the deductible and CMC's own delay in submitting defense invoices, and therefore has
4  no bearing on Federal's right to enforce the Policy's consent provisions. *See Jamestown Builders*,
5  77 Cal. App. 4th at 346 (consent to settle provisions are fully enforceable "in the absence of
6  economic necessity, insurer breach, or other extraordinary circumstances"); *Low*, 110 Cal. App. 4th
7  1532 (breach of consent to settle provision barred coverage, where insured entered into settlement
8  agreement after insurer had agreed to defend under reservation of rights, but before insurer started
9  to defend the insured).

10  Moreover, contrary to the suggestion in CMC's counsel's declarations, Federal was actively
11  involved in monitoring the defense of the *Franklin Fund Action*. Nicholls Decl. ¶ 9. Indeed,
12  Federal only learned about the settlement of the action after Mr. Nicholls made one of multiple
13  periodic inquiries regarding the status of the case. *Id.* CMC's contention that Federal's handling of
14  this matter somehow deprived it of the right to consent to any settlement is utterly without merit.

15  For the reasons stated above and in Federal's Joinder, Federal would be greatly prejudiced if
16  Messrs. Shively and Pillsbury were permitted to serve as both witnesses and advocates at trial.
17  Federal accordingly respectfully requests that the Motion to Disqualify be granted.

18  Date: August 8, 2008                          Respectfully submitted,

19                                                 **RUDLOFF WOOD & BARROWS LLP**

21                                                 By:    */s./ Kevin A. Norris*
                                                   G. Edward Rudloff, Jr.
22                                                 Kevin A. Norris

23                                                 Of counsel:
                                                   David Newmann (admitted *pro hac vice*)
24                                                 Joseph A. Bailey III (admitted *pro hac vice*)
                                                   HOGAN & HARTSON L.L.P.

25                                                 Attorneys for Defendant
26                                                 FEDERAL INSURANCE COMPANY

RUDLOFF WOOD & BARROWS LLP
ATTORNEYS AT LAW
2000 POWELL STREET, SUITE 900
EMERYVILLE, CALIFORNIA 94608
(510) 740-1500

G. EDWARD RUDLOFF, JR. (State Bar No. 56058)
KEVIN A. NORRIS (State Bar No. 206022)
**RUDLOFF WOOD & BARROWS LLP**
2000 Powell Street, Suite 900
Emeryville, California 94608
Telephone:  (510) 740-1500
Facsimile:  (510) 740-1501
E-Mail:      erudloff@rwblaw.com
             knorris@rwblaw.com

DAVID NEWMANN  (admitted *pro hac vice*)
JOSEPH A. BAILEY III  (admitted *pro hac vice*)
**HOGAN & HARTSON LLP**
555 Thirteenth Street NW
Washington DC 20004
Telephone:   (202) 637-5600
Facsimile:   (202) 637-5910
E-Mail:      dnewmann@hhlaw.com
             jabailey@hhlaw.com

Attorneys for Defendant
FEDERAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY;<br>TWIN CITY FIRE INSURANCE<br>COMPANY; and RLI INSURANCE<br>COMPANY;<br><br>    Defendants. | Case No. CV 08 0830 SI<br><br>**DECLARATION OF HENRY NICHOLLS IN SUPPORT OF FEDERAL INSURANCE COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY** |

I, HENRY NICHOLLS, declare as follows:

1. I am of counsel at the law firm Cohon & Pollak, LLP, and previously served as a Senior D&O Examiner for Chubb & Son, a division of Federal Insurance Company ("Federal"), the claims manager for Federal. I am over the age of 18 and am competent to testify to the matters set forth herein. I submit this declaration in support of Twin City's Motion to Disqualify Richard Shively and Philip Pillsbury of Pillsbury & Levinson LLP as Trial Counsel for Plaintiff, to which

1. Federal has filed a Joinder.

2. While at Federal, I handled Crowley Maritime Corp.'s ("CMC") claim for insurance coverage in connection with the action captioned *Franklin Balance Sheet Investment Fund, et al. v. Crowley, et al.*, No. 888-VCP (Del. Ch.) (the "Franklin Fund Action"). As a result, I am familiar with the matters set forth herein based on personal knowledge.

3. I have reviewed Crowley's Opposition to Motion by Twin City and Federal to Disqualify Crowley's Counsel of Record and the Declaration of Richard D. Shively in Opposition to Motion by Twin City and Federal to Disqualify Crowley's Counsel of Record. The statements therein regarding my April 5, 2007 conversation with Richard Shively mischaracterize that conversation and are incomplete and misleading in important respects.

