STROOCK & STROOCK & LAVAN LLP
MICHAEL F. PERLIS (State Bar No. 95992)
mperlis@stroock.com
RICHARD R. JOHNSON (State Bar No. 198117)
rjohnson@stroock.com
RACHAEL SHOOK (State Bar No. 251628)
rshook@stroock.com
2029 Century Park East, Suite 1800
Los Angeles, California  90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
lacalendar@stroock.com

Attorneys for Defendant and Counterclaimant
  TWIN CITY FIRE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>FEDERAL INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; RLI INSURANCE COMPANY; and DOES 1-20, inclusive,<br><br>                    Defendants. | **Case No. CV-08-00830 SI**<br><br>[Hon. Susan Illston]<br><br>**DECLARATION OF MICHAEL F. PERLIS IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY RICHARD SHIVELY AND PHILIP PILLSBURY, OF THE FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL FOR PLAINTIFF**<br><br>DATE:         August 22, 2008<br>TIME:         9:00 a.m.<br>PLACE:       Courtroom 10<br><br>[Reply in Support of Motion filed concurrently herewith] |

DECLARATION OF MICHAEL F. PERLIS IN SUPPORT OF DEFENDANT AND
COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT
OF MOTION TO DISQUALIFY – Case No. 08-0830 SI

LA 51074765v1
08/08/08 01:53PM

## DECLARATION OF MICHAEL F. PERLIS

I, Michael F. Perlis, hereby declare:

1.    I am a partner in the law firm of Stroock & Stroock & Lavan LLP, lead counsel for Defendant and Counterclaimant Twin City Fire Insurance Company ("Twin City") in this litigation.  I submit this declaration in support of Twin City's Reply in Support of its Motion to Disqualify Richard Shively and Philip Pillsbury, Jr. from acting as trial counsel for Plaintiff and Counter-defendant Crowley Maritime Corporation ("Crowley"). The facts set forth herein are true of my own personal knowledge, except where based upon my review of the pleadings and files in the instant litigation and in the underlying litigation that is the subject of Crowley's request for insurance coverage.  If called as a witness, I could and would competently testify thereto.

2.    Attached hereto as Exhibit "A" is a true and correct copy of a Proposed Scheduling Order for Approval of the Settlement of Class and Derivative Actions submitted in the matter entitled *Franklin Balance Sheet v. Crowley et al.*, Civil Action No. 888-VCP (Delaware Chancery Court).

3.    Attached hereto as Exhibit "B" is a true and correct copy of a the Delaware Chancery Court's Approval of the Proposed Scheduling Order for Approval of the Settlement of Class and Derivative Actions in the matter entitled *Franklin Balance Sheet v. Crowley et al.*, Civil Action No. 888-VCP (Delaware Chancery Court).

4.    Attached hereto as Exhibit "C" is a true and correct copy of a *Brief in Opposition to Plaintiffs' Application for Attorneys' Fees* filed in the matter entitled *Franklin Balance Sheet v. Crowley et al.*, Civil Action No. 888-VCP (Delaware Chancery Court).

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5.      Attached hereto as Exhibit "D" is a true and correct copy of the *Plaintiffs' Brief in Support of the Proposed Settlement* filed in the matter entitled *Franklin Balance Sheet v. Crowley et al.*, Civil Action No. 888-VCP (Delaware Chancery Court).

6.      Attached hereto as Exhibit "E" is a true and correct copy of a letter dated March 19, 2007 from Jon E. Abramczyk to the Honorable Donald F. Parsons, Jr., which was filed in the matter entitled *Franklin Balance Sheet v. Crowley et al.*, Civil Action No. 888-VCP (Delaware Chancery Court).

Executed this 8th day of August 2008 at Los Angeles, California.


                                    */s/ Michael F. Perlis*
                                    Michael. F. Perlis

2

DECLARATION OF MICHAEL F. PERLIS IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY – Case No. 08-0830 SI

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                    )  ss
COUNTY OF SAN FRANCISCO )

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action.  My business address is: 2029 Century Park East, Los Angeles, CA  90067-3086.

On August 08, 2008, I served the foregoing document(s) described as:  **DECLARATION OF MICHAEL F. PERLIS IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY RICHARD SHIVELY AND PHILIP PILLSBURY, OF THE FIRM OF PILLSBURY & LEVINSON, LLP, AS TRIAL COUNSEL FOR PLAINTIFF** on the interested parties in this action as follows:

> William Campbell Morison-Knox
> Morison-Knox Holden Melendez & Prough LLP
> 500 Ygnacio Valley Rd., Suite 450
> Walnut Creek, CA  94596

☒ **(VIA U.S. MAIL)**  In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth above.

☐ **(VIA FACSIMILE)**  By causing such document to be delivered to the office of the addressee via facsimile.

☐ **(VIA OVERNIGHT DELIVERY)**  By causing the document(s), in a sealed envelope, to be delivered to the office of the addressee(s) at the address(es) set forth above by overnight delivery via Federal Express, or by a similar overnight delivery service.

I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 08, 2008, at Los Angeles, California.

| Linda R. Bedre | /s/ Linda R. Bedre |
|---|---|
| [Type or Print Name] | [Signature] |

DECLARATION OF MICHAEL F. PERLIS IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY – Case No. 08-0830 SI

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# EXHIBIT A

EFiled: Mar 19 2007 2:28PM EDT
Transaction ID 14171332
Case No. 888-VCP

# Exhibit A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

Franklin Balance Sheet Investment Fund and )
Franklin Microcap Value Fund, Oppenheimer )
Investment Partnership LP and Oppenheimer )
Close International Ltd., Wynnefield Partners )
Smallcap Value LP I, Wynnefield Partners )
Smallcap Value LP, Wynnefield Smallcap Value )
Off-Shore Fund LPD and Channell Partnership II, )
LP, and John H. Norberg, Jr., Individually, )
derivatively and on behalf of a Class of similarly )
situated stockholders, )
                                                )
              Plaintiffs, )
                                                )   Civil Action No. 888-VCP
       v. )
                                                )
Thomas B. Crowley, Jr., Molly M. Crowley, )
Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, )
William A. Pennella, Leland S. Prussia, Cameron )
W. Wolfe, Jr., )
                                                )
              Defendants, )
                                                )
       v. )
                                                )
Crowley Maritime Corporation, )
                                                )
              Nominal Derivative Defendant. )

## SCHEDULING ORDER FOR APPROVAL OF
## SETTLEMENT OF CLASS  AND DERIVATIVE ACTION

The parties to the above-captioned consolidated action (collectively, the "Action"),

having applied for an Order approving the proposed settlement of the Action and determining

certain matters in connection with the proposed settlement of the Action (the "Settlement") and for

dismissal of the Action, in accordance with the terms and conditions of the Stipulation and

Agreement of Compromise, Settlement and Release entered into by the parties, dated March19,

2007 (the "Stipulation");

NOW, upon consent of the parties, after review and consideration of the Stipulation filed with the Court and the Exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED this ____ day of March, 2007 that:

1.    For purposes of settlement only, pursuant to Chancery Court Rules 23(a), 23(b)(1), (b)(2), and 23.1, the Action, pending the Settlement Hearing (defined below), shall be provisionally maintained as a class and derivative action on behalf of: (i) the Crowley Maritime Corporation (the "Company") and its stockholders; and (ii) a class consisting of all record holders and beneficial owners of shares of the common stock of the Company on any day during the period from December 23, 2003 to and including the effective date of the consummation of the Merger, as that term is defined in the Stipulation (other than defendants and their "affiliates" and "associates" (as those terms are defined in Rule 12b-2 promulgated pursuant to the Securities Act of 1934)), including the legal representatives, heirs, successors-in-interest, transferees or assigns of all such foregoing holders, immediate and remote (the "Class"). The named plaintiffs in the actions consolidated in C.A. No. 888-N are provisionally designated as the class and derivative representatives (the "Plaintiffs") and their counsel as class and derivative counsel.

2.    A hearing (the "Settlement Hearing") shall be held on April ____, 2007, at _____ .m., in the Court of Chancery in the New Castle County Courthouse, 500 North King Street, Wilmington, Delaware 19801, to determine whether:

(a).    pursuant to Chancery Court Rule 23.1 the Action, with respect to Count I thereof, may be properly instituted as a derivative action on behalf of the Company and its stockholders;

2

(b).     pursuant to Chancery Court Rules 23(b)(1) and (b)(2), with no opt-out rights, the Action, with respect to Count II thereof, may be finally certified as a class action on behalf of the Class;

(c).     the Plaintiffs have adequately represented the Class, the Company and its stockholders and should be finally designated as Class and Derivative representative with Plaintiffs' counsel finally designated Class and Derivative representative counsel;

(d).     the Stipulation and the terms and conditions of the Settlement proposed in the Stipulation, are fair, reasonable, adequate and in the best interests of the Company and the Class;

(e).     the Court should approve a final judgment dismissing the Action as to all defendants named therein and their affiliates and with prejudice as against Plaintiffs, all members of the Class, the Company and derivatively as against all present, past and future stockholders of the Company (the "Final Order and Judgment");

(f).     to hear and determine any objections to the Settlement;

(g).     the Court should award attorneys' fees and expenses to Plaintiffs' attorneys pursuant to the application described below; and

(h).     to hear such other matters as the Court may deem necessary and appropriate.

3.     The Court reserves the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees and reimbursement of expenses, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

4.    The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modification as may be consented to by the parties to the Stipulation and without further notice to the Class.

5.    Within ten (10) business days after the date of this Order, the Company shall cause a notice of the Settlement Hearing in substantially the form annexed as Exhibit B to the Stipulation (the "Notice") to be mailed by United States mail, postage pre-paid, to all record holders and beneficial owners of common stock of the Company at any time from December 23, 2003 to the present at their last known address appearing in the stock transfer records maintained by or on behalf of the Company. All record holders in the Class who are not also the beneficial owners of the shares of the Company's common stock held by them of record are requested to forward the Notice to such beneficial owners of those shares. The Company shall use reasonable efforts to give notice to such beneficial owners by: (a) making additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests additional copies for distribution to beneficial owners; or (b) mailing additional copies of the Notice to beneficial owners whose names and addresses the Company receives from record owners.

6.    The form and method of notice specified herein is the best notice practicable and shall constitute due and sufficient notice of the Settlement Hearing to all persons entitled to receive such a notice. Counsel for the Company shall, at least ten (10) days before the Settlement Hearing, file an appropriate affidavit with respect to preparing and mailing the Notice.

7.    Any member of the Class who objects to the Settlement, the Order and Final Judgment to be entered in the Action, and/or the application for attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by his attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that

4

no person other than Plaintiffs' Counsel and counsel for the defendants in the Action shall be heard and no papers, briefs, pleadings or other documents submitted by any person shall be considered by the Court unless not later than ten (10) calendar days prior to the Settlement Hearing such person files with the Court and serves upon counsel listed below: (a) a written notice of intention to appear; (b) a statement of such person's objections to any matters before the Court; (c) the grounds therefor or the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider. Such filings shall be served upon the following counsel:

> R. Bruce McNew
> TAYLOR & McNEW LLP
> 2710 Centerville Road, Suite 210
> Greenville, DE  19808
> (302) 655-9200
>
> Jon E. Abramczyk
> John P. DiTomo
> MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899

8.    Unless the Court otherwise directs, no person shall be entitled to object to the approval of the Settlement, any judgment entered thereon, the adequacy of the representation of the Plaintiffs' Counsel, any award of attorneys' fees or reimbursement of expenses, or otherwise be heard, except by serving and filing a written objection and supporting papers and documents as prescribed in paragraph 7. Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.

5

9.      If the Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement and Stipulation (including any modification thereof made with the consent of the parties as provided in the Stipulation), any Class certification herein and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein) shall be terminated and shall become void and of no further force and effect except for the Company's obligations to pay for any expense incurred in connection with the Notice and administration provided for by this Order. In that event, neither the Stipulation, nor any provision contained in the Stipulation, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party shall be deemed an admission or offered or received as evidence at any proceeding in this or any other action or proceeding.

10.     All proceedings in the Action, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court. Pending final determination of whether the Stipulation should be approved, Plaintiffs, and all members of the Class are barred and enjoined from commencing or prosecuting any action asserting any claims that are, or relate in any way to, the Settled Claims as defined in the Stipulation.

11.     Neither the Stipulation or any provision contained in the Stipulation, nor any negotiations, statements or proceedings in connection therewith, shall be construed as, or deemed to be evidence of, an admission or concession on the part of any of the Plaintiffs, defendants, any Class Member, the Company, or any other person of any liability or wrongdoing by them, or any of them, and shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission, concession or evidence of any liability or wrongdoing of any nature, and shall not

6

Exhibit A
9

be construed as, or deemed to be evidence of an admission or concession that Plaintiffs, any member of the Class, Company, or any other person, has or has not suffered any damage.

