IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,<br><br>             Plaintiff,<br><br>   v.<br><br>FEDERAL INSURANCE COMPANY, *et al.*,<br><br>             Defendants.<br>_____/ | No. C 08-00830 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT and DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

On November 14, 2008, the Court heard oral argument on the parties' summary judgment motions. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the defendants' motions are GRANTED and plaintiff's motion is DENIED.

**BACKGROUND**

**1.     The Underlying Litigation**

Plaintiff Crowley Maritime Corporation ("Crowley") seeks indemnity from defendant insurance companies for payments made by Crowley to settle a securities action (the "*Franklin Fund* action"). Crowley is a Delaware corporation with its principal executive office in Oakland, California. It provides diversified transportation services in domestic and international markets by means of four operating lines of business: Liner Services, Logistics, Marine Services, and Petroleum Services.

On April 27, 2007, the Delaware Court of Chancery approved the settlement of an action brought by minority stockholders for breach of fiduciary duties and waste in connection with split-dollar life insurance policies obtained for Crowley's controlling stockholder, officer, and director. *See Franklin Balance Sheet Investment Fund v. Crowley*, No. 888-VCP, 2007 WL 2495018 (Del. Ch. Aug. 30, 2007).

Pursuant to the settlement, Crowley agreed to pay the stockholder plaintiffs $17.635 million for release of their claims, in addition to reasonable attorneys' fees and costs. The Delaware court later awarded plaintiffs $4,212,231 and $7,227.26 in attorneys' fees and expenses, respectively. *See id.*

**2.    The Instant Case**

Federal Insurance Company ("Federal") is Crowley's primary insurer; Twin City Fire Insurance Company ("Twin City") is its first level excess insurer, providing coverage of up to $10 million of covered loss after the first $10 million has been paid by Federal; and RLI Insurance Company ("RLI") is its second level excess insurer, providing coverage of up to $5 million of the covered loss after the first $20 million has been paid by Federal and Twin City. Plaintiff seeks indemnity from all three insurers. The following facts are undisputed, unless otherwise noted.

In November, 2004, Crowley shareholders filed the *Franklin Fund* action. On December 20, 2004, Crowley notified the defendant insurers of the claim and provided them with the contact information of the defense counsel selected by Crowley. *See* Decl. of Steven Ficon in Supp. of Crowley Mot. for Summ. J. ("Ficon Decl."), at ex. K. Crowley sought Federal's consent to Crowley's retention of defense counsel and its authorization to incur defense costs. *See id.*

Crowley's insurance policy with Federal includes the following provision, subsection 16, regarding "defenses and settlement":

> (a) It shall be the duty of the Insureds and not the duty of the Company to defend Claims made against the Insureds.
>
> (b) The Insureds agree not to settle or offer to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's prior written consent. The Company shall not be liable for any element of Loss incurred, for any obligation assumed, or for any admission made, by any Insured without the Company's prior written consent. Provided the Insureds comply with Subsections 16(c) and (d) below, the Company shall not unreasonably withhold any such consent.
>
> (c) With respect to any Claim that appears reasonably likely to be covered in whole or in part under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the Insureds, and shall be consulted in advance by the Insureds, regarding the investigation, defense and settlement of such Claim, including but not limited to selecting appropriate defense counsel and negotiating any settlement.
>
> (d) The Insureds agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a Claim the Insureds will do nothing that could prejudice the Company's position or its

> potential or actual rights of recovery.
>
> (e) Any advancement of Defense Costs shall be repaid to the Company by the Insureds, severally according to their respective interests, if and to the extent it is determined that such Defense Costs are not insured under this coverage program.

Decl. of David Newmann in Supp. of Def. Federal's Mot. for Summ. J. ("Newmann Decl."), ex. A, p. 2637.

Defendants acknowledged receipt of the claim and reserved their rights to deny coverage. *See* Ficon Decl., at ex. B (claim acknowledged by Federal on December 23, 2004); ex. C (claim acknowledged by RLI on January 7, 2005); and ex. B (claim acknowledged by Twin City on March 2, 2005).