4. On April 5, 2007, I spoke by telephone with Richard Shively. During that conversation, I stated that I understood that CMC was not seeking insurance coverage for any portion of the component of the Franklin Fund Action settlement involving Crowley Newco Corp.'s ("Newco") tender offer for the Franklin Fund plaintiffs' stock holdings in CMC. That aspect of the settlement clearly would not have been covered (even if CMC had timely sought Federal's consent) because the costs of the tender offer would not represent Loss under the Policy. Mr. Shively indicated that my understanding was correct, and said nothing to suggest that CMC was seeking insurance coverage for any portion of the tender offer. Relying on this exchange, I stated that because CMC was not seeking insurance coverage for any portion of the tender offer, I did not expect that Federal would object to the tender offer portion of the settlement. I relied on my understanding that CMC was not seeking coverage for the tender offer in my handling of the settlement. At no point during my tenure with Federal did Mr. Shively or anyone else acting on CMC's behalf tell me that CMC was seeking insurance coverage for any portion of the tender offer.

5. Later during the April 5, 2007 conversation with Mr. Shively, I stated that Federal needed to review additional information before taking any position as to the portion of the settlement pertaining to an award of CMC plaintiffs' attorneys' fees. Specifically, I requested the briefing on the Franklin Fund plaintiffs' application for an award of attorneys' fees. I also

2
DECLARATION OF HENRY P. NICHOLLS IN SUPPORT OF
FEDERAL'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY
Case No. CV 08 0830 SI

requested that CMC forward copies of its defense counsel's invoices, so I could determine whether any **Defense Costs** were due excess of the $500,000 Deductible. Mr. Shively agreed to forward this information, and gave no indication that there would be any problem with my reviewing this information before taking a position as to coverage. I did not state during the April 5, 2007 conversation or at any other time that Federal consented to the plaintiffs' attorneys' fees component of CMC's settlement.

6. Mr. Shively did not state during our conversation that CMC needed a response by any particular time, and never suggested that the settlement would be withdrawn or modified in any way if Federal declined to consent. On the contrary, it was clear from our discussion that the settlement agreement already had been reached and was memorialized in a legally binding document, and that nothing Federal did or said would affect the terms or conditions of the settlement.

7. I never told Mr. Shively that Federal "would consent" or that Federal "would have no problem consenting" to the overall settlement. CMC's and Mr. Shively's assertions in this regard do not accurately characterize the conversation and leave out the crucial aspects of the conversation described above.

8. On April 24, 2007, I received a letter from Richard Shively dated April 23, 2007, forwarding copies of CMC's defense invoices. Ex. E to Shively Decl. at Apr. 23, 2007 Letter. At no point prior to that date did CMC submit any defense invoices for reimbursement. The letter stated that it was being sent in support of CMC's request for Federal's consent, but again did not indicate that CMC needed an answer from Federal by any specific date. Ex. E to Shively Decl. at Apr. 23, 2007 Letter.

9. I received no information regarding settlement until March 22, 2007. On that date, I sent an e-mail to CMC's defense counsel in the Franklin Fund Action, Mr. Abramczyk, asking for an update regarding the status of the pending motion to dismiss. In response, Mr. Abramczyk informed me that CMC had "settled by offering a buy out." This came as a complete surprise to me, because I had not received prior notice of any settlement negotiations, much less than a request

for consent to settle, even after having requested and received updates on multiple prior occasions. Throughout my time on the file, I actively monitored developments in the case. My initial reservation letter raised questions concerning the selection of defense counsel and requested that Federal be "kept advised of events contemporaneously with their occurrence." Ex. B to Ficon Decl. at 7. On regular intervals thereafter, I requested, received and reviewed updates from CMC regarding developments in the Franklin Fund Action, as well as multiple filings from that Action. I attended the hearing in Wilmington, Delaware on the defendants' motion to dismiss. Among the subsequent updates that I reviewed was a November 17, 2006 update from Steven Ficon, the end of which stated that CMC would advise Federal of any further developments. Ex. E to Shively Decl. at Nov. 17, 2006 Letter. Despite Mr. Ficon's promise, I never received notice of the settlement negotiations that I now understand CMC has admitted were taking place between December 2006 and March 19, 2007.

I declare under the penalty of perjury and the laws of the United States that the foregoing is true and correct and that this declaration was executed on this <u>8th</u> day of <u>August 2008</u>, in Hackettstown, New Jersey.

_____
HENRY P. NICHOLLS, ESQ.

---

4
DECLARATION OF HENRY P. NICHOLLS IN SUPPORT OF
FEDERAL'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISQUALIFY
Case No. CV 08 0830 SI