_____
Vice Chancellor

# EXHIBIT B



**GRANTED WITH MODIFICATIONS**

EFiled: Mar 21 2007 12:01PM EDT
Transaction ID 14201182
Case No. 888-VCP

# Exhibit A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Franklin Balance Sheet Investment Fund and ) | |
| Franklin Microcap Value Fund, Oppenheimer ) | |
| Investment Partnership LP and Oppenheimer ) | |
| Close International Ltd., Wynnefield Partners ) | |
| Smallcap Value LP I, Wynnefield Partners ) | |
| Smallcap Value LP, Wynnefield Smallcap Value ) | |
| Off-Shore Fund LPD and Channell Partnership II, ) | |
| LP, and John H. Norberg, Jr., Individually, ) | |
| derivatively and on behalf of a Class of similarly ) | |
| situated stockholders, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 888-VCP |
| v. ) | |
| ) | |
| Thomas B. Crowley, Jr., Molly M. Crowley, ) | |
| Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, ) | |
| William A. Pennella, Leland S. Prussia, Cameron ) | |
| W. Wolfe, Jr., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| Crowley Maritime Corporation, ) | |
| ) | |

Nominal Derivative Defendant.

## SCHEDULING ORDER FOR APPROVAL OF
## SETTLEMENT OF CLASS AND DERIVATIVE ACTION

The parties to the above-captioned consolidated action (collectively, the "Action"),

having applied for an Order approving the proposed settlement of the Action and determining

certain matters in connection with the proposed settlement of the Action (the "Settlement") and for

dismissal of the Action, in accordance with the terms and conditions of the Stipulation and

Agreement of Compromise, Settlement and Release entered into by the parties, dated March 19,

2007 (the "Stipulation");

NOW, upon consent of the parties, after review and consideration of the Stipulation filed with the Court and the Exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED this ____ day of March, 2007 that:

1.    For purposes of settlement only, pursuant to Chancery Court Rules 23(a), 23(b)(1), (b)(2), and 23.1, the Action, pending the Settlement Hearing (defined below), shall be provisionally maintained as a class and derivative action on behalf of: (i) the Crowley Maritime Corporation (the "Company") and its stockholders; and (ii) a class consisting of all record holders and beneficial owners of shares of the common stock of the Company on any day during the period from December 23, 2003 to and including the effective date of the consummation of the Merger, as that term is defined in the Stipulation (other than defendants and their "affiliates" and "associates" (as those terms are defined in Rule 12b-2 promulgated pursuant to the Securities Act of 1934)), including the legal representatives, heirs, successors-in-interest, transferees or assigns of all such foregoing holders, immediate and remote (the "Class"). The named plaintiffs in the actions consolidated in C.A. No. 888-N are provisionally designated as the class and derivative representatives (the "Plaintiffs") and their counsel as class and derivative counsel.

2.    A hearing (the "Settlement Hearing") shall be held on April ____, 2007, at _____ __.m., in the Court of Chancery in the New Castle County Courthouse, 500 North King Street, Wilmington, Delaware 19801, to determine whether:

(a).    pursuant to Chancery Court Rule 23.1 the Action, with respect to Count I thereof, may be properly instituted as a derivative action on behalf of the Company and its stockholders;

2

Exhibit B
13

(b).    pursuant to Chancery Court Rules 23(b)(1) and (b)(2), with no opt-out rights, the Action, with respect to Count II thereof, may be finally certified as a class action on behalf of the Class;

(c).    the Plaintiffs have adequately represented the Class, the Company and its stockholders and should be finally designated as Class and Derivative representative with Plaintiffs' counsel finally designated Class and Derivative representative counsel;

(d).    the Stipulation and the terms and conditions of the Settlement proposed in the Stipulation, are fair, reasonable, adequate and in the best interests of the Company and the Class;

(e).    the Court should approve a final judgment dismissing the Action as to all defendants named therein and their affiliates and with prejudice as against Plaintiffs, all members of the Class, the Company and derivatively as against all present, past and future stockholders of the Company (the "Final Order and Judgment");

(f).    to hear and determine any objections to the Settlement;

(g).    the Court should award attorneys' fees and expenses to Plaintiffs' attorneys pursuant to the application described below; and

(h).    to hear such other matters as the Court may deem necessary and appropriate.

3.    The Court reserves the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees and reimbursement of expenses, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

4.     The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modification as may be consented to by the parties to the Stipulation and without further notice to the Class.

5.     Within ten (10) business days after the date of this Order, the Company shall cause a notice of the Settlement Hearing in substantially the form annexed as Exhibit B to the Stipulation (the "Notice") to be mailed by United States mail, postage pre-paid, to all record holders and beneficial owners of common stock of the Company at any time from December 23, 2003 to the present at their last known address appearing in the stock transfer records maintained by or on behalf of the Company. All record holders in the Class who are not also the beneficial owners of the shares of the Company's common stock held by them of record are requested to forward the Notice to such beneficial owners of those shares. The Company shall use reasonable efforts to give notice to such beneficial owners by: (a) making additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests additional copies for distribution to beneficial owners; or (b) mailing additional copies of the Notice to beneficial owners whose names and addresses the Company receives from record owners.

6.     The form and method of notice specified herein is the best notice practicable and shall constitute due and sufficient notice of the Settlement Hearing to all persons entitled to receive such a notice. Counsel for the Company shall, at least ten (10) days before the Settlement Hearing, file an appropriate affidavit with respect to preparing and mailing the Notice.

7.     Any member of the Class who objects to the Settlement, the Order and Final Judgment to be entered in the Action, and/or the application for attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by his attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that

4

no person other than Plaintiffs' Counsel and counsel for the defendants in the Action shall be heard and no papers, briefs, pleadings or other documents submitted by any person shall be considered by the Court unless not later than ten (10) calendar days prior to the Settlement Hearing such person files with the Court and serves upon counsel listed below: (a) a written notice of intention to appear; (b) a statement of such person's objections to any matters before the Court; (c) the grounds therefor or the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider. Such filings shall be served upon the following counsel:

> R. Bruce McNew
> TAYLOR & McNEW LLP
> 2710 Centerville Road, Suite 210
> Greenville, DE 19808
> (302) 655-9200
>
> Jon E. Abramczyk
> John P. DiTomo
> MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

8.    Unless the Court otherwise directs, no person shall be entitled to object to the approval of the Settlement, any judgment entered thereon, the adequacy of the representation of the Plaintiffs' Counsel, any award of attorneys' fees or reimbursement of expenses, or otherwise be heard, except by serving and filing a written objection and supporting papers and documents as prescribed in paragraph 7. Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.

9.    If the Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement and Stipulation (including any modification thereof made with the consent of the parties as provided in the Stipulation), any Class certification herein and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein) shall be terminated and shall become void and of no further force and effect except for the Company's obligations to pay for any expense incurred in connection with the Notice and administration provided for by this Order. In that event, neither the Stipulation, nor any provision contained in the Stipulation, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party shall be deemed an admission or offered or received as evidence at any proceeding in this or any other action or proceeding.

10.    All proceedings in the Action, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court. Pending final determination of whether the Stipulation should be approved, Plaintiffs, and all members of the Class are barred and enjoined from commencing or prosecuting any action asserting any claims that are, or relate in any way to, the Settled Claims as defined in the Stipulation.

11.    Neither the Stipulation or any provision contained in the Stipulation, nor any negotiations, statements or proceedings in connection therewith, shall be construed as, or deemed to be evidence of, an admission or concession on the part of any of the Plaintiffs, defendants, any Class Member, the Company, or any other person of any liability or wrongdoing by them, or any of them, and shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission, concession or evidence of any liability or wrongdoing of any nature, and shall not

6

be construed as, or deemed to be evidence of an admission or concession that Plaintiffs, any

member of the Class, Company, or any other person, has or has not suffered any damage.


_____
                          Vice Chancellor

427_200703211559280546.txt

Court: DE Court of Chancery

Judge: Parsons, Donald F

File & Serve reviewed Transaction ID: 14171332

Current date: 3/21/2007

Case number: 888-VCP

Case name: Franklin Balance Sheet Investment Fund et al vs Thomas B Crowley Jr et al vs Crowley Maritime

The foregoing Scheduling Order For Approval Of Settlement Of Class And Derivative Action is hereby granted subject to the following modification:


The Settlement Hearing referenced in paragraph 2 shall be held on April 27, 2007 at 11:00 a.m.

/s/ Judge Donald F Parsons

# EXHIBIT C

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund LPD and Channell Partnership II, LP, and John H. Norberg, Jr., Individually, derivatively and on behalf of a Class of similarly situated stockholders, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 888-VCP |
| Thomas B. Crowley, Jr., Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, Cameron W. Wolfe, Jr., | ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| v. | ) ) ) | |
| Crowley Maritime Corporation, | ) ) | |
| Nominal Derivative Defendant. | ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jon E. Abramczyk (#2432)
John P. DiTomo(#4850)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Defendants*

May 25, 2007

Exhibit C
20

i.

## TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| I. PLAINTIFFS' ORIGINAL AND AMENDED COMPLAINTS. | 2 |
| II. THE GOING-PRIVATE TRANSACTION. | 4 |
| III. THE SETTLEMENT HEARING AND APPROVAL. | 6 |
| ARGUMENT | 7 |
| I. PLAINTIFFS' COUNSEL'S FEE MUST BE MEASURED BY *QUANTUM MERUIT*, NOT BY THE PRICE PAID IN THE TENDER OFFER. | 7 |
| A. The Legal Standard Allowing Fee-Shifting Does Not Provide for a Windfall to Plaintiffs' Counsel. | 7 |
| B. A "Percentage of the Benefit" Analysis Has No Application Where The Benefit Was The Result of Multiple Causes. | 8 |
| 1. In Shared-Credit" Cases, Plaintiffs' Counsel's Fee Cannot Be Based On A Percentage Of A "Common Fund". | 9 |
| 2. Only The Benefits Achieved By The Litigation Are Relevant when Determining A Reasonable Fee Award. | 11 |
| C. Under a *Quantum Meruit* Approach, Plaintiffs' Counsel Is Not Entitled to More Than $650,000. | 14 |
| II. EVEN BASED ON A "PERCENTAGE OF THE BENEFIT CONFERRED," THE FEE IS NOWHERE NEAR $6 MILLION. | 15 |
| CONCLUSION | 20 |

Exhibit C
21

ii.

## TABLE OF AUTHORITIES

CASES                                                                    Page

*Chrysler Corp. v. Dann,*
   223 A.2d 384 (Del. 1966)                                            11, 17

*Dunkin Donuts S'holders Litig.,*
   1990 Del. Ch. LEXIS 197 (Aug. 3, 1989)                            8, 10, 12

*Eisenberg v. Chicago Milwaukee Corp.,*
   1998 Del. Ch. LEXIS 141 (Oct. 25, 1988)                              11

*Emerald Partners v. Berlin,*
   1994 Del. Ch. LEXIS 18 (Feb. 4, 1994)                              16-17

*Fox v. Chase Manhattan,*
   1986 Del. Ch. LEXIS 356 (Jan. 9, 1986)                             14, 18

*Franklin Balance Sheet Investment Fund, et al., v. Crowley et al.,*
   C.A. No. 888-VCP, Mem. Op., Parsons, V.C. (Del. Ch. Oct. 19, 2006)     3

*Goldstone v. Texas Int'l,*
   1985 Del. Ch. LEXIS 493 (July 10, 1985)                              18

*Goodrich v. E.F. Hutton Group, Inc.,*
   681 A.2d 1039 (Del. 1996)                                          7-8, 11

*In re Anderson Clayton S'holders Litig.,*
   1988 Del. Ch. LEXIS 127 (Sept. 19, 1988)                            8, 11

*In re Crocker Shareholders' Litigation,*
   1985 Del. Ch. LEXIS 417 (May 21, 1985)                               18

*In re Diamond Shamrock,*
   1988 Del. Ch. LEXIS 123 (Sept. 14, 1988)                            8, 14

*In re First Interstate Bancorp Consol. S'holder Litig.,*
   756 A.2d 353 (Del. Ch. 1999)                                       9-11, 14

*In re Maxxam Group,*
   1987 Del. Ch. LEXIS 423 (Apr. 16, 1987)                              11

*In re Resorts Int'l S'holders Litig.,*
   1990 Del. Ch. LEXIS 167 (Oct. 11, 1990)                               7

Exhibit C
22

iii.