By letter dated June 27, 2005, Federal clarified its position on coverage. *See* Decl. of Henry Nicholls in Supp. of Def. Federal's Mot. for Summ. J. ("Nicholls Decl."), at ex. A. Federal agreed to accept coverage of Crowley, subject to a reservation of rights, and stated that pursuant to the policy, Crowley's coverage was subject to a $500,000 deductible. *See id.* at p. 2255-56. Federal consented to Crowley's retention of defense counsel and requested to "be kept advised on events contemporaneously with their occurrence." *See id.* at p. 2261.

From February, 2005 until December, 2005, Crowley moved to dismiss the shareholder plaintiffs' complaint and amended complaint. Federal requested and received updates on these motions. *See* Nicholls Decl., at ex. B. Henry Nicholls, lawyer and claims examiner for Federal, attended a hearing on one of Crowley's motions to dismiss. *See* Nicholls Decl. at ¶ 4.

On November 17, 2006, Crowley advised all defendants that "total defense costs incurred to date are fast approaching the $500,000 deductible. We plan on submitting an itemized list and copies of all defense invoices to [Federal] within [] 60 days to facilitate future requests for reimbursement." *See id.*, at ex. C, p. 352. The letter concluded, "We will keep Underwriters advised of further developments." *Id.*

Beginning in December, 2006, Crowley and the *Franklin Fund* plaintiffs engaged in "arm's-length negotiations" concerning a possible settlement. *See Franklin Balance*, 2007 WL 2495018 at *4. The agreement provided that, in exchange for settlement of the *Franklin Fund* plaintiffs' claims, Crowley Newco Corporation, a corporation formed by Thomas B. Crowley (the chairman, president,

3

chief executive officer, and director of Crowley), would make a cash tender offer to acquire all public shares of common stock of Crowley for $2999.00 per share. *See* Newmann Decl., at ex. E, p. 1061. After purchasing the tendered public shares, Crowley Newco would merge with and into Crowley, which would survive as a private company. *Id.*, p. 1062.

On March 14, 2007, Crowley's Board of Directors voted to approve the tender offer and merger. *See id.*, at ex. G, p. 1377. On March 19, 2007, Crowley and the Franklin Fund plaintiffs executed a Stipulation and Agreement of Compromise, Settlement and Release ("the Settlement Stipulation"). *See id.* On the same day, Crowley released a press release entitled "Crowley Settles Stockholder Lawsuit." *See* Decl. of Michael F. Perlis in Supp. of Twin City's Mot. for Summ. J., at ex. C. On March 19, Crowley also filed its Schedule 14D-9 Solicitation/Recommendation Statement with the Securities and Exchange Commission. *See* Newmann Decl., at ex. E, p. 1377.

On Thursday, March 22, 2007, Nicholls e-mailed Jon Abramczyk, Crowley's defense counsel in the *Franklin Fund* action, asking whether there had been a ruling on Crowley's motion to dismiss. Decl. of Jon E. Abramczyk in Supp. of Pl.'s Mot. for Summ. J. ("Abramczyk Decl."), at ex. C, p. 2470. Abramczyk responded, "No. We settled by offering a buy out. I thought the Company sent you the documents, but we will. The settlement was signed on Monday." *Id.* Later the same day, an employee at Abramczyk's firm sent Nicholls an e-mail that contained documents describing the settlement. *See id.* at p. 2469.

Nicholls forwarded the information about the settlement to Eric Schall, a colleague at Federal, with the message, "Good news, this claim has been settled. There [are] some [] costs I will be processing beyond the deductible and the [] fee component. These should be well within my authority. You can close your shadow file and send it down to me when its [sic] convenient." *See id.* at p. 2468. Schall responded, "I guess we shouldn't look a gift horse in the mouth but . . . I take it from your comment that they are not asking for anything in connection with the buy-out; which if they were would be a problem given how they handle[d] the settlement. I will shut my file unless something comes up." *See id.* at p. 2468. Nicholls wrote back, "They haven't indicated any claim re the buy out amount. Looks like straight up disgorgement/Def of Loss[.] If they did and as you said, they're [sic] handling of settlement is a problem." *See id.* at p. 2468.