*In re Triarc Cos.,*
   2006 Del. Ch. LEXIS 66 (Mar. 29, 2006) .............................. 18

*Joseph v. Shell Oil Co.,*
   1985 Del. Ch. LEXIS 453 (Apr. 19, 1985) .............................. 19

*Nottingham Partners v. Dana,*
   564 A.2d 1089 (Del. 1989) .............................. 8

*Seinfeld v. Coker,*
   847 A.2d 330 (Del. Ch. 2000) .............................. 7

*Smith v. Van Gorkom,*
   1985 Del. Ch. LEXIS 516 (Oct. 11, 1985) .............................. 18

*Sugarland Industries, Inc. v. Thomas,*
   420 A.2d 142 (Del. 1980) .............................. 18

*Tandycrafts, Inc. v. Initio Partners,*
   562 A.2d 1162 (Del. 1989) .............................. 7

*United Vanguard Fund, Inc. v. Takecare, Inc.,*
   693 A.2d 1076 (Del. 1997) .............................. 8

*United Vanguard Fund, Inc. v. Takecare, Inc.,*
   727 A.2d 844 (Del. Ch. 1988) .............................. 10

*Weinberger v. UOP, Inc.,*
   517 A.2d 653 (Del. Ch. 1986) .............................. 11

**OTHER AUTHORITIES**

1-9 Wolfe & Pittenger, Corp. & Commercial Practice in
   Delaware Court of Chancery, § 9-5(d) .............................. 7

**RULES**

Court of Chancery Rule 12(b)(6) .............................. 2

Court of Chancery Rule 15(aaa) .............................. 3, 14-15

Court of Chancery Rule 23.1 .............................. 2

Exhibit C
23

1.

## PRELIMINARY STATEMENT

Plaintiffs' counsel's fee application seeks a windfall based on a fundamentally incorrect premise—that is, that this litigation should be viewed as the sole cause of the tender offer made to take the Company private in March 2007. But as the tender offer materials repeatedly state, settling this litigation was only part of the reason that the offer was made. The offer was equally motivated by the Crowley family's long-standing goal of taking the Company private, so that the Company could operate free from the substantial costs and burdens of being a public reporting company.

Because the settlement of this litigation was only one of the reasons for the offer, the benefit from the litigation cannot be measured, as plaintiffs' counsel suggests, by the difference between the bid price for Crowley stock in 2006 and the price paid in the tender offer in March 2007. In this case, although the Company arguably benefited from the settlement of the litigation, it did not benefit from the premium paid in the tender offer. And viewed from the perspective of the benefit of the litigation to the stockholders, the Court cannot determine with any degree of confidence even an approximate amount of the portion of the offer price that represents the settlement value of the claims brought in this litigation. Therefore, under Delaware law, the only way to measure a reasonable fee for plaintiffs' counsel's efforts in this litigation is using the *quantum meruit* standard.

As shown below, the only reasonable fee that can be derived from the proper application of the equitable exceptions to the American Rule on attorneys' fees is in the range of $650,000 to $800,000. It is nowhere near the $6 million windfall that plaintiffs' counsel demands by claiming exclusive credit for a "benefit" that this litigation did not create.

Exhibit C
24

2.

## BACKGROUND

I.    PLAINTIFFS' ORIGINAL AND AMENDED COMPLAINTS.

On November 30, 2004, plaintiffs filed a complaint in this Court, alleging that the directors of the Crowley Maritime Corporation breached their fiduciary duties by putting in place a "policy" to ensure that the Crowley family maintained control of the Company by purchasing a number of split-dollar life insurance agreements (the "Split-Dollar Agreements"). Plaintiffs sought declaratory relief, and an order for the disgorgement of profits and damages in an amount equal to the premiums, cost and expenses paid with respect to the Split-Dollar Agreements, which the complaint valued at approximately $15 million. Comp. ¶ 79.

Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(6) and 23.1 because there were no specific facts in the Complaint which suggested that the Board could not have adequately evaluated a demand to bring a derivative claim for waste of corporate assets, there were no well-pleaded allegations concerning the conduct that was alleged to breach fiduciary duties, plaintiffs did not have standing to pursue certain claims and the claims were time-barred. The motion also sought dismissal of the individual claim because no individual injury was pleaded.

At argument on the motion to dismiss, the defendants highlighted the significant deficiencies with respect to plaintiffs' claims, including plaintiffs' failure to make a pre-suit demand, plaintiffs' failure to plead a basis on which they had standing under Rule 23.1 (based on the continuous ownership rule), and plaintiffs' failure to allege an individual injury to state an individual claim. At argument, the Court requested limited supplemental briefing with respect to the standing issue.

Exhibit C
25

3.

Pursuant to the Court's request, the defendants submitted a supplemental opening brief addressing the standing issue. After reviewing defendants' brief, however, plaintiffs decided not to submit a reply, but instead moved for permission to re-write their Complaint to add thirty-seven paragraphs of new allegations and to add John H. Norberg as an additional plaintiff to attempt to cure the defects in the original plaintiffs' standing to bring derivative claims concerning the 1992 policies. Because plaintiffs' proposed amendment did not comply with Rule 15(aaa), which required plaintiffs to amend prior to filing an answering brief on defendants' motion to dismiss, defendants opposed the amendment.

The Court allowed plaintiffs to amend their Complaint and also allowed John H. Norberg to intervene, but recognized that "Plaintiffs actions reflect[ed] too glib a rationalization for avoiding the application of Rule 15(aaa) and … [had] resulted in at least some unnecessary briefing and argument by defendants, to say nothing of the toll on the Court's time and resources." *See Franklin Balance Sheet Investment Fund, et al., v. Crowley et al.,* C.A. No. 888-VCP, Mem. Op., Parsons, V.C. (Del. Ch. Oct. 19, 2006) (the "Mem. Op.") at 13. The Court required plaintiffs to pay defendants $10,000 in attorney's fees[1] for unnecessary briefing and argument.

On November 7, 2006, the defendants moved to dismiss the Amended Complaint, which, like the original Complaint, primarily sought to have defendants reimburse the Company for the premiums paid by the Company on the 1998 policies, and the interest that the Company paid on the loan made to Thomas Crowley, Jr. to reimburse the Company for the premiums it

---

[1] Incredibly, plaintiffs' counsel now seeks a return of those fees as part of his application for expenses.

Exhibit C
26

4.

had paid on the 1992 policies. Based upon plaintiff's allegations, the Amended Complaint sought to recover approximately $15 million payable to the Company. *See* Am. Compl. ¶ 109.

## II.     THE GOING-PRIVATE TRANSACTION.

During December 2006, the parties began discussions concerning a possible settlement. In connection with those discussions, plaintiffs agreed to consider a tender offer for their shares, if the purchase price exceeded the bid price for the common stock (which at the time was approximately $1,800 per share). Following further discussions, plaintiffs' counsel indicated that the plaintiffs would settle the litigation and tender their shares if an offer was made at $2,990 per share. *See* Crowley Maritime Corporation, Schedule 14D-9 (March 19, 2007)(the "14D-9") at 5 (Attached as Exhibit A).

On January 16, 2007, the board of directors formed a special committee to review, evaluate and recommend to the board of directors what action should be taken with respect to the proposed tender, including recommending to the board of directors the position the board of directors should take in response to the tender offer. In connection with that mandate, the special committee retained legal and financial advisors. *Id.*

In the following weeks, the parties discussed a settlement which would provide for settlement of the litigation and the tender offer. During the period from January through March, an independent fiduciary for the Company's employee stock plans reviewed the proposed offer, and the special committee met to discuss the proposed offer and review the work of its financial advisor. Both the independent fiduciary and the special committee's advisors ultimately determined that the consideration to be paid in the offer was fair. After discussing the offer and the financial advisor's opinion, and considering numerous other factors—only one of

Exhibit C
27

5.

which was the settlement[2]—the special committee recommended to the Company's board of directors that the offer was fair to, and in the best interests of, the unaffiliated stockholders, and that the board of directors should recommend that the unaffiliated stockholders accept the offer and tender their shares. Later that same day, the board of directors met, deliberated and accepted the special committee's recommendation. *Id.*

On March 19, 2007, the Company announced that Mr. Crowley had formed a Delaware entity (Crowley Newco Corporation) that was offering to purchase all of the outstanding shares of the Company's common stock (other than those beneficially owned by the purchaser) for $2990 per share, in cash, and, upon meeting certain conditions, including the tendering of a majority of the minority of the unaffiliated shares, and the tender of not less than 95% of the total shares outstanding, would effectuate a short-form merger as part of an overall goal of taking the Company private. *See* 14D-9 at 1-2. As disclosed in the Offer to Purchase, the Crowleys believed that the costs incurred by the Company to maintain itself as a public reporting company were not justified. *See* Form SC TO-T, Exhibit 99.A1I (March 19, 2007)(the "Offer to Purchase") at 4 (Attached as Exhibit B). Specifically, as a private company, the Company would no longer continue to incur the significant audit, legal and personnel costs and fees or be exposed to greater legal risks, including securities law compliance burdens that being a public reporting company involves. *Id.* Furthermore, the Company's management would no longer be required to devote the significant time currently required to comply with public reporting obligations. *Id.* Thus, the settlement was just one part of the overall goal of taking the Company private.

---

[2] As disclosed in the Company's 14D-9 the special committee considered no less than fourteen material factors in concluding the offer was fair. *See* 14D-9 at 7-8.

Exhibit C
28

6.

III.    THE SETTLEMENT HEARING AND APPROVAL.

On April 27, 2007, this Court reviewed the terms of the settlement, considered all of the objections made to the settlement, and approved the settlement as fair, reasonable and in the best interests of the corporation and the class.

Exhibit C
29

7.

<u>ARGUMENT</u>

I.    PLAINTIFFS' COUNSEL'S FEE MUST BE MEASURED BY
      <u>*QUANTUM MERUIT*, NOT BY THE PRICE PAID IN THE
      TENDER OFFER.</u>

A.    <u>The Legal Standard Allowing Fee-Shifting Does Not
      Provide for a Windfall to Plaintiffs' Counsel.</u>

The legal standard for awarding attorneys' fees in litigation in the Court of

Chancery begins with the recognition of the "American Rule," which requires each party in a

civil action to pay its own fees and expenses unless a statutory or equitable exception applies.

*E.g., Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1043-44 (Del. 1996). The American

Rule has two exceptions that are frequently applied by this Court. "In the realm of corporate

litigation, the court may order the payment of counsel fees and related expenses to a plaintiff

whose efforts result in the creation of a common fund or the conferring of a corporate benefit."

*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) (citation omitted).

"An attorney fee, however, is not a pot of nectar available to any attorney who

represents any stockholder." *In re Resorts Int'l S'holders Litig.*, 1990 Del. Ch. LEXIS 167, at

*11 (Oct. 11, 1990). In order to be entitled to an award of fees under the common fund or

corporate benefit doctrine where an action has been settled, the applicant must establish, *inter*

*alia*, that the corporate benefit obtained was causally related to the law suit. 1-9 Wolfe &

Pittenger, Corp. & Commercial Practice in Delaware Court of Chancery, § 9-5(d) (citing cases).

The Court's task when determining the amount of a fee to be awarded under an

exception to the American Rule is clear: plaintiffs are awarded fees in "an amount that produces

appropriate incentives without a significant risk of producing socially unwholesome windfalls."

*Seinfeld v. Coker*, 847 A.2d 330, 333-34 (Del. Ch. 2000). Therefore, the Court of Chancery's

review of fee applications must be "more than 'cursory,'" and subject to the same heightened

Exhibit C
30

8.

judicial scrutiny that applies to the approval of class action settlements. *Goodrich*, 681 A.2d at 1045-46 (citing *Nottingham Partners v. Dana*, 564 A.2d 1089, 1101 (Del. 1989). As the Supreme Court has held, "the Court of Chancery must make an independent determination of reasonableness" before making an attorney's fee award. *Id.*

Contrary to plaintiffs' counsel's argument, the applicable standard for determining a reasonable fee in a case in which the plaintiffs' litigation is not the sole cause of any benefit to a corporation or its stockholders is not based on a percentage of the claimed "benefit achieved." Instead, where, as here, class plaintiffs, "at most, can only be partly credited with conferring the benefit achieved," "[t]he benefit conferred by class plaintiffs" is deemed to be "unquantifiable," and, as a result, plaintiff's counsel "can be compensated only on a limited *quantum meruit* basis." *Dunkin Donuts S'holders Litig.*, 1990 Del. Ch. LEXIS 197, at *20, 21 (Aug. 3, 1989).[3]

B.    A "Percentage of the Benefit" Analysis Has No Application
Where The Benefit Was The Result of Multiple Causes.

Plaintiffs' counsel's fee application blatantly misstates the facts by contending "there is no question here that the benefit achieved was the sole and direct result of the litigation." The fee application further compounds the error by attempting to base the fee on a hypothetical "$37.5 million common fund that is not related to the claims in the litigation."[4]

---

[3]    *See also, e.g., United Vanguard Fund, Inc. v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997); *In re Anderson Clayton S'holders Litig.*, 1988 Del. Ch. LEXIS 127 at *11-15 (Sept. 19, 1988); *In re Diamond Shamrock*, 1988 Del. Ch. LEXIS 123 at 11-12 (Sept. 14, 1988).