4

On March 28, 2007, Philip Pillsbury and Richard Shively (Crowley's coverage counsel) informed defendant insurers by letter that the firm of Pillsbury and Levinson had been retained by Crowley to represent its interests in connection with its claim for insurance coverage. *See* Decl. of Richard D. Shively in Supp. of Pl. Mot. for Summ. J. ("Shively Decl."), at ex. A. The letter stated, "We are writing to inform you that an opportunity has arisen to settle the action on favorable terms, and to seek your consent to pursue such a settlement." *See id.* Crowley also offered an explanation for why the insurers had not been involved in settlement negotiations until that point:

> After the [Franklin Fund] plaintiffs had initiated the idea of a buyout to settle the Franklin Fund Action, Crowley was constrained by significant confidentiality issues that prevented it, as a practical matter, from immediately inviting its D&O carriers to join in the negotiations. Those issues related not only to the applicable SEC disclosure rules, but also to financing arrangements necessary to fund the proposed purchase of the plaintiffs' shares.

*See id.* The letter noted, "The proposed settlement includes a provision that would require Crowley to pay attorneys' fees and costs incurred by the plaintiffs in prosecuting the Franklin Fund Action. Crowley would be looking to its carriers to cover – among other costs of settlement – those fees and costs, as well as Crowley's own defense costs" above its deductible. *See id.* Finally, Crowley sought consent to the proposed settlement "before unequivocally accepting the plaintiffs' settlement offer and proceeding to complete the settlement," set for hearing on April 27, 2007. *See id.*

On April 5, 2007, Shively and Nicholls discussed the settlement in a telephone conversation. They offer contradictory accounts of that conversation. In a declaration filed August 1, 2008, Shively claims Nicholls told him that Federal had "no problem consenting" to the settlement but needed more information, including the fees and costs for the *Franklin Fund* plaintiffs' attorneys' fees, as well as invoices detailing Crowley's defense costs. *See* Decl. of Richard D. Shively in Opp. to Def. Mot. to Disqualify Counsel ("Shively Disqual. Decl."), at ¶ 5. [Docket No. 73] Shively offered more details in a declaration filed September 19, 2008. In the later declaration, he contends that he told Nicholls that Crowley was seeking coverage for "that portion of the tender offer that amounted to a settlement payment." Decl. of Richard Shively in Supp. of Pl. Opp. to Defs. Mot. for Summ. J., ¶ 5. According to Shively, "When [Nicholls] expressed his surprise, I pointed out that the plaintiffs would never have agreed to release their claims if the amount they were receiving in the tender offer was not substantially

5

higher than the market value of the shares being tendered, and that the 'premium' paid in the tender offer therefore amounted to a settlement payment." *Id.* Nicholls offers a substantially different version what was discussed.[1]

On April 23, 2007, Shively sent Nicholls invoices and a summary of defense costs incurred by Crowley in its defense of the *Franklin Fund* action. *See* Decl. of Henry Nicholls in Supp. of Federal's Mot. for Summ. J., at ex. F. Shively stated in the letter that the submissions were "in support of Crowley's request for [Federal's] approval of the proposed settlement". *See id.*

The Delaware court approved the settlement on April 27, 2007. Crowley Newco's tender offer closed on May 7, and on May 8, Crowley Newco merged into Crowley. The court awarded attorneys' fees and costs of approximately $4.2 million to the *Franklin Fund* plaintiffs on August 30, 2007.

On June 14, 2007, Nicholls sent Crowley a letter asserting that Crowley had violated subsection 16 of its insurance policy by failing to advise Federal of its settlement negotiations and settling the *Federal Fund* action without Crowley's consent. *See* Nicholls Decl., at ex. G. The letter also stated that "Federal continues to expressly reserve all rights under the Policy and available at law including those arising out of [Crowley's] violation of subsection 16 of the Policy." *See id.*

Federal reviewed the invoices submitted by Crowley, determined that it had incurred a total of $76,967.54 in reimbursable defense costs, and issued a payment for that amount on October 26, 2007. *See* Newmann Decl., at ex. L.