[4]    Plaintiffs' counsel's calculation of a $37.5 million benefit is fundamentally flawed for a number of reasons. First, there is no basis to claim that the litigation was the sole cause of the tender offer. As the tender offer materials clearly state, the litigation was only part of the reason for the tender offer. Second, there is no basis to claim that the value of

(continued...)

Exhibit C
31

9.

But plaintiffs' counsel's argument simply ignores the reality that the tender offer was expressly *not* the "sole and direct result of the litigation." And neither the settlement of the litigation, nor the premium incorporated in the offer price, created a "common fund" from which attorneys' fees could be paid. Likewise, the premium paid in the offer does not reflect only the value of the litigation. Instead, because the litigation was only one of a multitude of factors that contributed to the tender offer, and because there is no way this Court can determine the amount of settlement value incorporated into the offer price, plaintiffs' counsel fee cannot be based on a percentage of the price paid in the tender offer.

     1.    In Shared-Credit" Cases, Plaintiffs' Counsel's Fee Cannot Be Based On A Percentage Of A "Common Fund".

This Court has repeatedly recognized that the consideration paid in connection with a merger does not inherently create a "common fund" from which a representative plaintiff's counsel can rightfully claim a percentage, even when such stockholder litigation might have some role in increasing the consideration ultimately paid in the merger. *E.g., In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353, 359 (Del. Ch. 1999). Instead, where, as here, the Court "cannot ascertain, with any degree of confidence, even an approximate amount reflecting the value conferred on those stockholders by the litigation:"

> [t]his court has refused to award a fee based on a percentage of the benefit claimed to have been conferred, preferring, instead, to rely on notions of *quantum meruit* as the standard for calculating fees.

(...continued)

settling the litigation was anywhere near $1190 per share—a number that plaintiffs' counsel simply derives from subtracting an arbitrary bid price from the offer price, which yields a number far in excess of plaintiffs' own estimates of the value of his claims in the litigation. Finally, plaintiffs' counsel's transparent effort to inflate the benefit attributable to settling the litigation is betrayed by his attempts to include shares tendered by defendants in his calculations.

Exhibit C
32

10.

*Id.* at 359, citing *Dunkin Donuts*, 1990 Del. Ch. LEXIS 197; *United Vanguard Fund, Inc. v. Takecare, Inc ("Takecare II")*, 727 A.2d 844 (Del. Ch. 1988).

Indeed here, as in *First Interstate*, the record is crystal clear that multiple factors "operated independently of the litigation to influence the outcome and the final price paid . . . ." *Id.* at 359 n.2. As the tender offer materials state, although the offer was made *in part* to settle the litigation, it is undisputable that a number of other specific factors also motivated the offer. Those factors include the long-standing desire to avoid the unwarranted expense of maintaining Crowley as a public reporting company, including the expense of securities law compliance and the substantial management time devoted to complying with public reporting obligations. *See e.g.*, Ex. B, Offer to Purchase at 4.

In cases where "it is not possible to identify precisely the degree to which the litigation caused the benefit," a fee award based upon a percentage of the benefit arguably created by the litigation is not appropriate. *See, e.g., Takecare II*, 727 A.2d at 854 (court awarded a *quantum meruit* fee of $602,348 for 2400 hours of work, not the $4.8 million sought by plaintiffs' counsel as a percent of benefit); *Dunkin Donuts*, 1990 Del. Ch. LEXIS 197 (rejecting application for $2.575 million based on percentage of benefit conferred and applying *quantum meruit* to award a fee of $922,000). Thus, in this case, because the Court cannot attribute the whole or any particular part of the claimed benefit to the results of the stockholder litigation, the only appropriate measure of a reasonable fee is based on *quantum meruit*; not on a percentage of any benefit conferred. *Takecare II*, 727 A.2d at 857.[5]

---

[5]    Moreover, plaintiffs' counsel's fee cannot properly be claimed as a percentage of a "common fund" because there is no fund from which plaintiffs' counsel's fee will be paid.  To the extent that plaintiffs' counsel could have legitimately claimed that the settlement of this case resulted in the creation of a "common fund," his fee would be paid
(continued...)

Exhibit C
33

11.

**2.  Only The Benefits Achieved By The Litigation Are Relevant when Determining A Reasonable Fee Award.**

This Court has long recognized that only the benefits "<u>achieved by the litigation</u>" are relevant when determining a reasonable fee award. *In re Maxxam Group*, 1987 Del. Ch. LEXIS 423, at *34 (Apr. 16, 1987) (emphasis in original). Particularly where, as here, the benefit is to be paid by the corporation, rather than from any "common fund," the benefit must flow from the purpose of the litigation. As this Court held in *Eisenberg v. Chicago Milwaukee Corp.*, 1998 Del. Ch. LEXIS 141, at *13 (Oct. 25, 1988):

> To serve as the basis for a fee award, a claimed benefit must have some basic relationship to the grievance which led to the filing of the complaint.

Thus, when the claimed benefit does not result from the objective being pursued in the litigation, the plaintiffs' counsel cannot claim credit for that benefit for the purpose of any fee award because "what is relevant is the benefit <u>achieved by the litigation</u>, not simply a benefit that, *post hac ergo propter hoc*, is conferred after the litigation commences." *Anderson Clayton*, 1998 Del. Ch. LEXIS 127, at *8 (emphasis in original).

Here, the only objective that plaintiffs pursued in this litigation was a breach of fiduciary duty claim related to the Company's expenditures for split-dollar life insurance policies. The remedy sought by these plaintiffs was not a buy-out of the minority; it was recovery of the money that the Company spent on the policies. Plaintiffs' counsel simply cannot

---

(…continued)
from that fund. *E.g.*, *Goodrich*, 681 A.2d at 1045 citing *Weinberger v. UOP, Inc.*, 517 A.2d 653, 654-55 (Del. Ch. 1986) and *Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del. 1966). But here, where there is no fund from which a fee can be paid and the fee that is to be paid will come from the corporate treasury, the fee must be measured on a *quantum meruit* basis. *See First Interstate*, 756 A.2d at 359.

Exhibit C
34

12.

legitimately claim that the going-private transaction was solely and directly related to the claims in his complaint.

Not surprisingly, the fact that settlement of the claims in plaintiffs' complaint was only part of the motivation for the going-private transaction does not allow plaintiffs' counsel to claim credit for the entire premium paid in the transaction or seek a fee based on a percentage of that premium. For example, in the *Dunkin Donuts* case, stockholder plaintiffs' counsel sought a fee based upon a percentage of the increase in price paid in an auction sale of the company based upon a theory that plaintiffs' attack on the company's defensive measures in reaction to an offer for the company ultimately prompted the board to auction the company.

The Court found that although plaintiffs' litigation contributed to the board's decision to auction the company, it refused to accept plaintiffs' counsel's claim that he was entitled to a percentage of the benefit realized by the premium price paid in the transaction—*i.e.* the "benefit" of the increase in price from the unaffected market price of $29 per share before the sale to the $47.25 per share price paid in the ensuing tender offer. Instead, the Court noted that because the plaintiffs' litigation could only be partly credited with causing the benefit achieved, the court could only award a fee based upon *quantum meruit* rather than a percentage of the alleged benefit conferred. *Dunkin' Donuts*, 1990 Del. Ch. LEXIS 197, at *21.

Similarly, in this case, plaintiffs' counsel cannot fairly claim either that: (1) the litigation was the sole cause of the tender offer; or (2) that the premium paid in the tender offer was solely attributable to the value of the claims in the litigation. As set forth in the tender offer documents, the Offer was made *in part* to settle the litigation, and *in part* for other good and specifically disclosed reasons. But there is no way for this Court to determine with any degree of certainty the amount of the price attributable to the settlement of this litigation.

Exhibit C
35

13.

As the tender offer materials note, the Crowleys based their belief in the fairness of the offer price not only on the premium reflected by the difference between the $1,800 per share bid price and $2,990 offer price, but also on the annual valuations performed for the Employee Stock Plans, which, as of June, 2006 ranged from $1,913 to $2,943. On those metrics alone, the premium paid in the offer covered a wide range from $47 to $1,077, with no specific identification of the portion of the premium attributable to the settlement value of the litigation.

For similar reasons, there is no way on the record before the Court that the $1,800 price from the "pink sheets" can be used to measure the value of the settlement of the litigation. As the Company's 14D-9 notes, on March 16, 2007, prior to the commencement of the tender offer and announcement of the settlement, the closing bid price reported in the "pink sheets" was $2400. *See* 14D-9 at 18. Embedded in the tender offer price was the value necessary to ensure that an independent special committee could conclude that the price was fair and that the minority stockholders would find sufficiently attractive to be motivated to tender their shares, rather than seek appraisal. Although some portion of the price paid was based on the settlement value of the litigation, there is no way this Court can determine how much of the price is attributable to that factor alone. Certainly, the settlement value of the litigation did not exceed more than the amount sought by the complaint.

Regardless of the way in which the "benefit" of this litigation is calculated, Delaware law is clear that in these circumstances plaintiffs' counsel is not entitled to a fee based on a percentage of the claimed benefit where the litigation is not the sole factor creating the claimed benefit and the benefit achieved is unquantifiable. Instead, the only reasonable measure of any fee award in such cases must be calculated using a *quantum meruit* approach.

Exhibit C
36

14.

C.    Under a *Quantum Meruit* Approach, Plaintiffs' Counsel Is
Not Entitled to More Than $650,000.

In performing a *quantum meruit* analysis, the Court will consider the work the attorney performed to achieve the benefit, as well as the amount and value of attorney time required for that purpose, taking into account the experience of counsel and the contingent nature of the case. *See, e.g., First Interstate*, 756 A.2d at 364 citing *Diamond Shamrock*, 1988 Del. Ch. LEXIS 123, at *12 (Sept. 14, 1988).

Here, plaintiffs' counsel claims to have spent 1,047.25 hours prosecuting this case, but has failed to support his fee request with the documentation the Court must consider to determine a reasonable fee. Plaintiffs counsel's application is deficient because the law requires him to show not only the number of hours spent on the litigation, but also: (i) who worked them; (ii) the specific tasks performed; and (iii) the hourly rate of the person performing the task. *Fox v. Chase Manhattan*, 1986 Del. Ch. LEXIS 356, at *2 (Jan. 9, 1986) ("evidence showing precisely what work [counsel] did, how many hours they experienced, by whom, or at what hourly rates. . . is one of several relevant factors that this Court must consider").

On the present record it is difficult for the Court to determine, with any precision, the value of the work performed in this litigation. The problem created by the incomplete record is not inconsequential in determining a reasonable fee award in this case. In view of the time plaintiffs' counsel spent on the original claims that would have been dismissed for lack of standing absent Mr. Norberg's intervention and the Court's determination that "plaintiffs' actions [contributing to serial motions to dismiss and the motion to allow Mr. Norberg to intervene] reflect too glib a rationalization for avoiding the application of Rule 15(aaa)" and caused an unnecessary "toll on the Court's time and resources," which should not be compensable, the

Exhibit C
37

15.

number of compensable hours must be substantially less than the 1,047 hours claimed.  Mem. Op. at 13.

There is no dispute that petitioning counsel is experienced in matters of this type, or that plaintiffs' counsel's fee was entirely contingent.  Nevertheless, there is utterly no basis to pay plaintiffs' counsel a windfall of $6 million—a fee that has utterly no relationship to the amount of effort or risk plaintiffs' counsel invested in productive activity in this litigation, and equates to an unprecedented rate of almost $6,000 per hour.   Instead, taking into account a reasonable hourly fee for plaintiffs' counsel of $500 per hour, plus a substantial premium of $200 per hour to account for the risk in the contingent nature of his fee, an appropriate award of attorney's fees and expenses[6] is in the range of $650,000.