On January 7, 2008, Crowley filed a complaint in San Francisco Superior Court seeking indemnity from the three insurance companies for its payment of the settlement. On February 6, 2008, Federal invoked diversity jurisdiction and removed to this Court pursuant to 28 U.S.C. § 1446(c). In its first amended complaint, Crowley alleges breach of contract and breach of the implied covenant of good faith and fair dealing against Federal. It seeks declaratory relief that Twin City and RLI owe coverage for Crowley's damages from the *Federal Fund* settlement.

---

[1] As will be apparent in the Court's subsequent discussion, Nicholls' account of the conversation is not material to the Court's decision on defendants' motions for summary judgment. For the purposes of defendants' summary judgment motions, the Court accepts the version of Crowley, the non-moving party, as true.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

//

**DISCUSSION**

**1.     Crowley Breached the Consent Provision of its Agreement with Defendants**

Defendants argue that Crowley is not entitled to indemnification because Crowley violated § 16(b) of its insurance policies[2] by negotiating with the *Federal Fund* plaintiffs and executing a settlement agreement without informing defendants or seeking their consent. Subsection § 16(b) provides that Crowley may not agree "to settle or offer to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's prior written consent." In addition, defendants "shall not be liable for any element of Loss incurred, for any obligation assumed, or for any admission made, by any Insured without [Federal's] prior written consent." It is undisputed that Crowley began settlement negotiations in December, 2006 without defendants' knowledge and executed a settlement agreement on March 19, 2007. It is also undisputed that defendants were first informed of the settlement no earlier than March 22, 2007.

Crowley's arguments that defendants are liable for coverage fail because they are based on the faulty premise that Crowley did not breach § 16(b) when it executed the Settlement Stipulation. Crowley interprets the prohibition in § 16(b) on settling a claim or assuming any contractual obligation as barring only "final and irrevocable agreements." *See* Pl. Opp. to Federal Mot. for Summ. J., at 14. The plain language of the provision is broader and clearly contradicts Crowley's reading of the contract: § 16(b) prohibited Crowley from "offer[ing] to settle" or "settl[ing]" a claim, or "assum[ing] a contractual obligation" without defendants' consent.

Crowley makes several arguments that it did not assume a contractual obligation or settle the *Federal Fund* action when it executed the Settlement Stipulation. First, Crowley argues that the Settlement Stipulation was not final because the agreement provided that if the tender offer or merger "cannot be consummated for any reason," the settlement "shall be null and void." *See* Newmann Decl.,

---

[2] The terms of the Federal policy were incorporated into Crowley's policies with RLI and Twin City. Crowley's insurance policies with both excess insurers also include provisions that stipulate, "In no event shall this Policy grant broader coverage than would be provided" by the underlying insurance polic(ies). *See* First Amended Complaint, at ex. B (Twin City) and ex. C (RLI).

8

at ex. E, ¶ 12. Crowley ignores other provisions in the agreement providing that all claims "shall be forever compromised, settled, released and dismissed with prejudice." *See id.*, p. 4-5. The Settlement Stipulation was "binding" on the parties. *See id.*, ¶ 14. The parties were obligated to "use their best efforts to effect, as promptly as possible, the consummation" of the settlement. *See id.*, ¶ 22. Any party had the right to "insist upon the strict performance of any and all of the provisions." *See id.*, ¶ 16. Read in context of the Settlement Stipulation as a whole, it is clear that the provision cited by Crowley is a *force majeure* clause, which would have relieved Crowley of its contractual duties only if performance became impossible. "As a general rule, when a party to a contract assumes a duty which is possible to perform, it must discharge the duty, unless performance is made impossible by an act of God, by the law or the other party." Richard Lord, *Williston on Contracts* § 77:31 (4th ed. 2008). Crowley is incorrect that this clause gave it discretion to reject the contractual obligations it had assumed by executing the agreement.