II.    EVEN BASED ON A "PERCENTAGE OF THE BENEFIT CONFERRED," THE FEE IS NOWHERE NEAR $6 MILLION.

Even if the Court were to measure the reasonableness of the fee determined using *quantum meruit* by comparing it to some imprecise estimate of the benefit conferred by the litigation, Plaintiffs' counsel has no legitimate claim to a fee anywhere near $6 million. Plaintiffs' counsel's arguments for such a fee not only ignore the proper standard for determining an attorney's fee in a "shared credit" case, they also improperly attempt to inflate the fee by mischaracterizing the benefit achieved as a result of the litigation, and claiming a percentage of

---

[6]    Plaintiffs' counsel's attempt to recover more than half of his expenses ($10,000), which he was ordered to pay for "avoiding the application of Rule 15(aaa)" speaks volumes about the lack of credibility in his demand for a $6 million fee in a case which did not proceed beyond a motion to dismiss and incurred only about $7,000 in expenses.  It would be patently inequitable and unreasonable allow, plaintiffs' counsel to unilaterally reverse this Court's prior order requiring plaintiffs to reimburse $10,000 in fees to defendants by recovering that "expense" in this proceeding.

Exhibit C
38

16.

that benefit well above what this Court has allowed in cases like this, which settled well before discovery commenced or a trial was held.

As discussed above, it is axiomatic that in determining the benefit conferred upon a class that will be used as a benchmark for a fee, the benefit must be measured in relation to allegations in the complaint. *See, e.g., Emerald Partners v. Berlin*, 1994 Del. Ch. LEXIS 18, at *9 (Feb. 4, 1994); (denying plaintiffs' counsel attorneys fees where there was no nexus between the claims and a tender offer commenced after the suit was filed).

This was not a case in which a plaintiff filed a lawsuit to prompt a going-private transaction or to challenge the price to be paid in a transaction. Instead, this litigation was undeniably brought to recover the money that the corporation spent on the split-dollar life insurance policies. The economic benefit of total victory in the litigation would have been no more than the return of that money to the Company.

It is utterly implausible to argue that the defendants in this litigation would have paid plaintiffs more than $37 million to settle the claims related to the split dollar policies—which were by no means assured of victory and were subject to a pending motion to dismiss—when the defendants were, at most, exposed to $12 million in damages. In this regard, plaintiffs counsel's argument that the litigation achieved a benefit 160% more than "the likely maximum recovery of damages" not only is not supported by the facts, it also is economically irrational. By any measure, the maximum benefit conferred by the litigation would have been the return of the premiums paid by the Company for the split dollar policies (with interest), and the return to the Company of the interest on the loan to Thomas Crowley to reimburse the Company for the

Exhibit C
39

17.

premiums paid on the 1992 policies; a benefit properly valued at about $12 million,[7] not $23.5 million, and certainly not $37.25 million.  But even a $12 million benefit would have to be further reduced before it could be used as a benchmark for computing a reasonable fee for plaintiffs' counsel's efforts in this litigation.

　　　　　First, plaintiffs' counsel admits that this was an "extremely risky, difficult and complex" derivative action.  Any claimed benefit based on total success in the litigation would have to be reduced based on the likelihood of success.[8]  Here, by plaintiffs' counsel's own measure, it was not likely that he would be 100% successful because, as plaintiffs' counsel admits, the claim most likely to survive was a derivative claim for corporate waste, which would have been exceedingly difficult to prove and could have been extinguished by a ~ing-private merger. *See* OB. At 15.

---

[7]　In the Amended Complaint, Plaintiffs' estimated that the premium payments on the 1998 policies was "as much as" $1.8 million annually. *See id.* ¶¶ 99-100.  Plaintiffs conceded, however, that the Company voluntarily ceased those payments in 2003. *See id.* ¶ 95(b)-(c).  Thus, assuming plaintiffs' inflated estimates were accurate, the total amount the Company could expect to recoup under the premiums paid would have been approximately $9 million.  In addition, the Amended Complaint alleged that the interest payable on the $7.5 million loan would be approximately $487,500 per year. *See* Am. Compl ¶ 101.  Based on plaintiffs' estimates, if this amount was accrued annually from December 31, 2003, to the date of the settlement, then the total cost to the Company would have been approximately $1.6 million.  Adding $1.6 million for the interest paid to Mr. Crowley for the loan taken to buy out the Company's portion of the 1992 policies, the total liability is approximately $10.6 million.  And if, as plaintiffs contend, interest were recovered on the cash value used to pay the premiums on the 1998 policies (estimated at $117,000 annually in paragraph 101 of the Amended Complaint), the maximum total liability would have been no more than $11 to $12 million.  As the Company disclosed in its 14D-9, had the policies been terminated as of December 31, 2006, the cash value of the premiums payable by Crowley to the Company would not exceed $12 million. *See* 14D-9 at 3.

[8]　Delaware law has long recognized that where an action is settled, an applicant for attorneys' fees must first establish that his claims were meritorious when filed. *See, e.g., Chrysler Corp.*, 223 A.2d at 384.

Exhibit C
40

18.

Second, plaintiffs' counsel would only be entitled to recover from the Company the amount of the benefit conferred on the minority stockholders. Even if the Court were to accept counsel's most robust estimates, the benefit upon which the fee should be built is no more than one third of the total benefit—*i.e.*, one third of $12 million, or $4 million. *See In re Triarc Cos.*, 2006 Del. Ch. LEXIS 66, at *6 (Mar. 29, 2006) (holding that fee based upon derivative recovery to the corporation confers a *pro-rata* benefit to the non-controlling stockholders).

Third, as the cases clearly bear out, any fee that is calculated as a percentage of a fund must recognize the stage at which the litigation settled and whether the litigation was the exclusive cause of the benefit. As *Sugarland* illustrates, when the litigation is not the exclusive cause of the benefit, an appropriate percentage of the benefit conferred is in the range of 5%, not 20%, as plaintiffs' counsel argues. *Sugarland Industries, Inc. v. Thomas*, 420 A.2d 142, 157 (Del. 1980).

Finally, as this Court recognized in *Fox v. Chase Manhattan*, the percentage of any fee award should be scaled down as the magnitude of the claimed benefit increases:

> In such cases, the scaling down of the percentage of the benefit represented by the fee award has occurred not out of any motive to penalize the beneficial and worthwhile efforts of counsel. Rather, consistent with the concept of reasonableness, it is designed to recognize the fact that beyond a certain point, the effort and risk required to produce a higher or incremental monetary benefit do not normally increase in proportion to the increase in the monetary benefit itself.

1986 Del. Ch. LEXIS 356, at *14 (Jan. 9, 1986).[9] Thus, even if the "common fund" approach was used as a check on the *quantum meruit* fee calculation, the maximum fee could be no more

---

[9]   *See generally Smith v. Van Gorkom*, 1985 Del. Ch. LEXIS 516, *4 (Oct. 11, 1985); *see Goldstone v. Texas Int'l*, 1985 Del. Ch. LEXIS 493, at *9-10 (July 10, 1985) ($ 307,500 award for fees and expenses, representing 1% of the $30 million benefit); *In re Crocker*
(continued...)

Exhibit C
41

19.

than a reasonable percentage of $4 million, not 16% of $37.25 million.   Indeed, even if an

inflated 20% of that $4 million were awarded, a reasonable fee would be no more than $800,000.

---

(...continued)

    *Shareholders' Litigation*, 1985 Del. Ch. LEXIS 417, at *17 (May 21, 1985) ($1,750,000
    fee award, representing 2.5% to 5% of a settlement that had been valued at $35 million to
    $70 million); *Joseph v. Shell Oil Co.*, 1985 Del. Ch. LEXIS 453, 14-16 (Apr. 19, 1985)
    ($15 million fee award, representing 7.3% of a $205 million settlement).

Exhibit C
42

20.

CONCLUSION

There is no basis upon which the Court can determine the exact value of the

benefit conferred by this settlement. In such circumstances, the Court can only apply a *quantum*

*meruit* analysis to determine a reasonable fee for plaintiffs' counsel. Under a *quantum meruit*

analysis, plaintiffs' counsel is not entitled to more than a fee in the range of $650,000. But even

if the Court were to base a fee award on a "common fund" approach and award a percentage of

that fund to plaintiffs' counsel, any reasonable fee award should not exceed $800,000.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*Jon E. Abramczyk*
_____
Jon E. Abramczyk (#2432)
John P. DiTomo (#4850)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
    *Attorneys for Defendants*


May 25, 2007


832090.5

Exhibit C
43

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2007, DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES was served, by LexisNexis File & Serve, on the following attorney of record:

> R. Bruce McNew, Esquire
> Taylor & McNew, LLP
> 2710 Centerville Road, Suite 210
> Greenville, DE 19808

_Jon E. Abramczyk_

Jon E. Abramczyk (#2432)

Exhibit C
44

**EXHIBIT D**

EFiled: Apr 24 2007 2:57PM EDT
Transaction ID 14597629
Case No. 888-VCP

IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| FRANKLIN BALANCE SHEET INVESTMENT FUND AND FRANKLIN MICROCAP VALUE FUND, P. OPPENHEIMER INVESTMENT PARTNERSHIP LP AND OPPENHEIMER CLOSE INTERNATIONAL LTD., WYNNEFIELD PARTNERS SMALLCAP VALUE LP I, WYNNEFIELD PARTNERS SMALLCAP VALUE LP, WYNNEFIELD SMALLCAP VALUE OFF-SHORE FUND LTD. AND CHANNELL PARTNERSHIP II, LP, AND JOHN H. NORBERG, JR., Individually, derivatively and on behalf of a Class of similarly situated stockholders, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 888-VCP |
| THOMAS B. CROWLEY, JR., MOLLY M. CROWLEY, PHILLIP E. BOWLES, GARY L. DEPOLO, EARL T. KIVETT, WILLIAM A. PENNELLA, LELAND S. PRUSSIA, CAMERON W. WOLFE, JR., | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) ) | |
| CROWLEY MARITIME CORPORATION, | ) ) | |
| Nominal Derivative Defendant. | | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## THE PROPOSED SETTLEMENT

DATED: April 24, 2007

TAYLOR & McNEW, LLP
R. Bruce McNew (# 967)
2710 Centerville Road, Suite 210
Wilmington, Delaware 19808
(302) 655-9200

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

<u>PAGE</u>

TABLE OF AUTHORITIES ........................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

STATEMENT OF FACTS ........................................................................................... 3

    I.      The Plaintiffs ............................................................................................... 3

    II.     The Company and its Capital Structure and the Defendants ..................... 3

    III.    Nature of the Claims .................................................................................. 4

    IV.   Crowley's Approach to Acting as a Public Company ................................ 5

    V.     The Insurance Agreements .......................................................................... 6

    VI.    Damages ...................................................................................................... 7

    VII.   The Settlement and its Benefits ................................................................. 7

    VIII.  Objectors to the Settlement. ..................................................................... 14

STATEMENT OF QUESTIONS INVOLVED .............................................................. 18

    I.      Should the Settlement be Approved as Fair, Reasonable and Adequate? 18

ARGUMENT ........................................................................................................... 19

    I.      This Settlement is Fair, Reasonable and Adequate and Should be
          Approved ................................................................................................... 19

          A.  Applicable Legal Standards. .................................................................. 19

          B.  The Risks of Success on the Claims.................................................... 20

          C.  The Benefits Exceed Those Obtainable in a Successful Trial ............ 21

          D.  The Objections are Without Merit. ...................................................... 22

CONCLUSION ........................................................................................................ 27

Exhibit D
46

# TABLE OF AUTHORITIES

**Cases**

Aronson v. Lewis,
    Del. Supr., 473 A.2d 805 (1984) .................................................................................... 19

Baupost LP, 1983 A-1 v. Providential Corp.,
    Del. Ch. 1993 WL 401866 at 2 (1993). ....................................................................... 18

Fike v. Ruger,
    Del. Ch. 754 A.2d 354 (1999) ....................................................................................... 23

Geller v. Tabas,
    Del Supr., 462 A.2d 1078 (1983) ........................................................................... 18, 22

In re Caremark International, Inc. Derivative Litigation,
    Del. Ch. 698 A.2d 959 (1996). ..................................................................................... 18

In re Prodigy Communications Corp. Shareholders Litigation,
    Del. Ch., 2002 WL 1767543 at 3 ................................................................................. 22

In re Resorts International Shareholders International Appeals,
    Del. Supr., 570 A.2d 259 (1990) .................................................................................. 25

In re Resorts International Shareholders Litigation,
    Del. Ch., 1988 WL 92749 at 9  (1998) ......................................................................... 22

In re Siliconix Shareholders Litigation,
    Del. Ch. 2001 WL 716787 at 166 (2001). .................................................................... 24

In re Triarc Companies, Inc.,
    Del. Ch., 791 A.2d 872, 8-79 (2001) ........................................................................... 22

In re Vitalink Communications Corp. Shareholders Litigation,
    Del. Ch. 1991 WL 238816 at 10-11 (1991) ................................................................. 18

Kahn v. Sullivan,
    Del. Supr., 594 A.2d 48, 58 (1991) .............................................................................. 18

Lampf, Plena, Lipkind, Prupis & Petigrow v. Gilbertson,
    501 U.S. 350, 112 S. Ct. §21 (1991) ........................................................................... 23

Exhibit D
47

Nottingham Partners v. Dana,
    Del. Supr., 564 A.2d 1089, 1101-02 (1989) .................................................................. 18

PaineWebber R & D Partners II, L.P. v. Centocor, Inc.,
    (Del. Ch.) 1999 WL 160123 at 50 (1999.).................................................................... 18

Polk v. Good,
    Del. Supr., 507 A.2d 531 (1986)................................................................................... 18

Tooley v. Donaldson Lufkin & Jenrette, Inc.,
    Del. Supr., 845 A.2d 1031 (2004)................................................................................ 19

Exhibit D
48

## NATURE AND STAGE OF PROCEEDINGS

On November 30, 2004 Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, P. Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund Ltd. and Channell Partnership II, LP, and John H. Norberg, Jr. ("Plaintiffs") commenced this action as a derivative action and a class action against certain directors of Crowley Maritime Corporation ("Crowley" or the "Company") alleging breaches of fiduciary duties by the defendants directors owed to Crowley Maritime and its stockholders. The action was commenced following a lengthy investigation into matters first revealed on April 1, 2002.