Second, Crowley argues that the Settlement Stipulation was not a binding contract because the settlement was not "effective" until five days after the later of (a) five days after the consummation of the tender offer and merger or (b) 30 days after entry of a final Court order approving the agreement, *see* Newmann Decl., at ex. E ¶ 9. The Court disagrees. Court approval and consummation of the tender offer and merger were conditions subsequent to Crowley's acceptance of the Settlement Stipulation. "Where the specified condition is a condition subsequent, it serves to relieve the offeror of the obligation to proceed upon the happening of a future event, even in the face of an act of acceptance, if the condition subsequent occurs within the time reserved." *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1054 (Del. Ch. 1984). The fact that the Settlement Stipulation provided for conditions subsequent does not support Crowley's conclusion that the agreement was not binding on Crowley at the time it was executed by Crowley's board. *Accord Vigilant Ins. Co. v. Bear Stearns Companies, Inc.*, 884 N.E.2d 1044, 1048 (N.Y. 2008) ("Having signed the consent agreement, [the parties were] not free to walk away from it before entry of a final judgment").

Third, Crowley cites the tender offer, which provided that Crowley's board retained discretion to terminate the offer. *See* Decl. of Richard Vernon Smith in Supp. of Pl. Mot. for Summ. J., at ex. B, ¶ 13(h). According to Crowley, when the board voted on March 14, it merely determined that the offer

9

was fair to the *Federal Fund* plaintiffs. Crowley argues that because the board had not yet approved the tender offer when Crowley sought defendants' consent on March 28, it would have been free to "walk away" from the settlement at any time if only it had known defendants did not consent. The minutes of the March 14 board meeting contradict Crowley's version of events. The minutes provide: "Now, therefore, be it resolved that the [Settlement Stipulation] is hereby approved." *See* Decl. of Richard R. Johnson in Supp. of Twin City's Opp. to Pl. Mot. for Summ. J. ("Johnson Decl."), at ex. E, p. 28917. The officers of Crowley were "authorized and directed to take all such actions as may be necessary, appropriate or advisable to have the [Settlement Stipulation] approved by the Delaware Chancery Court and otherwise effectuated . . . " *See id.* Crowley's officers were also "authorized to cause the Company to pay all costs, fees and expenses incurred by [Crowley] related to the settlement of *Franklin*, including all costs, fees and expenses incurred in connection with the [tender offer and merger]." *See id.* The board's resolutions at its March 14 meeting demonstrate that its officers were directed to effectuate the Settlement Stipulation.[3] Thus, the board had already approved the offer – and approved Crowley's payment of the costs of settlement – before defendants' consent was ever sought.

Finally, Crowley argues that Mr. Crowley retained discretion to retract the tender offer. Crowley had to delete the provision giving Mr. Crowley this discretion, however, in response to an objection raised by the SEC. On April 3, the SEC sent Crowley a letter in which it objected to, *inter alia*, the "walk-away" provision in the tender offer (¶5(g)) that purportedly gave Mr. Crowley discretion to terminate the offer. *See* Johnson Decl., at ex. D, p. 21484. In its April 24 response to the SEC,

---

[3] The declarations of Thomas Crowley and Richard Smith do not create a triable issue of fact on the effect of the Settlement Stipulation and tender offer. Mr. Crowley states that if he had known that defendants did not consent to the settlement, he would have "given consideration to such information before the transaction was completed." Decl. of Thomas Crowley in Opp. to Defs. Mots. for Summ. J., ¶ 3. [Docket No. 129] Mr. Crowley's contention about what he would have thought had he known defendants' position on coverage has no bearing on whether Crowley assumed contractual obligations by executing the Settlement Stipulation.

Mr. Smith represented Crowley in the *Federal Fund* action, including the tender offer and merger. He states that if defendants "had promptly informed Crowley that they did not consent to the proposed settlement, then the Board would have been free to oppose the tender offer notwithstanding prior approval of the settlement and/or the tender offer." Decl. of Richard Vernon Smith in Supp. of Crowley's Mot. for Summ. J., ¶ 5. Mr. Smith also claims that in his opinion, "if the Board or Special Committee had ever determined to oppose the transactions – both the tender offer and the settlement could, and would, have been terminated." *Id.*, ¶ 7. Mr. Smith's legal opinion about the effect of the Settlement Stipulation and speculation as to how the Board would have responded are not relevant to the Court's interpretation of the unambiguous terms of the Settlement Stipulation and tender offer.