On February 25, 2005 the Defendants moved to dismiss the Complaint. The motion was briefed and argument was heard on September 30, 2005. This Court directed that additional briefing be filed. In lieu of filing an additional brief, Plaintiffs, on December 27, 2005, moved to amend the Complaint and to intervene an additional stockholder Plaintiff. On January 19, 2006, the Court ordered further proceedings on the Motion to Dismiss pending resolution of these two motions. Those two motions were briefed and the hearing was held on June 9, 2006.

By decision of October 19, 2006, this Court granted those two motions and directed Plaintiffs to file the Amended Complaint with the additional intervening Plaintiff. Plaintiff filed their Amended Complaint on October 24, 2006. On November 7, 2006, Defendants again moved to dismiss the action. On March 19, 2007, the parties filed a proposed settlement of the action and, pursuant to the terms of the proposed

settlement, a company controlled by Defendant Thomas Crowley commenced a tender offer for any and all shares of outstanding common stock of the Company, with certain limited exceptions, for a price of $2,990 per share.

Pursuant to this Court's Order of March 21, 2007, the Court conditionally certified the action as a class and derivative action and scheduled a hearing on April 27, 2007 to hear Plaintiffs' Motion for Approval of the Settlement and for an Award of Attorney's Fees and Expenses. The Court, at the request of the parties, directed that consideration of the application for an award of attorney's fees and expenses be deferred and heard on May 30, 2007. This is Plaintiffs' brief in support of the settlement.

## STATEMENT OF FACTS

I.      The Plaintiffs

Plaintiffs in this action are long standing stockholders of Crowley Maritime Corporation.[1]   Collectively, the Plaintiffs own approximately 30% of the stock of Crowley Maritime not owned or controlled by the Crowley family.  Plaintiffs have owned stock of Crowley continuously since as early as 1991.  Plaintiffs have been among the largest, if the largest, public stockholders of Crowley for over 10 years.  The Plaintiffs represent a cross section of institutional investors and private shareholders.  They are Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund (part of the Franklin Templeton Group of Mutual Funds) P. Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund Ltd. and Channell Partnership II, LP, and John H. Norberg, Jr.

II.      The Company and its Capital Structure and the Defendants

Crowley Maritime through its subsidiaries provides maritime transportation services in domestic and international market through four operating business lines.  The Company provides numerous services on both the East and West coasts of the United States, Alaska, the Gulf of Mexico and Puerto Rico.  The Company is involved in the construction, ownership, leasing and insuring of maritime vessels.   The Company employees approximately 4,000 people and has fleet of more than 270 vessels.   The Company also has numerous land based facilities and assets.

---

[1] Unless otherwise noted, the facts are taken from the Complaint and represent only Plaintiffs' views.

Exhibit D
51

The Company was founded in 1892 by the grandfather of Defendant Thomas Crowley, Jr. ("Thomas Crowley"). It currently has operating revenues in excess of $1 billion annually. The capital stock of the Company is divided into Common Stock, Preferred A Convertible Stock and Class N non-voting stock. The Crowley family, headed by Defendant Thomas Crowley, owns all of the Class A Preferred Stock and Class N non-voting stock. In addition, as of April 25, 2003 the Crowley Family owned or controlled approximately 65% of the common stock of the Company.

The Defendants were the Board of Directors at the time of the commencement of the action, November 30, 2004[2]. The individual Defendants are Thomas Crowley, Chairman, President and Chief Executive Officer of the Company, Molly Crowley, Thomas Crowley's mother, Phillip E. Bowles, William A. Pennella, Gary L. Depolo, Earl T. Kivett, Leland S. Prussia, Cameron W. Wolfe, Jr.

III.       Nature of the Claims

The Complaint challenged a series of transactions under which the Board approved the purchase, at Company expense, of tens of millions of dollars of life insurance in various agreements, as amended and/or "terminated" from time to time, owned, not by the Company, but by Thomas Crowley. The insurance was purchased on the lives of members of the Crowley Family. These purchases took place in a series of transactions commencing as of April 6, 1992. In all, there were three separate insurance agreements involving as many as ten separate life insurance policies totaling at one point $141,296,319 in death benefits. As set out in ¶ 37 of the Amended Class Action and Derivative Complaint the challenged transactions are as follows:

---

[2] The Board has remained unchanged since the commencement of the action.

Exhibit D
52

| Action | Date | Defendants On the Board |
|--------|------|-------------------------|
| Approval of Insurance Agreement 1 (see Paragraph 73) | as of 4/6/92 | Bowles; Wolfe |
| Approval of Amendment 1 to Insurance Agreement 1 (see Paragraph 75) | as of 5/1/95 | All but Pennella and Kivett |
| Approval of Amendment 2 to Insurance Agreement 1 (see Paragraph 76) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Amendment 3 to Insurance Agreement 1 (see Paragraph 77) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Insurance Agreement 2 (see Paragraph 78) | as of 7/20/98 | All but Pennella and Kivett |
| Approval of Insurance Agreement 3 (see Paragraph 79) | as of 11/24/98 | All but Pennella and Kivett |
| Approval of each and every annual payment made under each of those agreements which payments were subject to unilateral suspension by admission of the Company in this action and its 2003 Proxy (see Paragraph 83) | Annually since 1992 | Various |
| Entering into the December 23, 2003 Settlement Agreement and the related implementing transactions including the agreement to pay the premiums due on a personal loan taken out by Thomas Crowley. (see Paragraph 87) | 12/23/05 | All |
| Failing to rescind and void the insurance agreements and recover the funds paid hereunder (see Paragraph 97) | | All |
| Annually paying the tax consultation costs to defendant Crowley arising from the Insurance Agreements (see Paragraph 96) | Beginning at least in 2002 | All |

IV.     Crowley's Approach to Acting as a Public Company

Notwithstanding that Crowley's management and board knew that the company had many public stockholders, it refused to acknowledge its obligations to those stockholders as a public company. For example, the Company engaged in the 1992 restructuring for the purpose and effect to which was to benefit the Crowley Family. Only after the litigation in this Court did the transaction result in the elimination of enhanced voting control for the Crowley Family.

Exhibit D
53

Similarly, in 1995 the Company engaged in the self tender strictly for the purpose of providing liquidity to a Crowley Family Trust. The self tender served no purpose of the Company and, instead, was engaged in and at the request of and for the purposes of benefiting the Crowley Family Trust. In 2001, the Company engaged in the self tender in an effort to attempt to avoid its obligations as a reporting company. That effort failed and the Company finally recognized its reporting obligations to its public stockholders.

Prior to that time, the Company's disclosures were non-existent with respect to material self-dealing transactions.

V.        The Insurance Agreements

On April 1, 2002 the Company first disclosed the life insurance arrangements between it and Thomas Crowley. The insurance arrangements obliged the Company to spend tens of millions of dollars, yet obliged Thomas Crowley to do nothing. In short, the Agreements provided that the Company would buy life insurance to be owned by Thomas Crowley for the benefit of Thomas Crowley and his estate. Thomas Crowley was not obliged to use the proceeds of the funds in any way and, was not for practical purposes limited or restricted in any fashion by the Agreements.

The purported purpose of the Agreements was to ensure and perpetuate Crowley family control. While the Agreements permitted Thomas Crowley the option of maintaining control, should he choose to do so, as noted above, he was not obliged to do that and at all times the transactions were designed and had the effect of using Company funds to address Thomas Crowley's estate planning problems.

Each year the Company voluntarily, by its own admission, continued to contribute to these insurance agreements until the payments were suspended on July 30, 2002. The

Exhibit D
54

suspension of those payments, however did nothing to effect the viability of the life insurance and, because of the structure of the Agreements, in essence allowed Thomas Crowley to use the Company funds, through a reduction of his liabilities to the Company to continue making payments on the insurance. At their peak the insurance agreements provided life insurance in the face amount of $141,296,319 as part of this scheme.

VI.    Damages

The damages sought in the Complaint exceed $23,000,000 at the time of the settlement. Indeed, the Complaint alleges that the Company at all times should have owned the policies and thus cash surrender value of the policies. During the fiscal year 2003 the cash surrender value of the policies exceeded $18 million. As of the commencement of the action in November 2004, the Company had already been injured through the improper expenditures of at least $15 million dollars and they continued at the rate $2.4 million per year. Thus, as of the time of the time of the settlement, damages sought by the Complaint exceeded $23 million. Complaint ¶ 101.

Had Plaintiffs been successful in proving their claims at trial, the most likely remedy the Court would have ordered would have required Thomas Crowley to repay at $23 million to the Company. This payment would have undoubtedly benefited the Company, however, for the individual stockholders there would have been no direct benefit from this remedy. In short, this relief would have been derivative.

VII.    The Settlement and its Benefits

It has been apparent that neither the Plaintiffs, other minority shareholders, nor Thomas Crowley were satisfied with their relationship. During the course of the litigation, the Plaintiffs recognized that an alternative resolution of this action which the

Exhibit D
55

Plaintiffs concluded could be at least as beneficial to them, would be an opportunity to liquidate their minority position at a favorable price. The Plaintiffs were only willing to agree to a transaction available to all other public stockholders. Obviously, from a economic standpoint, Thomas Crowley would have an interest in such transaction only if it resulted in him taking the Company private.

As set forth in the affidavits of the Plaintiffs, as minority stockholders, they were not in a position to control dividend policy of the Company and were not in a position to cause a transaction which would have provided them liquidity in their stock. Thomas Crowley has at all times stated that he was unwilling to dispose of his shares and had previously stated he had no intention of taking the company private. Further, the Company has not paid, and has not stated any intention ever to pay, any dividends on the stock.

In addition, the public float of the Company stock is very small and the stock has a history of trading only rarely and thinly in the "pink sheet" market. Thus, although there was a bid and ask price for the stock, neither the Plaintiffs nor any other shareholder of sizeable holdings had an opportunity to liquidate his or her holdings at any predictable price or time frame.

The proposed settlement obligates Thomas Crowley to make an offer to purchase all the outstanding public shares of the Company at a price of $2,990 per share through a tender offer and follow-up merger. This price represents an $1,190 premium over the bid price in the pink sheets of $1,800 per share as of December, 2006, a sixty-five percent (66%) premium. Approximately 28,200 shares of common stock are subject to the offer. Thus, the transaction collectively offers non-controlling shareholders a premium of over

$33.5 million, even assuming that all shareholders could have sold at the last reported trade price. Because of the thin market, it is clear that all of the shareholders could not have sold at that price and thus the settlement offers to the shareholders a minimum value of at least $33.5 million dollars over the stock price at the time the final stage of settlement talks were reached. The bid price when the action was commenced, November 30, 2004 was $1,100 per share. The settlement represents a premium of $1,890 or over 170% over the price at that time.

From a minority stockholder's perspective, an investment in Crowley presents, theoretically, a great opportunity. The Company had a solid position to exploit potential growth opportunities in its business. The reality, however, was far different. The stock traded at a discount for a variety of reasons. They included, the control of Thomas Crowley, management's approach to minority stockholders, the absence of any dividend on the stock, in addition to the thin nature of the trading market and the relative size of the public float of the common stock when compared with large actively and publicly traded companies.