10

Crowley repeated the SEC's query:

> [Subsection 5(g)] appear[s] to state that the offer may be terminated if [Crowley and Mr. Crowley] agree it may be. This renders the offer illusory. While a tender offer may be conditioned on an unlimited number of conditions, those conditions must be outside the control of the parties.

*See id.* Crowley responded, "[Subparagraph 5(g)] will be deleted . . . " *See id.* Mr. Crowley never had absolute discretion to terminate the offer because the so-called walk away provision was never valid. *See Raisler Sprinkler Co. v. Automatic Sprinkler Co. of America*, 171 A. 214, 219 (Del. Super. Ct.1934) ("One of the commonest kind of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory.").

The Court finds that none of the provisions cited by Crowley contradicts the conclusion that Crowley at least assumed contractual obligations when it executed the Settlement Stipulation. It is undisputed that defendants had no notice of the settlement until after the settlement was executed. Crowley therefore violated the consent requirement of § 16(b).

In California, such consent requirements (also referred to as "voluntary payment" and "no voluntary payment" clauses) "typically prohibit the insured from voluntarily making payments, assuming obligations, or incurring expenses without the insurer's consent." Witkin, *Summary of California Law, Insurance*, § 320 (citing *Jamestown Builders, Inc. v. General Star Indem. Co.*, 77 Cal. App. 4th 341 (Cal. Ct. App. 1999)). An insurer is not required to pay for a settlement by the insured that is made without the insurer's knowledge or consent. *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1546 ("Ours is the rare case where the insured tenders the defense and *then* negotiates a settlement on its own, leaving the insurer in the dark.") (emphasis in original).

Citing *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (Cal. Ct. App. 2006), Crowley nonetheless maintains that the consent requirement in § 16(b) is not enforceable. *Fuller-Austin* held that an excess insurer who, despite notice and opportunity to become involved, elects to wait until after a settlement is reached to object, risks liability for the unauthorized settlement if coverage is established. 135 Cal. App. 4th at 985. In *Fuller-Austin*, it was undisputed that the insured notified its insurer that settlement negotiations were imminent and invited the insurer to attend. *Id.* at

11

968. The court held that because the excess insurer neither acknowledged coverage nor provided a defense, it could not rely on a consent provision "that is designed to protect defending insurers." *Id.* at 985. It was critical to the reasoning of *Fuller-Austin* that the excess insurer had been informed of the impending settlement and given an opportunity to participate in negotiations before the insured violated its policy by assuming an obligation under the settlement without its insurer's consent. Having received fair notice that the insured was contemplating settlement, the insurer could not withhold consent and then deny coverage. *Fuller-Austin* is inapposite here, where it is undisputed that settlement negotiations concluded before defendants were notified that they had begun.

Crowley attempts to analogize to *Fuller-Austin* by pointing to the period between Crowley's March 28 letter to defendants and court approval of the settlement on April 27. Defendants knew of the impending settlement during that period of time, Crowley argues, but did nothing. Citing *Fuller-Austin*, Crowley argues that an insurer cannot be permitted "to hover in the background of critical settlement negotiations and thereafter resist all responsibility on the basis of lack of consent." *Id.* at 991. Crowley's argument is flawed because *Fuller-Austin* held that "if an insurer *erroneously* denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Id.* at 984 (citation omitted) (emphasis added). There was no wrongful denial of coverage in this case because Crowley had already violated § 16(b) before Crowley informed defendants of the settlement and sought their consent. Accordingly, California law is clear that defendants are not liable for any losses incurred or obligations assumed in violation of the insurance policy's consent provision.