Over the years, the minority stockholders have made efforts to have Crowley management act in the manner more appropriate for a publicly held company. Essentially, these efforts have been unsuccessful. This, coupled with information in the Company's disclosures, made it clear the Crowley management was unlikely, in the foreseeable future, to change its view of its minority stockholders or its management of the Company in a way which that would enhance the minority shareholders' stock. Additionally, given the fact that Thomas Crowley was relatively young and, quite credibly, indicated that he had no intention of ever selling his stock, Plaintiffs concluded

that, on a long term basis, not only would their investment, and the investment other public stockholders, reflect a relatively illiquid minority position in a stock which did not and foreseeable would not pay dividends, but that value would be further eroded by the approach of Crowley management to its public stockholders.

The action was commenced for the purpose of recovery of over $23 million which the Company spent for obviously private Crowley Family purposes, paying for life insurance owned by Thomas Crowley so that he could use the proceeds, if he decided to do so, to pay estate taxes and maintain his control of the Company. The way the Agreements were structured, Thomas Crowley in fact, had no practical obligation to the Company and could have chosen to sell the Company at any time he wanted and still keep the over $140 million in life insurance proceeds for himself. The Company's disclosures, meager as they were, made it clear that this was not some form of compensation for Thomas Crowley, who, according to the Company's disclosures was already handsomely and separately rewarded for his activities as the Company's chief executive and chairman. Plaintiffs believed it was critical in maintaining what value minority shareholders had as well as to enforcing appropriate rules of corporate governance, to recover these funds and to stop the misuse of corporate money. Plaintiffs believe that had this matter gone to trial, Plaintiffs would have been successful and would have recovered an excess of $23 million for the Company.

This recovery, of course, would have gone only to the Company and would have not directly benefited any minority stockholder. Further, based upon the history of the management's activities, Plaintiffs did not believe that this would have changed management's attitude towards minority. Thus, Plaintiffs viewed this litigation as, likely,

Exhibit D
58

only the first of what would need to be a series of actions designed to seek judicial assistance in compelling management to act appropriately and to treat Crowley as a public company.

Therefore, while Plaintiffs were committed to the successful pursuit of this litigation, they were aware that even if the claims had been successfully tried and the judgment collected, the likely result would have been the payment to the Company in excess of $23 million. Thomas Crowley would still own approximately two-thirds of the Company and nothing that the Plaintiffs likely would have accomplished, in this litigation, would have required Thomas Crowley to pay one penny in dividends to any stockholder. Therefore, while a successful trial and collection of judgment would have greatly benefited the shareholders indirectly, it would have provided no direct immediate tangible benefit to them.

The novel approach to settlement in this case provides a direct tangible and immediate benefit to all minority stockholders. The settlement provides an opportunity for stockholders voluntarily and without coercion to liquidate their positions in Crowley stock. The proposed settlement contains thresholds requiring that an overwhelming number of the minority stockholders express a desire to sell in order for the tender offer and merger to be completed. The requirement is that prior to closing the tender offer Thomas Crowley be in a position to complete a short form merger. If he obtains 95% of the outstanding stock of the Company in the tender offer, this will translate into approximately 85% of the public shares being tendered, in other words six out of seven public shares have tendered into the tender offer. Even if only 90% is obtained, this will mean five out of seven public shares were tendered, about 70% of the minority shares.

11

This will demonstrate an overwhelming approval by the public stockholders of the proposed transaction. In addition, to the extent that a public stockholder does not like the price being offered in the tender offer or merger, that stockholder has the option of seeking an appraisal before this Court. No stockholder will be forced to accept the price negotiated by the Plaintiffs.

The price negotiated by the Plaintiffs of $2,990 represents a substantial premium over any price which could be realistically be expected to be obtained by any minority stockholder in any transaction, other than a buy-out by Thomas Crowley. This is a tremendous opportunity for shareholders, given that Thomas Crowley has complete operational control of the Company, has chosen not to pay dividends for a number of years, and had no pressing interest in pursuing a buy-out of minority stockholders at this time, or indeed in the foreseeable future. In discussions with representatives of Thomas Crowley, it was expressed to Plaintiffs that it was Thomas Crowley's intention to operate the Company in its present capital structure well into the indefinite future.

The "Pink Sheets", on which the Company stock trades, operate through a bid and ask system. The bid price is the price in which a market maker is prepared to buy at least one share of the stock. The ask price is the price in which a market maker is prepared to sell at least one share of stock. There are no assurances nor any indications of how "deep" the market is: that is just how many shares could be bought or sold at that price. History has demonstrated that in the selling of minority blocks of stock, the larger block to be sold the greater the downward pressure on the price. Therefore, the bid price offered for the stock represented the best a shareholder could hope to obtain and, to the extent there were a large number of shares being sold, either by that seller or by some

Exhibit D
60

group of sellers, the price would likely erode. At the time the action was commenced, the bid price for the stock was $1,100 per share. The settlement represents an increase of $1,890 over that or a premium of 170%. At the time the parties entered into final settlement negotiations in late 2006, the bid price for the stock was $1,800 per share. The transaction price of $2,990 represents a premium of $1,190 or 65% over that price.

In considering whether to accept this price, the Plaintiffs considered a number of factors. The principal factors weighing in favor of accepting the proposed settlement are that the price of $2,990 represents a substantial, and otherwise unrealizable, premium over the market price for the stock and provides all shareholders an opportunity to realize that value immediately in cash. Absent the transaction, there is no reason to believe that the market for Crowley stock would materially improve either in price or liquidity. Further, there was no reason to believe that Crowley stock would commence paying a dividend at any time. The proposed settlement unlocks and provides the ability to realize $1,190 per share in value otherwise not available to the shareholders, an aggregate value of approximately $33.4 million. Plaintiff considered this opportunity to directly realize a value of at least $33.4 million as superior to the benefit which the minority stockholders would have received from a successful trial of the case: an indirect benefit through the payment to the Company of $23 million. Thus, Plaintiff considers the proposed settlement not only fair, reasonable and adequate but in fact superior to a complete and total victory at trial.

VIII.    Objectors to the Settlement.

By letter to the Court dated April 9, 2007, Leonard Rosenthal ("Rosenthal") or ("Objector") objected to the proposed settlement in this action.  Rosenthal objected to the Settlement on the following grounds:

(1)    The proposed Settlement does not recover funds for the corporation but instead provides funds to the shareholders directly.

(2)    The Settlement "forces the minority shareholders to sell out their shares at an under value price."

(3)    Plaintiffs' counsel did not investigate the fairness of the buy-out offer but relied "instead on the fairness opinion of investment bank hired by the people he was suing."

(4)    The investment banker's opinion does not satisfy professional standards for establishing fairness.

Rosenthal claims to be a shareholder of Crowley but attaches no proof to his objection.  Plaintiffs are informed and therefore believe that there is a Leonard Rosenthal who is a registered owner of two shares of Crowley stock.  These two shares represent 0.00007 (seven thousandths of one percent) of the shares to be acquired in the proposed transaction.

In an objection dated April 9, 2007, Rosenthal claims that the proposed settlement "forces the minority stockholders to sell out" at an undervalued price.  This quite simply is not true.  The proposed settlement offers an opportunity to tender into a tender offer. That tender offer has sufficiently high thresholds that it will not proceed unless it receives overwhelming minority shareholder support.  No shareholder is forced to tender into the

tender offer. It is non-cohesive. No shareholder is forced to accept the price in either the tender offer or the merger. All shareholders retain the right to an appraisal. In short, if Rosenthal does not want the offer or the merger price, he does not have to accept it.

The Rosenthal objection inaccurately states that Plaintiffs' counsel relied on the fairness opinion of an investment bank hired by the Defendants. Nothing could be further from the case. The price of $2,990 was established by all the Plaintiffs working as a committee. The Plaintiffs relied on their own internal evaluations in reaching this number. The Plaintiffs did not represent and do not represent to anyone the price of $2,990 represents "fair value" or "enterprise value" or any other type of value. Instead, it is a negotiated price which Plaintiffs felt represented an overwhelming superior result to all minority stockholders and which Plaintiffs felt should be offered to all minority stockholders. In reaching their decision to settle the case including the price at which to settle and the manner in which to structure the settlement, Plaintiffs relied on their own resources including their own internal evaluations. They did not rely upon the evaluation by or on behalf of any Defendant.

Attached to Plaintiffs' Appendix is what Plaintiffs believe to be the biography of Rosenthal available on-line. Appendix Tab J. Also in Plaintiffs' Appendix is information indicating that there is an apparent relationship between Rosenthal and an investment banker, Gary Luten, who operates an organization called The Shareholder Forum. Appendix Tab I. The Shareholder Forum describes itself as "an independent forum for shareholders of Crowley Maritime Corporation...initiated to provide its participants with effective access to information and a meaningful exchange of views on issues relating to investor interest". The manager, Transition Investments Inc., is

believed to be controlled by Gary Luten who is identified as its President and who conducts the forum. See Appendix Tab E.

Upon the announcement of the Settlement, Luten was initially quite laudatory about the results. Appendix Tab G. He referred to it as "good work" by Plaintiffs' counsel and congratulated Plaintiffs' counsel on the proposed Settlement. He further stated that he hoped that "all shareholders realized the benefits of your good work and hoped that they appreciated what you have accomplished for them." Subsequently, Luten solicited Plaintiffs' counsel seeking to participate in any attorney fee and expense which was awarded by the Court. Once Plaintiffs' counsel informed him that it did not see any basis for the Court award the forum any of the unspecified "expenses" as requested by Luten, Luten solicited information from Plaintiffs' counsel relating to the Settlement, apparently in coordination with formulating the objection by Rosenthal. That information is apparently what Rosenthal refers to in his objection where he refers to Plaintiffs' counsel's "own statement". Once the objection was made, Luten again solicited an opportunity to participate in the attorney's fees and expenses. Appendix Tab H.

On April 16, 2007 James F. and Carter Thacher sent an objection to the Court. The Thachers claim to have owned 206 shares of Crowley, which they sold on May 17, 2006 for $1,800 per share in the "Pink Sheet" market. They object because they are not able to participate in the offer and further ask the Court to delay the settlement so they can investigate further. The Thachers say that they were unaware of the existence of the lawsuit at the time they sold.

Exhibit D
64

Crowley's public disclosures, since the action commenced, including the two most recent 10Q's and the most recent 10K preceding May 17, 2006 have contained disclosures relating to the litigation. Appendix Tabs A-D.  See Crowley Form 10Q for the quarterly period ending March 31, 2006 filed May 15, 2006.  Appendix Tab B at page 31-32; Crowley formed 10K/A Amendment No. 1 for the fiscal year ending December 31, 2005 filed April 14, 2006. Appendix Tab C at page 64; Crowley form 10Q for the quarterly period ending September 30, 2005 at page 44 filed November 10, 2005. Appendix Tab D.  Each of these disclosures put the public on notice regarding the existence of the litigation and the specific nature of the claims alleged.  Each of these disclosures makes clear that the action was filed both as a class action and as a derivative action.

## **STATEMENT OF QUESTIONS INVOLVED**

IX.    Should the settlement be approved as fair, reasonable and adequate?

## ARGUMENT

X.    This Settlement is Fair, Reasonable and Adequate and Should be Approved.

    **A.    Applicable Legal Standards.**

It has long been the policy of Delaware to encourage voluntary settlement of disputed claims. e.g. <u>Kahn v. Sullivan</u>, Del. Supr., 594 A.2d 48, 58 (1991); <u>Nottingham Partners v. Dana</u>, Del. Supr., 564 A.2d 1089, 1101-02 (1989). Delaware law particularly favors settlement of shareholder derivative actions because these promote judicial economy. e.g. <u>In re Vitalink Communications Corp. Shareholders Litigation</u>, Del. Ch. 1991 WL 238816 at 10-11 (1991), aff'd, Del. Supr. 610 A.2d 725 (1992).

In evaluating a proposed settlement of a derivative or class action the Court's function is to consider the nature of the claim, the defenses thereto, the legal and factual circumstances of the case, and then apply its own business judgment in deciding whether the settlement is reasonable in light of these factors. e.g. <u>Geller v. Tabas</u>, Del Supr., 462 A.2d 1078, 1082 (1983); <u>Polk v. Good</u>, Del. Supr., 507 A.2d 531, 535 (1986); <u>PaineWebber R & D Partners II, L.P. v. Centocor, Inc.</u>, (Del. Ch.) 1999 WL 160123 at 50 (1999). The principal focus is on upon the benefits provided by the settlement in light of the claims and the likelihood of success on the merits. *Id*; <u>Baupost LP, 1983 A-1 v. Providential Corp.</u>, Del. Ch. 1993 WL 401866 at 2 (1993). The Court is to assess the strengths and weaknesses of the claims asserted and to evaluate the fairness and adequacy of the other consideration offered in exchange for the release being granted. e.g. <u>In re Caremark International, Inc. Derivative Litigation</u>, Del. Ch. 698 A.2d 959, 961 (1996). In light of the foregoing standards, the settlement should be approved because it is fair,

reasonable and adequate in light of the nature of the claims, the defenses thereto and the benefits of the settlement.