Crowley's reliance on *Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 940 (9th Cir. 1996) is similarly misplaced. In *Lloyd's*, the insurers admitted they knew of the claim several years before any settlement was reached but never responded to notice from the insured. 93 F.3d at 539. Citing California authorities, the Ninth Circuit held that "[w]here an insurer does not respond to notice from the insured that it intends to settle with an adversary, the insurer may not then invoke a clause in the policy requiring the insured to obtain approval prior to settling any claims." *Id.* at 540 (citing cases). This rule has no application in this case, where all defendants acknowledged the

12

claim and Federal, the primary insurer, accepted Crowley's claim for defense costs.

### 2. Federal is not Estopped from Denying Coverage to Crowley

Crowley argues that Federal is estopped from asserting its right to prior consent from Crowley. "An insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action." *Chase v. Blue Cross of Calif.*, 42 Cal. App.4th 1142, 1157 (Cal. Ct. App. 1996). According to Crowley, Federal is estopped from denying coverage because it did not respond to Crowley's March 28 letter requesting consent until June 14, by which time the settlement had become final. Crowley also makes much of the e-mail exchange between two Federal employees advising "not to look a gift horse in the mouth" when they learned about the settlement. According to Crowley, this exchange evidences a bad-faith strategy by Federal to evade its obligation to Crowley. Finally, Crowley points to the telephone exchange between Nicholls and Shively in early April in which Nicholls purportedly told Shively that Federal had "no problem" paying for the settlement.

None of these arguments is availing. Crowley breached the insurance policy when it entered settlement negotiations, sought approval from its Board of Directors, and executed the Settlement Stipulation, all without informing Crowley. The e-mail exchange is irrelevant because Crowley had no knowledge of the e-mails and therefore could not have relied on them. Even if Crowley did rely on Federal's failure to respond to the March 28 letter and the telephone call in early April, this reliance does not excuse Crowley's earlier breach. In any event, Crowley sought Federal's approval of the settlement by letter on April 23, 2007. Crowley cannot argue that it reasonably relied on any representation purportedly made in the April 4 phone call if later that month, it acknowledged that Federal had not consented to the settlement. The policy clearly requires *written* consent, which it is undisputed Crowley had not received by April 23. Crowley therefore has no estoppel defense to its breach of the insurance policy.

### 3. Evidentiary Objections and Motion to Compel

The parties raise numerous evidentiary objections to evidence submitted in support of these summary judgment motions. Crowley objected to several documents as irrelevant and unfairly

prejudicial. The Court finds that the documents, described below, are relevant and that their probative value far outweighs any risk of undue prejudice.

Crowley's objection to Crowley's Schedule 14D-9, filed with the SEC on March 19, 2007 is overruled. The Court considered this form as an admission by Crowley as to the sequence of events, not to interpret the terms of the Settlement Stipulation.

Crowley's objection to Tracy Tkac's October 26, 2007 letter enclosing a check reimbursing Crowley for defense costs is overruled. The Court considered this document as evidence that Federal reimbursed Crowley for the defense costs described in the letter.

Crowley's objection to Crowley's March 19 press release entitled "Crowley Settles Stockholder Lawsuit" is overruled. The Court considered this document as an admission by Crowley that Crowley executed the Settlement Stipulation by March 19, not to interpret the terms of that agreement.

Crowley's objection to Crowley's April 24 letter responding to the SEC's letter is overruled. The Court considered this letter as evidence as an admission by Crowley that it deleted a provision from the tender offer in response to concerns raised by the SEC, not to interpret the terms of the tender offer.

Crowley's objection to the minutes of the March 17 meeting of the Crowley board's Special Committee is overruled. The Court considered this document as an admission by Crowley that the board did not merely approve the settlement of the *Federal Fund* action as fair to the *Federal Fund* plaintiffs.

Other evidence objected to by the parties was not relevant to the Court's decision. This decision moots Twin City's motion to compel production of Crowley's privilege log, documents relating to its communications with counsel regarding the *Franklin Fund* action, and responses to interrogatories.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions for summary judgment and DENIES plaintiff's motion for summary judgment. Crowley's claims against defendants are DISMISSED with prejudice.

**IT IS SO ORDERED.**

Susan Illston

14

**United States District Court**
For the Northern District of California

1  Dated: 12/1/08

2  _____

3  SUSAN ILLSTON

4  United States District Judge