**B.    The Risks of Success on the Claims.**

The goal of the action was to recover damages incurred by the Company as a result of wrongful conduct by the Defendants: the alleged wrong was misuse of corporate funds for improper purpose benefiting the Company's controlling stockholder, Thomas Crowley. The claims were plead both as derivative claims and as class individual claims.

To succeed on the derivative claims, Plaintiffs would have had to first establish that the Board could not adequately consider the demand as Plaintiffs made no demand on the Board. This Court is well familiar with the standard in <u>Aronson v. Lewis</u>, Del. Supr., 473 A.2d 805 (1984), overruled on the other grounds 746 A.2d 244 (2000) and its progeny. While Plaintiffs believe they would have succeeded in convincing the Court that the demand was excused, this issue is not free from doubt.

In addition to succeeding in motion practice relating to demand issues, Plaintiffs would have had to convince the Court that the money spent by the Company purchasing money for life insurance for Thomas Crowley constituted a breach of fiduciary duties. Plaintiffs believe they had a strong likelihood of success based on the facts of this case, however, again, the issue is not free from doubt.

Plaintiffs also included a class action count based upon the theory that the wrongs constituted individual claims. In <u>Tooley v. Donaldson Lufkin & Jenrette, Inc.</u>, Del. Supr., 845 A.2d, 1031 (2004) the Supreme Court established a test for determining whether a claim was a derivative case or an individual one, susceptible to class action treatment. The test turns on the nature of the relief to be awarded. Because, under the

Exhibit D
68

facts of this case, Plaintiffs believe the nature of the relief to be awarded was not clear, that is whether the relief would be awarded to the corporation or to the minority stockholders directly, they plead the case in the alternative. Specifically, the Complaint stated to the extent complete compensation was not awarded by the Court in a derivative manner, the class claims were asserted. Plaintiffs believe it is most likely that the Court would have awarded relief in a derivative manner, however, again because the Court's determination of a remedy would await a final decision on the merits, it was not clear what relief the Court would order.

### C.    The Benefits Exceed Those Obtainable in a Successful Trial

As to the shareholders other than Thomas Crowley, it is clear that the benefits of the settlement exceed the benefit which a successful trial of the action would have obtained. A successful trial would have obtained a recovery of $23 million for the Company  Proportioning that to the shareholders other than Thomas Crowley, they would have *indirectly* received the benefit of approximately one-third of $23 million, the proportion of their ownership or approximately $7.6 million. The proposed settlement provides them a premium for their stock of at least $33.4 million, approximately 4.35 times the benefit they would have received from a successful trial and recovery critically; the benefit of the settlement is a direct and is paid directly to the individual shareholders.

For the sake of clarity, Plaintiffs wish to emphasize that the $33.4 million is the premium being received. The total value of the transaction is approximately $100 million. Of that $100 million, $33.4 million represents the premium over the market price otherwise available to minority stockholders.

**D.    The Objections are Without Merit.**

The objection of the Thachers is that because they willingly sold their shares at $1,800 each on May 17, 2006, a price acknowledged to be fair market value at the time, they will receive nothing in the settlement.  They object to the Settlement because they are included in the release but will not receive any payment due to the nature of the relief obtained.  The Thachers assert that this is unfair because they had no notice of the litigation at the time they sold and because they should be permitted to pursue whatever claim they may have.  They do not assert that they have any particular claim which they believe they could or would pursue. The Thacher objection is, in essence, the Thachers' desire to participate in receiving the settlement consideration.  The Thachers do not complain that the settlement consideration is inadequate, only that it is not available to them.  Finally, they ask for additional time to research this action and the proposed settlement.  Accepting, for the purpose of this argument the Thachers' assertions that they own stock at the commencement of the action and sold as stated in their letter, something for which they have submitted no proof, their objection should still be denied.

There is no unfairness to the Thachers as they knowingly and willingly sold stock into the market with no expectation of retaining any rights and failed to act on any rights in a timely fashion.  Finally, the Thachers' request for adjournment of the hearing to provide them additional time should be denied.  The Thachers do not state what if anything they need to investigate nor identify how much time they believe such an investigation would take.  In short, they have provided the Court no basis in which to grant any adjournment.

Exhibit D
70

Whether the Thachers subjectively had notice of the lawsuit is irrelevant. Undoubtedly, the Thachers had objective notice of the lawsuit because the lawsuit of this action was repeatedly mentioned in the company's public filings after its commencement from March 31, 2005 through the date of Thacher's purported sale. See Appendix, Exhibit Tabs A-D. Those public filings make clear the nature of the lawsuit and the nature of the claims asserted. The Thachers cite to no, and Plaintiffs submit there is no, authority for the proposition that subjective ignorance of a company's public disclosure constitutes grounds to object to a proposed settlement of any nature.[3]

Second, Delaware law is clear that shareholders who decide to sell during the pendency of litigation have no right to be excluded from a class in a settlement on the grounds that they do not receive any economic benefit from the settlement. In <u>In re Triarc Companies, Inc.</u>, Del. Ch., 791 A.2d 872, 8-79 (2001) Vice Chancellor Lamb rejected just such an assertion. The Court noted that particularly when "derivative-type relief" is sought "it is unavoidable that persons who sever their economic relationship with the corporation during litigation will not benefit from a settlement or a judgment in favor of the class." This Court has also recognized persons who sell during the pendency of litigation sell into market at a price which "implicitly reflected the value of the pending and any prospective lawsuits." <u>In re Resorts International Shareholders Litigation</u>, Del. Ch., 1988 WL 92749 at 9 (1998); <u>In re Prodigy Communications Corp. Shareholders Litigation</u>, Del. Ch., 2002 WL 1767543 at 3.

Nor is it appropriate to delay consideration of a settlement based on an unspecific claim of the need for more time. In order to delay a settlement an objector must show the

---

[3] One thing is clear from the Thachers' subjective ignorance, they could not possibly have been relying on the lawsuit to protect any rights they may have or may have had.

Exhibit D
71

need for the additional time. <u>Geller v. Tabas</u>, Del. Supr., 462 A.2d 1078, 1081 (1983). Finally, in considering the fairness of the settlement to the objectors, the Court can consider the nature of the claims being released. <u>In re Triarc</u>, *supra*. The Thachers identify no specific claim which they wish to assert. Even without the specification of a potential claim, however, the Court could observe that the matters raised in the Complaint, and as to which the release relates, were first disclosed on April 1, 2002. The Thachers, acknowledging they were unaware of and therefore did not rely upon the pendency of any lawsuit, declined to take any action at any time to preserve any rights they might have. As a result of this inactivity, any claim relating to the facts alleged in the Complaint, if asserted for the first time now, would almost certainly be time barred. e.g., <u>Fike v. Ruger</u>, Del. Ch. 754 A.2d 354 (1999) (three years for fiduciary duty claims under Delaware law); <u>Lampf, Plena, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 112 S. Ct. §21 (1991) (one year from discovery, three years from violation for Federal Securities Claims). Here, there is no unfairness to the Thachers.

Even if the Court were to accept that Rosenthal's objection has been made in good faith,[4] it should be rejected as meritless.   The first objection: that the recovery does not obtain anything for the Corporation, but instead results in recovery directly to the minority shareholders, is a factor indicating a superior benefit to the minority stockholders, not a basis for an objection.  Clearly the proposed Settlement, providing substantial direct benefits, is superior to the indirect benefit which the shareholders would receive had money been paid to the Corporation.

---

[4] The Plaintiffs respectfully submits that there is substantial indication that Rosenthal's objection has not been interposed in good faith.

Rosenthal's objection that the proposed Settlement "forces the minority shareholders to sell" is simply false. There is nothing in the proposed Settlement which in any way forces a minority shareholder to tender shares into the Tender Offer. Further, the Tender Offer has exceedingly high minimal thresholds in so that it will proceed only if it receives overwhelming support of the minority stockholders.

Rosenthal's assertion that Plaintiffs' counsel stated that it relied on the fairness opinion of an investment bank hired by the Defendants is also inaccurate. The tentative price of the proposed Settlement was reached before any work performed by any of the investment banking firms hired by the "outside" directors. Further, as can be seen from the e-mail sent from Plaintiffs' counsel to Luten (who was apparently acting as front to collect the information on behalf of Rosenthal), Plaintiffs' counsel did not state that Plaintiffs relied on any fairness opinion. Indeed, Plaintiffs specifically have not stated that they view the offer as constituting "fair value". Instead, the proposed Settlement is quite clear, it is a price which the Plaintiffs view as highly advantageous for all minority stockholders.

To the extent Rosenthal objects that a controlling stockholder can, through a non-coercive tender offer and follow up short form merger, obtain complete ownership of a company without having to pay fair value (except through appraisal rights), his objection is really to the state of Delaware law. e.g., In re Siliconix Shareholders Litigation, Del. Ch. 2001 WL 716787 at 166 (2001). Indeed this is the problem with Rosenthal's last objection, that the fairness opinion does not satisfy standards with "fair value". Even if his objection is factually correct, that is that the valuation opinions do not satisfy

Exhibit D
73

standards for "fair value", it is legally irrelevant as there is no obligation under present Delaware law to pay fair value under these facts.

This is one of the factors in which Plaintiffs considered in reaching the proposed Settlement. Thomas Crowley was not under any obligation, given the present state of Delaware law, to pay fair value to the minority stockholders in any transaction for the foreseeable future. Unless Thomas Crowley decided to take the company private, something he was not obliged to do and in fact he stated that he did not intend to do, and unless in seeking to take it private he failed to obtain control of 90% of the votes in a non-coercive tender offer, fair value would not be available to shareholders except through an appraisal.

In fact, Rosenthal's objection proves too much. Under the settlement, Rosenthal and any other stockholder who desires "fair value" has the right to obtain it through an appraisal before this Court. See also, In re Resorts International Shareholders International Appeals, Del. Supr., 570 A.2d 259, 268 (1990) holding that preserving a right to appraisal is a special factor to consider in assessing whether any shareholder was treated unfairly in a settlement. Here the opportunity to obtain "fair value" exists only because of the proposed Settlement and only if the proposed Settlement is approved and the transaction goes forward. If the Court determines not to approve the Settlement, not only would the offer of $2,990 be lost to minority stockholders but, for those who feel that it is an inadequate price, the opportunity for an appraisal would also be lost.

Rosenthal's objection, on behalf of his two shares should be rejected.

## CONCLUSION

For the foregoing reasons, the settlement should be approved.

DATED:  April 24, 2007                    Respectfully submitted,

TAYLOR & McNEW, LLP


BY:      /s/ R. Bruce McNew
         R. Bruce McNew (# 967)
         2710 Centerville Road, Suite 210
         Wilmington, Delaware 19808
         (302) 655-9200

Exhibit D
75

# EXHIBIT E

EFiled: Mar 19 2007 2:28PM EDT
Transaction ID 14171332
Case No. 888-VCP

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JON E. ABRAMCZYK
302 351 9211
302 425 3006 FAX
jabramczyk@mnat.com

March 19, 2007

**BY E-FILE AND HAND DELIVERY**

The Honorable Donald F. Parsons, Jr.
Vice Chancellor
Court of Chancery
New Castle County Courthouse
500 North King Street, Suite 11400
Wilmington, DE 19801

> Re:     Franklin Balance Sheet Investment Fund, et al. v.
> Crowley Maritime Corp., et al.; Civil Action No. 888-N

Dear Vice Chancellor Parsons:

Enclosed for the Court's review are an agreed-upon Stipulation of Settlement and related papers for the settlement of the referenced action.

If the Court approves the form of Notice (Exhibit B), we respectfully request that the Scheduling Order (Exhibit A) be entered, providing for a settlement hearing on April 27, 2007, which we understand is currently available on the Court's calendar.

For the Court's convenience, we enclose a separate copy of the proposed Scheduling Order.

Respectfully,

Jon E. Abramczyk

Jon E. Abramczyk (#2432)

JEA/dmd
Enclosure
cc:     Register in Chancery
R. Bruce McNew, Esq.

Exhibit E
76